IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN** | § § | |
| **VS.** | § § | NO.   7:25-cv-00245 |
| **MARTIN COUNTY SHERIFF'S DEPARTMENT;** | § § § § | |
| **BRAD INGRAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § § § | |
| **ANDERS DAHL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § § § | |
| **KELSEY BROWN,  IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § § § | |
| **RORY GAMMONS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § § § | |
| **WESTON PHELPS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND** | § § § | |
| **BRIAN SNELLGROVE** | § | |

## MOTION TO DISMISS & MOTION TO STRIKE

1. Plaintiffs move to dismiss Defendant Brian Snellgrove's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike certain scandalous allegations under Rule 12(f). Snellgrove's counterclaims are fatally deficient. Among other defects, on the face of Snellgrove's own allegations, these counterclaims are time-barred by the applicable two-year Texas statute of limitations, Tex. Civ. Prac. & Rem. Code § 16.003.

## BACKGROUND

2. This lawsuit arises out of an incident in May 2023, when law enforcement officers along with and acting in concert with Snellgrove searched Plaintiffs' home in Big Spring, Texas to recover certain Snap-on brand tools that had been reported as stolen by Snellgrove. During the May 2023 search, the Defendants seized various items of Plaintiffs' personal property, including various Snap-on tools. All criminal charges were dismissed by the prosecutor on or about November 13, 2024.

3. Plaintiffs filed the present suit seeking redress for violations of their rights and for the return of (or compensation for) their seized property. Among other counts, Plaintiffs have alleged that Defendants (including Snellgrove) have wrongfully continued possession of the property that was initially seized with a facially valid search warrant. Plaintiffs have not regained possession of the property that was seized from their home. Additionally, Plaintiffs have alleged that Defendants' disposed of Plaintiffs' property including for Snellgrove's personal use without a hearing adjudicating that Plaintiffs were not in lawful possession of the property.

4. Snellgrove answered the First Amended Complaint in August 2025 and asserted two counterclaims against Plaintiffs: civil conspiracy and conversion. In essence, Snellgrove's counterclaims allege that the Hamblins themselves conspired to steal or wrongfully retain Snap-on tools belonging to Snellgrove, and thereby converted those tools to their own use. Yet Snellgrove's pleading is short on plausible facts. He peppers his counterclaims with inflammatory accusations (e.g., that Plaintiff Austin Hamblin "lied to his attorney," "falsified receipts," and was running an "illegal operation"), but fails to set forth a coherent theory satisfying the required elements of conspiracy or conversion.

5. Moreover, Snellgrove sat on any such claims for over two years after he had knowledge of the alleged theft by his complaint to the police that initiated the seizure.

6. As demonstrated below, Snellgrove's counterclaims should be dismissed with prejudice in their entirety, and his scandalous allegations stricken, so that this case may proceed on its merits without distraction.

**STANDARD OF REVIEW**

Rule 12(b)(6) – Failure to State a Claim

7. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the pleading. To survive a Rule 12(b)(6) motion, a complaint (or counterclaim) must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While the court must accept well-pleaded factual allegations as true and view them in the light most favorable to the claimant, legal conclusions "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. The claimant's obligation is to plead facts that, if true, raise the right to relief above a speculative level. Twombly, 550 U.S. at 555.

8. Dismissal is proper if, accepting all well-pled facts, the court concludes that the claimant has not stated a plausible claim or that the claim is barred as a matter of law. Notably, the Court may dismiss a claim on limitations grounds under Rule 12(b)(6) when it is evident from the face of the pleading that the claim is time-barred. See Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999) ("Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.")

Rule 12(f) – Motion to Strike

9. Rule 12(f) permits the Court to "strike from a pleading any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. However, scandalous allegations – those that improperly cast a derogatory light on a party or person – are

an exception: courts have more latitude to strike such material in order to uphold the dignity of the proceedings.

10. "'Scandalous' matter is that which improperly casts a derogatory light on someone" and typically includes allegations that unnecessarily reflect on a party's moral character or use repulsive language. If the offending allegations are irrelevant to the issues and may prejudice one of the parties, the Court may strike them to avoid distraction or unfair harm.

11. The Court possesses considerable discretion in deciding a Rule 12(f) motion. See, e.g., FDIC v. Niblo, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (scandalous accusations should be removed when they have no bearing on the case's merits); American S. Ins. Co. v. Buckley, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010) (striking extraneous allegations that served only to impugn a party's character); Murray v. Sevier, 156 F.R.D. 235, 258 (D. Kan. 1994) (striking allegation that defendant "bought off" a witness). In evaluating a motion to strike, the Court should determine whether the challenged allegations are irrelevant to the claim or defense and whether their presence would be prejudicial. If so, striking is warranted to streamline the pleadings and prevent abuse of the judicial process.

12. If the challenged allegation does not pertain to the legal claims or defenses and merely serves to smear the party's character (for example, accusing a client of lying to counsel or operating an illegal business unrelated to the dispute), the courts will strike it. Allegations that "improperly cast a derogatory light on a party" without factual connection to the case are exactly the sort of scandalous matters that Rule 12(f) is meant to address. See, e.g., Rivera v. Robinson, No. 18-14005, ECF No. 26 p.3. 10-11 (E.D. La. Mar. 22, 2019).

**ARGUMENT**

**A. Snellgrove's Counterclaims for Civil Conspiracy and Conversion Fail to State a Legally Viable Claim and are Time-Barred**

    **1. The civil conspiracy counterclaim is inadequately pleaded and lacks any underlying basis**

13. Snellgrove's first counterclaim alleges "civil conspiracy," but he has not pleaded the required elements or factual basis for such a claim under Texas law. In Texas, "[t]he elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished (either an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts in furtherance of the conspiracy; and (5) damages as the proximate result." Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). Critically, civil conspiracy is not an independent cause of action - it is a derivative tort that "depends on participation in some underlying tort." Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996); Agar Corp., Inc. v. Electro Circuits Int'l, LLC, 580 S.W.3d 136, 142 (Tex. 2019) (civil conspiracy claim is connected to an underlying tort and "applicable statute of limitations must coincide with that of the underlying tort" for which liability is sought)

14. There are no allegations of any agreement, planning, or communications between the Hamblins relating to an object or a course of action. Any such communications were they to exist (a premise Plaintiff does not grant) would face challenges to Snellgrove obtaining them as communications between spouses are presumed privileged in the first instance. As Snellgrove has not identified any other party to the purported conspiracy, Plaintiff's counsel has not performed any analysis as to potential privilege issues with respect hypothetical communications relating to unknown parties.

15. The counterclaim thus lacks the sine qua non of a conspiracy: a conscious agreement to accomplish an unlawful purpose. See Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996) (affirming that civil conspiracy requires mutual understanding).

16. Second, Snellgrove has not articulated an independent underlying tort that the Hamblins allegedly conspired to commit. The only other tort alleged is conversion, so Plaintiff will assume this is the underlying tort for the alleged conspiracy. But as discussed below, Snellgrove's conversion claim is itself defective and time-barred. If the underlying conversion claim fails, the conspiracy claim necessarily fails as well. Civil conspiracy cannot stand without an actionable underlying tort or unlawful act. See Agar Corp., 580 S.W.3d at 140–42; Tilton, 925 S.W.2d at 680.

17. Finally, Snellgrove's own allegations undercut the plausibility of any conspiratorial wrongdoing. He contends that Plaintiffs "took tools for a period of time". This is true if for no other reason than the tools Snellgrove claims to be the owner of were seized during the search warrant execution. Because Snellgrove has not pleaded a coherent theory meeting the elements of civil conspiracy, this counterclaim should be dismissed under Rule 12(b)(6) for failure to state a claim.

### 2. The conversion counterclaim is fatally deficient in pleading and substance

18. Snellgrove's second counterclaim for conversion fares no better. Under Texas law, "conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the owner's rights." ITT Commercial Fin. Corp. v. Bank of the W., 166 F.3d 295, 305 (5th Cir. 1999). The elements of conversion include: (1) the plaintiff (counter-claimant here) owned or had legal possession of the property or entitlement to possession; (2) the defendant wrongfully exercised dominion or control over the property (assumed authority over the property and acted inconsistently with the plaintiff's rights); and (3) the plaintiff suffered

injury (e.g., deprivation of property) as a result. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). If the initial possession by the defendant began lawfully, an additional element is that the plaintiff made a demand for return of the property and the defendant refused. Id.; See also Lundy v. Masson, 260 S.W.3d 482, 486–87 (Tex. App.—Houston [14th Dist.] 2008). Conversely, if the owner initially consented either explicitly or implicitly (e.g., by having knowledge of the possession by Hamblin but not demanding return) to the defendant's possession or disposition of the property, then no conversion claim lies, because a key aspect of conversion is that the taking be without the owner's consent. *See Mack v. Newton*, 737 F.2d 1343, 1354 (5th Cir. 1984) (no conversion where owner authorized the disposition of property).

19. Snellgrove's pleading fails to satisfy these requirements. While he asserts that certain Snap-on tools (e.g., a plasma cutter and compressor) were "his" property, he provides almost no factual detail about the circumstances under which the Hamblins came into possession of those items. Did Snellgrove sell or lend the tools to Austin Hamblin (a mechanic) with an expectation of payment or return? Did an employee of Snellgrove's Snap-on franchise entrust the tools to the Hamblins for demonstration, trial, or storage? Snellgrove is silent on these points. This omission is critical because if the Hamblins initially obtained the tools with Snellgrove's permission – even temporarily – then Snellgrove must plead (and ultimately prove) that they wrongfully refused to return the items upon demand.

20. Yet Snellgrove does not allege that he ever made a demand for return that was rebuffed. In fact, the counterclaim does not state that the tools remain unreturned at all. If the items were recovered during the May 2023 search (as appears likely, since Snellgrove's complaint prompted that raid) and presumably returned to Snellgrove or held by authorities as Plaintiff's have alleged, then Snellgrove has not actually been deprived of his property going forward. His pleading does not clarify whether he ever actually lost title or possession of the tools beyond the temporary

"period of time" in question. Without such facts, he has not shown a wrongful, unauthorized taking or a continuing deprivation necessary to sustain a conversion claim.

21. If the Hamblins' possession was indeed temporary and the tools were recovered, Snellgrove's remedy (if any) would lie in a claim for loss-of-use or rental value, not the full value of the property as in a typical conversion (because he apparently has the property back). Yet he pleads no such measure of damages. Conversely, if the Hamblins did not return the items, one would expect Snellgrove to say so clearly and to describe efforts to get them back—which he has not. The vagueness of his allegations fails to put Plaintiffs on notice of the nature of the conversion claim. Is he claiming the Hamblins outright stole the tools in secret? Or that they borrowed them under false pretenses and delayed return? These scenarios involve different legal considerations (for example, a bona fide dispute over ownership or a contract might not constitute "wrongful" dominion). By lumping conclusory accusations without factual context, Snellgrove has not pleaded a plausible conversion claim.

### 3. Snellgrove's counterclaims are time-barred by the two-year statute of limitations

22. In Texas, the statute of limitations for conversion is two years from the date the cause of action accrues. See Tex. Civ. Prac. & Rem. Code § 16.003(a) (a person must bring suit for "conversion of personal property" or for "taking or detaining the personal property of another" not later than two years after the day the cause of action accrues). A claim for civil conspiracy is governed by the limitations period of the underlying tort it seeks to redress. Agar Corp. v. Electro Circuits Int'l, 580 S.W.3d 136, 142–44 (Tex. 2019) (limitations for conspiracy coincides with that of the underlying tort; rejecting blanket application of two-year period). Here, the only conceivable

underlying tort for Snellgrove's conspiracy claim is the alleged conversion of his tools. Accordingly, both the conversion claim and the derivative conspiracy claim are subject to a two-year limitations period (accruing on the same date).n favor of matching the tort's period).

23. Under Texas law, a cause of action for conversion generally accrues at the time of the unlawful taking or wrongful exercise of dominion, not when the owner discovers the taking. See Hues v. Warren Petroleum Co., 814 S.W.2d 526, 529 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("with conversion actions, the statute of limitations begins to run at the time of the unlawful taking, not when the party discovers the injury"; Republic Supply Co. v. French Oil Co., 392 S.W.2d 462, 464 (Tex. App.—El Paso 1965, no writ) (same).

24. Snellgrove's own pleadings and the timeline of events make clear that any alleged "taking" of his property by the Hamblins occurred, and was known to him, well over two years before he ever asserted these counterclaims. Snellgrove claims the Hamblins wrongfully had his Snap-on tools sometime prior to or by May 17, 2023, when he instigated law enforcement to search Plaintiffs' home for those items.

25. Thus, by no later than May 17, 2023, Snellgrove had knowledge of all the facts he needed to pursue a civil remedy: he believed the Hamblins had his tools and he certainly knew he was deprived of them. Under the accrual rule for conversion, the clock on Snellgrove's cause of action began running at that time (May 2023). Snellgrove, however, waited until August 2025 (when he filed his Answer and Counterclaims) to bring any civil claim against the Hamblins. This is more than two years after the accrual date, on its face outside the limitations window of § 16.003(a).

26. Therefore, both of Snellgrove's counterclaims are time-barred on their face. The Fifth Circuit has made clear that where the allegations in the pleading itself establish the expiration of

limitations, dismissal under Rule 12(b)(6) is appropriate. See Harris, 198 F.3d at 156. Here, Snellgrove's own timeline demonstrates that he slept on his rights.

27. Snellgrove may attempt to argue that his counterclaims should be deemed "compulsory" and thereby avoid the limitations bar. This argument is unavailing. While a counterclaim arising out of the same transaction or occurrence as the opposing party's claim is compulsory under Rule 13(a), that status does not automatically extend the statute of limitations if the counterclaim was already time-barred when filed.

28. Moreover, § 16.069 of the Texas Civil Practice & Remedies Code does not save Snellgrove's stale counterclaims. This Texas "counterclaim savings" provision extends the limitations period only if the counterclaim "arises out of the same transaction or occurrence that is the basis of [Plaintiffs'] action." Tex. Civ. Prac. & Rem. Code § 16.069(a). Texas courts apply a "logical relationship" test, analogous to the federal compulsory-counterclaim standard, to determine whether this requirement is met. See Smith v. Ferguson, 160 S.W.3d 115, 119 (Tex. App.—Tyler 2005, pet. denied) (explaining that "essential facts on which the counterclaim is based must be significantly and logically relevant to both claims" to qualify under § 16.069).

29. Snellgrove's counterclaims fail this test. They do not arise from the same transaction or occurrence as Plaintiffs' claims, but rather from an earlier, independent alleged theft. The facts necessary to prove Snellgrove's claims (that Plaintiffs stole or wrongfully retained Snap-on tools at some unspecified time before the May 2023 search) are entirely distinct from those underlying Plaintiffs' claims (the May 17, 2023 home search, the seizure of property under color of law, and the post-seizure failure to return that property or provide due process). Plaintiffs' lawsuit concerns conduct during and after the 2023 search; Snellgrove's counterclaims address events allegedly occurring before it. The mere fact that the earlier dispute over tools provided a motive for the search does not merge the two into a single "transaction or occurrence." See Smith, 160

S.W.3d at 119 (holding wife's counterclaim for unpaid taxes under divorce agreement did not arise from same transaction as husband's claims under different provisions, despite both relating generally to the divorce).

30. Section 16.069 cannot be used to revive any time-barred claim a defendant might have against a plaintiff. Its purpose is narrow: to prevent plaintiffs from filing suit after the statute has run on a defendant's related claims. See Harrison v. Hudson, 778 F. App'x 343, 345 (5th Cir. 2019) (per curiam) ("Section 16.069 was clearly designed to prevent plaintiffs from waiting to file their claims until the statute of limitations had run on the defendant's potential counterclaims.") (quoting Hernandez v. Tim's Lumber Co., 543 S.W.3d 454, 459 (Tex. App.—Houston [14th Dist.] 2018, no pet.)). It grants the defendant a brief thirty-day grace period to assert truly related counterclaims—not a license to resurrect unrelated grievances. See Hernandez, 543 S.W.3d at 459.

31. The essential facts of Plaintiff's complaint involve the execution of the search warrant, the chain of custody of seized items, any transfers to Snellgrove, and the absence of a hearing or notice before disposition—events occurring on or after May 17, 2023 (to which plaintiff's did not have notice of impropriety until much later). Evidence would include police reports on the seizure, communications among Defendants about property handling, and proof of due process violations under 42 U.S.C. § 1983 and Texas law.

32. In contrast, Snellgrove's counterclaims allege pre-seizure misconduct by Plaintiffs: that the Hamblins conspired to steal or convert his Snap-on tools "for a period of time" before May 2023, involving falsified receipts and an "illegal operation." These claims turn on facts predating the search, such as how Plaintiffs initially acquired the tools (e.g., purchase, loan, or theft), any agreements between Austin Hamblin and Snellgrove, and Snellgrove's knowledge of the alleged theft as of early 2023. Evidence would focus on pre-2023 interactions, receipts, and witness

testimony about tool possession—none of which overlaps substantially with Plaintiffs' post-seizure based complaint.

33. This temporal and factual divide precludes a logical relationship. Snellgrove's claims accrued independently before the search that forms the basis of Plaintiffs' suit, much like sequential but unrelated events in prior cases where § 16.069 did not apply. See Freeman, 11 S.W.3d at 483 (no revival where plaintiff's declaratory suit on water rights interpretation shared no common facts with defendant's counterclaims for fraud in the underlying deed conveyance; "The facts necessary to Cherokee's declaratory judgment action are not the same facts necessary to Freeman's counterclaims"); Sigaran v. U.S. Bank Nat'l Ass'n, 560 F. App'x 410, 413 (5th Cir. 2014) (per curiam) (affirming no revival under § 16.069 in federal court where borrowers' counterclaims to invalidate home equity lien on constitutional grounds did not arise from same transaction as bank's foreclosure action, as claims involved distinct operative facts about loan origination versus enforcement); Latham v. Thornton, 806 S.W.2d 347, 350 (Tex. App.—Fort Worth 1991, no writ) (malicious prosecution counterclaim not revived, as it accrued after termination of the original libel suit and did not share essential facts).

34. Here, Plaintiffs brought their claims promptly. The equitable rationale for § 16.069 for Snellgrove is absent. Snellgrove's counterclaims involve a separate alleged wrong, and he allowed the limitations period to expire. Because these counterclaims do not arise from the same transaction or occurrence as Plaintiffs' claims, § 16.069 does not apply, and they remain independently time-barred.

35. In short, Snellgrove blew the deadline that Texas law sets to vindicate the rights he asserts. His counterclaims for conversion and conspiracy should therefore be dismissed as untimely pursuant to Rule 12(b)(6).

**B. Plaintiffs' Claims Are Not Time-Barred – The Discovery Rule Defers Accrual of Plaintiffs' Conversion Claim Against Snellgrove**

36. Anticipating a likely rebuttal and in the interest of saving time, Plaintiffs now briefly address the potential argument that Plaintiffs' claims are similarly time-barred. Such an argument would be misplaced. Unlike Snellgrove, Plaintiffs filed their claims within the applicable limitations period, or benefit from deferred accrual under the discovery rule due to the hidden nature of Defendant's misconduct.

37. With respect to Plaintiffs' state-law conversion and related claims, the discovery rule applies to postpone accrual until Plaintiffs learned of Snellgrove's wrongdoing. Under Texas law, the discovery rule is a limited exception that defers the start of the limitations clock where the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable. See Baker v. Eckman, 213 S.W.3d 306, 311-312 (Tex. 2006). When applied, the discovery rule tolls the running of limitations until the plaintiff (1) discovers the wrongful act that causes an injury or (2) acquires knowledge of facts that would lead to the discovery of the wrongful act. See S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996); HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).

38. This is exactly the situation with Plaintiffs' conversion claim against Snellgrove and the other Defendants. The wrongful act in question is Defendant's conversion of Plaintiffs' seized personal property (such as Snellgrove taking possession of or disposing of Plaintiffs' tools after they were seized under the warrant). Plaintiffs had no realistic way to discover that injury at the time it occurred. When law enforcement (accompanied by Snellgrove) seized Plaintiffs' property on May 17, 2023, they did so under color of law with a facially valid warrant.

39. Plaintiffs had every reason to believe their property was being held lawfully and would remain so until returned or until any criminal case was resolved. They were not aware - and could not have been aware - that Snellgrove (a private party) would later obtain or use their property for his own purposes, effectively converting it. Any such misappropriation was done behind the scenes by the defendants and was inherently undiscoverable to Plaintiffs at the time. See Burns v. Rochon, 190 S.W.3d 263 (Tex. App. 2006) (discovery rule for lawful initial possession/hidden acts).

40. Therefore, under the discovery rule, Plaintiffs' conversion claim against Snellgrove did not accrue in May 2023 at the time of seizure, but only at the time they learned that the property was not being held pending resolution of the criminal case pursuant to standard practice relating to a search warrant. Until that point, Plaintiffs had no reason to suspect an injury – they could not have anticipated that County Commissioner Snellgrove would spirit away the seized items under the guise of a lawful search. Texas courts regularly apply the discovery rule in analogous situations where the injury is concealed. See, e.g., Autry v. Dearman, 933 S.W.2d 182, 187 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (discovery rule applied where defendant's conversion of funds was not readily ascertainable to plaintiff). Moreover, Texas law will not allow a wrongdoer to escape liability by concealing their wrongdoing until limitations expires. S.V. v. R.V., 933 S.W.2d 1, 6 (Tex. 1996) ("a defendant cannot avoid liability for his actions by purposefully concealing the wrongdoing until the statute of limitations has run". Here, Defendants (including Snellgrove) concealed the fact that Plaintiffs' property was given to Snellgrove or sold, so they cannot now claim Plaintiffs were too late to sue on that basis.

41. In any event, Plaintiffs have filed their claims in a timely fashion measured from the point of discovery. There is thus no parity between Snellgrove's untimely counterclaims and Plaintiffs' own claims. The Court can readily dismiss Snellgrove's counterclaims on limitations grounds

(among others) without jeopardizing Plaintiffs' case, because Plaintiffs' claims survive the limitations analysis. The discovery rule preserves Plaintiffs' conversion claim and other claims.

## C. The Court Should Strike Snellgrove's Scandalous and Prejudicial Allegations Under Rule 12(f)

42. In responding to the Complaint, Snellgrove's pleading went beyond mere denial or counterclaim and unfortunately descended into character attacks. His counterclaims gratuitously allege, inter alia, that Plaintiff lied to his own attorney, that Plaintiff falsified receipts, and that Plaintiff was operating an "illegal operation." These scurrilous allegations have no legitimate bearing on the causes of action at issue and serve only to smear Plaintiffs' reputation in the eyes of the Court and any potential jury. Pursuant to Rule 12(f), the Court should strike these scandalous matters from the pleadings. See Waste Mgmt. v. Metro. Gov't, 130 F.3d 731 (6th Cir. 1997) (12(f) motion disfavored but granted for "pure smears.)

43. The above accusations are not only inflammatory but also immaterial. Whether or not a Plaintiff supposedly "lied to his attorney" has no relevance to whether that Plaintiff converted Snellgrove's property or conspired to do so. It is an incident, if it occurred at all, collateral to the case. How Snellgrove intends to find evidence let alone prove these lies is beyond Plaintiffs' Council, since any communications between Plaintiffs and their council (should they exist at all) is obviously privileged as attorney / client communication and non-discoverable.

44. The same goes for the claim that Plaintiff falsified receipts. Snellgrove may be insinuating that Plaintiffs fabricated proof of purchase for the tools in question. Even if that were true (Plaintiffs

vehemently deny it), the proper way to address it is through evidence at trial, not through a slanderous averment in a pleading.

45. Finally, the reference to Plaintiffs running an "illegal operation" is so vague and overbroad as to be meaningless - it implies some undefined criminality unrelated to the specific dispute over tools (and any such alleged criminality was disposed of when the Prosecutor dropped the case). This phrase seems intended to paint Plaintiffs as bad actors generally, without any link to the actual claims and defenses before the Court.

46. These statements easily meet the definition of "scandalous" matter under Rule 12(f) jurisprudence. They "improperly cast a derogatory light" on Plaintiffs, accusing them of dishonesty and criminal behavior. See Murray v. Sevier, 156 F.R.D. 235, 258 (D. Kan. 1994) (striking allegation that defendant and his counsel "bought off" and paid "hush money" to prospective witnesses). Here, Snellgrove's accusations are similarly baseless (to date, he has offered no factual support for the claims of falsified receipts or lies to counsel) and serve no purpose other than to inflame. Their presence in the pleadings could also complicate discovery and motion practice, as Plaintiffs would be forced to divert attention to rebutting these irrelevant charges, and perhaps conduct mini-trials on side issues (e.g., proving a negative—that they did not lie to their attorney, which would be especially hard since any such communications are privileged).

47. Moreover, allowing such allegations to remain could prejudice Plaintiffs if the pleadings go before a jury. While pleadings are generally not evidence, jurors sometimes see them (or at least know of their content through pretrial publicity or otherwise), and scandalous accusations on the public docket can cause reputational harm irrespective of what happens at trial. The Court has an interest in streamlining the issues and ensuring that the case is litigated on the merits, not on ad hominem smears.

48. Striking these allegations will not hinder Snellgrove from advancing any legitimate arguments or evidence. If Snellgrove truly believes that, for example, a receipt produced by Plaintiffs is fraudulent, he remains free to challenge the authenticity of that receipt at trial (should the Plaintiff attempt to introduce any such receipt at trial, should one exist). What is unnecessary is the inclusion of "Plaintiff falsified receipts" as a standalone allegation in his counterclaim. The fact in itself is not an element of any claim; at most it is evidence. Similarly, whether Plaintiff lied to an attorney has no evidentiary value to the claims at hand.

49. Since these statements are not essential to Snellgrove's causes of action, removing them does not affect his ability to plead or prove his case. It will, however, remove extraneous clutter and toxicity from the pleadings. Courts have struck far less egregious allegations when they serve only to offend or prejudice. See, e.g., Magill v. Appalachian Intermediate Unit 08, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking allegations that reflected adversely on the moral character of a non-party and were unnecessary to deciding the matters in question). Here, the allegations in question reflect adversely on the moral character of the Plaintiffs without advancing any material issue. They should be stricken in the interest of justice and orderly pleading.

50. As emphasized by Local Court Rule AT-4(c), disparaging allegations like those in Defendant's counterclaims - implying criminality without relevance - should not be tolerated, warranting striking to uphold court dignity.

51. Accordingly, Plaintiffs request that the Court enter an order striking the following phrases and allegations from Snellgrove's Answer and Counterclaims:

    a. Any allegation that Plaintiff lied to his/their attorney.

    b. Any allegation that Plaintiffs falsified receipts or evidence.

    c. Any characterization of Plaintiffs' business or activities as an "illegal operation."

    d. Any other phrases or allegations the court deems scandalous.

52. These targeted excisions will remove the scandalous matter while leaving the rest of Snellgrove's pleading (to the extent it survives the motion to dismiss) intact for adjudication on the merits.

## CONCLUSIONS

53. For the foregoing reasons, Plaintiffs Austin and Kiska Hamblin respectfully pray that the Court grant this Combined Motion. Specifically, Plaintiffs request that the Court dismiss with prejudice Defendant Snellgrove's counterclaims for civil conspiracy and conversion, pursuant to Rule 12(b)(6), due to failure to state a claim and expiration of limitations. Plaintiffs further request that the Court strike from Snellgrove's pleading the scandalous and prejudicial allegations identified above, pursuant to Rule 12(f). Plaintiff also asks for sanctions in the amount of legal expenses incurred in the 12(f) motion. Plaintiffs also request such other and further relief to which they may be justly entitled.

Respectfully Submitted,

/s/ Kurt Muelller
-----------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com

Certificate of Conference

Pursuant to Local Court Rule CV-7(G), Plaintiffs' counsel certifies he attempted to confer with Defendant Snellgrove's counsel regarding the 12(f) motion on Aug. 13, 2025 via phone. Mr. Perez did not pick up the phone and counsel's voice mail was full. Additionally, although the automated message initially said I had reached Robert Perez, after the automated system informed

me the mailbox was full, the automated system appeared to transfer me to another law firm, and that automated system asked me to leave a voicemail with one of two attorneys, neither of which was Mr. Perez. In his signature block of his filing, Mr. Perez does not provide an email and counsel for plaintiffs lacks a fax machine. Having exhausted all means of timely reaching Mr. Perez, counsel for the plaintiff files with the court without conference with respect to the 12(f) motion.

<u>Certificate of Service</u>

I certify that on August 13, 2025 I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Kurt Muelller
------------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com