IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | |
|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN** § § | |
| **VS.** § § § | NO.   7:25-cv-00245 |
| **MARTIN COUNTY SHERIFF'S DEPARTMENT;** § § § | |
| **BRAD INGRAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § § | |
| **ANDERS DAHL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § § | |
| **KELSEY BROWN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § § | |
| **RORY GAMMONS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § § | |
| **WESTON PHELPS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND** § § § | |
| **BRIAN SNELLGROVE** § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' OPPOSED MOTION TO STAY DISCOVERY**

**Introduction**

1. This opposition relates only to the motion to stay discovery. Opposition to the motion for summary judgment will be filed in due course. Nevertheless, Plaintiff discusses the motion for summary judgment within this opposition to the limited extent it is necessary to inform the opposition to the motion to stay discovery.

2. This Court has been invited to halt all discovery by the government defendants pending a ruling on their summary judgment motion, citing qualified immunity and other immunity

defenses. The Court should deny the motion to stay discovery. Staying discovery at this juncture would severely prejudice Plaintiffs and impede the just resolution of this case. This is not a situation where Defendants have raised a purely legal immunity issue that can be decided in a vacuum. Rather, as shown above, Defendants' immunity defenses (especially qualified immunity) are intertwined with factual disputes. Plaintiffs have had no opportunity to take discovery to gather evidence crucial for rebutting those defenses – evidence that resides largely in Defendants' possession. Fundamental fairness and the Federal Rules counsel that Plaintiffs be allowed to develop the record, particularly on issues like what each officer did, what policies the County had, and how the property was disposed.

3. Moreover, some claims in this case (e.g., the Monell claim against the County and all claims against Defendant Snellgrove) are not subject to qualified immunity at all, meaning the case cannot be fully resolved on immunity grounds. It makes little sense to stay all discovery when, regardless of the individual officers' immunity, Plaintiffs are entitled to pursue discovery on the County's liability and Snellgrove's liability. In fact, bifurcating or staying discovery now would likely result in duplication and delay, because Snellgrove (who has no immunity) would proceed with discovery, and much of that discovery would inevitably overlap with the facts concerning the officers. Judicial economy and this Court's preference for resolving factual disputes with an adequate record militate against a stay.

4. In short, a total stay of discovery would work undue hardship on Plaintiffs and reward Defendants' attempt to avoid accountability by hiding the ball. The Court should instead permit discovery to proceed in the normal course (or at least allow targeted discovery essential to the immunity questions) so that the case can be resolved on its merits with all pertinent facts.

**Applicable Legal Standards**

5. Defendants correctly note that a district court has discretion to stay discovery "until preliminary questions that may dispose of the case are determined," such as immunity issues. They also correctly emphasize that qualified immunity is "an immunity from suit" that should be decided at the earliest possible stage (citing Carswell v. Camp, 54 F.4th 307 (5th Cir. 2022)). Plaintiffs acknowledge these general principles.

6. However, the Fifth Circuit does not impose a one-size-fits-all rule that all discovery must grind to a halt upon a defendant's invocation of qualified immunity. Rather, the Fifth Circuit allows (and indeed encourages) district courts to tailor discovery and sequencing to the needs of the case. For example, in Backe v. LeBlanc, 691 F.3d 645 (5th Cir. 2012), the Fifth Circuit outlined a procedure: a district court should first determine whether the plaintiff's pleadings assert facts which, if true, would overcome immunity. If so, and if the court feels unable to rule on immunity without further clarification of facts, the court may defer its ruling and allow limited discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claim." Id. at 648 (endorsing this approach). Similarly, in Lion Boulos v. Wilson, 834 F.2d 504, 507–08 (5th Cir. 1987), the Fifth Circuit approved limited discovery when there were questions of fact regarding an officer's actions under immunity analysis.

7. Unlike the situation in Carswell (a conclusory complaint of excessive force), here the First Amended Complaint details specific conduct of each Defendant and exactly how Plaintiffs' rights were violated. As confirmed in the recent Fifth Circuit decision in Asante-Chioke v. Dowdle, 101 F.4th 1126, 1131 (5th Cir. 2024), while qualified immunity can protect against overly broad discovery in some situations, courts must at least allow 'narrowly tailored' discovery to resolve factual issues essential to the immunity defense when the pleadings assert plausible claims overcoming immunity. Further, Local Rule CV-26 further requires

'good cause' for any protective order staying or limiting discovery, which Defendants have not shown beyond generic burdens.

8. Namely, the operative complaint alleges that the government defendants in a conspiracy with Snellgrove. Defendants themselves appear to admit this to in their supporting documentation attached to the motion for summary judgment stating in a sworn affidavit that Snellgrove was "conscripted" to participate in the search and seizure (if that isn't an admission that Snellgrove acted as a government agent, Plaintiff's counsel doesn't know what would be).

9. The complaint alleges that the conspirators seized property from the Defendants, transferred at least some of the property to Snellgrove, and did so without any adjudicatory finding that Snellgrove was the lawful owner of the property. The complaint alleges that Plaintiffs have not received their property back. For all the verbiage in the motion for summary judgment relating to immunity and process, government Defendants do not directly contest these underlying factual allegations.

10. In considering a motion for summary judgment, the court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)) (similar with respect to a motion to dismiss). Since Plaintiffs have met the pleading requirement, the Court is within its discretion to allow discovery to continue, if not in full form at least as is needed to illuminate facts essential to deciding the immunity question.

11. Furthermore, Rule 26 and Fifth Circuit precedent both dictate that a stay is not automatic but contingent on a showing of "good cause" by the movant – typically that proceeding with discovery would cause "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); Petrus, 833 F.2d at 583. Here, Defendants have not demonstrated a specific burden beyond the generic assertion that discovery is a "burden" and "expense" that immunity is meant to avoid. But that alone is insufficient; if it were enough, discovery would always be stayed upon a motion, which is not the law. See Wicks v. Mississippi State Employment Svcs., 41 F.3d 991, 994 (5th Cir. 1995) (qualified immunity does not shield defendants from all discovery, only that which is avoidable or overly broad). The Court must balance the burden on Defendants against Plaintiffs' need for discovery and the interests of justice.

**Argument**

A. **Plaintiffs Require Discovery to Uncover Facts Essential to Respond to Defendants' Qualified Immunity Defense and Other Factual Contentions**

12. Defendants' summary judgment motion places several factual matters at issue – matters on which Plaintiffs have had no opportunity to gather evidence due to the early stage of the case. For example, Defendants argue that Plaintiffs "never asserted ownership" or petitioned for a hearing, that the Sheriff's Department "properly followed" Articles 47.01 and 18.17 in releasing the property, and that "video evidence" contradicts Plaintiffs' version of events during the search. These arguments illustrate why discovery is necessary now.

13. Plaintiffs need discovery into how and why Defendants decided to give the property to Snellgrove. This involves internal sheriff's department communications or policies. Did someone send Snellgrove a letter inviting him to pick up the items? Did the Sheriff or a

deputy instruct evidence personnel to release the goods? These facts matter for both the due process claim (to show lack of notice to Plaintiffs) and Monell (policymaker involvement). Only by obtaining county records, emails, or deposition testimony can Plaintiffs learn these details. Without discovery, Plaintiffs are handicapped in rebutting Defendants' self-serving claim that they "properly followed" procedures - a claim Plaintiffs believe is false but which discovery would help reveal.

14. Defendants insinuate Plaintiffs could have petitioned for a hearing relating to the property but didn't. Plaintiffs must explore what, if anything, Defendants told them about the property's status. Discovery requests aimed at any letters, calls, or contacts the Sheriff's Dept. made to Plaintiffs (or lack thereof) are critical. If, as Plaintiffs suspect, Defendants never notified them relating to a hearing, that fact powerfully supports Plaintiffs' due process claim. Conversely, if Defendants claim some form of notice was given, Plaintiffs deserve the chance to see it and test its sufficiency. This evidence can only be obtained via discovery (document requests, interrogatories, depositions of officers in charge of evidence).

15. Defendants heavily rely on purported video footage of the search (bodycam or otherwise) to argue no genuine dispute exists. However, this footage appears to only be from some cameras (leaving open the question of what happened to other officer's body cams, vehicle cams, and other audio/video recording sources) and even as to the footage provided, why it only depicts parts of the operative search and parts of the operative actions. The video provided does not appear to even be complete concerning the operative time (only depicting part of time the search and seizure took place). It is at best a partial and incomplete record as to both time and substance.

16. Defendant's do not even represent these video files are complete, unaltered, or are all the video / audio that was taken during the event (and to the extent it is not all the audio /

video, what happened to the other audio / video either from the sources they have provided or from other sources that have not been provided). Further, to the extent other officer either did not have body cameras or their video footage has been deleted, Plaintiff are entitled to obtain from these officers their recollections and other supporting documentation (not to mention inquiring in to why the video didn't exist in the first place or has since been destroyed). Plaintiff challenges the completeness of the video evidence provided to this court both as to the videos provided and as to the events as a whole, since the videos provided do not even purport to be from all government's defendant's perspectives.

17. Government defendants invite the court to make a decision based on an incomplete record that does not overcome Plaintiff's observations to the contrary. This is not a situation in which the limited, incomplete video evidence is so clear as to overcome Plaintiff's well pled complaint which must be accepted as true.  See Darden v. City of Fort Worth, 880 F.3d 722, 730 (5th Cir. 2018) ("When video evidence is ambiguous or incomplete, we view the facts in the light most favorable to the nonmovant."); see also Lytle v. Bexar County, Tex., 560 F.3d 404, 409 (5th Cir. 2009) (holding that when the video evidence "does not capture all relevant events or is subject to varying interpretations," the court must "credit the nonmovant's version of the facts"); accord Scott v. Harris, 550 U.S. 372, 380–81 (2007) (only when video evidence "blatantly contradicts" the plaintiff's version so that "no reasonable jury could believe it" may a court reject the plaintiff's account).

18. As will be discussed more in the summary judgment opposition when it is filed, whether the County had a policy or custom that led to Plaintiffs' harm is a central issue. All information about policies, training, prior similar incidents, and the Sheriff's knowledge is exclusively in Defendants' possession. Plaintiffs have alleged, for instance, that the Sheriff's Office failed to train deputies on proper handling of seized property and that the Sheriff (a policymaker)

personally approved the wrongful disposition. To prove that, Plaintiffs need discovery such as deposing the Sheriff or Chief Deputy, requesting training materials, incident reports, and policies regarding evidence retention. Monell liability often lives or dies on evidence uncovered in discovery. If discovery is stayed until after an immunity ruling, the Monell claim against the County (which has no immunity) gets stalled for no good reason, delaying justice and potentially risking loss of evidence.

19. In short, Plaintiffs' need for discovery is not a blind fishing expedition; it is sharply targeted at issues Defendants themselves have raised and based on Plaintiffs own observations and representations made by Defendants to Plaintiffs during the course of the last 30 months. Allowing no discovery would handicap Plaintiffs' ability to present facts essential to justify their opposition. Plaintiffs have effectively made such a showing in this opposition. Staying discovery while simultaneously entertaining summary judgment would be putting Plaintiffs in an impossible Catch-22: expected to refute Defendants' factual claims without access to evidence. The Court should not countenance that unfairness.

**B. A Stay Would Prejudice Plaintiffs by Delaying Resolution and Risking Loss of Evidence, Whereas Discovery Poses Minimal Hardship to Defendants**

20. The search and seizure occurred in May 2023. Witnesses – including the officers and any third parties (neighbors, etc.) – memories will only degrade with more time. Plaintiffs are eager to depose key figures while recollections are relatively fresh. A stay could push depositions many months (or longer, if any appeal on immunity intervenes) into the future, by which time memories may dull. For example, an officer might not recall details about communications with Snellgrove or steps taken with the evidence. This loss of detail harms Plaintiffs' ability to elicit truthful, complete testimony. Defendants, by contrast, typically

memorialize their version in reports or affidavits near the event (indeed they have video). Plaintiffs rely on live testimony – which is affected by delay. Thus, a stay tactically advantages Defendants at Plaintiffs' expense.

21. Although one hopes the County preserves evidence once litigation is filed, the reality is some records could be lost or harder to find over time. The sooner Plaintiffs can request and obtain documents (emails, logs, etc.), the better. A stay risks intervening events like routine document destruction (if a litigation hold was not diligently implemented) or staff turnover making retrieval difficult. Plaintiffs have already waited by virtue of the removal and initial motions – further delay is risky. Given that Plaintiffs seek specific documents (warrant inventory, evidence logs, correspondence about the property), it is crucial to get those while they still exist in accessible form.

22. Staying discovery will stall the case's progress. If the Court denies summary judgment (which Plaintiffs believe it should), then down the line we would pick up discovery where it left off, causing a compressed schedule and possible need to redo certain tasks that could be done now. For instance, if summary judgment is denied a year from now, the parties will scramble to conduct all discovery then, and trial will be far off. If discovery proceeds now, even in part, the case stays on track. It serves judicial economy to develop the facts concurrently with briefing immunity, at least to a limited extent, so that any subsequent motions or trial are informed by actual evidence rather than speculation.

23. On the other hand, the burden to Defendants of allowing discovery is not great, especially if appropriately scoped. Defendants express concern about "needless and expensive discovery" before immunity is decided. But Plaintiffs are not seeking endless or irrelevant discovery. Plaintiffs' initial discovery request (served September 6, 2025) which Defendants move to stay – presumably covers relevant documents and questions (the motion references it

generally). Defendants have not demonstrated that responding to those requests would be overly burdensome. Typically, immunity-related discovery in cases like this might include producing the incident report, any bodycam video, communications about the case, training manuals – items any competent department can collect and produce without undue hardship. Depositions of a few key players might be needed; that is hardly oppressive.

24. Local Rule CV-7(i) as interpreted by this Court requires certification of good-faith conferral before non-dispositive motions like this stay request, emphasizing the district's preference for resolution without court intervention. The letter of the rule was not followed in this case until after Plaintiff filed his objection (Defendant first contact Plaintiff the following morning) and the spirit of the rule has still to date not been follow (Defendant merely asked if Plaintiff opposed the motion and stated that was all he needed – there was no attempt to meaningfully confer in an attempt to find potential common ground).

25. Plaintiff assumes the Court intends its local rule to have substantive impact where possible, not merely a cursory check box. Defendants have not even asked Plaintiffs to limit or narrow the scope of discovery requests based on hardship. If Defendant believes parts of Plaintiffs requests are overly burdensome at this time, Plaintiff remains as willing as ever to confer with Defendant to attempt to address Defendants legitimate needs. Plaintiff may be willing to reduce the request, or perhaps split the request into phases based on express particularized concerns of Defendant. Plaintiff of course cannot guarantee such an attempt would lead to a complete mutual resolution, but invoking the protection of the Court without even trying to resolve any issues as to undue burden in mutual good faith seems at best premature.

26. Moreover, as argued, much discovery can focus on the County and Snellgrove, reducing any personal burden on individual officers. For example, interrogatories or depositions can be

directed to a Martin County corporate representative (often a high-ranking official) about policies, which imposes no burden on line deputies. Document requests to the County and Snellgrove similarly don't burden individual defendants. Even depositions of the individual officers (should they be needed) are a normal part of litigation; the Fifth Circuit recognizes that limited depositions may be required to resolve factual disputes in immunity. See Lion Boulos, 834 F.2d at 507 (upholding limited depositions on narrow issues of officer's conduct).

27. Defendants cite the principle that immunity includes protection from the burdens of discovery, and Plaintiffs respect that. But this is not a case where the immunity defense is so clear-cut that any discovery is unjustified. Quite the reverse: Defendants' liability may well turn on what discovery reveals (for instance, an email could show they knowingly violated procedure, undercutting any good-faith immunity claim). The marginal burden of targeted discovery is far outweighed by its benefit in ensuring a correct and just adjudication of the immunity question. It is more efficient to resolve immunity with a fuller factual record than to attempt it blind, risk an appeal/reversal for lack of clarity, and then do discovery anyway. This Court in prior cases has allowed measured discovery rather than blanket stays when doing so avoids piecemeal litigation. (Indeed, Plaintiffs believe this Court prefers not to completely stay cases absent compelling reason, and here there is none beyond Defendants' generic, unfocused desire not to be bothered).

C. **The Court Can Implement Targeted or Phased Discovery Instead of a Complete Stay**

28. If the Court is inclined to address Defendants' concerns (which as noted above, seems premature at this time without even an attempt by the Defendant to try to reach some mutually agreeable compromise before seeking intervention by the Court), the solution need

not be an all-or-nothing stay. The Court has wide discretion to shape discovery. See Fed. R. Civ. P. 26(c). Plaintiffs propose, in the alternative, that the Court consider phased discovery: allow an initial phase focused on the circumstances of the search, the property disposition, and Monell policy/training issues, for the purpose of informing the qualified immunity analysis and facilitating potential summary judgment rulings. This phase would include production of the key records (warrant, inventory, video, communications, policies) and depositions of, say, Snellgrove, the Sheriff or representative, and perhaps one deputy with most involvement (e.g., the evidence custodian or lead investigator). This limited discovery could be completed relatively quickly (perhaps within 90 days), after which the parties (and Court) will be much better positioned to argue and decide summary judgment with actual evidence. This approach comports with Asante-Chioke, where the Fifth Circuit vacated a broad discovery order and remanded to limit discovery to uncover only the facts necessary to rule on qualified immunity.

29. As noted above, the Fifth Circuit in Carswell reiterated that once a plaintiff alleges facts overcoming immunity, a court should permit limited discovery" to resolve any fact disputes relevant to that defense. That is exactly the scenario here. By allowing such limited discovery, the Court honors the spirit of qualified immunity (by not unleashing unfettered fishing expeditions) while also protecting Plaintiffs' rights to prove their case. It also aligns with common sense – deciding complex immunity issues on a skeletal record invites error.

30. Furthermore, keeping discovery open (even in a narrowed form) encourages the parties to confer and perhaps narrow issues. Plaintiffs might, for example, upon seeing certain documents, drop a claim or realize some defendants were less culpable. Conversely, Defendants might, after their depositions are taken, their case is on shaker ground then they

currently anticipate. A stay freezes these dynamics and often entices the parties into protracted motion practice instead of constructive case progress.

31. In summary, a total stay of discovery is neither necessary nor equitable in this case. Plaintiffs respectfully urge the Court to deny the motion to stay discovery. Doing so will allow the case to proceed efficiently on all fronts. At most, the Court could tailor discovery to ensure it stays focused on the pivotal issues without undue burden. But an outright halt would only serve to delay justice and starve the truth-finding process of needed information.

## Conclusion

32. Plaintiffs respectfully request that the Court deny Defendants' Opposed Motion to Stay Discovery. Defendants have not shown good cause for a blanket stay. Critical facts remain disputed, and Plaintiffs are entitled to obtain discovery to elucidate those facts, particularly since not all claims/parties are subject to qualified immunity. In the interests of justice and efficient case management – as well as consistent with this Court's practice of permitting discovery where factual development is needed – discovery should move forward. Plaintiffs stand ready to confer with Defendants and the Court to structure discovery in a way that addresses any specific concerns, but an indefinite stay is unwarranted.

33. Accordingly, Plaintiffs pray that the Court permit discovery to proceed and for such further relief as the Court deems just and proper.

34. Plaintiffs additional note that they intend to file an opposition to the motion for summary judgment in due course. The Court may therefore wish to defer ruling on this motion for a stay until the Plaintiffs files the opposition so the Court may consider the entire argument at one time.

Respectfully Submitted,

/s/ Kurt Muelller
-----------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com

Certificate of Service

I certify that on July 10, 2024 I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system. Defendant Brian Snellgrove has not yet been served and will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Kurt Muelller
-----------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com