**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND / ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN** | § | |
| | § | |
| **VS.** | § | |
| | § | **NO.   7:25-cv-00245** |
| **MARTIN COUNTY SHERIFF'S** | § | |
| **DEPARTMENT;** | § | |
| | § | |
| **BRAD INGRAM, IN HIS INDIVIDUAL** | § | |
| **AND OFFICIAL CAPACITY;** | § | |
| | § | |
| **ANDERS DAHL, IN HIS INDIVIDUAL** | § | |
| **AND OFFICIAL CAPACITY;** | § | |
| | § | |
| **KELSEY BROWN,  IN HIS INDIVIDUAL** | § | |
| **AND OFFICIAL CAPACITY;** | § | |
| | § | |
| **RORY GAMMONS, IN HIS INDIVIDUAL** | § | |
| **AND OFFICIAL CAPACITY;** | § | |
| | § | |
| **WESTON PHELPS, IN HIS INDIVIDUAL** | § | |
| **AND OFFICIAL CAPACITY; AND** | § | |
| | § | |
| **BRIAN SNELLGROVE** | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT**

**Introduction**

1.  Plaintiffs Austin Hamblin and Kiska Hamblin file this Response in Opposition to the Martin
    County Defendants' Motion for Summary Judgment. The government Defendants including
    Martin County, the Martin County Sheriff's Department, and several of its officers seek
    summary judgment on Plaintiffs' claims arising from the unlawful seizure and disposal of
    Plaintiffs' property during and after execution of a search warrant. As shown below, genuine
    issues of material fact and controlling law preclude summary judgment.

2. Defendants' Motion rests on a flawed premise: that the seizure was lawful and their subsequent actions were proper. In reality, the seizure vastly exceeded the scope of the warrant. Officers seized 51 categories of items when the warrant authorized only two, constituting a clear Fourth Amendment violation.

3. Furthermore, Defendants' own evidence and admissions confirm that after this unlawful seizure, officers failed to follow mandatory post-seizure procedures and instead turned the property over to and with the assistance of a private individual (Defendant Brian Snellgrove) without due process or court authorization. Such conduct violated clearly established law, meaning no immunity shields the officers or county.

4. The record demonstrates that Plaintiffs diligently attempted to recover their property, contrary to Defendants' false assertions of abandonment or acquiescence. Defendants' reliance on incomplete video evidence and self-serving affidavits cannot carry their summary judgment burden. Finally, Martin County remains liable for the policies and actions of its policymakers that caused the constitutional deprivation.

5. Defendants' premature motion for summary judgment - filed before any discovery and in lieu of a Rule 12 motion - underscores the weakness of their position: unable to dispute the sufficiency of Plaintiffs' pleadings, they seek to preempt factual development under the guise of immunity.

## I. The Seizure Grossly Exceeded the Scope of the Warrant, Violating the Fourth Amendment

6. Defendants assert they acted in "good faith" by relying on a judicially issued warrant (Defs.' MSJ ¶¶ 28, 34). However, the summary judgment evidence, specifically Defendants' own exhibits, blatantly contradicts any claim of good faith and establishes a clear violation of the

Fourth Amendment's particularity requirement. The officers conducted a general search far beyond the scope of any specific magistrate's authorization.

7. The warrant authorized the seizure of exactly two specific items: "a Snap-On Plasma Cutter model 301 and a Snap-On Air Compressor." (Defs.' Ex. A). Yet, the inventory return filed by Deputy Dahl shows that the Defendants seized 51 items or groups of items, including numerous tool cabinets, welders, various hand and power tools, an iPhone, display cabinets, a "Snap On red popcorn maker," a "Snap On lawn chair," and a motorized bicycle, totaling $283,445.00. (Defs.' Ex. B).

8. The Fourth Amendment requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This requirement "makes general searches... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant " Stanford v. Texas, 379 U.S. 476, 485 (1965) (citing Marron v. United States, 275 US 192, 196 (1927)). When officers seize items not particularly described in the warrant, they violate the Fourth Amendment unless an exception (such as plain view) applies.

9. While the warrant authorized the seizure of the two specified items, the officers' decision to allow Brian Snellgrove to walk through Plaintiffs' home and identify dozens of other items for seizure (Defs.' MSJ ¶ 29) transformed a limited search into an unconstitutional general search warrant. No reasonable officer could believe that a warrant for a plasma cutter and an air compressor authorizes the seizure of popcorn makers, lawn chairs, and entire tool cabinets not listed in the warrant.

10. Defendants cannot justify the seizure of 49 unauthorized categories of property under the plain view exception. For the plain view doctrine to apply, an object's incriminating character

must be 'immediately apparent.' Horton v. California, 496 U.S. 128, 136 (1990). This standard requires that the officer have probable cause to associate an object with criminal activity without conducting a further search. See, e.g., United States v. Jackson, 596 F.3d 236, 242 (5th Cir. 2010). An officer cannot, for example, move an item to view its serial number or otherwise subject it to inspection to confirm if it is stolen, as that act of moving the object constitutes a new, warrantless search. Arizona v. Hicks, 480 U.S. 321, 324-325 (1987). The mere presence of Snap-On branded tools, or novelty items like a 'Snap On red popcorn maker' and 'Snap On lawn chair,' in the home of a Snap-On employee does not render their character as 'stolen property' immediately apparent. The officers did not independently establish probable cause for items beyond the warrant but instead relied entirely on Snellgrove's uncorroborated assertions. This reliance cannot substitute for the particularity requirement of the warrant.

11. This gross disparity between the warrant and the seizure defeats qualified and official immunity. An officer does not act in "good faith" or in an objectively reasonable manner when he flagrantly disregards the express limitations of the warrant he is executing. See Groh v. Ramirez, 540 U.S. 551, 563–565 (2004) (denying qualified immunity where officer failed to comply with the particularity requirement). The seizure of the unauthorized items was unlawful, and summary judgment on Plaintiffs' Fourth Amendment claims must be denied.

## II. Post-Seizure Handling of the Property Was Ministerial, Not Discretionary – No Immunity Applies

12. After seizing Plaintiffs' property, Defendants had mandatory, ministerial duties prescribed by Texas law to inventory, safeguard, and maintain custody of the property unless and until a

court directed otherwise. These duties are defined with precision; thus, their performance (or failure) is ministerial and not protected by official (or qualified) immunity. See, e.g., Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex. 1994). Under Texas official immunity principles, "ministerial acts are those for which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." City of Lancaster v. Chambers, 883 S.W.2d 650, 654 (Tex. 1994).

13. Here, Texas law imposed nondiscretionary obligations. As to inventory and custody of the items seized, Texas Code of Criminal Procedure article 18.10 required the executing officer to "retain custody of [seized property] until the magistrate issues an order directing the manner of safekeeping the property." Tex. Code Crim. Proc. (TCCP) Art. 18.10. As to disposition of allegedly stolen property, because the items were alleged to be stolen, Chapter 47 imposed additional duties. An officer is required to immediately file a schedule of the property with the court and notify the court of claimants. TCCP Art. 47.03. When ownership is contested, the officer with custody of the property shall hold it subject to the order of the proper court. TCCP Art. 47.01 The officer must safeguard the property until a Chapter 47 hearing determines rightful possession.

14. By failing to retain the property and releasing it to Snellgrove without a magistrate's order or hearing, Defendants violated these ministerial duties.

15. An act required by law is ministerial, and an official who ignores a mandatory duty is not acting in good faith. See Chambers, 883 S.W.2d at 654. Thus, official immunity is unavailable. Defendants admit they lacked the facilities to store the property and therefore "conscripted" Snellgrove to haul and store it (Defs.' Ex. D, Ingram Aff. ¶ 6; Dahl Aff. ¶ 10) was an arrangement outside any lawful discretion. Because the procedures for inventorying, securing, and returning seized property are fixed by law (leaving no room for individual

judgment), Defendants cannot cloak their actions in immunity. See Ballantyne v. Champion Builders, 144 S.W.3d 417, 425 (Tex. 2004) (official immunity does not protect violating a ministerial duty).

16. The Defendants' reliance on Article 18.08 is a transparent attempt to shield an unlawful act with a misapplied statute. Article 18.08 permits an officer to call upon citizens to 'aid in the execution' of a warrant, a phase which concludes once property is seized. The statute does not, and cannot, authorize an officer to delegate his non-delegable, post-seizure custodial duties. Those duties are governed by the mandatory language of Article 18.10, which provides that '[t]he officer who seized the property shall retain custody of it until the magistrate issues an order.' Tex. Code Crim. Proc. Ann. art. 18.10. This duty is ministerial, as the law 'prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' See Chambers, 883 S.W.2d at 654. By handing custody of contested property to the adverse claimant without a court order, Defendants violated these clear, ministerial duties, and official immunity provides no sanctuary for such actions.

17. In addition, qualified immunity under federal law is likewise inapplicable. Defendants' claim to qualified immunity fails because the right to be free from a general search that exceeds the specific limitations of a warrant is clearly established. In Groh v. Ramirez, 540 U.S. 551, 563 (2004), the Supreme Court denied qualified immunity to an officer who executed a warrant that failed the Fourth Amendment's particularity requirement. The Court reasoned, 'Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid.' Id. The same inexorable logic applies here. The warrant was facially particular, authorizing the seizure of exactly two items. No reasonable officer could believe that such a

warrant authorized the wholesale seizure of 51 categories of property, transforming a targeted search into a general rummaging. This was not a reasonable mistake about a 'close call'; it was an objectively unreasonable disregard for the unambiguous command of the Fourth Amendment and the authorizing magistrate. A reasonable officer would know that seized property must be retained for court disposition, and that it violates clearly established rights to deprive someone of property without due process by handing it to another private party. Because Defendants' post-seizure conduct was clearly outside the bounds of any legitimate authority, they are not entitled to qualified immunity (assuming immunity is relevant at all, given the ministerial nature of most of the conduct here).

### III. Defendants' Admissions "Conscript" Snellgrove as a State Actor – Supporting §1983 Conspiracy and Removing Immunity

18. Defendants' own sworn testimony establishes that Snellgrove was a state actor. Deputy Dahl admits he 'conscripted Brian Snellgrove to aid in the execution of the search warrant' by having him 'identify the property' and 'store such property'. A private party who is a 'willful participant in joint activity with the State or its agents' acts under color of state law for purposes of § 1983. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) (citing Adickes v. S. H. Kress & Co., 398 U. S. 144, 152 (1970); United States v. Price, 383 U. S. 787, 794 (1966)). By Defendants' own admission, Snellgrove was an integral part of the search, seizure, and custodial process, acting at the behest and under the supervision of the Sheriff's Department. This 'joint action' and 'meeting of the minds' to seize and transfer Plaintiffs' property without due process establishes a conspiracy to violate constitutional rights and confirms Snellgrove's status as a state actor. See Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).

19. Here, the officers and Snellgrove reached an understanding to seize and transfer Plaintiffs'
property. Snellgrove participated in the search, identifying items for seizure (including
dozens of items not listed in the warrant) and the officers then transferred the seized
property to Snellgrove without due process. Under these facts, Snellgrove is treated as a state
actor jointly responsible for the constitutional deprivations, and all Defendants can be held
liable for the §1983 conspiracy.

20. Crucially, the conspiracy doctrine negates any immunity that might otherwise attach to the
government officials involved. When officials conspire with a private person to violate
constitutional rights, they step outside the scope of lawful authority. An unlawful agreement
to deprive someone of property - particularly by exceeding the scope of a warrant and
bypassing mandatory post-seizure procedure - is not conduct "in good faith." Courts
recognize that "there is no good reason, in law or policy, to confer immunity on private
persons (or officers) who engage in a corrupt conspiracy" to violate rights. Dennis, 449 U.S.
at 31-32. The presence of a conspiracy defeats Defendants' immunity defenses: by acting in
concert with Snellgrove to effectuate an illegal taking of property, the officers were abusing
their power, not performing a protected discretionary function.

## IV. Defendants' Video Evidence is Incomplete and Omits Critical Events; It Cannot Support Summary Judgment

21. Defendants heavily rely on selective body-camera video (Defs.' Ex. E) to portray the seizure
as lawful. But the video evidence presented is fragmentary and notably incomplete. First, the
video does not even purport to represent the entirety of the time of the search nor the
entirety of all the participants' points of view. Second, the proffered video ends before the
crucial post-seizure handling and transfer of the property. There is no video showing how
the seized tools were inventoried, how they were removed from the scene, how they were

stored, or what happened to those tools afterward for the following months when the tools were supposed to have been held pending judicial determination.

22. On summary judgment, the Court must view the record in the light most favorable to the non-movants (Plaintiffs) and indulge all reasonable inferences in Plaintiffs' favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Video can trump a party's version only when it "blatantly contradicts" that version. Scott v. Harris, 550 U.S. 372, 380 (2007). Here, far from blatantly contradicting Plaintiffs' claims, Defendants' footage leaves out many material facts. To the extent it shows anything, it confirms Snellgrove's presence and officers deferring to him on identifying property, but we never see what becomes of the property.

23. Because the video evidence does not capture the full story, it cannot be treated as dispositive. After the cameras went off (or outside their view), officers hauled away the tools and equipment and released them to Snellgrove's custody. (Pls.' Ex. A & B). Defendants have not produced bodycam footage from all of the officers, nor any recordings of the transfer to Snellgrove, nor video or images depicting the storage of the items. The absence of this evidence gives rise to an inference that it would not support Defendants' position. Thus, Defendants' incomplete video cannot resolve factual disputes in Defendants' favor.

24. The conflicting accounts of what happened and the incomplete video evidence create classic questions of fact for the jury. The Court cannot make credibility determinations or draw inferences against Plaintiffs on summary judgment. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam).

## V. Plaintiffs Diligently Pursued the Return of Their Property – The Record Refutes Any Notion of "Abandonment" or "Acquiescence"

25. Defendants suggest that Plaintiffs "abandoned" their property or failed to contest ownership, attempting to justify the failure to return it. (MSJ ¶¶ 5, 30–32). This is

demonstrably false and contradicted by sworn testimony, creating a genuine dispute of material fact.

26. Defendants argue that under Art. 47.01, they only had to hold the property if ownership was "contested," claiming it was not. (MSJ ¶ 30). First, Defendants assert Plaintiffs "agreed with, acquiesced to, and/or confirmed" the property identified by Snellgrove during the search. (MSJ ¶ 29). This is a gross mischaracterization. A citizen facing an armed police raid executing a warrant is in an inherently coercive environment. Their failure to actively dispute ownership claims on the spot, particularly regarding items the officers had no authority to seize, cannot constitute a legal waiver or "acquiescence" of their property rights. This is especially the case as persons whose property is subject to search and seizure related to a criminal investigation have the right to remain silent (a right that any reasonable attorney would advise their client take advantage of). Silence is not acceptance and any argument to the contrary is against black letter law. Moreover, property seized from a citizen's possession is inherently contested. Possession is prima facie evidence of ownership. The fact that a third party (Snellgrove) claims the property is precisely what creates the contest that mandates a judicial hearing under Chapter 47.

27. Second, Defendants falsely assert that after the criminal charges were dismissed, Plaintiffs "never attempted to exert ownership" over the property. (MSJ ¶ 5; Defs.' Ex. D, Ingram Aff. ¶ 9; Dahl Aff. ¶ 8). This is directly contradicted by the affidavits of Austin and Kiska Hamblin (Pls.' Ex. A and Ex. B), which detail Plaintiffs' persistent, good-faith efforts over many months to secure the return of their belongings.

28. The chronology contained in the affidavits demonstrates Plaintiffs' diligence. They never acquiesced in the loss of their property. This record flatly contradicts the Defendants' self-serving affidavits. At summary judgment, Plaintiffs' sworn statements must be taken as true,

establishing a clear factual dispute regarding whether ownership was contested and whether

Plaintiffs sought their property's return.

29. Furthermore, under Texas law, property cannot be deemed "unclaimed" or abandoned

under Article 18.17 until at least 30 days after the interested parties have been notified and

fail to respond. Tex. Code Crim. Proc. Ann. art. 18.17(a). Defendants have produced no

evidence that they provided the required statutory notice to Plaintiffs. Instead, the property

was quietly handed to Snellgrove long before any reasonable abandonment period could

have run.

## VI. Defendants are Not Entitled to Qualified Immunity

30. Defendants invoke qualified immunity, which would require Plaintiffs to show (1) a

constitutional violation occurred, and (2) the right was clearly established at the time of the

misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Plaintiffs argue many of the

actions violated ministerial duties as already discussed. If the actions are ministerial, qualified

immunity is inapplicable. However, if the court believes qualified immunity is applicable at

all relative to any of the causes of action pending, plaintiffs meet this burden.

31. First, as detailed above, Defendants violated Plaintiffs' constitutional rights. They violated

the Fourth Amendment by grossly exceeding the scope of the warrant, seizing 49

unauthorized items). They violated the Fourteenth Amendment Due Process Clause by

seizing property and transferring it to a third party (Snellgrove) without notice or a hearing,

bypassing mandatory state-law procedures.

32. Second, these rights were clearly established. It is clearly established that officers must

adhere to the particularity requirement of a warrant and cannot engage in general searches.

Groh, 540 U.S. at 558–60. It is also clearly established that the government cannot deprive

individuals of property without due process of law. No reasonable officer could believe it was lawful to seize items not listed in a warrant and then give that property to a private claimant without any judicial process. Defendants argue they acted in good faith (MSJ ¶ 34), but their actions in disregarding the warrant's limits and violating mandatory state procedures for custody were objectively unreasonable. It is also axiomatic that the government cannot deprive individuals of property without due process of law, which requires notice and an opportunity to be heard. Fuentes v. Shevin, 407 U.S. 67 (1972). The Fifth Circuit has recognized that failure to adhere to state law procedures for the disposition of seized property constitutes e a due process violation. See, e.g., Murphy v. Collins, 26 F.3d 541, 543-544 (5th Cir. 1994). No reasonable officer could believe it was lawful to bypass mandatory state statutes (TCCP Arts. 18.10 and 47.01) by giving the property to the alleged victim without any judicial process. As such, qualified immunity is unavailable.

## VII. The Individual Officers Are Proper Defendants – Personal Involvement is Evident, and the TTCA Does Not Bar These Claims

### A. Personal Involvement

33. Plaintiffs have sued each officer in his personal capacity for his own actions. Section 1983 requires demonstrating the defendant's personal participation in the alleged wrong. Murphy v. Kellar, 950 F.2d 290, 292-293(5th Cir. 1992).Defendants themselves have adduced additional evidence of personal involvement to demonstrate the validity of the causes of action at least at the motion for summary judgment stage, both in the form of the limited video evidence that Defendant submitted as well as the following representations:

- Anders Dahl: As lead investigator, he obtained the warrant, led the execution, seized items beyond the warrant's scope, filed the inventory listing the unauthorized items

(Defs.' Ex. B), and made the decision to "conscript" Snellgrove to take custody of the property (Defs.' Ex. D, Dahl Aff.).

- **Brad Ingram:** As Sheriff (the policymaker), he personally participated in the execution of the warrant (Defs.' Ex. D, Ingram Aff.) and ratified the decision to use Snellgrove for storage due to lack of County resources (Id. ).

- **Kelsey Brown, Rory Gammons, Weston Phelps:** These deputies actively participated in the execution of the warrant (Defs.' Ex. D, Brown Aff.; Gammons Aff.) and assisted in the physical seizure and the transfer of the items into Snellgrove's control (See also Pls.' Ex. A & B).

34. Discovery will illuminate the responsibility of each of the named defendants further. Discovery is permitted under these circumstances. Murphy, 950 F.2d at 293. However, there is sufficient information already on record to show the officers are proper defendants for their direct participation in the constitutional violations and intentional torts for the purposes of a motion of summary judgment at this early stage of the proceedings.

## B. Texas Tort Claims Act (TTCA) Limitations

35. Defendants argue that the TTCA shields the County from all liability, asserting that the Act does not waive immunity for intentional torts (MSJ ¶ 19) and only waives immunity for property damage if it arises from the use of a motor vehicle—which they claim did not occur (MSJ ¶¶ 17-18). Defendants' arguments misrepresent the facts and ignore the alternative theories of liability.

36. First, Plaintiffs' primary claims are for federal constitutional violations (§ 1983) and intentional torts (conversion, conspiracy, trespass to chattels). These claims are not brought "under" the TTCA, and thus the limitations on the TTCA's waiver of immunity are irrelevant to them.

37. Second, Defendants cannot escape liability for state law tort claims pleaded in the alternative. Plaintiffs have pleaded that the Defendants' actions constituted negligence and gross negligence - specifically, the negligent failure to comply with mandatory statutory duties

regarding the custody and disposition of seized property. If the Defendants' conduct is construed as negligence, Martin County's immunity is explicitly waived under the TTCA.

38. The TTCA waives immunity for "property damage... proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if... the property damage... arises from the operation or use of a motor-driven vehicle." Tex. Civ. Prac. & Rem. Code § 101.021(1).

39. Contrary to Defendants' blatant assertions (MSJ ¶ 18), the summary judgment evidence confirms that motor vehicles were integral to the deprivation of Plaintiffs' property. The seizure and removal of the property (the very acts constituting the damage) were effectuated using multiple motor vehicles operated by government employees and their agents. This includes government vehicles as Martin County deputies utilized official and/or unmarked government vehicles under their control to facilitate the loading and transport of the seized items (Pls.' Ex. A & B). This also included Snellgrove's vehicle in that Defendants admit they "conscripted" Brian Snellgrove to aid in the transportation and storage of the property because the County lacked the vehicular means to do so. (Defs.' Ex. D, Ingram Aff. ¶ 6; Dahl Aff. ¶ 4, 10). Snellgrove utilized his branded Snap-On van and/or trailer to haul away Plaintiffs' property.

40. The use of these vehicles was not merely incidental; it was the direct means by which the property was removed from Plaintiffs' control. The deprivation of the property "arises from the operation or use" of these vehicles because the transportation itself was the mechanism that caused the injury. § 101.021(1). To anticipate a potential argument in reply, the government may attempt to argue the unmarked vehicles used were not owned by the government, but were in fact the personal vehicles of the officers involved. Even if this was true, personal vehicles count as government vehicles for the purpose of the TTCA under the

"special mission" exception when the vehicles are used to undertake a "specific errand" at the "specific request" of the employer. Wilie v. Signature Geophys. Servs., Inc., 65 S.W.3d 355, 359 (Tex. App. 2002). The vehicles used here were clearly used for the inherently governmental mission of conducting a search and seizure. Thus, regardless of whether the vehicles used were government owned or not, the government is liable under the TTCA all the same.

41. Furthermore, Snellgrove's use of the Snap-On van is attributable to the County. A governmental entity cannot escape liability by doing through private agents what the law would hold it liable for doing directly. In other words, the government may not circumvent TTCA liability simply by employing or conscripting a private party to perform a task on its behalf that involves motor-vehicle use. In Texas, peace officers executing a warrant are expressly authorized to "call to [their] aid any number of citizens in [the] county, who shall be bound to aid in the execution of the same." Tex. Code Crim. Proc. 18.08. The principle is bound by his agent. By law, then, Snellgrove was drafted into service as part of the Sheriff's posse to execute the search. His Snap-On Tools van became an instrumentality of the Sheriff's Department for transporting and storing seized property – a core part of the officers' official duties based on the same "special mission" exception noted above.

42. In this scenario, the government employees were still the one using the branded Snap-on Tools van for TTCA purposes, albeit through the conscripted private citizen acting under the governments agents (both individually and collectively) direction and control. But for the decision to utilize Snellgrove and his van in the seizure operation, the property would have remained under official custody and not been lost or misappropriated. This satisfies the TTCA's nexus requirement that the injury arise from motor-vehicle use by the employee

even when it was a Snap-On branded vehicle driven by an otherwise private person when the private person has been "conscripted" into being a government actor.

43. Defendants face a dilemma. If their conduct was intentional, the individuals are liable for ultra vires acts, and the County faces Monell liability. If their conduct was negligent, the County faces liability under the TTCA's motor vehicle waiver. And of course, at this time, it is not the case that it is necessarily one or the other – it is possible that it is both, or at least they each apply at different times and with respect to different conduct. Plaintiff is allowed to pursue both these theories at the same time. See Fed. R. Civ. P. 8(d)(2)-(3). Given there has been no discovery, judgment under the TTCA with respect to either negligence or intentional theory of conduct is premature, as there is insufficient evidence available to exclude either theory at this time.

## C. TTCA Election of Remedies

44. The TTCA election-of-remedies provision (Tex. Civ. Prac. & Rem. Code § 101.106) does not mandate dismissal of the individual officers. Section 101.106(f) applies only when the suit against the employee is "based on conduct within the general scope of that employee's employment" and the suit "could have been brought under [the TTCA] against the governmental unit."

45. Neither condition is met here As to Constitutional Claims (§1983), claims for violations of federal constitutional rights are not brought "under the TTCA," and thus §101.106 does not apply. See Mission Consol. ISD v. Garcia, 253 S.W.3d 653, 658 (Tex. 2008). Plaintiffs' §1983 claims against the officers are unaffected by §101.106. As to Intentional Tort Claims, the TTCA explicitly does not waive immunity for intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057(2). Because an intentional tort claim against a governmental unit could not "have

been brought" under the TTCA, §101.106(f) does not force an election. Furthermore, Plaintiffs allege the officers committed intentional torts outside the scope of any official duty—essentially acting to benefit Snellgrove. A sheriff's deputy has no "discretion" to exceed a warrant or facilitate theft; such conduct is ultra vires. If an employee is acting "without legal authority," a suit against that employee in his individual capacity is proper. See Franka v. Velasquez, 332 S.W.3d 367, 382–83 (Tex. 2011).

46. Accordingly, the individual officers remain proper defendants.

## VIII. Martin County is a Proper Defendant – Municipal Liability Under Monell is Established

47. Defendant Martin County attempts to distance itself from the misconduct, arguing Plaintiffs have failed to identify a policy or custom required for municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). However, the summary judgment evidence establishes Martin County's liability under Monell through at least two theories: (1) a custom/policy of inadequate resources leading to the constitutional violation, and (2) ratification by a final policymaker.

48. To establish municipal liability, a plaintiff must show (1) an official policy or custom, (2) promulgated by the municipal policymaker, (3) that was the moving force behind the violation of a constitutional right. Peña v. City of Rio Grande City, 879 F.3d 613, 621 (5th Cir. 2018).

49. Defendants argue Martin County has no unconstitutional policy regarding search warrants (MSJ ¶ 24). However, Defendants' own evidence reveals a policy or persistent custom that was the "moving force" behind the unlawful disposition of Plaintiffs' property. The affidavits of both Sheriff Ingram and Deputy Dahl explicitly state "On the date the search warrant was executed, Martin County did not have the means to transport the property subject to the

warrant, nor did it have a facility equipped to store the property subject to the warrant and keep it safe." (Defs.' Ex. D, Ingram Aff. ¶ 6; Dahl Aff. ¶ 10).

50. This admission establishes that Martin County has a policy or custom of failing to provide adequate resources for the transportation and storage of seized evidence. This failure necessitated the officers' decision to adopt an unconstitutional alternative: allowing an interested private party (Snellgrove) to take custody of the property. (Dahl Aff. ¶ 4). The County's failure to provide the means to comply with mandatory state law (Arts. 18.10 and 47.01) was the direct cause and moving force of the this unconstitutional episode. The County's failure to provide the means to comply with mandatory state law demonstrates deliberate indifference to the known and obvious consequence that officers would be forced to adopt unconstitutional methods for storing evidence, which was the direct cause and moving force of the due process violation.

51. Municipal liability may also attach when a final policymaker ratifies the unconstitutional actions of subordinates. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). In Texas, the county sheriff is the final policymaker in the area of law enforcement, whose 'edicts or acts may fairly be said to represent official policy.' Turner v. Upton County, 915 F.2d 133, 136 (5th Cir. 1990). When a final policymaker approves a subordinate's unconstitutional decision and the basis for it, that 'ratification would be chargeable to the municipality because their decision is final.' City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Sheriff Ingram's personal participation in the search, combined with his subsequent affidavit defending the unconstitutional delegation of property custody to Snellgrove, constitutes a clear ratification of the unlawful conduct. This ratification transforms the deputies' actions into the official policy of Martin County, establishing a separate and independent basis for Monell liability

52. Because Martin County's policies, customs, and the actions of its final policymaker directly caused the constitutional deprivation, the County is a proper defendant under § 1983.

## IX. Defendants' Actions Amounted to an Unlawful De Facto Forfeiture Without Due Process

53. Finally, Defendants effectively conducted an asset forfeiture proceeding without any of the safeguards required by law. They seized Plaintiffs' property and, with no adjudication of wrongdoing, permanently deprived Plaintiffs of that property by turning it over to a third party. This violates the Fourteenth Amendment's Due Process Clause, which guarantees that the government cannot take property without notice and an opportunity to be heard.

54. This de facto, extrajudicial forfeiture is unconstitutional. The Supreme Court's decision in Timbs v. Indiana underscores the importance of judicial oversight in forfeitures, noting the historical abuse of governments using forfeiture outside the normal criminal process. Timbs, 139 S. Ct. at 689–90. Here, Defendants essentially handed the fruits of the seizure to a private individual without any process. In doing so, they inflicted an unreviewed, punitive deprivation on Plaintiffs, even though the sole criminal charge against Austin Hamblin was dropped. Defendants' refusal to return the property operated as a punishment without trial.

55. The Fourteenth Amendment forbids such a taking. Plaintiffs have asserted valid §1983 claims for violation of their Fourteenth Amendment rights. Summary judgment cannot be granted on these claims given the clear constitutional principles and the factual disputes about Defendants' justification (or lack thereof) for their actions.

## CONCLUSION

56. For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Martin County Defendants' Motion for Summary Judgment in its entirety. The seizure exceeded the

scope of the warrant in violation of the Fourth Amendment. The officers' post-seizure actions were ministerial duties imposed by statute, not discretionary functions, so immunity defenses fail. Defendants' own evidence confirms that a private party (Snellgrove) was enlisted as a state actor, supporting Plaintiffs' conspiracy claims. Genuine issues of fact exist regarding Plaintiffs' efforts to recover their property, refuting claims of abandonment. The individual officers are properly sued for their personal involvement, and the TTCA does not bar these claims. Martin County is liable under Monell due to its custom of inadequate resources and ratification by the Sheriff. Finally, Defendants' conduct effected a private forfeiture without due process, violating the Fourteenth Amendment.

57. Plaintiffs pray that the Court deny summary judgment and set this matter for trial. Plaintiffs further request all such other and further relief to which they are justly entitled. Plaintiffs have attached hereto affidavits in support of this Response.

## Oral Argument

If the Court would deem it helpful, Plaintiff is available for oral argument on Defendants' Motion for Summary Judgment. The issues presented involve overlapping questions of qualified and official immunity, factual disputes regarding ministerial duties under the Texas Code of Criminal Procedure, and the applicability of the Texas Tort Claims Act. Plaintiffs believe that oral argument may materially assist the Court in resolving these complex factual and legal issues. Given the travel distance to the court for Plaintiff's counsel, remote participation is strongly preferred.

Respectfully Submitted,

/s/ Kurt Mueller

-------------------------------------

Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com

<u>Certificate of Service</u>

I certify that on the date reflected by the CM/ECF date stamp I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Kurt Mueller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com