# EXHIBIT A

## AFFIDAVIT OF AUSTIN HAMBLIN

Before me, the undersigned authority, personally appeared Austin Hamblin, who, being duly sworn, deposes and states as follows:

1. My name is Austin Hamblin. I am over 18 years of age, competent to make this affidavit, and have personal knowledge of the facts stated herein.

2. Law enforcement executed a warrant at our home on May 17, 2023, and seized a large quantity of items, most of which were Snap-on tools that I personally owned. My then-employer, Brian Snellgrove, was present with and participated with law enforcement during the search.

3. During the seizure, I saw Snellgrove loading toolboxes that had tools that I purchased into a van marked with Snap-On branding. I also saw law enforcement officials placing items in totes and removing them to Defendant Snellgrove's truck with an enclosed trailer. I also saw law enforcement officials loading totes into the beds of trucks of additional unmarked vehicles.

4. Consistent with directions from law enforcement, we promptly supplied documentary proof of ownership.

5. On or about May 31, 2023, at my request, my wife emailed receipts/invoices for our Snap-on purchases to the investigator contact we were given.

6. On or about June 7, 2023, when I self-surrendered, we hand-delivered another set of the same receipts for the file.

7. I obtained and, through my counsel, provided an affidavit from my father-in-law, Warren Kniepkamp (a Snap-on dealer), attaching a detailed list of tools he had provided to me prior to the seizure.

8. Starting in or about October 2023, at my request my criminal defense attorney advised the court on the record that a substantial amount of personal property had been seized

and would need to be addressed. Throughout 2023–2024, I routinely asked my attorney about recovering my tools; the plan was always to resolve the criminal case first and then promptly obtain the property's return

9. At my request, my attorney made repeated inquiries to the District Attorney about the location and return of my property. In late 2024, when he transmitted additional materials supporting dismissal, he again raised the issue of returning my tools.

10. On or about November 13, 2024, the criminal case was dismissed. I immediately focused on recovering my property. Because of my work schedule and the fact that my wife had been handling many of the day-to-day contacts, I asked Kiska to lead direct communications with the Martin County Sheriff's Office. I remained actively involved, received updates on each call/email, and stood ready to appear or retrieve property personally.

11. On or about January 23, 2025, with my knowledge and at my request Kiska emailed Sheriff Randy Cozart (copying the last known email for Defendant Dahl) a formal demand for return of all seized items, attaching an itemized list identifying each missing item and estimated value. No one responded.

12. In early February 2025, we learned from Martin County Sheriff's Office staff that the investigating deputy (Defendant Dahl) was no longer employed there (apparently since mid-2024). Around the same time, through the District Attorney, we learned that my firearm from the seizure was in the custody of the Howard County Sheriff's Office. I retrieved that firearm on or about February 13, 2025.

13. In February 2025, Chief Deputy Billy Reynolds contacted us and said he would assist. In early March 2025, my wife and I met with Sheriff Randy Cozart and Chief Deputy Reynolds at the Martin County Sheriff's Office. During this meeting, we provided written statements detailing the seizure and our efforts to retrieve our property. At this meeting we were informed for the first time that that the Martin County Sheriff's Office did not

have my tools in its possession at that time and that the matter would be referred to the Texas Rangers.

14. Other than the firearm noted above, none of the seized tools/equipment have been returned to me. Since May 2023, I have: (i) immediately cooperated with law enforcement; (ii) asserted ownership at the scene; (iii) provided receipts and a third-party affidavit with a detailed list; (iv) ensured the issue was raised in court; (v) made repeated requests through counsel and directly; (vi) sent a formal, itemized demand; (vii) met with the Sheriff; and (viii) cooperated with a Rangers referral. I have never refused to pick up my property and remain ready to do so at once.

15. To the best of my knowledge and belief, by early 2025 the seized tools and equipment were no longer in the Sheriff's custody. I was given no notice of any hearing or process authorizing a release, transfer, or disposal to any third party. I have heard that some items may have been transferred, sold, or otherwise disposed of, potentially involving my former employer; however, I do not have personal knowledge of the precise chain of custody. My statements above reflect only what I personally did, observed, or was told by officials.

I declare under penalty of perjury that the foregoing is true and correct.
Further affiant sayeth not.


Austin Hamblin

Please see attached notarial Certificate.



**DESCRIPTION OF ATTACHED DOCUMENT**

Title or Type of Document: Jurat

Document Date: 10/08/2025

Number of Pages (including notarial certificate): 4



William Robert Boyd II
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 22-6504-03
Expires August 18, 2026

State of Nevada

County of Carson City

Signed and sworn to (or affirmed) before me

on 10/09/2025 by Austin Eugene Hamblin.

Notarized remotely using audio-video communication technology via Proof.