**FILED**

December 10, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____L Mendoza_____
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN** | § | |
| | § | |
| **VS.** | § | |
| | § | **NO.   7:25-cv-00245** |
| **MARTIN COUNTY SHERIFF'S DEPARTMENT;** | § | |
| | § | |
| | § | |
| **BRAD INGRAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § | |
| | § | |
| | § | |
| **ANDERS DAHL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § | |
| | § | |
| | § | |
| **KELSEY BROWN,  IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § | |
| | § | |
| | § | |
| **RORY GAMMONS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** | § | |
| | § | |
| | § | |
| **WESTON PHELPS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND** | § | |
| | § | |
| | § | |
| **BRIAN SNELLGROVE** | § | |

## SECOND AMENDED COMPLAINT

1. Austin Hamblin and Kiska Hamblin find themselves stripped of their possessions due to the actions of Austin's former employer, Brian Snellgrove. Despite Austin Hamblin's innocence and the eventual dismissal of criminal charges for lack of evidence, Snellgrove manipulated law enforcement into an unwarranted raid on the Hamblin marital home. This abuse of authority led to the seizure of Hamblin's property and the unjust enrichment of Snellgrove. Defendants disregard for legal boundaries and proper procedures has not only violated the Hamblins' rights but has also inflicted significant personal and financial harm. This case seeks to rectify the

injustices endured by the Hamblins, ensuring such predatory behavior is acknowledged and rectified in the eyes of the law.

## **JURISDICTION**

2. This Court has subject matter jurisdiction over the claims presented in this complaint pursuant to 28 USC § 1331, as the claims arise under the Constitution, laws, or treaties of the United States. Additionally, this action involves federal questions pertaining to 42 USC § 1983, thereby granting this Court authority to adjudicate the matters herein. Additionally, this court has supplemental jurisdiction over related state claims under 28 USC § 1367.

3. This Court has personal jurisdiction over the parties in this case as the defendants committed acts giving rise to this claim within the Western District of Texas. The events or omissions giving rise to the claims occurred within this district, thus establishing sufficient minimum contacts with this forum to satisfy constitutional due process requirements.

4. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391 because a substantial part of the events or omissions that give rise to the claim occurred in this district, and the defendants are subject to personal jurisdiction in this district concerning the action in question.

## **PARTIES**

5. Plaintiffs Austin Hamblin and Kiska Hamblin are individuals domiciled in Texas and are collectively referred to herein as "Plaintiffs" unless otherwise specified.

6.  Defendant Martin County Sheriff's Department is a government entity, located in the State of Texas.

7.  Defendant Brad Ingram is an individual, who at times relevant to the causes of action detailed in this complaint was employed by the Martin County Sheriff's Department and was domiciled in the State of Texas.

8.  Defendant Anders Dahl is an individual, who at times relevant to the causes of action detailed in this complaint was employed by the Martin County Sheriff's Department and was domiciled in the State of Texas.

9.  Defendant Kelsey Brown is an individual, who at times relevant to the causes of action detailed in this complaint was employed by the Martin County Sheriff's Department and was domiciled in the State of Texas.

10. Defendant Rory Gammons is an individual, who at times relevant to the causes of action detailed in this complaint was employed by the Howard County Sheriff's Department and was domiciled in the State of Texas.

11. Defendant Weston Phelps is an individual, who at times relevant to the causes of action detailed in this complaint was employed by the Martin County Sheriff's Department and was domiciled in the State of Texas.

12. Defendant Brian Snellgrove is an individual domiciled in the State of Texas.

## PRESERVATION OF RIGHTS REGARDING DISCOVERY

13. Pursuant to the Court's Order of October 27, 2025, discovery in this matter has been stayed in part, limiting Plaintiffs' ability to access internal communications, body camera metadata, and full personnel files.

14. The factual allegations detailed below are derived from the limited record currently available, including the Defendants' own sworn affidavits attached to their Motion for Summary Judgment. Plaintiffs explicitly reserve the right to seek leave to amend these factual allegations and move to file a further amended complaint upon receipt of the discovery mandated by the Court's Order, which the government Defendants produced limited and significantly non-responsive discovery on December 1. The absence of certain internal details that could allow Plaintiffs to plead with greater particularly and specificity against each named defendant is not due to a lack of due diligence by Plaintiffs, but rather the government Defendants' exclusive possession of that information and the failure of the government Defendants to provide full discovery.

## FACTUAL ALLEGATIONS

15. Plaintiff Austin Hamblin was employed by Defendant Brian Snellgrove, who owns and operates Snellgrove Enterprises, a Snap-On tools distributorship located at 2100 Westside Drive, Stanton, Martin County, Texas.

16. Over a period of years, Austin accumulated a substantial personal collection of tools and equipment that were his and his wife Kiska's property. This included Snap-On tools he purchased himself and tools given to him by his father-in-law, Warren Kniepkamp, a separate Snap-On franchisee, as reflected in a notarized inventory dated February 11, 2024 attesting that Kniepkamp had provided Austin a specific list of tools prior to May 2023.

17. Austin kept these tools and related equipment at his marital residence located in Howard County, Texas.

18. On May 11, 2023, Defendants Brian Snellgrove and his employee Andrew Nichols met with Defendant Deputy Weston Phelps at the Martin County law enforcement center and reported that Austin had been "stealing products from Snellgrove Enterprises for an elongated period of time" or diverting sales proceeds. Snellgrove further asserted that Austin was charging items to a customer account and then "zeroing out" the tickets so that product or proceeds were allegedly diverted.

19. Phelps did not interview Austin or Kiska, did not contact the identified customer, and did not verify the claims with Snap-On corporate or independent records before opening Martin County Sheriff's Office Case No. 23-0135. In his offense report, Phelps listed "various stolen Snap-On tools/tools boxes/equipment" as stolen property with a total value of $283,000, and identified Snellgrove Enterprises as the victim.

20. In that report, Phelps recorded that the case would, upon approval, be sent to Defendant Investigator Anders Dahl, Chief Deputy Jesse Metcalf, and Sheriff Ingram, thereby involving each of those defendants in the decision whether and how to proceed on Snellgrove's accusations.

21. On or about May 15, 2023, Defendant Dahl interviewed Snellgrove, who claimed that the value of missing Snap-On products or proceeds was approximately $200,000. That same day, Dahl recorded that Nichols had provided images and video of Snap-On equipment at the Hamblin home, and that a babysitter for the Hamblins had reported seeing at the residence a Snap-On MIG welder, TIG welder, plasma cutter, and air compressor within the past several weeks.

22. Also on May 15, 2023, Chief Deputy Metcalf spoke with Snellgrove about Snap-On inventory records and documented Snellgrove's claim that a plasma cutter and air compressor were missing, that one air compressor sale ticket had been "zeroed out," and that one plasma cutter that should have been in the warehouse was unaccounted for.

23. Based on information supplied by Snellgrove and his employee Nichols, and without first interviewing Austin or Kiska or verifying ownership of the tools at the residence, Dahl drafted and swore to an affidavit for search warrant on May 16, 2023. On that affidavit, 118th District Judge Shane R. Seaton issued a search warrant authorizing a search of 3700 Hamilton for stolen Snap-On products, including a plasma cutter and an air compressor.

24. On May 17, 2023, Defendants Dahl, Ingram, Kelsey Brown, and Phelps of the Martin County Sheriff's Department, together with Defendant Rory Gammons of the Howard County Sheriff's Department, executed the search warrant at the Hamblins' marital residence.

25. At the beginning of the search, Dahl contacted Austin at the front door, explained the purpose of the deputies' presence, read Austin his Miranda rights, and, after Austin stated he understood and waived those rights, directed Austin to show Dahl "all the Snap-On products" at the property.

26. Austin complied and led Dahl and the deputies through the residence and outbuildings, pointing out Snap-On tools and equipment located throughout the property. Many of these items were tools that Austin and Kiska had purchased themselves or that had been given to Austin by his father-in-law as part of his personal tool set.

27. During the execution of the warrant, Snellgrove arrived at the residence with the knowledge and at the direction of the government, specifically to "assist in identifying stolen Snap-On tools" located at the Hamblin home.

28. In a sworn affidavit filed in this case, Dahl has admitted that he "conscripted Brian Snellgrove to aid in the execution of the search warrant" by requesting that Snellgrove appear at the location, identify "the property subject to the warrant," and "store such property" at his place of business at 2100 Westside Drive in Stanton, Texas, under Dahl's "control and supervision."

29. By conscripting Snellgrove in this manner, Dahl intentionally made the complaining witness part of the law-enforcement team executing the warrant, cloaked Snellgrove with state authority, and caused Snellgrove to act jointly with the deputies in identifying, seizing, transporting, and storing property taken from the Hamblin residence. By conscripting Snellgrove, Snellgrove became a state actor for the purposes on 42 USC 1983.

30. While the search was ongoing, Defendants Dahl, Ingram, Brown, Phelps, Gammons, and conscripted-participant Snellgrove treated essentially all Snap-On branded items on the property as presumptively stolen, without limiting themselves to the specific items described in the warrant or independently verifying ownership.

31. The deputies seized not only a plasma cutter and air compressor but also multiple large roll cabinets, tool chests, welders, compressors, tool organizers, specialty tools, Snap-On bicycles and chairs, and other items listed on the written inventory. They also seized non Snap-On property such as a Harbor Freight surface-prep tool, a Dremel tool and tool set, and other household tools belonging to the Hamblins.

32. The written inventory enumerated more than fifty major items and expressly valued the "recovered stolen property" at $283,445.00, even though at the time of the search no court had determined that any of the items were stolen or that Snellgrove owned them.

33. Upon information and belief, and consistent with this plan, Dahl and Ingram directed that the heavy Snap-On roll cabinets, tool chests, welders, plasma cutter, air compressor, welding table, portable compressor, Porto-Cool unit, and other large items listed on the inventory be loaded not into a government evidence van or county trailer but into vehicles owned or controlled by Snellgrove and his Snap-On business, including at least one Snap-On company truck and associated trailers, for immediate transport to 2100 Westside Drive in Stanton, Texas.

34. Upon information and belief, Defendant Brown, acting under Dahl's supervision, assisted in lifting and loading multiple Snap-On tool cabinets, tool chests, and other boxed items from the detached laundry room into the waiting vehicles, and also helped carry boxed hand tools and smaller equipment from the enclosed trailer and the Nissan Titan to those same vehicles. Brown acknowledges that she "participated in the execution of a lawfully issued search warrant for 3700 Hamilton" and that, to her knowledge, "all seized property was handled and stored in accordance with Sheriff's Department policies and applicable Texas law," which necessarily includes the way that property was loaded into and transported by the selected vehicles.

35. Upon information and belief, Defendant Gammons, a Howard County deputy, likewise assisted in moving and loading large Snap-On cabinets, welding equipment, and other seized items into the vehicles used to haul property away from 3700 Hamilton. Gammons likewise admits that he "participated in the execution of" the search warrant at 3700 Hamilton and that, to his knowledge, all seized property was handled and stored in accordance with Sheriff's Department policies and Texas law, thereby personally aligning himself with the method used to transport and store Plaintiffs' property.

36. Upon information and belief, Defendant Phelps, who took the initial theft report from Snellgrove at 2100 Westside Drive, also assisted during the search in physically carrying seized Snap-On items from Plaintiffs' house, truck, trailer, and yard to the staging area where the vehicles were parked, and in loading those items into the same vehicles that would later be associated with the theft-offense report for 2100 Westside Drive.

37. During the search, Austin expressly told Dahl and the other deputies that he had purchased some of the Snap-On products through the years. Dahl and Chief Deputy Metcalf instructed Austin to provide receipts for his Snap-On purchases so they could be forwarded to the district attorney, thereby acknowledging that ownership of the seized property was disputed.

38. Despite this notice, Defendants Dahl, Brown, Phelps, and Gammons seized all Snap-On products from the residence, including items for which Austin and Kiska had receipts and items provided by Austin's father-in-law, and removed them from the property while Snellgrove was on scene pointing out items to be taken.

39. After the loading was complete, the vehicles carrying the seized Snap-On tools and equipment did not travel to a Martin County or Howard County evidence facility. Instead, consistent with Dahl's conscription plan and Ingram's admission that Martin County lacked storage capacity, the vehicles transported Plaintiffs' seized property to Snellgrove's business at 2100 Westside Drive. There, Phelps and Dahl prepared and approved an offense report that listed the location of offense as "2100 Westside Drive," described the seized items as "various stolen Snap-On tools/tools boxes/equipment," and valued them at $283,000, effectively treating all of the seized property as Snellgrove's stolen inventory rather than as evidence or as property of Plaintiffs.

40. Sheriff Ingram has admitted in his sworn affidavit that on the date the search warrant was executed Martin County 'did not have the means to transport the property subject to the warrant' and 'did not have a facility equipped to store the property subject to the warrant and keep it safe.' In light of those limitations, and consistent with Dahl's sworn statement that he conscripted Snellgrove to store 'the property subject to the warrant' at 2100 Westside Drive, Ingram and his deputies caused the seized property to be stored at Snellgrove's business.

41. In that same affidavit, Ingram states that he personally participated in executing the search warrant and that "deputies assisting in the execution of the search warrant" included Defendants Dahl, Brown, Gammons, and Phelps. He further states that "we were careful to take only property identified by Brian Snellgrove and confirmed by, acquiesced to, and or released by, Austin Hamblin," thereby ratifying and adopting the plan to let Snellgrove both identify and control the seized property.

42. At all relevant times, Defendant Brad Ingram was the elected Sheriff of Martin County and the final policymaker for Martin County and the Martin County Sheriff's Department with respect

to the investigation of alleged thefts, execution of search warrants, and disposition of seized property. The actions described above, including the decision to conscript Snellgrove, to store seized property at his business, and to treat him as the 'last known owner' after dismissal of the indictment, were taken pursuant to and constitute the official policy, practice, or custom of Martin County. By his personal participation in the search and seizure at the Plaintiffs' residence, he had direct knowledge of the actions of his deputies and Snellgrove, and ratified those actions with his active engagement.

43. Defendants Brown and Gammons have each sworn that they participated in the execution of the May 17, 2023 search warrant, acted under the direction of the supervising officer, and knew that a written inventory of items seized was prepared under Texas Code of Criminal Procedure article 18.09. Each further swore that after dismissal of the indictment, they understood the "last known owner" of the seized property to be Snellgrove.

44. On information and belief, Brown was responsible for preparing or assisting with the written inventory and for helping coordinate the movement of seized items that were being turned over to Snellgrove for so-called "storage and inventory," and thus personally knew that evidence seized from the Hamblins' home was being treated as Snellgrove's property.

45. On May 24, 2023, while the seized tools remained in Snellgrove's possession, Sheriff Ingram used the official Martin County Sheriff's Office Facebook account to publicize the seizure under the headline "RECOVER STOLEN TOOLS." In that post he stated that "a very large amount of new tools were recovered," that "the owner was present and was able to value the cost of the tools at $283,000.00," and thanked the Howard County Sheriff's Office for its participation.

46. Members of the Snellgrove family publicly commented on that post thanking the Sheriff's Office "for once again coming to our rescue," underscoring that the seizure was understood by all involved to have been carried out for Snellgrove's benefit and that the seized tools were being treated as his property.

47. On June 7, 2023, an arrest warrant issued for Austin for theft of property greater than $150,000 but less than $300,000 based on Dahl's complaint, and Austin surrendered to Martin County authorities.

48. On July 20, 2023, Dahl delivered Case No. 23-0135 to the prosecuting attorney's office, formally identifying "BRIAN SNELLGROVE" as the victim of the alleged theft, while the seized tools remained under Snellgrove's control as a result of the arrangement Dahl and Ingram had approved.

49. Throughout 2023, the Hamblins repeatedly sought information about and return of their property. On August 25, 2023 and again on September 18, 2023, Plaintiff Kiska Hamblin emailed Dahl directly, requesting a copy of the police report and "the list of the hand tools, power tools and etc that was taken," listing non Snap-On items such as a Harbor Freight surface-prep tool and Dremel tools that had been seized, and stating that she had provided receipts for items "twice" and had been promised a "final count" of the seized property that never arrived.

50. In response, Dahl sent an inventory document labeled "HAMBLIN SW INVENTORY," but did not schedule any hearing, did not initiate any procedure to return property to the Hamblins, and did not correct the designation of the seized tools as stolen property belonging to Snellgrove.

51. In February 2024, as part of their efforts to document ownership, the Hamblins obtained the notarized letter and inventory from Warren Kniepkamp, owner and operator of a separate Snap-On franchise, affirming that he had provided Austin with a specific list of tools prior to May 2023. Despite this inventory, no defendant made any effort to segregate or return those clearly identified personal tools from the mass of property being held for Snellgrove's benefit.

52. After the dismissal of the criminal case, none of the law-enforcement defendants initiated any process to return Plaintiffs' property, to notify Plaintiffs of any hearing regarding disposition of the seized property, or to bring the property before a magistrate for disposition as required by the Texas Code of Criminal Procedure. Instead, Ingram, Brown, and Gammons each swore in affidavits that, as far as they knew, the "last known owner" of the property seized under the search warrant was Snellgrove, and that after dismissal they had received nothing from Plaintiffs asserting ownership, despite Kiska's written requests and inventories.

53. Defendant Phelps, having initiated the case based primarily on Snellgrove's and Nichols's accusations, continued to classify the property as "stolen" Snap-On tools valued at $283,000 in his reports and to forward the case to Dahl, Metcalf, and Ingram, thereby helping to set the felony charge level and reinforcing the treatment of all seized tools as stolen property belonging to Snellgrove.

54. At all relevant times, Defendants Ingram, Dahl, Brown, Gammons, and Phelps were acting under color of state law in their capacities as sheriff or deputy sheriffs, and Defendant Snellgrove, by virtue of being "conscripted" into the execution of the search warrant and designated as custodian of the seized tools, acted jointly with them so that his conduct is fairly attributable to the State.

55. By agreement and coordinated action, Defendants Snellgrove, Ingram, Dahl, Brown, Gammons, and Phelps combined to treat all Snap-On tools at the Hamblin residence as stolen property belonging to Snellgrove, to seize that property under color of a warrant, to transfer custody and effective ownership of the property to Snellgrove without a hearing or judicial determination of title, and to retain and, upon information and belief, sell or otherwise dispose of that property for Snellgrove's benefit even after the criminal charges against Austin were dismissed.

56. At no time has any court, magistrate, or other competent authority determined that Plaintiffs were not in lawful possession of the seized property or awarded ownership of the seized tools to Snellgrove or any other person.

57. As a direct and proximate result of the joint actions and omissions of Defendants Martin County Sheriff's Department, Ingram, Dahl, Brown, Gammons, and Snellgrove, Plaintiffs have been deprived of the use and enjoyment of their property and of the procedural safeguards guaranteed by the Fourth and Fourteenth Amendments, have suffered substantial economic loss, and continue to suffer consequential damages.

## **CAUSES OF ACTION**

## **COUNT 1: REPLEVIN**

58. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

59. Plaintiff is the owner of the property described herein or otherwise has a right to immediate possession of the property.

60. The property that is the subject of this action consists principally of various Snap-On tools and equipment, which were wrongfully seized from Plaintiffs' marital home in Texas by all named defendants acting in concert.

61. Defendants wrongfully detained the property after it was seized during a search of Plaintiffs' residence on May 17, 2023.

62. The property was not returned to Plaintiffs but was instead retained by Defendant Snellgrove, who, upon information and belief, may have sold some of the items. Defendants acted in coordination and in concert to achieve this wrongful possession of the property in violation of Plaintiffs interests.

63. Plaintiffs have a legal entitlement to the possession of the property as the criminal charges against Plaintiff Austin Hamblin, which formed the basis for the seizure of the property, were dismissed due to insufficient evidence, and no hearing or other due process has been provided to Plaintiff that demonstrated he was not in lawful possession of the property.

64. Plaintiffs have demanded the return of the property which have been refused or unfulfilled, thereby necessitating this action.

65. The wrongful detention of Plaintiffs' property by Defendants is without justification, as the legal basis for the initial seizure has been nullified by the dismissal of the criminal charges.

66. Plaintiff has suffered and continues to suffer actual damages due to the loss of use of the property and the potential permanent loss of the property if it is not returned.

67. Plaintiff seeks an order from this Court for the return of the property, or if the property cannot be returned, for the value of the property, along with any other relief the Court deems just and proper.

## COUNT 2: CONVERSION

68. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

69. Defendant Brian Snellgrove intentionally and without authorization exercised control over Plaintiff Austin Hamblin's property, principally various Snap-On tools and equipment.

70. The property at issue was in the immediate possession of Plaintiffs at their marital home.

71. In May of 2023, Defendant Brian Snellgrove personally and material participated in the search of Plaintiffs' marital property and identified and directed law enforcement officers to seize the property from Plaintiffs' residence during the execution of a search warrant. Based on Snellgrove's direction and with Snellgrove's facilitations, law enforcement personnel seized the property of Plaintiffs. Without a hearing or other due process determining that Plaintiffs' were

not in lawful possession, law enforcement personel transferred the property of Plaintiffs' to Snellgrove for his personal use.

72. Despite the criminal charges against Plaintiff Austin Hamblin being dismissed due to insufficient evidence, indicating a lack of lawful justification for the retention of the property, Defendant Brian Snellgrove retained possession of the property.

73. Defendants actions deprived Plaintiffs of his right to use and enjoy their property. Defendants acted in coordination and in concert to convert the property of Plaintiffs.

74. Upon information and belief, Defendant Brian Snellgrove has sold or otherwise disposed of some of the property that was seized, converting it to his own use.

75. Defendant Snellgrove's actions, facilitated by the Law Enforcement Defendants' coordination and transfer of the property, deprived Plaintiffs of their right to use and enjoy their property.

76. As a direct and proximate result of Defendant Brian Snellgrove's actions, Plaintiff Austin Hamblin has suffered damages in the amount of the value of the converted property.

77. Plaintiff Austin Hamblin is entitled to recover the full value of the property seized and converted without a hearing or other due process, together with interest from the date of conversion.

## COUNT 3: UNJUST ENRICHMENT

78. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

79. Defendants received and retained benefits, specifically the possession and potential proceeds from the sale of various Snap-On tools and equipment, which were wrongfully seized from Plaintiff Austin Hamblin's property.

80. The retention of these benefits by Defendants resulted without justification as the criminal charges against Plaintiff Austin Hamblin, which initially prompted the seizure of the said tools and equipment, were dismissed due to insufficient evidence, thereby negating the lawful basis for retaining Plaintiffs' property.

81. Plaintiff Austin Hamblin did not knowingly, intelligently, and voluntarily give benefits to Defendants, as the seizure was conducted under the color of a search warrant, which Plaintiff complied with under the belief of its legality and due to the coercive presence of law enforcement.

82. The benefits were retained by Defendants at the direct expense of Plaintiffs, who, as a result of the seizure and retention of property, suffered significant financial losses based in part on the value of the tools and equipment taken.

83. Defendants' enrichment is unjust as he has retained possession of the property or proceeds from the sale of the property without legal basis and at the expense of Plaintiff Austin Hamblin, who

is the rightful owner of the property. Defendants acted in coordination and in concert to achieve this unjust enrichment.

84. Plaintiff Austin Hamblin has made demands for the return of the property or the proceeds from any sale of the property, which have not been honored by Defendants.

85. By retaining the benefits without right and under circumstances that make it unjust to do so, Defendants have been unjustly enriched at the expense of Plaintiff Austin Hamblin. Plaintiff is therefore entitled to restitution of the value of the property or the proceeds from the sale of the property.

## **COUNT 4: DEPREVATION OF CIVIL RIGHTS UNDER 42 USC 1983**

86. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

87. Defendants, acting under color of state law, deprived Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.

88. On or about May 17, 2023, Defendant Snellgrove actively participating with law enforcement officers, executed a search of Plaintiffs' property under the authority of a purportedly legal search warrant.

89. During the execution of the search, Defendant Snellgove personally directed law enforcement officers to seize property from Plaintiffs' residence, identifying specific items for seizure, thereby actively participating in the search and demonstrating a willful collaboration with state actors. Law enforcement personnel acting at Snellgrove instruction and direct seized property and without a hearing or due process transferred the property to Snellgrove for his use.

90. The seized property included various items of significant value, none of which were lawfully adjudicated to belong to Defendant or were proven to be related to any criminal activity, as evidenced by the eventual dismissal of the criminal case against Plaintiff for insufficient evidence.

91. Plaintiff was not provided with any form of hearing or adequate procedural mechanism to contest the seizure of the property or the basis of the search, which directly resulted in the deprivation of Plaintiffs' property without due process of law.

92. The actions of Defendants, under color of state law, directly deprived Plaintiffs of Fourth Amendment right against unreasonable searches and seizures and Fourteenth Amendment right to due process.

93. As a direct and proximate result of the actions of Defendants, Plaintiff suffered significant losses, including but not limited to the loss of personal property.

94. Defendant Snellgrove, acting in concert with law enforcement personnel, directed the seizure of Plaintiffs' property, which was transferred to him without due process, establishing willful collaboration with state actors under color of law..

95. Law enforcement defendants' decision to release seized property to a private individual was ministerial, not discretionary, because texas law establishes a mandatory inventory-and-return procedure. A ministerial act performed in violation of law is not protected by official immunity.

96. The conduct of Defendants was intentional, willful, and in reckless disregard of Plaintiffs' federally protected rights, including but not limited to rights under the fourth amendment, fifth amendment, eighth amendment, and fourteenth amendment.

## COUNT 5: TRESPASS TO CHATTELS

97. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

98. The Defendant, Brian Snellgrove, intentionally and without authorization or consent, interfered with the Plaintiffs' personal property.

99. In May of 2023 Defendant Snellgrove, accompanied by law enforcement officers who were acting under his direction and with Snellgrove's active participation, entered Plaintiffs' property under the pretense of executing a search warrant.

100.    During the execution of the search, Defendant Snellgrove identified and directed law

enforcement officers to seize various items of personal property belonging to the Plaintiff,

including but not limited to Snap-On tools and equipment.

101.    Defendant Snellgrove, with the assistance of law enforcement officers acting under his

direction, seized Plaintiffs' property, constituting an intentional interference..

102.    The interference by Defendants was without legal justification. The criminal case against

Plaintiff Austin Hamblin, which initially prompted the search and seizure, was dismissed due to

insufficient evidence, underscoring the lack of legal grounds for the seizure and retention of

Plaintiffs' property.

103.    The actions of Defendant Snellgrove caused actual damage to the Plaintiff, including but not

limited to the deprivation of property and subsequent economic losses due to the inability to use

the tools and equipment in Plaintiffs' trade.

104.    Moreover, the Defendant's actions were a substantial factor in bringing about harm to the

Plaintiff, as the property seized was integral to the Plaintiffs' business operations, and its loss has

directly resulted in financial detriment.

105.    The Defendant's conduct of trespass to chattels was willful, wanton, and conducted with a

reckless disregard for the Plaintiffs' right to possess and use his personal property, particularly

without a hearing or other due process determining Plaintiffs were not in lawful possession of

the property.

## COUNT 6: TEXAS TORT CLAIMS ACT

106.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully

write here.

107.    The Texas Tort Claims Act (TTCA) waives sovereign immunity for the State of Texas and

its political subdivisions in certain situations, allowing them to be sued for damages arising from

the performance of governmental functions, where the actions would, if performed by a private

individual, give rise to a claim of negligence or other torts.

108.    To establish a claim under the TTCA, a plaintiff must demonstrate that (1) the defendant is a

governmental unit; (2) the defendant's employee was acting within the scope of employment at

the time the incident occurred; (3) the incident involves a condition or use of tangible personal

or real property; and (4) the governmental unit would, were it a private person, be liable to the

claimant according to Texas law.

109.    The defendant Martin County Sheriff's Office is a governmental unit as defined under the

TTCA.

110.    Law enforcement defendants, including Sheriff Ingram and other involved officers, were

acting within the scope of their employment when they executed a search and seizure operation

at the residence of the plaintiffs. Due to his active and direct participation Defendant Snellgrove

was acting as an agent of or was otherwise an accessory to the conduct of the Martin County Sheriff's Office.

111.    The operation involved the use of tangible personal property, including police vehicles, search and seizure equipment, and other physical items utilized during the execution of the search warrant at the Plaintiffs' residence.

112.    The actions of the Martin County Sheriff's Office, through its employees, involved a misuse of tangible personal property, specifically removal and transportation equipment in facilitating the unlawful seizure and retention of the Plaintiffs' property, including various Snap-On tools and equipment. Defendant Snellgrove directly participated in and directed the search of Plaintiffs property and identified and directed the property to be seized from Plaintiffs' property. Snellgrove acted as the County's agent when he directed deputies to release the tools to him.

113.    The plaintiff alleges that law enforcement defendants failed to provide a full and complete inventory list post-seizure as required, resulting in the inability of the plaintiff to reclaim his property, some of which was subsequently sold by a third party, causing financial loss and deprivation of property without due process. The Defendants failure to inventory and secure seized items violated Tex. Code Crim. Proc. relating to the inventory and retention of seized property. The violation constitutes negligence per se.

114.    Had the Martin County Sheriff's Office been a private entity, it would be liable to the plaintiff for negligence, trespass to chattels, and conversion, among other potential tort claims, for the actions taken during and following the search and seizure operation.

115.    As a direct and proximate result of the aforementioned actions by the law enforcement

defendants, the plaintiff suffered damages including the loss of valuable personal property,

emotional distress, and violation of his constitutional rights under Texas law.

116.    Defendant Snellgrove by his direct participation in the search and seizure of Plaintiffs

property, at times directing law enforcement defendant as to which property to seize and

assisting in the removal of the property from Plaintiffs home, transformed him into a state actor,

implicating him under the TTCA.

117.    The plaintiff seeks to invoke the waiver of sovereign immunity provided under the TTCA to

recover damages for the injuries and losses sustained as a result of the defendant's actions.

## COUNT 7: ABUSE OF PROCESS

118.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully

written here.

119.    Defendant Snellgrove initiated or used a legal process against the plaintiff.

120.    The process was used for a purpose for which it was not designed, to accomplish an ulterior

motive.

121.    Defendant Snellgrove had an ulterior motive in using the process.

122.    The defendant's actions were willful and intentional, aimed at achieving a result not intended or warranted by the process.

123.    The improper use of the process resulted in damage to the plaintiff.

124.    In May of 2023 the defendant, Brian Snellgrove, instigated a search and seizure of plaintiff Austin Hamblin's property by providing information to law enforcement which led to the issuance of a search warrant.

125.    The search warrant was executed at the Plaintiffs' residence, where law enforcement and Snellgrove acting in concert seized various items, principally Snap-On tools, which were then loaded onto trucks and removed from the property.

126.    The defendant Snellgrove, participated directly in the search, pointed out items to be seized, and assisted in their removal, demonstrating an active role in the execution of the search warrant.

127.    The use of the search warrant process by Mr. Snellgrove was not for the legitimate purpose of recovering stolen property as he claimed, but rather to intimidate the plaintiff and to regain possession of items without proper legal proceedings, as evidenced by the subsequent dismissal of criminal charges against Mr. Hamblin due to insufficient evidence.

128.    Snellgrove's actions in directing the search and identifying items for seizure under the guise of a search warrant demonstrate an ulterior motive beyond the recovery of stolen property,

specifically to harass the plaintiff and to assert control over property without due process. Law enforcement defendants ratified Snellgrove's actions by acting in concert with him, and by delivering to Snellgrove the personal property of Plaintiffs without a hearing or other due process determining Snellgrove was the lawful owner of the items seized.

129.    As a direct and proximate result of the Defendants abuse of process, Plaintiffs suffered damages including the loss of property, deprivation of property without due process, and emotional distress.

## **COUNT 8: NEGLIGENCE**

130.    Plaintiffs incorporates by reference all preceding paragraphs of the complaint as if fully set forth herein.

131.    Each defendant owed a legal duty of care to Plaintiff Austin Hamblin.

132.    Defendant Brian Snellgrove owed a duty to act reasonably and with due care when reporting suspected criminal activity to law enforcement and participating in the execution of a search warrant at Plaintiffs' residence. By voluntarily assisting law enforcement and identifying items for seizure, Snellgrove assumed a duty to ensure his actions were based on a reasonable belief that the items were stolen or subject to lawful seizure.

133.    Defendants Martin County Sheriff's Department, Brad Ingram, Anders Dahl, Kelsey Brown, Rory Gammons, and Weston Philips owed a duty to exercise reasonable care in investigating allegations, obtaining and executing search warrants, and handling seized property prior to a final

adjudication as to lawful possession. This duty required them to conduct thorough and impartial investigations, ensure the search warrant was properly scoped and executed, and safeguard seized property in accordance with legal standards.

134.    Defendant Brian Snellgrove breached his duty by making false and unsubstantiated allegations to the Martin County Sheriff's Department that Plaintiff had stolen Snap-On tools and products, without a reasonable basis for such claims and actively participating in the search of Plaintiffs' residence and negligently identifying items for seizure that were not stolen or otherwise subject to lawful seizure, failing to verify ownership or the legitimacy of his claims.

135.    The Law Enforcement Defendants breached their duty by: Failing to conduct a proper and thorough investigation into Snellgrove's allegations before obtaining and executing the search warrant, neglecting to verify the validity of his claims or confirm whether the items were lawfully in Plaintiffs' possession.

136.    Executing the search warrant in an overly broad and unreasonable manner, seizing items not specified in the warrant or reasonably related to the alleged crime.

137.    Failing to properly inventory, safeguard, and maintain custody of the seized property, instead releasing it to Snellgrove without proper authority, due process, or a legal determination of ownership.

138.    The breaches of duty by each defendant were direct and proximate causes of Plaintiffs' injuries.

139.    Snellgrove's false allegations and negligent participation in the search set in motion the chain of events leading to the wrongful seizure of Plaintiffs' property. But for Snellgrove's baseless claims and misidentification of items, law enforcement would not have targeted Plaintiffs' residence or seized his possessions.

140.    The Law Enforcement Defendants' failure to properly investigate, their overly broad execution of the search warrant, and their improper release of the seized property to Snellgrove directly contributed to and exacerbated the harm. Had they exercised reasonable care, the wrongful seizure and loss of Plaintiffs' property would not have occurred. The dismissal of criminal charges against Plaintiff in November 2024 due to insufficient evidence further underscores that the defendants' actions lacked a reasonable basis.

141.    As a result of the defendants' negligence, Plaintiffs suffered actual damages, including:  The loss of valuable property, such as Snap-On tools and equipment, which were seized and not returned; Financial harm from the deprivation of his possessions, some of which were provided to Snellgrove without due process and was sold or disposed of; and emotional distress caused by the unwarranted raid on his home and the loss of his property.

142.    The actions and inactions of all defendants collectively contributed to Plaintiffs' harm. Each defendant's negligence was a substantial factor in causing the damages, and thus, they are jointly and severally liable for the full extent of Plaintiffs' losses.

143.    Plaintiffs seeks compensatory damages from all defendants for the losses sustained due to

their negligent conduct, including the value of the seized property, financial losses, and

emotional distress, in an amount to be determined at trial. Plaintiff further requests costs,

attorney's fees as permitted by law, and any additional relief the Court deems just and proper.

## COUNT 9: TEXAS THEFT LIABILITY ACT

144.    Plaintiffs incorporate by reference all preceding paragraphs of this complaint as if fully set

forth herein.

145.    Defendants committed theft as defined under the Texas Penal Code, Tex. Penal Code §

31.03, by unlawfully appropriating Plaintiffs' personal property with the intent to deprive

Plaintiffs of said property. As a result, Defendants are jointly and severally liable to Plaintiffs

under the Texas Theft Liability Act.

146.    Defendants unlawfully appropriated Plaintiffs' personal property, including but not limited

to Snap-On tools and equipment, by orchestrating and participating in its seizure from Plaintiffs'

marital residence and subsequently retaining it or transferring it to Snellgrove without legal

authority

147.    Snellgrove made false allegations to law enforcement, claiming that Plaintiff Austin Hamblin

had stolen tools and products, which prompted the issuance of a search warrant. Snellgrove

actively participated in the search, directed law enforcement to seize specific items, and took

possession of the seized property following the search.

148.    The law enforcement defendants acted on Snellgrove's false allegations without conducting a proper investigation or verifying the validity of his claims. They facilitated the unlawful appropriation by executing the search warrant without probable cause, seizing items not specified in the warrant, and transferring the property to Snellgrove without a legal determination of ownership or due process.

149.    The seizure was conducted under the color of a search warrant procured through Snellgrove's false statements and executed by the law enforcement defendants without proper legal justification. No proper legal procedures were followed to transfer ownership or entitlement of the property to Snellgrove, and Plaintiffs were deprived of their property without a hearing or due process.

150.    Defendants acted with the intent to permanently deprive Plaintiffs of their property. Following the dismissal of criminal charges against Austin Hamblin due to insufficient evidence, it became clear that neither Snellgrove nor the law enforcement defendants had a lawful claim or entitlement to the seized property. Snellgrove acted as the County's agent when he directed deputies to release the tools to him and then disposed of them without lawful authority.

151.    Despite this, Defendants has refused to return the property and, upon information and belief, has sold or disposed of some items for his personal benefit. The law enforcement defendants, by failing to safeguard the property and improperly transferring it to Snellgrove, furthered the deprivation of Plaintiffs' property.

152.    As a direct and proximate result of Defendants' theft, Plaintiffs have suffered actual

damages, including the loss of their property and its monetary value.

## COUNT 10: CONSPIRACY

153.    Plaintiff Austin Hamblin incorporates by reference all preceding paragraphs of the complaint

as if fully set forth herein.

154.    Defendants engaged in a civil conspiracy to commit the torts of conversion and abuse of

process against Plaintiff, resulting in significant harm.

155.    The conspiracy is established by the following elements under Texas law.

156.    Defendants Snellgrove and the law enforcement Defendants combined and acted in concert

to achieve an unlawful purpose.

157.    The object of the conspiracy was to unlawfully seize Plaintiffs' property under the pretense

of a criminal investigation and to convert that property for Snellgrove's benefit, constituting

conversion. Additionally, Defendants conspired to abuse the legal process by misusing the

search warrant procedure for the improper purpose of seizing property not subject to lawful

seizure.

158.    Defendants had a meeting of the minds on the object of the conspiracy. Snellgrove initiated

the scheme by making false allegations of theft to the Law Enforcement Defendants. The Law

Enforcement Defendants agreed to pursue these allegations without proper investigation,

obtained a search warrant based on the false claims, allowed Snellgrove to actively participate in the execution of the warrant, and ultimately transferred the seized property to Snellgrove without due process.

159.    In furtherance of the conspiracy, Defendants committed multiple unlawful, overt acts, including but not limited to: Snellgrove making false reports of theft to the Martin County Sheriff's Office; The Law Enforcement Defendants failing to conduct a proper investigation into the allegations before obtaining a search warrant; Obtaining a search warrant based on false and unsubstantiated information; Executing the search warrant with Snellgrove's active participation, allowing him to identify items for seizure; Seizing items that were not stolen or within the scope of the warrant; and Transferring the seized property to Snellgrove without a legal determination of ownership or due process.

160.    As a direct and proximate result of the conspiracy, Plaintiff suffered damages, including the loss of his property, financial harm, and emotional distress.

161.    Each Defendant is jointly and severally liable for the damages caused by the conspiracy, as their coordinated actions collectively contributed to Plaintiffs' harm.

162.    Plaintiff seeks compensatory damages from all Defendants for the losses sustained due to their conspiratorial conduct, including the value of the seized property, financial losses, and emotional distress, in an amount to be determined at trial. Plaintiff further requests costs, attorney's fees as permitted by law, and any additional relief the Court deems just and proper.

## REQUEST FOR RELIEF

163.    Wherefore, Plaintiffs respectfully prays this Court:

164.    Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

165.    Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

166.    Enjoin Defendants from any further possession, sale, or distribution of the property wrongfully seized from Plaintiffs' residence;

167.    Order the return of all property seized from Plaintiffs' home, or in the alternative, award Plaintiff the monetary equivalent of the property's current market value or replacement cost, whichever is greater ;

168.    Impose a constructive trust on any proceeds from the sale of Plaintiffs' property held by Defendants, requiring them to disgorge such proceeds;

169.    Award Plaintiff actual damages for the value of the property sold by Defendant, in an amount to be determined at trial;

170.    Award Plaintiff compensatory damages for the replacement of items unlawfully taken and not recovered;

171.    Grant Plaintiff the maximum economic, non-economic, actual, statutory (including but not limited to treble damages under the Texas Theft Liability Act), emotional, general, special, punitive, and other damages available;

172.    Award Plaintiff attorney fees, with the appropriate multiplier, plus costs and expenses of litigation pursuant to Tex. Civ. Prac. & Rem. Code;

173.    Award all other legal measure of damages for any cause of action pled, including and without limitations and as appropriate under law compensatory damages, nominal damages, punitive damages, treble damages, statutory damages, consequential damages, incidental damages, liquidated damages, and any other special or general damages permitted by law, together with pre-judgment and post-judgment interest, costs of suit, attorney's fees; and

174.    Award Plaintiffs all other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

175.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demands a trial by jury on all issues so triable in the above-captioned case.  This demand is made in accordance with the Seventh Amendment to the United States Constitution and applicable federal law.


Respectfully Submitted,

/s/ Kurt Muelller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com

## Certificate of Conference

Pursuant to requirements of local rules, I certify that I contacted attorneys for both defendants on

December 1, 2025 via email to notify them of my intent to file an amended complaint consistent

with this court's prior scheduling order and to inquiry if there was any objection. Mr. Perez

responded stating he did not object to the motion to amend. Mr. Dennis did not respond.

## Certificate of Service

I certify that on the date reflected by the CM/ECF date stamps I filed the foregoing document(s)

and that they are available for viewing and downloading from the Court's CM/ECF system, and that

those participants in the case that are registered CM/ECF users and that service will be

accomplished by the CM/ECF system.

/s/ Kurt Mueller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com