IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | | |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN | § | |
| | § | |
| VS. | § | |
| | § | NO.    7:25-cv-00245 |
| MARTIN COUNTY SHERIFF'S DEPARTMENT; | § | |
| | § | |
| | § | |
| BRAD INGRAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| ANDERS DAHL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| KELSEY BROWN,  IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| RORY GAMMONS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| WESTON PHELPS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND | § | |
| | § | |
| | § | |
| BRIAN SNELLGROVE | § | |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS REGARDING INADEQUATE RULE 30(b)(6) REPRESENTATION

### Introduction

1.  COMES NOW, Plaintiffs Austin Hamblin and Kiska Hamblin, and file this Motion to Compel Discovery against Defendant Martin County Sheriff's Department ("the County"). Plaintiffs respectfully show the Court that the County has engaged in a pattern of obfuscation: producing lackluster written responses claiming evidence does not exist, while simultaneously presenting a corporate representative who admits the evidence does exist but that he failed to look for it.

### Deficiencies

2.  The Court authorized discovery narrowly tailored to the immunity defense, specifically regarding the seizure and disposition of property. Plaintiffs sought video evidence of these events. The County responded "None" or "Attached" (referring to incomplete files). On January 15, 2026, the County's designated Rule 30(b)(6) representative, Sheriff Brad Ingram, admitted under oath[1] that the following evidence was created. It has not been produced.

| Category (What Plaintiffs Need) | County's Response/Objection (quote/summary) | Deposition Admissions Showing Deficiency |
|---|---|---|
| All BWC video—entire search (all officers) | Produced partial for Dahl only | Rep said video uploads "automatic" to cloud; does not know where other officers' BWC video is; Dahl video shows a ~2-hour gap |
| BWC at barn/offloading | None | Rep admitted he was present for offloading "some of it"; photos/video exist but custodian/whereabouts unknown |
| Barn photos/video (inventory/lay-out) | None | Rep: items were videotaped at scene and at Snellgrove; rep personally took photographs; doesn't know if still has them |
| Dash cam video—vehicles present | None | Rep: dash cams existed; footage archived; moved to cloud at some point; he doesn't know if retrieved/logged |
| Cloud review, deletion/overwrite proof | No representation | Rep: uploads to cloud; doesn't know retention; doesn't know if destroyed before retention window |
| Handwritten inventory; warrant return attachments; chain-of-custody | No handwritten inventory; no chain of custody | Rep acknowledged handwritten inventory required; doesn't know where it is; admits many policy deviations |
| Communications with Snellgrove (texts/emails) | None | Rep repeatedly "I don't know" on emails/texts; exhibits available to plaintiff show messages exist |
| Adequate County representative deposition | County designated retired sheriff | Rep reviewed only part of manual; didn't review prior discovery answers; could not answer basic custodian/retention/production questions |

---

[1] All quotes and references related to Brian Ingram from the deposition that occurred on January 15th provided in this motion are from an unofficial transcript produced by Plaintiff's attorney based on a video recording made by Plaintiff's attorney during the deposition. At the request of the court, this unofficial record can be supplemented by citations to the official transcript of the deposition when it is available.

## **FACTUAL BACKGROUND**

3.  On January 15, 2026, Plaintiffs deposed the County's designated representative, former Sheriff James Bradley Ingram. The testimony shows (1) responsive ESI exists (or existed), (2) the County has not produced it, and (3) the County's representative was not reasonably prepared to testify about noticed and plainly central topics.

4.  The witness testified he met with defense counsel "three times" and reviewed only "one" item: "part of the policy manual." He testified he did not review prior discovery answers and did not review or gather other key records before testifying. He spoke with Investigator Anders Dahl briefly, primarily about a limited issue, and otherwise could not identify what records were reviewed or collected to prepare him to testify for the County.

5.  The County acknowledges BWC/dash cam systems and cloud uploading, but did not produce or even represent it had searched the cloud for responsive files.

6.  As the county's representative, Mr. Ingram testified that the policy was that body-worn cameras are to be worn and turned on, that there were dash cameras in the vehicles used, and that body cam video was upload automatically to the cloud upon returning to the parking lot.

7.  Yet when asked where the BWC/dash-cam recordings are (including for the officers other than Dahl), whether they were retrieved, logged, reviewed, or preserved, the representative repeatedly answered "I don't know."

8.  Critically, Plaintiffs confronted the witness with produced Dahl footage showing recording segments (e.g., roughly 8:02–8:49 and 10:44–11:01) with a nearly two-hour gap, and asked why the gap exists and where the other officers' recordings are. The representative could not answer and did not know whether the missing recordings remain available.

9. The witness testified that property was videotaped at the scene and at Snellgrove's facility and that he personally took photographs during a later walk-through at Snellgrove's. When asked whether those photographs are still in his possession or where they are, he was unsure. When asked who took barn photos shown in exhibits, he did not know. These admissions confirm responsive photos and video exist and are within the County's practical control to obtain.

10. The witness acknowledged numerous departures from written policy regarding evidence handling, including that evidence was not transported to the property room and was not stored in a secure area, and that required audits/inspections were not performed/documented. He also could not identify where the handwritten inventory is located or whether required BWC "event forms" were completed. This makes production of the video, logs, and chain-of-custody documentation even more critical.

## Legal Argument

11. Under Fed. R. Civ. P. 30(b)(6), a government entity must designate a representative to testify on its behalf. The entity has an affirmative duty to prepare the witness to testify on matters known or reasonably available to the organization. A witness cannot simply rely on their own fading memory; they must review records and interview employees. Producing an unprepared witness is tantamount to a failure to appear. Resolution Trust Corp. v. S. Union Co., 985 F.2d 196 (5th Cir. 1993).

12. Sheriff Ingram was an inadequate witness. By his own admission, Sheriff Ingram's preparation was non-existent. As to documents reviews, he stated under oath he reviewed only "part of the policy manual" (which was only produced to Plaintiff at the deposition) and "no other documents. As to staff interviews, Ingram testified that he spoke only to co-defendant Dahl, ignoring the IT department or current records custodians.

13. Because of this failure to prepare, Ingram answered "I don't know" to dozens of foundational questions critical to the pending Motion for Summary Judgment, including 1) whether the dash cam videos were logged; 2) where the cloud data is; 3) where the plaintiff's property is currently located; whether the cloud was reviewed for any files including deleted files.

14. The County cannot use tactics such as presenting a witness who knows nothing to shield itself from liability. The Sheriff's lack of knowledge about critical facts precludes a full understanding of whether the officers acted "reasonably" for purposes of Qualified Immunity. The recordings and images are not "nice-to-have." They are the best evidence of:

- what was searched and seized;

- who directed seizures and why;

- whether seizures exceeded the warrant and/or plain view limits;

- the involvement and supervision of Snellgrove and his employees;

- chain-of-custody and disposition issues; and

- what occurred at the barn during offloading and inventorying.

15. The witness described automatic uploading and a cloud-based storage model. That triggers a straightforward expectation: the County can obtain from its video platform (or vendor) audit trails showing:

- device identifiers,

- upload timestamps,

- file names/segments,

- retention category tags,

- access logs,

- deletion/overwrite events, and

- administrative changes to retention settings.

16. If the County claims any recording no longer exists, Plaintiffs are entitled to a sworn explanation: what existed, when it was last present, why it is gone, and who had control of retention settings. Without that, the County can effectively erase the most probative evidence and then shrug.

17. When an organization designates a representative, it must present a witness prepared to testify about information known or reasonably available to the organization on the noticed topics. Here, the County designated a retired official with no ongoing role, who:

- reviewed only part of one manual,

- did not review the County's written discovery answers,

- did not review or locate the video/ESI or retention records,

- could not identify custodians, retention periods, audits, or where core evidence is kept, and

- responded "I don't know" on critical, basic facts squarely within the designation's purpose.

18. That is not imperfect memory;  It is a failure to prepare a representative to speak for the County. The appropriate remedy is an order requiring the County to designate a properly prepared witness (or witnesses) and to produce them for a re-deposition at the County's expense, along with supplementation of interrogatory answers and production.

19. A Renewed Motion for Summary Judgment asserting Qualified Immunity by the government is anticipated. This defense turns on objective reasonableness. Without the information sought by the Plaintiffs relating to the search, seizure, and storage of items obtained from the Hamblin marital home, the motion for summary judgment cannot be properly evaluated.

### Conclusion

20. Plaintiffs request the Court order that within 14 days (or other deadline set by the Court), the

County:

    a.  Produce BWC video for each officer present at the search, from first arrival through

       completion, including all segments and any associated stills, plus:

- o  device IDs, officer assignment records, and upload logs;
- o  any "event forms" or classification tags tied to the incident; and
- o  the County's retention category applied to each file.

    b.  Produce BWC video for any officer present at the barn/warehouse during

       unloading/offloading/inventorying or later inspection(s), including all segments and

       associated logs.

    c.  Produce all barn/warehouse photo and video evidence, including:

- o  all photos/videos taken by Sheriff Ingram,
- o  all photos/videos taken by any deputy/employee,
- o  originals (native format) with metadata (date/time/device), and
- o  identification of the photographer/videographer and custodian.
- o

    d.  Produce dash cam recordings for all County vehicles present/used in connection with

       the search/transport, plus:

- o  vehicle list and unit assignments for that date,
- o  dash-cam system logs (upload/retention/deletion), and
- o  retention settings applicable to the incident.

    e.  Provide a sworn declaration by a knowledgeable custodian (IT/video platform

       administrator or vendor custodian) that:

- o  identifies the BWC/dash-cam platform(s) used in May 2023,
- o  describes where recordings are stored (cloud/vendor),
- o  states the retention settings and incident classification,

- o describes the exact search performed (who, when, what parameters),
- o attaches audit logs showing uploads and file histories, and
- o if any responsive files are missing, specifies whether they were deleted/overwritten, when, why, and by whom, including administrative actions and retention changes.


f.  Produce all handwritten inventory sheets, warrant return attachments, chain-of-custody ledgers, and evidence transfer documentation, or provide a sworn explanation of their absence and the steps taken to locate them.

g.  Produce all responsive communications (texts/emails/messages) between County personnel and Snellgrove (and employees) relating to search / seizure / storage /release / valuation / disposition; if any are withheld, provide a privilege log.

h.  Require the County to:

- o designate an adequately prepared representative (or multiple witnesses by topic),
- o produce that representative for a re-deposition limited to 7 hours, and
- o pay Plaintiffs' reasonable costs and expenses for the re-deposition and this motion.

i.  Enter a preservation order directing the County and its vendors to preserve all responsive video/ESI, audit logs, and retention settings pending further order.


## CERTIFICATE OF CONFERENCE

I certify that on January 21, 2026, I conferred in good faith with counsel for Martin County by email and telephone regarding the relief requested in this motion. No response was received before filing was required by court-ordered deadlines.


## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF date stamps I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully Submitted,

/s/ Kurt Mueller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com