IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | | |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN | § | |
| | § | |
| VS. | § | |
| | § | NO.    7:25-cv-00245 |
| MARTIN COUNTY SHERIFF'S DEPARTMENT; | § | |
| | § | |
| | § | |
| BRAD INGRAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| ANDERS DAHL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| KELSEY BROWN,  IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| RORY GAMMONS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | § | |
| | § | |
| | § | |
| WESTON PHELPS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND | § | |
| | § | |
| | § | |
| BRIAN SNELLGROVE | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY, MOTION FOR SANCTIONS, AND REQUEST FOR ADVERSE INFERENCE INSTRUCTION**

**Introduction**

1. COME NOW, Plaintiffs Austin Hamblin and Kiska Hamblin (hereinafter "Plaintiffs"), and file this Reply in Support of their Motion to Compel Discovery and for Sanctions against Defendants Martin County Sheriff's Department, Brad Ingram, Anders Dahl, Kelsey Brown, Rory Gammons, and Weston Phelps (collectively, the "Martin County Defendants").

2. The Martin County Defendants' Response to Plaintiffs' Motion to Compel is procedural bad faith. It is a filing built upon demonstrable falsehoods regarding the discovery record, a calculated abdication of

duties under the Federal Rules of Civil Procedure, and a blindness to the existence of dispositive electronic evidence.

3. This case involves allegations that Sheriff's deputies "conscripted" a private business rival, Defendant Brian Snellgrove, to execute a search warrant, allowed him to identify items to be seized, and then transferred approximately $283,000 worth of property to him without due process. In the face of these serious constitutional claims, the Defendants have adopted a litigation strategy of stonewalling: asserting the affirmative defense of Qualified Immunity while simultaneously suppressing the evidence required to adjudicate that defense.

4. The Defendants' opposition rests on three arguments, each of which is legally frivolous and factually untrue:

   a. They represent to this Court that Plaintiffs "have sent no written discovery" regarding immunity. This is objectively false. Plaintiffs served two distinct sets of discovery, including individual interrogatories to each officer which remain unanswered.

   b. They argue their Rule 30(b)(6) representative was unprepared because he is "retired," ignoring the fact that they selected him and then failed to prepare him as required by law.

   c. They admit under oath that a cloud-based video system existed and automatically uploaded footage, yet they rely on an affidavit stating a deputy merely "looked in the file" and found nothing.

5. Discovery is not a game of blind man's bluff. The Martin County Defendants cannot demand Summary Judgment on immunity grounds while withholding the objective evidence—video footage and individual officer narratives—required to determine if their conduct was "objectively reasonable." Accordingly, Plaintiffs respectfully request that this Court compel full and individual responses from all Defendants, order a forensic search of the County's cloud data, mandate a competent Rule 30(b)(6) deposition at Defendants' expense, and apply an adverse inference regarding the video evidence Defendants have failed to preserve.

**Defendants' Assertion that Plaintiffs Served "No Written Discovery" is a Sanctionable Misrepresentation**

6. The foundation of Defendants' opposition is the brazen assertion that "Plaintiffs have sent no written discovery... to explore claims of immunity." This statement is false. The record confirms that Plaintiffs have aggressively pursued written discovery relevant to immunity since the inception of this case.

7. The First Discovery Request (Served September 6, 2025) On September 6, 2025, Plaintiffs served their First Set of Discovery Requests (Interrogatories, Requests for Production, and Requests for Admission). This request was explicitly directed to "All Defendants," and the instructions mandated that "each Defendant must serve separate answers and responses based on their own knowledge." This request specifically targeted the factual predicates of Qualified Immunity. For example:

    a. Interrogatory No. 6: "Describe the factual basis for seeking and obtaining the Search warrant, including who initiated the investigation..." (Directly relevant to probable cause).

    b. Interrogatory No. 13: "Describe Snellgrove's involvement in the investigation, the Search, identification or removal of property..." (Directly relevant to the reasonableness of the search scope and the delegation of police power).

    c. RFP No. 3: "Produce all photographs, video, and audio relating to the Search or Seized Property (including bodycam/dashcam...)." (Directly relevant to the objective reasonableness of the officers' conduct)

8. The Second Discovery Request (Served November 7, 2025) Following the Court's Order limiting discovery, Plaintiffs served a Second Set of Discovery Requests on November 7, 2025, directed to the County to address municipal liability (Monell). This request stated: "This discovery is narrowly tailored to the factual issues essential to the qualified immunity defenses."

9. Defendants acknowledged receipt of these critical requests by serving a written response to both on December 1, 2025. For Defendants' counsel to now represent to the Court that Plaintiffs "sent no written discovery" is a misrepresentation of the record that borders on bad faith.

**The Individual Defendants are in Default: Failure to Provide Individual Responses**

10. A critical procedural failure (glossed over by Defendants) is that the individual officer defendants (Anders Dahl, Kelsey Brown, Rory Gammons, and Weston Phelps) have never properly answered the First Set of Interrogatories directed to them.

11. Federal Rule of Civil Procedure 33 is unambiguous. Rule 33(b)(1)(A) requires that interrogatories must be answered "by the party to whom they are directed." Rule 33(b)(3) requires that "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Finally, Rule 33(b)(5) requires that the person who makes the answers must sign them.

12. Qualified Immunity is an individualized inquiry. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). It turns on what each specific officer knew and did. For example:

    a. Deputy Brown: Allegedly found the firearm inside the home. Her subjective knowledge and objective conduct are distinct from that of Sheriff Ingram, who testified he was merely "standing around." Brown must answer Interrogatory No. 16 (justification for seizure) separately.

    b. Investigator Dahl: Admitted to "conscripting" Snellgrove in his affidavit. He must answer Interrogatory No. 13 (Snellgrove's involvement) separately.

    c. Deputy Phelps: Took the initial theft report. His knowledge of the validity of Snellgrove's claims is distinct.

13. The "Group Response" is a Legal Nullity Instead of five separate, verified responses, Defendants served a single document titled "Defendant Martin County et al's Response." This document is legally insufficient for three reasons:

a.  Lacks Individual Verification: It is not signed under oath by Dahl, Brown, Gammons, or Phelps. It is verified only by retired Sheriff Ingram (for the County). Unsworn answers to interrogatories do not constitute evidence and cannot be used to support a Summary Judgment motion. Brady v. Blue Cross and Blue Shield of Texas, Inc., 767 F. Supp. 131, 135 (N.D. Tex. 1991); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)

b.  Obfuscates Individual Actions: By providing a homogenized "County" answer, Defendants prevent Plaintiffs from isolating specific inconsistencies in the officers' accounts. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007); Carnaby v. City of Houston, 636 F.3d 183, 189 (5th Cir. 2011); Cass v. City of Dayton, 770 F.3d 368, 374 (6th Cir. 2014).

c.  Waiver of Objections: By failing to respond individually by the deadline, Defendants Dahl, Brown, Gammons, and Phelps have waived all objections to the First Discovery Request. In re U.S., 864 F.2d 1153, 1156 (5th Cir. 1989).

14. Plaintiffs respectfully request an Order compelling each named Defendant to serve separate, full, and verified responses to the First Set of Discovery Requests within seven (7) days.

## The "See Attachment" Evasion: Abuse of Rule 33(d)

15. In the single, collective response Defendants did provide, they utilized a tactic of lazy evasion: answering substantive interrogatories with the phrase "See attachment A" or "See documents produced by Brian Snellgrove." The failure to answer the interrogatories with the particularly requested is manifest.

16. Under Fed. R. Civ. P. 33(d), a party may answer by producing business records only if the burden of deriving the answer is substantially the same for either party and the responding party specifies the records in sufficient detail. Defendants have failed this standard. The "attachments"

are merely the disorganized file from the underlying criminal case, which does not contain all the information sought. For example:

    a. Interrogatory 16 asks for the justification for seizing items outside the warrant. The criminal return lists what was seized, not why. Pointing to the inventory list does not answer the question of intent, legal justification, or consent.

    b. Interrogatory 4 asks for communications with Snellgrove. The criminal file does not contain the informal text messages, emails, or verbal conversations between the deputies and the private actor that Plaintiffs know exist.

17. The lack of particularly and specificity in Defendants' responses is abhorrent. Civil discovery in a § 1983 excessive force or unreasonable seizure case is broader than criminal disclosure. By limiting their response to the "criminal file dump," Defendants are effectively refusing to engage in civil discovery.

## The Rule 30(b)(6) Deposition was a Failure to Appear

18. Defendants argue that their Rule 30(b)(6) representative, former Sheriff Brad Ingram, was unprepared because he is "retired," and that Plaintiffs "should have known" this. This argument turns the Federal Rules on their head.

19. The duty to prepare is absolute. When a party receives a Rule 30(b)(6) notice, the entity has an affirmative duty to designate a representative who is knowledgeable about the noticed topics. This duty extends beyond the witness's personal knowledge; the entity must prepare the witness so that they can testify to matters known or reasonably available to the organization. Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006). If the designee does not possess the knowledge, the corporation must educate him.

20. Defendants selected the witness. Defendants' complaint that Plaintiffs should have known Ingram was retired is irrelevant. Defendants could have chosen anyone to speak for the County. If Ingram was unable to access current records due to his retirement, the County had the duty to grant him access and bring him up to speed, or designate someone else.

21. Willful Lack of Preparation. The unofficial deposition transcript prepared by Plaintiff's counsel confirms Ingram's total lack of preparation (official transcript still pending). He testified he reviewed only "part of the policy manual" and "no other documents." He spoke to no one in IT. Consequently, he answered "I don't know" to foundational questions critical to the Summary Judgment motion (quotes from unofficial transcript). For example:

    a. "Were dash cam videos retrieved and logged?" A: "I don't know."

    b. "Where is the cloud data?" A: "I don't know."

    c. "Where is the physical inventory?" A: "I don't know."

    d. "Was the video entered into a server?" A: "I believe it was automatic... I don't know."

22. This was not a deposition; it was a failure to appear. Plaintiffs are entitled to a new deposition with a competent witness, at Defendants' expense.

**The "Cloud vs. File" Paradox" Evidence of Spoliation and Request for Adverse Inference**

23. The most damning aspect of this discovery dispute is the contradiction regarding the video evidence. Under oath, the County's representative admitted that the Sheriff's Department utilized a system where video was automatically uploaded to the cloud: Ingram testified that "I believe it was automatic when you pull in the parking lot [that it downloaded to the server]" and "There was a change from saving to a computer to the iCloud."

24. This testimony establishes that ESI (dash cam and BWC for all officers, not just Dahl) was created and automatically preserved in a cloud environment (such as Axon, BodyWorn, or

WatchGuard). No representation regarding a search of these environments or retention policies has been made to Plaintiffs.

25. In response to the Motion to Compel, Defendants attach an Affidavit from Chief Deputy Billy Reynolds (Doc. 48-1) stating he "fully reviewed the file located **at the Martin County Sherriff's Department**" (emphasis added) and found nothing. Plaintiffs do not know what "the file" means. "Looking in the file" likely means a physical folder or local hard drives, but is not a diligent search for cloud-based ESI or any other storage not "at the [Department]". Defendants have not certified that they logged into the cloud vendor's portal, searched the audit logs, or contacted the vendor to retrieve archived footage. They have not produced any evidence relating to document retention policies. This is willful blindness

26. The missing videos are crucial for the Qualified Immunity analysis because Defendants claim Plaintiffs consented to the seizure of items not listed in the warrant. Ingram testified: "That was verbal... There's video." Since there is no written consent form, the video is the only evidence of whether consent was voluntary or coerced. Additionally, the videos would show whether deputies were conducting a lawful search or merely acting as movers for Mr. Snellgrove. Further, the videos likely depict the "conscripted" private actor directing state agents. The videos appear to be the best evidence of what actually happened.

27. Under Fed. R. Civ. P. 37(e), if ESI that should have been preserved is lost because a party failed to take reasonable steps to preserve it, the Court may cure the prejudice. The County had a duty to preserve this footage the moment the seizure occurred, and certainly when the lawsuit was originally filed. Their failure to check the cloud constitutes gross negligence. Plaintiffs request an instruction that the missing video evidence would have shown that Plaintiffs did not consent to the seizure and that Defendants acted at the direction of Brian Snellgrove.

**<u>Attempt to  Prejudice the Court</u>**

28. Finally, Defendants' Response attempts to distract from their discovery failures by referencing "methamphetamine" and an "illegal firearm." This is improper and irrelevant. First, the firearm was legal and was returned to the Plaintiffs. Second, the County admitted under oath in the deposition that they have no idea if the substances taken were even tested, so for them to label it as methamphetamine is an act of guess work. And even it if was true, it would have nothing to do with the seizure and failure to returns the nearly $300,000 worth of tools and items taken during the search. This attempt is at distraction is textbook poisoning the well.

29. These prejudicial irrelevancies do not cure their failure to produce the video evidence of the actual seizure of the tools at issue. This is a civil rights case about property theft under color of law, not a drug case.

## Conclusion and Prayer

30. The Defendants have treated this Court's discovery order as a suggestion. They have defaulted on individual responses, produced a "know-nothing" witness, and engaged in spoliation of cloud-based video.

31. Wherefore the Plaintiffs respectfully request that the Court:

32. GRANT Plaintiffs' Motion to Compel in its entirety.

33. ORDER each Individual Defendant (Ingram, Dahl, Brown, Gammons, Phelps) to serve separate, full, and verified answers to the First Set of Discovery Requests within seven (7) days, without objection (as objections are waived).

34. ORDER the County to conduct a forensic search of their cloud-based video platform (e.g., Axon, BodyWorn) and produce audit logs showing uploads, deletions, and retention settings for the dates in question.

ORDER the County to designate a prepared Rule 30(b)(6) representative for a new deposition within fourteen (14) days, limited to the topics in the original notice, at Defendants' sole cost and expense (including court reporter fees and Plaintiffs' costs and attorney fees for the second deposition).

35. ISSUE A PRESERVATION ORDER explicitly prohibiting any deletion, purging, or overwriting of any BWC, dashcam, or cloud-based data, and requiring Defendants to preserve all audit logs.

36. GRANT AN ADVERSE INFERENCE instruction at Summary Judgment and Trial that the missing video evidence would demonstrate that Plaintiffs did not consent to the seizure of items outside the warrant and that Defendants acted at the direction of Brian Snellgrove.

37. AWARD SANCTIONS in the form of reasonable attorney's fees and costs incurred in bringing this Motion.

38. SET A HEARING on this matter, as Defendants' arguments defy established discovery rules and require judicial intervention.

## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF date stamps I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully Submitted,

/s/ Kurt Mueller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com