IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | |
|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN** § | |
| § | |
| VS. § | |
| § | NO.   7:25-cv-00245 |
| **MARTIN COUNTY SHERIFF'S DEPARTMENT;** § § § | |
| § | |
| **BRAD INGRAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § | |
| § | |
| **ANDERS DAHL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § | |
| § | |
| **KELSEY BROWN,  IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § | |
| § | |
| **RORY GAMMONS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;** § § | |
| § | |
| **WESTON PHELPS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND** § § | |
| § | |
| **BRIAN SNELLGROVE** § | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

1. Pursuant to the Court's Order permitting limited discovery on immunity issues and the Court's Order allowing this supplemental filing (ECF No. 37), Plaintiffs submit this Supplemental response. Defendants elected not to supplement their dispositive motion by the Court's ordered deadline. The post-motion record, including the Rule 30(b)(6) testimony of former Sheriff James Bradley Ingram and Defendants' sworn written admissions in response

to Plaintiffs' limited discovery, defeats dismissal and, at minimum, establishes multiple genuine disputes of material fact that preclude summary judgment.

2. This case is not about a routine warrant execution. The record now supports a straightforward inference: Martin County used the badge as a collection agency to seize a truckload of property far beyond a narrow warrant, then handed custody, transport, storage, and effective control to the complaining witness without a court order, without an ownership adjudication, without secure evidence controls, and without providing Plaintiffs meaningful notice or an opportunity to be heard. The County's final policymaker admits he authorized the resource-driven custody-transfer arrangement. That conduct violates the Fourth and Fourteenth Amendments. It also supplies the kind of policymaker-decision, policy/custom, and deliberate-indifference record that supports municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

## Procedural Posture

3. Defendants styled their filing as a motion for summary judgment. To the extent Defendants rely on matters outside the pleadings, the motion is evaluated under Rule 56. The Court's limited-discovery order allowed Plaintiffs to test the mechanics of the seizure and disposition and to develop facts necessary to resolve immunity. That limited discovery produced sworn admissions that contradict Defendants' original narrative of good-faith, statute-compliant handling of Plaintiffs' property.

## Supplemental Facts and Admissions

4. To date, the official transcript of the deposition of Sheriff Ingram has not been made available to Plaintiffs by the court reporters hired for this task. All statements in this filing

attributed to Sheriff Ingram (who spoke as the designated County deponent) are based on an unofficial transcript produced by Plaintiff's Counsel from a video recording by Plaintiff's Counsel.

5. The County's designated representative (Ingram) and Defendants' written admissions establish the following additional facts. Unless otherwise indicated, statements from Ingram mentioned herein are attributable to the County.

6. The County admits the warrant was narrow. It authorized seizure of exactly two items: a Snap-On plasma cutter (model 301) and a Snap-On air compressor. The execution was not narrow. The inventory return lists approximately 51 distinct categories of seized property, including obvious non-warrant items such as a Snap-On popcorn maker, a Snap-On lawn chair, motorized bicycles, and numerous tool cabinets.  When asked, Ingram could not provide any information that was readily apparent that would indicate the items were suspicious or illegal.

7. Defendants admit that Investigator Anders Dahl 'conscripted' the complaining witness, Brian Snellgrove, to aid in the execution of the search warrant. Defendants further admit officers seized items 'based, in part, on Snellgrove's identification.'

8. Defendants admit the seized property was stored in a warehouse owned by Snellgrove immediately after seizure and was released to Snellgrove as the 'rightful owner,' notwithstanding the absence of any produced judicial order adjudicating ownership or directing safekeeping. Ingram testified he made the final decision to allow Snellgrove to transport the items and the final decision to allow Snellgrove to store them at his barn.

9. Ingram admitted he approved using Snellgrove to transport and store the property because Martin County did not have the means to transport the property and did not have a facility equipped to store and safeguard it.

10. Ingram admitted the County did not maintain meaningful chain-of-custody controls for property stored at Snellgrove's facility, did not conduct policy-required audits and documentation, and cannot account for missing body camera and dash camera recordings that would objectively show what was seized, by whom, and based on what statements.

11. Ingram admitted the county had no independent access to the barn; the Sheriff did not limit access to it; he didn't know who had access; he didn't mark/tag all evidence; and much of the evidence was not secured per the written policy he authored and adopted.

12. Ingram admitted there was no independent verification of ownership, serial numbers, or valuation. The County took Snellgrove's word on what items cost; no independent research was done to verify value. The County did not contact Snap-on corporate; did not subpoena corporate records; did not independently verify serial numbers; and did not verify whether items were legitimately in a Snap-on employee's possession (including at least one item issued by Snellgrove's business). The "$283,445" valuation appears tied to Snellgrove's communications, not independent County verification.

13. Ingram admitted the county's own policy required audits/training/controls; the Sheriff admits they weren't done. The policy manual - prepared by Ingram and adopted by the County - calls for audits/inspections and evidence controls; Ingram admitted annual audits were not done; semi-annual/quarterly documentation was not done; mandated annual reports were not done. His explanation was manpower, while also admitting he personally wrote/adopted the policy specifically for a "small department," then didn't follow it.

14. Body camera/dash camera evidence is missing or incomplete, and the County cannot account for it. Ingram admits multiple officers wore body cams and vehicles had dash cams, with automatic uploading to the cloud/iCloud - but the County witness "doesn't know" what happened to the recordings, whether they were retrieved/logged, or whether they still exist. A

produced recording from Investigator Dahl contains an unexplained multi-hour gap. The witness cannot explain the gap or produce the other officers' recordings.

15. Ingram further admitted he cannot identify any custodian responsible for maintaining Plaintiffs' seized property, and cannot identify any key-control log, access list, or chain-of-custody record reflecting who could access the offsite storage location.Ingram admitted Plaintiffs were not provided any written inventory, receipt, or notice identifying what was taken, where it was kept, or how Plaintiffs could challenge the seizure/retention, and he could not identify any hearing or written notice providing due process before property was transferred, "returned," or disposed of. Ingram admitted he could not identify any court order authorizing the Sheriff's Office to place seized property under a private individual's control or to release/transfer property outside court-supervised Chapter 47 procedures.

16. Ingram admits Snellgrove was not a passive observer. The County admits Snellgrove brought a Snap-on "route truck" and employees who carried property to the truck. The investigator's affidavit states Snellgrove was "conscripted" to aid execution, identify property, and store it at his business "under my control and supervision." Yet the County cannot produce the controls, supervision logs, custody forms, or required evidence procedures.

17. The county admits notice and post-seizure process were absent.  Ingram admits the County does not know whether Plaintiffs were informed where property was stored; admits no written notice was provided regarding a Chapter 47 hearing; and admits the office did not send written notices relating to where items were seized/stored.

18. Ingram admits the property was transferred outside of the County in which the items were seized. Ingram admits that officials within the County where the items were seized were not consulted regarding potential storage.

19. These admissions show (1) delegation of a core police function to an interested private party, (2) a massive seizure untethered to judicial authorization, and (3) an extrajudicial transfer of seized property to the complaining witness without the mandatory court process required by both the Constitution and Texas law.

## LEGAL STANDARD

20. To the extent Defendants seek summary judgment, they bear the burden to show no genuine dispute of material fact and entitlement to judgment as a matter of law. On qualified immunity, Defendants must show either no constitutional violation or that the right was not clearly established.

21. The new testimony alone generates genuine disputes on core elements: scope of seizure, probable cause for each item taken, the role of a private complaining witness in execution, chain-of-custody and retention, notice and post-deprivation process, and policymaker authorization/custom.

## ARGUMENT

### Fourth Amendment

22. The Fourth Amendment's particularity requirement exists to prevent executive rummaging untethered to judicial authorization. Groh v. Ramirez, 540 U.S. 551 (2004). Defendants concede the warrant authorized two items, yet the inventory return spans scores of items across roughly 51 categories. Defendants' attempt to recast this as 'plain view' fails for at least three independent reasons.

23. First, plain view requires that the incriminating character of an item be immediately apparent, meaning the officer must have probable cause at the moment of seizure without conducting a further search or investigation. Horton v. California, 496 U.S. 128 (1990); Arizona v. Hicks, 480 U.S. 321 (1987). Defendants' admissions that items were seized based on Snellgrove's identification are an implicit concession that the incriminating nature was not immediately apparent to officers themselves. A popcorn maker or lawn chair is not contraband. If officers needed the accuser's say-so to form probable cause, the plain-view doctrine does not apply. This is especially the case where the accuser has been "conscripted" and is an agent of the police – the police are now self-generating their own probable cause based on representations from themselves to themselves.

24. Second, Texas Code of Criminal Procedure Article 18.08 allows officers to call citizens to their aid, but it does not authorize delegating the core probable-cause function to an interested accuser. The 'conscription' of Snellgrove converted a particularized warrant into a prohibited general search, allowing the accuser to expand the scope item-by-item far beyond what a neutral magistrate authorized.

25. Third, the interdependence between the Sheriff's Department and Snellgrove supports a reasonable inference that the operation functioned as a private repossession under color of law. Defendants admit Snellgrove was present, identified property, furnished trucks, stored the seized property in his warehouse, and received it as the 'rightful owner.' This is joint action, not passive observation. Dennis v. Sparks, 449 U.S. 24 (1980); Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961).

26. At minimum, these facts present classic jury questions as to reasonableness, item-by-item probable cause, and the propriety of civilian direction and participation. Dispositive relief is therefore improper.

**Fourteenth Amendment**

27. While the Fourth Amendment governs the initial seizure, the Due Process Clause governs retention and disposition. It is clearly established that the government cannot deprive an individual of property without notice and an opportunity to be heard, particularly where the government transfers the property to a third party. Fuentes v. Shevin, 407 U.S. 67 (1972).

28. Texas law codifies these safeguards. Article 18.10 provides the seizing officer shall retain custody of seized property until the magistrate issues an order directing safekeeping. Tex. Code Crim. Proc. art. 18.10. Chapter 47 requires alleged stolen property to be held subject to court order, with judicial process to resolve contested ownership. Tex. Code Crim. Proc. ch. 47. Defendants admit they did the opposite by surrendering custody to Snellgrove's warehouse and releasing the property to Snellgrove as the 'rightful owner' without producing any post-seizure judicial order.

29. Defendants' 'abandonment' defense collapses on the admitted facts. Plaintiffs cannot abandon property that the State has already removed, transported away, and handed to the accuser. The statutory burden ran the other way: it was the officer's duty to inventory and retain custody for the court, not the citizen's duty to chase property from a private warehouse after the government has already violated Article 18.10.

30. To the extent Defendants argue that Texas provides adequate post-deprivation remedies, that argument fails on these facts. The deprivation was not random or unauthorized. It was carried out through deliberate decisions, including the Sheriff's approval of the custody-transfer plan. Where the government can foresee and control the deprivation and chooses to bypass mandatory process, Parratt and Hudson do not bar a Section 1983 due process claim. See Zinermon v. Burch, 494 U.S. 113 (1990).

## Qualified Immunity

31. Qualified immunity protects only objectively reasonable conduct. No reasonable officer could believe that a warrant listing two industrial tools authorizes seizure of 51 categories of household and shop items, based on the accuser's on-scene identification, followed by delivery of the seized property into the accuser's custody and warehouse without any produced judicial order. Groh, Horton, Hicks, and Fuentes supplied clear notice long before these events. Pearson, 555 U.S. at 231-32.

32. Qualified immunity is aimed at protecting discretionary on-the-spot judgments, not violations of mandatory, ministerial duties. Here, the governing law and Defendants' own written policies impose non-discretionary duties: execute the warrant as written; keep seized property in law-enforcement custody; keep it subject to the magistrate's orders; document custody; and provide the notice and process required before property is transferred, released, or disposed of. Defendants cannot rebrand mandatory duties as "discretion" by simply failing to perform them.

33. The deposition admissions underscore the point. The County's designee admitted: there was no annual evidence audit and no required trainings; he cannot identify who had the keys or access to the storage location; he cannot identify where the property was kept or who maintained it; and Plaintiffs were never provided a written inventory/receipt. Those are not judgment calls—they are a total failure to perform basic custodial and notice duties, and they create genuine disputes of material fact that alone preclude summary judgment on immunity

34. Even if Defendants ignore the ministerial-duty problem, the constitutional rules were clearly established long before this search: officers may not seize property outside the warrant's

scope; may not convert seized property into a private-storage/free-for-all; and may not deprive owners of property without due process. On the County's own admissions, qualified immunity cannot be resolved as a matter of law on this record

35. Moreover, the Court must view disputed facts in Plaintiffs' favor at this stage. The record supports reasonable inferences of improper purpose, lack of probable cause for specific items, and a pretextual use of law enforcement to accomplish a private recovery. Qualified immunity cannot be used to resolve those disputes.

## Monell

36. Municipal liability attaches where an official policy, custom, or final policymaker decision is the moving force behind the constitutional violation. Monell, 436 U.S. at 694. In Texas, the sheriff is the County's final policymaker for law enforcement and evidence-handling functions. Turner v. Upton County, 915 F.2d 133 (5th Cir. 1990).

37. Here, Ingram admitted the County lacked the means and facilities to transport and store major-evidence seizures, and that this deficiency drove the decision to use Snellgrove's trucks and warehouse. That is evidence of a County policy or custom of inadequate resource allocation that predictably produces constitutional violations when the County conducts large seizures. It also supports ratification. A final policymaker who approves a subordinate's decision and the basis for it makes that decision municipal policy. City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

## Spoliation

38. Defendants' inability to account for critical video evidence creates additional disputes and supports spoliation-related inferences. The missing recordings are uniquely probative of the scope of seizure, who identified items, and the level of officer supervision versus private direction. At minimum, the absence of a reliable evidentiary record on these points precludes summary judgment.

## State-Law Immunity / Texas Tort Claim Act

39. If Defendants seek dismissal of Plaintiffs' state-law claims on immunity grounds, the limited-discovery admissions create fact disputes that defeat dismissal. Defendants admit Snellgrove furnished trucks to help transport the seized property. The TTCA waives immunity for property damage proximately caused by the operation or use of a motor-driven vehicle. Tex. Civ. Prac. & Rem. Code § 101.021(1). A jury can find the loss and conversion of Plaintiffs' property arose from the vehicle-enabled transport to a private warehouse and the resulting loss of County custody.

## CONCLUSION

40. The post-motion discovery has dismantled Defendants' assertion of a routine, statute-compliant investigation. Sheriff Ingram's sworn testimony establishes that Martin County did not merely execute a warrant; it "conscripted" a private accuser to identify, seize, transport, and store a "truckload" of property - far exceeding the two items authorized by the magistrate - because the County lacked the "means" to do so itself. The conflict of interest inherent in the purported property owner being the one entrusted to store property in dispute pending

resolution after being conscripted into being a state actor is so egregious that is shocks the conscious.

41. Defendants admit they bypassed the mandatory judicial process required by Texas Code of Criminal Procedure Article 18.10 and the Due Process Clause, handing Plaintiffs' property to the complaining witness without a single court order, hearing, or independent verification of ownership. These admissions create legally fatal disputes regarding the scope of the seizure, the validity of the "plain view" defense, and the existence of a resource-driven municipal custom that directly caused the violation of Plaintiffs' rights

42. Because a reasonable jury could find that Defendants delegated their constitutional police powers to an interested private party and intentionally stripped Plaintiffs of due process, Defendants are not entitled to qualified immunity or summary judgment. Plaintiffs respectfully request that the Court deny the Motion in its entirety.

## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF date stamps I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully Submitted,

/s/ Kurt Mueller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133

The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110

kurt@kurtmuellerpllc.com