**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN** | § | |
| | § | |
| **vs.** | § | |
| | § | **NO:  7:25-cv-00245** |
| **MARTIN COUNTY SHERIFF'S** | § | |
| **DEPARTMENT, BRAD INGRAM,** | § | |
| **ANDERS DAHL, KELSEY BROWN,** | § | |
| **RORY GAMMONS, AND** | § | |
| **WESLEY PHELPS** | § | |

**DEFENDANT ANDERS DAHL'S RESPONSE
TO PLAINTIFFS' DISCOVERY REQUESTS**

TO:    Austin Hamblin and Kiska Hamblin, by and through their attorney, Kurt Mueller

NOW COMES, Defendant Dahl and serves these responses to Plaintiffs' discovery 2nd discovery requests, such responses being for the purpose of this action only, and which are attached.

For any document produced with responses, Defendant object to any Notice that seeks to generally authenticate, without particularity, any documents produced by any party in discovery. Such notice is unduly broad and lacks specificity because it fails to set out the particular documents for which authentication is sought. Plaintiffs should identify which documents Plaintiffs seek to authenticate by providing a title and short description of each document. Defendant further reserves the right to object once specific items are identified.

Respectfully submitted,

*/s/ Denis Dennis*
DENIS DENNIS
State Bar No. 05655566
ddennis@kmdfirm.com

OF

---

KELLY, MORGAN, DENNIS,
CORZINE & HANSEN, P.C.
P.O. Box 1311
Odessa, Texas  79760-1311
(432) 367-7271
FAX:  (432) 363-9121
ATTORNEYS FOR DEFENDANTS
MARTIN COUNTY SHERIFF'S
DEPARTMENT, BRAD INGRAM,
ANDERS DAHL, KELSEY BROWN,
RORY GAMMONS, AND
WESLEY PHELPS

## CERTIFICATE OF SERVICE

I certify that on the 20th day of March, 2026, a true and correct copy of the above and foregoing was sent to the Plaintiffs' and Co-Defendant's counsel via efiling.

*/s/ Denis Dennis*
DENIS DENNIS

## ANSWERS TO INTERROGATORIES

Interrogatory No. 1 (Your Training on Search Warrants and Seizure): Describe all training you personally received, at any time before May 17, 2023, on the following subjects:

(a)    executing search warrants, including limitations on the scope of items that may be seized under a warrant;
(b)    the Fourth Amendment requirement that seizures not exceed the scope of a warrant;
(c)    the "plain view" doctrine and its prerequisites; and
(d)    the proper handling, inventory, and disposition of seized property. For each training, state the date or timeframe, the form (academy, in-service, field training, written directive, etc.), and who provided it.

**ANSWER:    I went to a 16-hour intermediate arrest, search and seizure training in 1999.  I also received training in 1991 at the Texas Peace Officer Academy.**

Interrogatory No. 2 (Your Knowledge of the Warrant Before and During the Search): State whether you personally read the Warrant before or during the Search. If so, state when you read it and describe your understanding of what items the Warrant authorized you to seize. If you did not read the Warrant, explain why not and describe what, if anything, you were told about the scope of the Warrant and by whom.

**ANSWER:    I worked on investigation and was the affiant for the search warrant.**

Interrogatory No. 3 (Your Role and Actions During the Search): Describe in detail everything you personally did during the Search on May 17, 2023, from the time you arrived at Plaintiffs' property to the time you departed (including any travel to Snellgrove's Barn to store seized items). Include:

(a)    when you arrived at and departed from each location;
(b)    your assigned role or task;
(c)    which areas of Plaintiffs' property you entered or searched; (d) what items, if any, you personally identified, collected, moved, or seized; and (e) what directions or instructions you received from any  other person (including any supervisor, fellow officer, or Snellgrove) about what to seize or where to search.

**ANSWER:    With my body camera activated, I made the initial contact with Mr. Hamblin at his residence. I advised Mr. Hamblin I had a search warrant for the property.  I read Mr. Hamblin his Miranda warnings and informed him of the investigation.  I asked for Mr. Hamblin's assistance in showing me what Snap-On property was at his residence.  Mr. Hamblin was cooperative and after the property had been relocated to the Snellgrove barn, I met Mr. Snellgrove there, took video of the property and advised Mr. Snellgrove he was not to dispose of any of the property**

**until the District Attorney authorized it.**

Interrogatory No. 4 (Items You Seized That Were Not in the Warrant): Identify each item of property that you personally seized, helped seize, moved, or directed to be seized during the Search that was not specifically listed or described in the Warrant. For each such item:

(a)    describe what the item was;
(b)    state your specific reason or justification at the time for seizing it;
(c)    identify who, if anyone, told you to seize it or identified it as something that should be taken; and
(d)    state whether you believed the seizure was authorized by the Warrant, by the plain-view doctrine, or by some other legal basis, and explain the factual basis for that belief.

**ANSWER:    I do not recall personally seizing, helping to seize, moving or directing to be seized any property at the Hamblin location.**

Interrogatory No. 5 (Snellgrove's Presence and Role): Describe Snellgrove's involvement in the Search as you personally observed it, including:

(a)    whether Snellgrove was present at Plaintiffs' property during the Search;
(b)    whether Snellgrove identified, pointed out, or directed officers to specific items to be seized;
(c)    whether you personally relied on Snellgrove's identification or statements in deciding what to seize;
(d)    what steps, if any, you personally took to independently verify Snellgrove's claims of ownership before seizing any item he identified; and
(e)    whether you were aware of any documentation or proof of ownership that Snellgrove presented, and if so, what it   was.

**ANSWER:    Mr. Hamblin articulated to me his desire to speak with Mr. Snellgrove about the investigation.  Further, Mr. Hamblin gave his consent for Mr. Snellgrove to come to his residence during the execution of the search warrant.**

Interrogatory No. 6 (Objections or Requests to Leave): State whether, at any point during the Search, Kiska Hamblin (Mrs. Hamblin), Austin Hamblin (Mr. Hamblin) or any other person present at Plaintiffs' property:

(a)    told you, or told any officer within your hearing, to leave the property or to stop the Search;
(b)    objected to the seizure of specific items;
(c)    stated that certain items belonged to her or to Plaintiffs and not to Snellgrove; or
(d)    otherwise objected to protested what was occurring. For each such instance, describe what was said, by whom, to whom, and what you or other officers did in response.

**ANSWER:**    **At the location, I was interacting with Mr. Hamblin, and he never asked me to stop or leave.  In the shop area, I was present for a conversation between Mr. Snellgrove and Mr. Hamblin, during which Mr. Snellgrove told Mr. Hamblin the Snap-On property at the location needed to be at the barn in Stanton.  Mr. Hamblin agreed and consented for the property to be moved from his residence to the Snap-On barn in Stanton.**

Interrogatory No. 7 (Loading Items onto Snellgrove's Truck): State whether you personally helped load, carry, or transport any items of Seized Property onto Snellgrove's Truck or any vehicle belonging to or brought by Snellgrove. If so:

(a)    identify each item you helped load;

(b)    state who directed you to load items onto Snellgrove's Truck rather than into a law-enforcement vehicle or evidence storage;

(c)    state whether you understood at the time that items being placed on Snellgrove's Truck were being released directly to Snellgrove rather than being taken into law enforcement custody; and

(d)    describe any concerns you had about this procedure and whether you raised those concerns with anyone.

**ANSWER:**    **I do not recall personally assisting in loading, carrying, or transporting items to the Snellgrove truck.**

Interrogatory No. 8 (Storage of Seized Property at Snellgrove's Barn): State whether you traveled to, were present at, or participated in the transport of Seized Property to the Barn (located at or near Snellgrove's residence). If so, describe in detail:

(a)    when you arrived at and departed from the Barn;

(b)    what items of Seized Property were unloaded at the Barn and who unloaded them;

(c)    your specific role, whether you helped unload items from a vehicle, carried or placed items inside the Barn, directed where items should be placed, or supervised others doing so;

(d)    who decided that Seized Property would be stored at Snellgrove's Barn rather than at a law-enforcement evidence facility, and when and how that decision was communicated to you;

(e)    whether any inventory, log, or written record was created at the Barn documenting which items were being stored there;

(f)    whether any photographs or video were taken of the items as they were unloaded or placed in the Barn, and if so, by whom and what happened to that documentation;

(g)    whether any receipt, acknowledgment, or chain-of-custody form was prepared and signed by Snellgrove (or anyone else) accepting custody of or responsibility for the items stored at the Barn;

(h)    whether you had any concerns about storing seized evidence at a location controlled by the complainant rather than in a secure law-enforcement

facility, and if so, whether you raised those concerns with anyone and what response you received; and

(i)    whether anyone at the scene or afterward suggested that the items should instead be transported to the Martin County Sheriff's Department evidence room, to the Howard County Sheriff's Department (in whose jurisdiction Plaintiffs reside), or to any other lawenforcement evidence facility, and if so, what was said and what decision was made.

**ANSWER:    I did not assist or participate in transporting the items from Mr. Hamblin's residence to Snellgrove's barn.**

Interrogatory No. 9 (Objections to the Seizure or Handling of Property): State whether, at any time during or after the Search, you or any other person in your presence:

(a)    questioned whether items being seized were within the scope of the Warrant;
(b)    objected to the manner in which Seized Property was being handled, loaded, stored, or transported;
(c)    suggested that items should be stored in a law-enforcement evidence facility rather than being left at the Barn or placed on Snellgrove's Truck;
(d)    suggested contacting another law-enforcement agency or the county where Plaintiffs reside for assistance with evidence storage; or
(e)    expressed any concern that the seizure or disposition of property was not being done properly. For each such instance, identify the person, describe what was said, and what response was given.

**ANSWER:    Neither Mr. Hamblin nor any other person ever protested to seizure of the property or it's transport to the Snellgrove barn.  Further, I observed Mr. Hamblin assisting Snellgrove's employees loading the property into Snellgrove's truck.**

Interrogatory No. 10 (Your Involvement in Disposition of Seized Property): Describe any role you personally played, after the day of the Search, in the handling, storage, transfer, release, return, or other disposition of any Seized Property. Include any actions you took or decisions you made regarding:

(a)    cataloging or inventorying Seized Property;
(b)    transferring or releasing any item to Snellgrove or any third party;
(c)    returning any item to Plaintiffs; or
(d)    selling, auctioning, destroying, or otherwise disposing of any item. For each action, state the date, what you did, and on whose authority.

**ANSWER:    I met with Mr. Snellgrove at his barn and advised Mr. Snellgrove that he was not to dispose of any of the property until authorized by the District Attorney.  I asked Mr. Snellgrove to check his Snap-On database in an attempt to match the seized items to inventory belonging to his Snap-On business.**

Interrogatory No. 11 (Your Communications with Plaintiffs About Their Property): Describe all communications you personally had with either Plaintiff (or their agents or attorneys) regarding the status, custody, or return of the Seized Property. For each communication, state: the date, the medium (in-person, phone, email, letter, etc.), what you told Plaintiffs about their property, and whether you told them that any of their property had been given to Snellgrove or was no longer in law-enforcement custody.

**ANSWER:    I was wearing my body camera and it was activated and would have recorded all communications.**

Interrogatory No. 12 (Body-Worn Camera and Vehicle Camera Recordings): State:

    (a)    whether you were wearing or carrying a body-worn camera on May 17, 2023;

    (b)    if so, whether it was activated during the Search, and for what portion of the Search it was recording;

    (c)    if it was not activated, explain why;

    (d)    whether your patrol vehicle or any vehicle you used on May 17, 2023 was equipped with a dashboard camera or other vehicle-mounted recording device, and if so, whether it was recording;

    (e)    what you know about the current location, custody, and status of any body-worn camera or vehicle camera footage from the Search;

    (f)    whether you are aware of any such footage having been reviewed, copied, preserved, deleted, overwritten, or lost, and if so, describe the circumstances; and

    (g)    identify any other officer or person whom you know or believe was recording audio or video during the Search.

**ANSWER:    Yes, I was wearing body cam.  I was the only one.**

---

## RESPONSE TO REQUESTS FOR PRODUCTION

RFP No. 1 (Seized-Property Inventories and Logs): Produce all inventories, evidence logs, property tags, receipts, vouchers, or lists of items seized during the Search, including any copy provided to Plaintiffs and any inventory you personally prepared or signed.

**RESPONSE:**          **Refer to my case report and body worn camera video.**

RFP No. 2 (Chain-of-Custody Records): Produce all chain-of-custody records for each item of Seized Property, including intake logs, evidence and property room entries, transfer forms, and database printouts documenting the movement of each item from seizure to the present.

**RESPONSE:**          **Refer to my case report and body worn camera video.**

RFP No. 3 (Body-Worn Camera Footage): Produce all body-worn camera footage recorded by you on May 17, 2023 that relates to the Search, the seizure of property, the loading of items onto any vehicle, the transport of items to Snellgrove's Barn, the unloading or placement of items at the Barn, or any interaction with Plaintiffs, Snellgrove, or other officers at Plaintiffs' property or the Barn. If such footage no longer exists, state when it was deleted or overwritten, by whom, and under what retention policy.

**RESPONSE:**

RFP No. 4 (Vehicle Camera and Other Audio/Video): Produce all dashboard camera, vehiclemounted camera, or other audio or video recordings in your possession, custody, or control that document the Search, the transport of Seized Property, or any interaction with Plaintiffs regarding the Seized Property.

**RESPONSE:**          **I was driving a unmarked CID pickup that was not outfitted with recording devices.**

RFP No. 5 (Photographs of the Search, Seized Property, and the Barn): Produce all photographs taken by you or in your possession relating to the Search, the Seized Property, any photographs depicting items on or near Snellgrove's Truck, and any photographs or video taken at the Barn depicting items being unloaded, placed in storage, or otherwise documented at that location.

**RESPONSE:**          **Refer to my case report and body worn camera video.**

RFP No. 6 (Communications with Snellgrove and Nichols): Produce all communications between you and Snellgrove or Nichols from April 2023 to present pertaining to Plaintiffs, the allegations of theft, the Search, the identification of items to be seized, or the disposition of the Seized Property.

**RESPONSE:**          **Refer to my case report and body worn camera video.**

RFP No.7 (Communications with Plaintiffs Regarding Property): Produce all documents and communications between you and either of the Plaintiffs (or their attorneys or representatives) concerning the Seized Property or its return.

**RESPONSE:** **Refer to my case report and body worn camera video, as well as the District Attorney's case file.**

RFP No. 8(Internal Communications About the Search and Property): Produce all internal communications (emails, texts, messages, memos, reports) between you and any other Defendant or any Sheriff's Department employee regarding the Search, the Seized Property, the decision to release property to Snellgrove, or any request by Plaintiffs for return of their property.

**RESPONSE:** **I left Martin County employment in July 2024, and I am not in possession of or have access to the requested information.**

RFP No. 9 (Reports, Narratives, and Witness Statements): Produce all offense reports, incident reports, case reports, investigation narratives, supplemental reports, and witness statements that you authored, contributed to, or reviewed relating to the alleged theft, the Search, or the Seized Property.

**RESPONSE:** **Refer to my case report and body worn camera video.**

RFP No. 10 (Release, Transfer, and Return Documents): Produce all documents evidencing any release, transfer, or return of Seized Property to any person, including release forms, receipts, and any approvals or authorizations you obtained or were aware of.

**RESPONSE:** **Refer to my case report and body worn camera video.**

RFP No. 11 (Your Training Records): Produce all records of training you received (from 2018 topresent) regarding:

(a)   execution of search warrants and the scope of lawful seizures;
(b)   the Fourth Amendment;
(c)   the handling, inventory, custody, and disposition of seized property; and
(d)   chain of-custody procedures.

**RESPONSE:** **Refer to Martin County's employee file.**

RFP No. 12 (Policies You Were Subject To): Produce all written policies, procedures, general orders, or guidelines of the Sheriff's Department that were in effect on May 17, 2023 and that governed:

(a)   the execution of search warrants and the scope of seizures;
(b)   the handling, storage,and disposition of seized property;
(c)   the release or return of property to owners or claimants; and

(d)      body-worn camera activation, retention, and review.

**RESPONSE:**          **I am not able to access any Martin County material.**

RFP No. 13 (Criminal Disposition and DA Communications): Produce all documents reflecting the dismissal of criminal charges against Austin Hamblin and all communications between you and the District Attorney regarding the investigation, prosecution, dismissal, or the disposition or return of the Seized Property.

**RESPONSE:**          **Refer to the District Attorney's case file.**

RFP No. 14 (Transport and Loading Records): Produce all documents reflecting the vehicles used to transport Seized Property from Plaintiffs' residence, including unit numbers, fleet assignments, towing or haul tickets, load sheets, and any dispatch, CAD, or GPS records showing vehicle routing on May 17, 2023.

**RESPONSE:**          **Refer to my case report and body worn camera video.**

RFP No. 15 (Defense Materials): Produce all documents you intend to rely upon to support any defense in this action, including qualified immunity.

**RESPONSE:**          **Previously produced or filed.**

---

## REQUESTS FOR ADMISSION TO EACH INDIVIDUAL DEFENDANT

RFA No. 1: Admit that on or about May 17, 2023, you participated in a search of Plaintiffs' residence.

**RESPONSE:        ADMIT.**

RFA No. 2: Admit that Brian Snellgrove was present at Plaintiffs' residence during the Search.

**RESPONSE:        ADMIT.**

RFA No. 3: Admit that during the Search, Snellgrove identified specific items he claimed were his stolen property, and officers seized items based in whole or in part on Snellgrove's identification.

**RESPONSE:        ADMIT.**

RFA No. 4: Admit that, before the Search began, you did not personally read the Warrant in its entirety.

**RESPONSE:        DENY.**

RFA No. 5: Admit that during the Search, one or more items of property were seized that were not listed or described in the Warrant.

**RESPONSE:        ADMIT.**

RFA No. 6: Admit that you personally seized, helped seize, or directed the seizure of at least one item that was not listed in the Warrant.

**RESPONSE:        DENY.**

RFA No. 7: Admit that Snellgrove was permitted to walk through Plaintiffs' property during the Search and point out items he claimed belonged to him.

**RESPONSE:        ADMIT.**

RFA No. 8: Admit that you did not independently verify Snellgrove's claimed ownership of any item before it was seized.

**RESPONSE:        DENY.**

RFA No. 9: Admit that during the Search, Kiska Hamblin or Austin Hamblin told you or another officer within your hearing to stop the Search or to leave the property.

**RESPONSE:        DENY.**

RFA No. 10: Admit that Kiska Hamblin or Austin Hamblin objected to the seizure of one or more specific items during the Search, asserting that the items belonged to Plaintiffs.

**RESPONSE:        DENY.**

RFA No. 11: Admit that during or immediately after the Search, items of Seized Property were loaded onto Snellgrove's Truck.

**RESPONSE:        ADMIT.**

RFA No. 12: Admit that you personally helped load, carry, or place items onto Snellgrove's Truck.

**RESPONSE:        DENY.**

RFA No. 13: Admit that no supervisor or officer obtained a court order authorizing the direct release of Seized Property to Snellgrove at the scene.

**RESPONSE:        ADMIT.**

RFA No. 14: Admit that after the Search, Seized Property was transported to and stored at a barn located at or near Snellgrove's residence rather than at a law-enforcement evidence facility.

**RESPONSE:        ADMIT.**

RFA No. 15: Admit that you were present at or participated in the unloading or placement of Seized Property at Snellgrove's Barn.

**RESPONSE:        DENY.**

RFA No. 16: Admit that no written inventory, receipt, acknowledgment, or chain-of-custody form was prepared at the Barn documenting which items were stored there or transferring custody to Snellgrove.

**RESPONSE:        ADMIT.**

RFA No. 17: Admit that on May 17, 2023, you were equipped with or had access to a body-worn camera.

**RESPONSE:        ADMIT.**

RFA No. 18: Admit that you did not activate your body-worn camera for the entirety of the Search, or that it was not activated at all during the Search.

**RESPONSE:        DENY.**

RFA No. 19: Admit that your patrol vehicle or the vehicle you used on May 17, 2023 was equipped with a dashboard or vehicle-mounted camera.

**RESPONSE:       DENY.**

RFA No. 20: Admit that you do not know the current location or status of all body-worn camera and vehicle camera footage from the Search.

**RESPONSE:       DENY.**

RFA No. 21: Admit that the Sheriff's Department (or its agents) released or transferred possession of some Seized Property to Snellgrove without a court order or judicial authorization.

**RESPONSE:       ADMIT.**

RFA No. 22: Admit that Plaintiffs were not notified or given an opportunity to contest the release of Seized Property before it was given to Snellgrove.

**RESPONSE:       DENY.**

RFA No. 23: Admit that Plaintiffs did not consent to the transfer or disposition of any Seized Property to Snellgrove.

**RESPONSE:       DENY.**

RFA No. 24: Admit that as of the filing of this lawsuit, Plaintiffs had not received back all property seized from their home on May 17, 2023.

**RESPONSE:       ADMIT.**

RFA No. 25: Admit that you cannot produce a complete chain-of-custody record identifying every custodian and transfer for each item seized.

**RESPONSE:       ADMIT.**

RFA No. 26: Admit that you received no written authorization from a prosecutor, judge, or magistrate before any Seized Property was released to Snellgrove.

**RESPONSE:       ADMIT.**

RFA No. 27: Admit that you did not prepare or sign a written inventory at the scene that was provided to Plaintiffs listing all items seized.

**RESPONSE:       DENY.**

RFA No. 28: Admit that at the time of the Search, you knew or should have known that seizure of property not described in a warrant, without an independent legal justification, violates the Fourth Amendment.

**RESPONSE:**        **ADMIT.**