**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,**<br>　　*Plaintiffs and Counter Defendants,*<br><br>**v.**<br><br>**MARTIN COUNTY SHERIFF'S DEPARTMENT, BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, RORY GAMMONS, WESTON PHELPS,** each in their individual capacities,<br>　　*Defendants,*<br><br>**v.**<br><br>**BRIAN SNELLGROVE,**<br>　　*Defendant and Counter Plaintiff.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **7:25-CV-00245-RCG** |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

1.　　Defendants Martin County, Texas, Brad Ingram, Anders Dahl, Kelsey Brown, Rory Gammons, and Weston Phelps, ("Defendants"), file this Response to Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs' motion seeks liability rulings on Fourth Amendment, procedural due process, civil-conspiracy, and municipal-liability theories arising from the May 17, 2023, execution of a search warrant at the Hamblin residence. The motion should be denied because Plaintiffs' requested rulings depend on disputed facts, credibility determinations, and unresolved evidentiary inferences concerning the warrant, the scope of the search, consent, plain view, ownership, property handling, causation, and each Defendant's personal participation. Defendants incorporate and rely upon the arguments and evidence submitted with their pending Motion for

Summary Judgment [docket number 26], appendix [docket number 26-1], and reply [docket number 36]; the evidence contained in Plaintiffs' Doc. 78 submission and attachments, [docket numbers 78, 78-1 through 78-14]; and the deposition testimony of Austin Hamblin and Kiska Hamblin attached in the appendix to this response.

## I. SUMMARY OF RESPONSE

2.      The dispositive issue is not whether Plaintiffs can recite portions of the record favorable to them. The issue is whether they have established, beyond genuine dispute, every fact necessary to obtain judgment as a matter of law on liability. They have not. The record presents competing accounts concerning what Austin Hamblin and Kiska Hamblin said and did during the search; whether any consent was given, limited, or withdrawn; what property was visible to officers; what Snellgrove identified as stolen; what officers reasonably understood at the scene; whether Plaintiffs owned the property seized; whether Plaintiffs invoked available post-deprivation remedies; whether any Defendant personally participated in a constitutional deprivation; and whether any Martin County policy was the moving force behind any violation. Plaintiffs' motion therefore asks the Court to do what Rule 56 forbids: weigh testimony, resolve disputed inferences, and enter liability findings on a contested record.

## II. STATEMENT OF MATERIAL FACT DISPUTES

3.      The material disputes are substantial. The warrant was issued by Judge Shane R. Seaton upon an affidavit prepared by Deputy Anders Dahl during an investigation initiated after Brian Snellgrove reported alleged theft of Snap-On inventory. [Docket number 26-1, page 4–8]. The warrant specifically incorporates the affidavit for search warrant and identifies a Snap-On Plasma Cutter Model 301 and a Snap-On Air Compressor. [Docket number 26-1, page 4–8]. Plaintiffs contend the later seizure exceeded the warrant; Defendants contend that the warrant, consent, the officers' reasonable understanding at the scene, Snellgrove's identifications, and the

plain-view doctrine preclude Plaintiffs from obtaining summary judgment.

4.      Ownership is likewise disputed. Austin Hamblin testified that he acquired tools through Snap-On credit purchases, gifts, personal purchases, and other sources connected to his work. *See e.g.*, Ex. A. Kiska Hamblin testified that certain property belonged to her or was jointly owned. *See e.g.*, Ex. B. Snellgrove claimed that numerous items belonged to Snellgrove Enterprises. [*See e.g.*, docket number 78-2 *and* docket number 26-1 Ex. E Video Footage]. The record includes competing evidence concerning financed purchases, alleged gifts, business inventory, trade-ins, customer returns, promotional items, and property allegedly connected to Snellgrove's franchise. *See* Exs A & B; [docket number 78-2; docket number 26-1 Ex. E Video Footage]. These ownership disputes are material to Plaintiffs' Fourth Amendment, due process, and damages theories.

5.      Moreover, Plaintiffs' purported affidavit by Warran Kneipkamp doesn't prove ownership of anything. [Docket number 78-7]. The affidavit executed by Warren Kniepkamp and notarized by Lupe Loving on May 12, 2025, is invalid under New Mexico law because the notarial officer's official stamp fails to include the required official notary seal. N.M. Stat. Ann. § 14-14A-16, N.M. Stat. Ann. § 14-14A-14. New Mexico Statute § 14-14A-16 mandates that the official stamp of a notarial officer "include the notarial officer's name . . . notary public commission number and date of commission expiration, the notarial officer's official notary seal and other information required by the secretary of state," and § 14-14A-14(B) requires that "[i]f a notarial act regarding a tangible record is performed by a notary public, an official stamp shall be affixed to or embossed on the certificate." N.M. Stat. Ann. § 14-14A-16, N.M. Stat. Ann. § 14-14A-14. The implementing regulation, 12.9.3.14 NMAC, further specifies that a commissioned notary public's official stamp "shall also include the words 'Notary Public' and 'State of New Mexico'"

and "include the notarial officer's official notary seal, as defined in Subsection L of 14-14A-2 NMSA 1978," which defines "official notary seal" as "the great seal of the state of New Mexico, unless the secretary of state has adopted a seal specific for use by notarial officers." § 12.9.3.14. OFFICIAL STAMP. Here, the notary stamp on the Kniepkamp affidavit contains only text— "State of New Mexico, Notary Public, Lupe Loving, Commission No. 1101949, May 12, 2025"— but displays no seal or emblem of the State of New Mexico whatsoever. Because the statute expressly requires the official stamp to include both identifying information and the official notary seal, and because the affidavit bears no such seal, the notarization is facially deficient and fails to comply with the mandatory statutory requirements for a valid notarial act in New Mexico. N.M. Stat. Ann. § 14-14A-16, N.M. Stat. Ann. § 14-14A-14, § 12.9.3.14. OFFICIAL STAMP. Accordingly, the affidavit should be deemed invalid and excluded from evidence or afforded no evidentiary weight.

6.    Finally, the conduct of the search is disputed. Austin Hamblin and Kiska Hamblin gave deposition testimony concerning objections, requests to see the warrant, alleged pressure, the presence of children, and the locations searched. Exs A & B. Defendants dispute Plaintiffs' characterization of those events and rely on the body-worn camera evidence, officer testimony, discovery responses, and other items in the record relevant to these topics. [Docket numbers 78-1–78-5; 78-9–78-14; docket number 26-1 Ex. E Video Footage].

### III. ARGUMENT

**A.  Plaintiffs are not entitled to summary judgment under Rule 56.**

7.    Summary judgment is proper only when the record shows no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute exists when the evidence would permit a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). The Court must view the record in the light most favorable to Defendants and draw all reasonable inferences in their favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

8.    Plaintiffs' motion depends on disputed testimony and disputed inferences concerning what the officers saw, what Plaintiffs said, what Snellgrove identified, what property Plaintiffs owned, and what each Defendant personally did. Those disputes are not peripheral. They are the elements of Plaintiffs' claims.

9.    Plaintiffs ask the Court to accept their version of disputed facts as conclusive, while disregarding contrary evidence in the appendix to Defendants' Motion for Summary Judgment, deposition testimony, body-camera evidence, officer evidence, and discovery responses. Rule 56 does not permit that approach. Where ownership, consent, scope, plain view, personal participation, and causation remain disputed, liability cannot be entered as a matter of law.

10.    Plaintiffs' motion fails at the threshold because the record contains genuine disputes of material fact on every liability theory asserted.

**B.  Plaintiffs are not entitled to summary judgment on their Fourth Amendment claim.**

11.    A warrant issued by a neutral magistrate carries a presumption of validity, and officers may rely in good faith upon such a warrant unless the affidavit contains knowing or reckless falsities, the magistrate abandoned his judicial role, the affidavit lacked indicia of probable cause, or the warrant was facially deficient. *United States v. Leon*, 468 U.S. 897, 921–25 (1984); *see also United States v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013). The plain-view doctrine permits seizure when the officer is lawfully positioned to view the object, its incriminating nature is immediately apparent, and the officer has lawful access to it. *Horton v. California*, 496 U.S. 128, 133–36 (1990). Consent may be limited or withdrawn, but withdrawal must be clearly communicated. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 426 (5th Cir.

2008); *United States v. Ho*, 94 F.3d 932, 936 n.5 (5th Cir. 1996); *United States v. Waller*, 105 F. Supp. 3d 683, 700 (W.D. Tex. 2015).

12.     Plaintiffs cannot obtain judgment as a matter of law merely by arguing that the written warrant identified two items. The constitutional inquiry also requires consideration of the officers' lawful presence, their good-faith reliance on the warrant, what was visible during execution, what Austin Hamblin and Kiska Hamblin said or did, what Snellgrove and Austin Hamblin identified as stolen property, and whether a reasonable officer could believe additional items were subject to seizure under plain view or consent. Those issues are fact-intensive and disputed.

13.     Judge Seaton issued the warrant upon Dahl's affidavit. [Docket number 26-1, pages 4–8]. Plaintiffs have not established, as an undisputed fact, that Dahl knowingly or recklessly submitted false information, that Judge Seaton abandoned his judicial role, or that all officers were unreasonable in relying on the warrant. Plaintiffs also have not eliminated disputes concerning plain view. The evidence includes testimony and materials concerning Austin Hamblin and Snellgrove's identification of allegedly stolen items, [*see e.g.*, Ex. A; docket number 78-2; and docket number 26-1 Ex. E Video Footage]; the presence of Snap-On property [*see e.g.* Exs A & B; docket number 26-1 Ex. E Video Footage]; the discovery of contraband, stolen property, and/or items useful as evidence of a crime[1] [*see e.g.* docket numbers 26-1, 78-1, 78-2]; the officers'

---

[1] *See Alexander v. Arceneaux*, 172 F.4th 455, 461 (5th Cir. 2026), which states as follows:

> The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband." *Id.* at 826 (citing *Arizona v. Hicks*, 480 U.S. 321, 326-27, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987)). "Probable cause does not require certainty." *Id.* Rather, it "is a flexible, common-sense standard" that "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." *Brown*, 460 U.S. at 742 (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543, T.D. 3686 (1925)). "[I]t is not necessary that the officer know that the discovered res *is* contraband or evidence of a crime, but only that there be 'a "practical, nontechnical" probability that incriminating evidence

understanding of the theft investigation [*see e.g.* docket numbers 26-1 Exs D & E; docket numbers 78-9–78-14]; and the body-camera record [docket number 26-1 Ex. E]. Nor have Plaintiffs eliminated disputes concerning consent. Austin Hamblin's and Kiska Hamblin's deposition testimony must be weighed against other evidence concerning the timing, clarity, location, and scope of any consent, objection, limitation, or withdrawal. Those determinations require credibility findings and contextual evaluation, not summary adjudication for Plaintiffs.

14.    Plaintiffs' Fourth Amendment theory fails independently as to Weston Phelps because the evidence establishes that he did not participate in the search and seizure [docket number 78-13]. Personal participation is required. Plaintiffs cannot obtain a liability ruling against a Defendant who did not participate in the challenged conduct.

15.    Plaintiffs are not entitled to summary judgment on the Fourth Amendment claim because the record contains genuine disputes concerning warrant reliance, plain view, consent, ownership, personal participation, and the reasonableness of each Defendant's conduct.

> **(1) *Creamer v. Porter* is distinguishable; *Alexander v. Arceneaux* confirms that Plaintiffs are not entitled to summary judgment.**

16.    Plaintiffs' reliance on *Creamer v. Porter* is misplaced because Creamer condemns a materially different kind of search: officers obtained a warrant for two specifically described stolen televisions, found both televisions within approximately fifteen minutes, and then continued searching the business, office, private residence, drawers, cabinets, safe, and apartments for nearly three additional hours, ultimately seizing twenty-nine items despite the absence of additional indicia of criminality. *Creamer v. Porter*, 754 F.2d 1311, 1314–19 (5th Cir. 1985). The Fifth

---

is involved.'" *United States v. Espinoza*, 826 F.2d 317, 319 (5th Cir. 1987) (quoting *Brown*, 460 U.S. at 742-43).

*Alexander v. Arceneaux*, 172 F.4th 455, 461 (5th Cir. 2026).

Circuit held that the plain-view and nexus exceptions did not justify an "extended search and seizure of objects at random," because the other items had no sufficient connection to the televisions identified in the warrant and did not independently possess incriminatory character. *Id.* at 1318–19. But the Fifth Circuit's recent decision in *Alexander v. Arceneaux* confirms the limiting principle that controls here: officers lawfully executing a warrant may seize unlisted property in plain view when the totality of the circumstances gives them probable cause to believe that the property is stolen, and probable cause does not require certainty. *Alexander v. Arceneaux*, 172 F.4th 455, 460–63 (5th Cir. 2026). Under *Alexander*, the "immediately apparent" requirement is satisfied when the facts available to the officers would warrant a person of reasonable caution in believing that the property may be contraband, stolen property, or evidence of a crime. *Id.* at 460–62.

17.    *Alexander* expressly distinguishes *Creamer* in a way that materially benefits Defendants. In *Creamer*, the only basis for seizing additional property was the officers' discovery of two stolen televisions in a used-merchandise business; the remaining property was seized without item-specific criminal indicia, without a sufficient nexus to the property described in the warrant, and after the warrant's objective had been satisfied. *Creamer*, 754 F.2d at 1318–19. In *Alexander*, by contrast, the officers possessed pre-search tips that stolen electronics and appliances were located in the residence, observed items consistent with those tips while lawfully present under a warrant, considered the quantity and manner of storage in light of officer experience, and confirmed the reported stolen-property context during the search. *Alexander*, 172 F.4th at 457–63. The Fifth Circuit held that those facts supplied probable cause for a plain-view seizure even though the first warrant did not list the seized electronics or appliances. *Id.* at 459–63.

18.    This case is materially closer to *Alexander* than *Creamer*. Plaintiffs' argument

treats the warrant's reference to the plasma cutter and air compressor as though it automatically converted the remainder of the search into the random rummaging condemned in *Creamer*. That is not the rule. Here, unlike *Creamer*, the search arose from an ongoing theft investigation involving Snap-On inventory, alleged franchise property, disputed ownership, prior identification by Snellgrove, and officers' on-scene observations of property plausibly connected to the reported theft. [*See* docket number 26-1, page 4–8; 26-1 Exhibit D; 78-1; 78-4; 78-5]. Snellgrove's presence at the scene was not random or independently contrived; Austin specifically requested that Deputy Dahl call Snellgrove[2] and further admitted that items ultimately taken belonged to Snellgrove, which is reflected throughout the video footage included in Defendants' appendix. [Docket number 26-1, Exhibit E]. The record also includes disputed evidence concerning what Plaintiffs said, what Snellgrove identified, whether officers reasonably understood certain property to be stolen or evidence of theft, and whether any consent, acquiescence, limitation, or objection occurred. [Docket numbers 26-1, 78-1, 78-9–78-14]. Those circumstances materially resemble *Alexander*, where the Fifth Circuit rejected a Fourth Amendment challenge because the warrant supplied lawful presence, the property was visible during execution, and the officers had a practical, nontechnical probability that the items were stolen. *Alexander*, 172 F.4th at 460–63. At minimum, *Alexander* forecloses Plaintiffs' effort to transform *Creamer* into a categorical rule that officers may never seize unlisted property once a warrant names particular items. *See id.* at 462–63; *Creamer*, 754 F.2d at 1318–19.

19.     *Creamer* does not entitle Plaintiffs to summary judgment because it involved an indiscriminate search after the warrant's limited objective had been completed and after officers lacked any independent probable-cause basis for the additional seizures. *Creamer*, 754 F.2d at

---

[2] Austin Hamblin states at 26 minutes, 50 seconds, "Would you start calling him for me?" Anders Dahl responds at 26 minutes, 58 seconds, "I'll call him here in a second." [Docket number 26-1, Exhibit E, Video 1].

1318–19. *Alexander* is the better analogue and favors Defendants because it confirms that unlisted property may be seized when officers lawfully present under a warrant have probable cause, based on tips, observations, experience, and on-scene corroboration, to believe the property is stolen or evidence of a crime. *Alexander*, 172 F.4th at 460–63. Plaintiffs' Fourth Amendment theory therefore remains, at most, a disputed fact question for trial, not a basis for partial summary judgment.

### (2) Qualified immunity bars summary judgment against the individual defendants.

20.    Qualified immunity protects officials unless the plaintiff proves both a constitutional violation and that the right was clearly established in the particularized circumstances faced by the official. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The inquiry is not whether the right exists at a high level of generality, but whether existing law made the unlawfulness of the particular conduct apparent to a reasonable officer. "Because qualified immunity protects officers who 'reasonably but mistakenly' violate a plaintiff's constitutional rights, the deputies are entitled to qualified immunity if a reasonable person in their position 'would have believed that [their] conduct conformed to the constitutional standard in light of the information available to [them] and the clearly established law.'" *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)).

21.    Plaintiffs have not identified controlling authority clearly establishing that officers executing a warrant in a theft investigation violate the Fourth Amendment as a matter of law when they rely on a neutral magistrate's warrant, respond to property identified by Austin Hamblin and Brian Snellgrove, encounter disputed consent and objections, and confront disputed ownership claims at the scene.

22.    Even if Plaintiffs later prove a constitutional violation, the individual Defendants

---

are not subject to summary judgment where reasonable officers could differ concerning the scope of the warrant, the legal significance of Plaintiffs' statements, the apparent incriminating character of property, and the permissible reliance on Snellgrove's identifications. The qualified-immunity issue is further individualized. Plaintiffs must show what Ingram, Dahl, Brown, Gammons, and Phelps each did. They have not done so as a matter of undisputed fact, and Weston Phelps did not participate in the search and seizure. [Docket number 78-3].

23.    Qualified immunity independently precludes Plaintiffs' requested liability ruling against the individual Defendants.

## C. Plaintiffs are not entitled to summary judgment on procedural due process.

24.    A procedural due process claim requires a protected property interest and constitutionally inadequate process. [*See* docket number 36]. Pre-deprivation process is required where feasible. *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972). Post-deprivation process may be adequate where pre-deprivation process is impracticable. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984). Texas Code of Criminal Procedure Article 47.01a provides a procedure by which a person claiming an interest in allegedly stolen property may petition for a hearing to determine possession. Tex. Code Crim. Proc. Art. 47.01a. The Texas Supreme Court has recognized Chapter 47 as a remedial process for disputes over seized property. *City of Dall. v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011); *VSC*, 347 S.W.3d at 239.

25.    Plaintiffs' due-process theory assumes undisputed ownership and undisputed entitlement to immediate return of the property. The record does not support either assumption.

26.    Plaintiffs had actual knowledge that property had been seized, knew the executing officer and issuing magistrate, had access to counsel, and had statutory procedures available to test possession and ownership. [*See* docket number 36]. They did not obtain a ruling through Article 47.01a during the relevant period. [*See* docket number 36]. Their failure to invoke available post-

deprivation process defeats any contention that Defendants are liable as a matter of law for procedural due process. Further, the factual disputes over ownership and property handling prevent any summary determination that Plaintiffs possessed a clearly established property right to every item seized.

27.     Plaintiffs are not entitled to summary judgment on procedural due process because ownership remains disputed and adequate post-deprivation remedies were available.

**D.  Plaintiffs are not entitled to summary judgment on civil conspiracy.**

28.     A Section 1983 conspiracy requires proof of an agreement to commit an illegal act and an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). "Where the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property has long been approved by this Court and our common-law tradition." *Wilson v. Layne*, 526 U.S. 603, 611-12, (1999). If a search warrant is issued for the recovery of stolen property, law enforcement officers may invite the alleged owner of the property to the premises to help identify the items. *Zeek v. Gray Cty. Sheriff Office*, No. 2:20-CV-162-Z-BQ, 2021 U.S. Dist. LEXIS 174403, at *16 (N.D. Tex. 2021). This assistance is permissible because the civilian's presence is tied directly to the specific purpose justifying the warrant—recovering and identifying stolen property—and thus advances the authorized intrusion. *Brown v. Wilson Cty.*, No. SA-97-CA-1473-OG, 1999 U.S. Dist. LEXIS 23807, at *32-36 (W.D. Tex. 1999).

29.     Plaintiffs' conspiracy theory rests on coordination, relationships, and Snellgrove's presence at the search. That evidence does not establish, as a matter of law, an agreement to violate constitutional rights. Law-enforcement coordination with an alleged theft victim to identify property does not itself prove an unlawful meeting of the minds.

30.     The record permits, at minimum, the reasonable inference that officers asked

Snellgrove to assist because he was invited by Austin Hamblin and he claimed to own or identify stolen inventory [*see e.g.* docket number 26-1 Ex. E Video Footage]. Plaintiffs dispute that characterization, but the dispute itself defeats summary judgment. Plaintiffs also have not established an actual constitutional deprivation as a matter of law. Their Fourth Amendment and due-process theories remain disputed for the reasons stated above. Without an established constitutional deprivation and without undisputed proof of an agreement to violate rights, Plaintiffs cannot obtain summary judgment on conspiracy.

31.    The conspiracy claim is not susceptible to summary judgment in Plaintiffs' favor because agreement, state action, unlawful purpose, and actual deprivation remain genuinely disputed.

**E.  Plaintiffs are not entitled to summary judgment on municipal liability.**

32.    Municipal liability requires proof of an official policy or custom, policymaker knowledge, a constitutional violation, and a direct causal link showing that the policy or custom was the moving force behind the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). An official policy may be established in one of two ways: "1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers"; or "2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda v. City of Houston*, 291 F.3d at 328 (footnote omitted); see also *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023). A plaintiff cannot establish such a custom by relying on random acts or isolated incidents. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."). Rather, the plaintiff must plead a pattern

of conduct supported by "Sufficiently numerous prior incidents." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); see also *Pineda*, 291 F.3d at 329 n.12 (holding that eleven prior incidents similar to the alleged violation did not establish a pattern). That pattern must bear "similarity and specificity" to the constitutional injury alleged. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009). Stated differently, the plaintiff must allege "a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001).

33.     Nor is a policy or custom "official" unless it "results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). In Texas, the sheriff is a county's "final policymaker in the area of law enforcement." *Colle v. Brazos Cnty.*, 981 F.2d 237, 244 (5th Cir. 1993). A policymaker may have actual or constructive knowledge of the alleged policy or custom. *See Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 511 (5th Cir. 2022). Constructive knowledge exists only where the alleged "violations were so persistent and widespread that they were the subject of prolonged public discussion." *Pineda*, 291 F.3d at 330 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc)). Thus, the alleged custom must "have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (emphasis added) (quoting *Peterson*, 588 F.3d at 850).

34.     Plaintiffs have not identified an undisputed Martin County policy directing unconstitutional searches, seizures, property storage, or denial of process. Nor have they established a pattern of similar incidents. Their municipal-liability theory rests primarily on the

facts of this case, disputed property-handling evidence, and alleged omissions after the search. That is insufficient for judgment as a matter of law. The record supports Defendants' position that the search arose from a warrant issued by a neutral magistrate, not from an unconstitutional county policy. [*See e.g.*, docket numbers Docket number 26-1, page 4–8; docket number 26-1 Ex. E Video Footage; docket number 78-1; docket number 78-4, 78-5].

35.    The policy manual contained procedures concerning evidence, inventory, property handling, and body-worn cameras. [Docket number 78-8]. Plaintiffs dispute compliance, but noncompliance with policy in one incident is not the same as an official policy causing a constitutional violation. Nor have Plaintiffs established that any alleged training, supervision, inventory, camera, or storage deficiency was the moving force behind an established constitutional injury. At most, Plaintiffs identify disputed operational decisions and alleged omissions in one investigation. That is not a basis for municipal liability as a matter of law.

36.    Plaintiffs are not entitled to summary judgment on municipal liability because they have not established an underlying constitutional violation, an official policy or custom, deliberate indifference, or moving-force causation as a matter of undisputed fact.

### IV. RESPONSE APPENDIX EVIDENCE

37.    In support of his response, and in addition to other items in the record previously referenced and cited in this response, Defendants include evidence in the attached appendix, which evidence is incorporated by reference into this motion.

### V. CONCLUSION AND PRAYER

38.    Plaintiffs' Motion for Partial Summary Judgment should be denied in its entirety. The record presents genuine disputes of material fact concerning the warrant, consent, plain view, ownership, property handling, post-deprivation remedies, personal participation, qualified immunity, conspiracy, and municipal causation. Defendants Martin County, Texas, Brad Ingram,

Anders Dahl, Kelsey Brown, Rory Gammons, and Weston Phelps respectfully request that the Court deny Plaintiffs' motion and grant all further relief to which they are justly entitled.

Respectfully submitted,

/s/ Denis Dennis
DENIS DENNIS
State Bar No. 05655566
ddennis@kmdfirm.com
BENJAMIN PETTY
State Bar No. 24105934
bpetty@kmdfirm.com

OF

KELLY, MORGAN, DENNIS,
CORZINE & HANSEN, P.C.
P.O. Box 1311
Odessa, Texas 79760-1311
 (432) 367-7271  /  FAX:  (432) 363-9121

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing on June 26, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ Denis Dennis
DENIS DENNIS