**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND ODESSA DIVISION**

| | | |
|---|---|---|
| AUSTIN HAMBLIN AND KISKA | ) | |
| HAMBLIN | ) | |
| | ) | |
| v. | ) | NO. 7: 25-CV:00245-RCG |
| | ) | |
| MARTIN COUNTY, TEXAS | ) | |
| BRAD INGRAM, | ) | |
| ANDERS DAHL | ) | |
| KELSEY BROWN, | ) | |
| RORY  GAMMONS, | ) | |
| WESTON PHELPS, and | ) | |
| BRIAN SNELLGROVE | ) | |

**DEFENDANT SNELLGROVE'S RESPONSE TO PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

1.  Defendant Brian Snellgrove files this Response to Plaintiffs' Motion for Partial Summary Judgment.  Plaintiffs' motion should be denied because this case is filled with genuine disputes of material fact that should be decided by a jury.   In support of his response, Defendant Snellgrove relies on the Exhibits in his attached Appendix, and on Exhibits that are already before the Court as part of Martin County Defendants' Motion for Summary Judgment in Court Docket number 26.1 (Exhibits A-E.). The evidence before the Court creates genuine disputes about the ownership of the alleged stolen items, and genuine disputes about the lawful conduct of the officers involved and a genuine dispute about the existence of any conspiracy to violate Plaintiffs' Constitutional rights.

2.  Summary judgment is proper when the record shows no genuine dispute of material fact and the movant is entitled to judgment as a matter of law Fed. R. Civ. P. 56(c); *Celotex Corp.v. Catrett,* 477 U.S. 317, 323 (1986).  When the evidence before the Court would permit a reasonable jury to return a verdict for the non-movant, a genuine issue of fact exists and summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). In making its determination, the Court must view the record in the light most favorable to the Defendant and draw all reasonable inferences in their favor. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000).

3.  As set forth in Defendant Snellgrove's Affidavit and his Deposition testimony, Snellgrove is the owner of Snellgrove Enterprises, which includes the ownership of five Snap-On Tool Franchises. (Appendix, Exhibit A.) (Appendix, Exhibit B, pp. 6-9).  To assist the fact finder, a basic understanding of how Snap-On Tool franchises work is necessary. A Snap-On Tool franchise is a mobile tool store.  The tool store is a large mobile van that travels to the customer's place of business instead of the having the customer go to a brick and mortar store. (Appendix, Exhibit A.) As Defendant Snellgrove has indicated, each one of his stores had an assigned territory, and the assigned manager and assistant of the store would drive to the customers on the route.  The individuals operating the mobile store were Defendant Snellgrove's employees, and they had no ownership interest in the store's merchandise. (Appendix, Exhibit A.) All the merchandise in the stores was purchased by Snellgrove Enterprises, and at the close of a business day, all employees were instructed to return the mobile store to Snellgrove's central warehouse, unless prior permission was given to do otherwise. Employees were not authorized to keep Snellgrove property or merchandise at their homes. (Appendix, Exhibit A.)

4.   About 4 to 5 months prior to the execution of the search warrant in this case, Defendant Snellgrove began to become suspicious that store inventory was being lost.  One of Defendant's employees named Andrew Nichols brought it Snellgrove' attention that store merchandise might be improperly taken and might be at Plaintiff Austin Hamblin's home. (Appendix, Exhibit B, pp. 24-29, Exhibit A). Defendant Snellgrove already had suspicions that inventory was being taken because there were invoices to Austin Hamblin's store that appeared to be zeroed out but sold for zero dollars. (Appendix, Exhibit A.)  Roughly in March 2023, Snellgrove reported his suspicions to the police, to include that there was a young lady who had seen Snap-On property in the Hamblin residence. (Appendix, Exhibit B, pp. 30-35, Exhibit A.) An investigation by the police began at that point and the investigation resulted in the lawful creation of a search warrant by the District Court Judge of the 118th District Court. (Docket number 26-1; Exhibit A, Search Warrant and Affidavit for Search Warrant.). As set forth in the Affidavit and Attachments in support of the Search Warrant, the police had reason to believe that a large amount of Snap-On products with a value of over $200.000.00 might be in the Hamblin home. (Docket number 26-1; Affidavit for Search Warrant, Attachments A, B, and C.)

5.   On May 17, 2023, the Sheriff's Department executed the Search warrant at the Hamblin residence.  The actions of the Sheriff's Department can be seen in the 2 videos in Exhibit E of Docket number 26-1.  As indicated in Defendant Snellgrove's deposition testimony and Affidavit, he was called by the sheriff to come out to the Hamblin house to help identify items in the house that might belong to him as the sheriffs encountered a much larger amount of suspected illegally possessed items. (Appendix, Exhibit A, Exhibit B, pp. 38-39.) The sheriffs directed Snellgrove to a mobile trailer outside the home where he saw a large tool box that belonged to him that was in the trailer.  Austin Hamblin admitted to the sheriffs that the tool box

belonged to Snellgrove.  (Appendix, Exhibit A: Appendix to Docket number 26-1; Exhibit E, Warrant Execution Video 2).  The sheriffs then asked Snellgrove to enter the house to see if he could identify other property that belonged to him.  Snellgrove saw a lot of merchandise that looked like store inventory, and in Snellgrove's presence and in the presence of the sheriffs, Plaintiff Austin Hamblin admitted that most of the Snap-On tools and merchandise in the residence belonged to Snellgrove. (Appendix, Exhibit A, Exhibit B, p.43, 85; Docket number 26-1; Exhibit E, Warrant Execution Video 2.)

6.  After Snellgrove was able to identify other items and after Plaintiff Austin Hamblin admitted that the vast majority of the Snap-On merchandise in the residence belonged to Snellgrove, the sheriffs began to seize items and asked Snellgrove if he could assist them in transporting and storing the items. (Appendix, Exhibit A, Exhibit B, p.50). Snellgrove was told to take the items to his warehouse and to quarantine them off in a section of his warehouse because the county did not have a place large enough to hold all the items.  He was also asked to conduct an inventory of everything that was seized. (Appendix, Exhibit A, Exhibit B, p. 51-54; Exhibit C). Snellgrove testified that the vast majority of the items seized were all traceable to his inventory and the items were not in any end user receipt as having been sold. (Appendix, Exhibit B, pp. 58-59, 65-66, Exhibit C).

7.  Snellgrove testified that after a number of months, he was notified by Sheriff Ingram or Dahl that it was okay to put quarantined items back into inventory. (Appendix, Exhibit B, p.73, 86; Exhibit A). Snellgrove indicated that he never conspired to violate the Hamblin's civil rights and did not knowingly steal or convert property that did not belong to him. He also indicated that he did not know what normal procedure was, and that he was only following the directives of law enforcement. (Appendix, Exhibit A.)

**ARGUMENT**

8.  Plaintiff argues that *Creamer v. Porter,* 754 F.2d 1311 (5th Cir. 1985) controls this case.  The reliance on the general rule in *Creamer* is misplaced.  *Creamer* instructs that, although as a general rule only items described in a search warrant may be seized, there are two relevant exceptions to this rule. First, items of "incriminatory character" found in the course of a legal search but that were not described in the search warrant may properly be seized. *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir. 1983.) Second, property that has a sufficient nexus to the crime being investigated may be seized at the time officers are properly executing a warrant authorizing a search for other items. *Garland* at 206; *United States v. Kane,* 450 F.2d 77 (5th Cir. 1971) *cert denied,* 405 U.S. 934 (1972).  There is little question that the officers were acting pursuant to a legally obtained search warrant.  The search warrant cannot be read in isolation of the affidavits in support of the warrant and attachments in support. The officers were looking for specifically described property, but also had information in their hands that they were investigating a potentially larger crime. (Docket number 26-1; Affidavit for Search Warrant, Attachments A, B, and C.) (The Video number 2, in the Appendix to Docket number 26-1; Exhibit E, is crucial to this case.)  In that video, Plaintiff Austin Hamblin can clearly be heard and seen making admissions that the majority of the Snap-On merchandise at his residence belonged to Defendant Snellgrove.  Thus, the evidence in plain view, which includes Plaintiffs uncoerced admissions, squarely falls within the two exceptions enumerated in the very case Plaintiff says is controlling, but for a completely different proposition than he argues.  The officers came across property with a sufficient nexus to the very crime they were investigating, and the evidence was corroborated by the incriminatory admissions being made by Plaintiff

Austin Hamblin. The plain view doctrine permits seizure when the officer is lawfully positioned to view the object, its incriminating nature is immediately apparent, and the officer has lawful access to it. *Horton v. California,* 496 U.S. 128, 133-36 (1990).  Thus, the seizure of the property was well within the legal ambit of the officers' authority.

9.  This case presents a situation where the officers encountered evidence in plain view of the larger crime described in the Affidavit in support of the Search warrant and the Attachments thereto. This evidence, along with uncoerced admissions of criminal actions by Plaintiff Austin Hamblin, presented the officers with a situation with exigent circumstances. If officers encounter a situation where evidence may disappear or be destroyed, such a situation may call for the need to seize the evidence without having to secure a warrant.  *Cupp v. Murphy,* 412 U.S. 291 (1973.) *Missouri v. McNeely,* 569 U.S. 141 (2013.).  In this case, the sheriffs encountered a large mobile trailer that was outside Plaintiffs' residence.  The trailer contained stolen property that belonged to Defendant Snellgrove. (Appendix, Exhibit A) (Appendix to Docket number 26-1; Exhibit E, Warrant Execution Video 2).  If the officers in this case had left the house and gone to secure another search warrant, Plaintiff Hamblin had the means to simply load up the mobile trailer with Snellgrove's property and eliminate the evidence of his larger crime.  The officers did exactly as they should have as allowed by clearly established law.  There was no violation of Plaintiff Hamblins' 4th Amendment rights.

10.  Plaintiffs are not entitled to summary judgment on their Fourth Amend Rights claim. The warrant issued in this case was issued by a neutral magistrate, indeed by a State District Court Judge.  The warrant thus carried a presumption of validity that the officers could rely upon in good faith.  There is nothing in the record to establish that the judge abandoned their judicial role or that the warrant was facially deficient.  The officer who wrote the affidavit in support of

the search warrant was present at the execution of the warrant and had knowledge with respect to the scope of the investigation that the sheriff's office was conducting. (Docket number 26-1; Exhibit A, Search Warrant and Affidavit for Search Warrant). Thus, the actions of the officers in this case was based on a facially valid search warrant, and the officers acted in good faith. *United States v. Leon,* 468 U.S. 897, 921-925 (1984). The overwhelming evidence in this case favors Defendant, and Plaintiffs' are not entitled to summary judgment on their claim that their Fourth Amendment Rights were violated.

11. Plaintiffs are not entitled to summary judgment on their claim that Defendant Snellgrove somehow violated their procedural due process rights. To prevail on this claim, Plaintiffs must be the clear owners of the property in question. In this case, as has been referenced herein, Defendant Snellgrove has claimed to be the lawful owner of the property in question and filed a police complaint against Plaintiff Austin Hamblin that ultimately led to the issuance of a Search warrant by a neutral magistrate, and to a criminal indictment by a Grand Jury. (Appendix, Exhibits A, B, and C) (Docket number 26-1; Exhibits A, B, C, D, and E). Plaintiffs' due-process theory assumes undisputed ownership and undisputed entitlement to immediate return of the property. As set forth above, both positions are the subject of very contrasting issues of material fact being asserted by Plaintiffs and Defendant Snellgrove. The Texas Code of Criminal Procedure  Article 47.01 provides a procedure by which a person claiming an interest in allegedly stolen property may petition for a hearing to determine possession. Plaintiffs did not seek to obtain such a ruling and their failure to invoke available post-deprivation due process defeats any contention that Defendants are liable as a matter of law for procedural due process. Defendant Snellgrove's complaints to the police regarding Plaintiff Austin Hamblin led to an Indictment by a Grand Jury. As such, Defendant Snellgrove had rights

as a victim under the Texas Constitution that may have been violated by the prosecutor on the indicted case against Austin Hamblin. Plaintiffs are not entitled to summary judgment on procedural due process because ownership of the property in question remains in dispute and because Plaintiff failed to avail themselves of available State remedies.  Clear factual disputes exist regarding this claim and summary judgment must fail.

12. Plaintiffs have alleged that Defendant Snellgrove was party to a civil conspiracy to violate their constitutional rights.  A Section 1983 conspiracy requires proof of an agreement to commit an illegal act and actual deprivations of constitutional rights. *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir.1994.) The evidence in this case does not establish, as a matter of law, that there was an agreement to violate Plaintiffs' constitutional rights.  In this case, as stated above, Defendant Snellgrove made a report to the police regarding suspected theft of inventory from his Snap-On tool stores. (See Appendix, Exhibits A and B) and (Docket number 26-1; Exhibit A, Search Warrant and Affidavit for Search Warrant, and attachments). In this case, a search warrant was issued by a neutral magistrate and was executed in good faith by law enforcement. Defendant Snellgrove was called out to the residence because of evidence that was potentially connected to their investigation that was in plain view. Where the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property has long been approved by this Court and our common law traditions. *Wilson v. Layne,* 526 U.S. 603, 611-12 (1999). The police in this case acted in good faith, and Defendant Snellgrove was following the instructions of the officers. (Appendix, Exhibit A, Exhibit B, p. 51-54; Exhibit C). Without an established constitutional deprivation and without undisputed proof of an agreement to violate Plaintiffs' rights, there is an absolute dispute of material facts and summary judgment must be denied.

13.  Plaintiffs allege that Defendant Snellgrove is liable for abuse of process, conversion, and violations of the Texas Theft Liability Act. These allegations all require an illegal, improper, or perverted use of process that was authorized, or that was done with an improper motive or purpose.  As set forth supra, Defendant Snellgrove suspected that property was being stolen from his business, and he properly filed a police report that led to the signing and execution of a search warrant by a neutral magistrate.  The case then was indicted by a Grand Jury.  The case was indicted in no small measure because of the incriminatory admissions made by Plaintiff Austin Hamblin.  This case presents an absolute factual dispute about the ownership of the property that was seized, and with respect to the constitutionally permitted actions by law enforcement.  Without an established constitutional deprivation, and without undisputed proof of an agreement to violate Plaintiffs' rights, there is an absolute dispute of material facts. The dispute about the ownership of the property only makes denial of Plaintiffs motion necessary. Thus, summary judgment must be denied.

## CONCLUSION AND PRAYER

14.  Plaintiffs' Motion for Partial Summary Judgment should be denied in all respects. The record presents genuine disputes of material fact concerning the ownership of the property involved, any type of conspiracy, any deprivation of constitutional rights, any type of conversion or theft of Plaintiffs' property, or any abuses of process by Defendant Snellgrove.  Thus, Defendant Snellgrove respectfully requests that Plaintiffs' Motion for Partial Summary Judgement be denied and for any further relief to which he may be entitled either in law or in equity.

Respectfully submitted,

/s/ Robert J. Perez

Robert J. Perez

Texas Bar No. 15779050

Robert J. Perez
221 N. Kansas, Suite 1103
El Paso, Texas 79901
(915) 542-1222
Rjperezlaw1@gmail.com

CERTIFICATE OF SERVICE

I certify that on June 29th, 2026, a true and correct copy of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment was served on all counsel of record via the Court's CM/ECF system.

/s/ Robert J. Perez
_____

Robert J. Perez