IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | | |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN | § | |
| | § | |
| VS. | § | |
| | § | NO.    7:25-cv-00245 |
| MARTIN COUNTY, TEXAS | § | |
| | § | |
| BRAD INGRAM, | § | |
| | § | |
| ANDERS DAHL, | § | |
| | § | |
| KELSEY BROWN, | § | |
| | § | |
| RORY GAMMONS, | § | |
| | § | |
| WESTON PHELPS, and | § | |
| | § | |
| BRIAN SNELLGROVE | § | |

**PLAINTIFFS' REPLY TO GOVERNMENT DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

1. The Response[1] treats Plaintiffs' motion as all or nothing. Rule 56 does not work that way. Summary judgment may be entered on a claim, defense, or part of a claim or defense, and must be considered with particularly for each cause of action with respect to each defendant. A possible ancillary factual issue as to a marginal actor does not protect Martin County, Ingram, or Dahl. A possible damages dispute is irrelevant as to liability. A disputed ownership issue does not create probable cause to give the disputed property to the claimant.

---

[1] Plaintiffs object to Defendants' reliance on the Hamblin deposition transcripts attached as exhibits to their response to the motion for summary judgment to the extent Defendants attached and cited uncorrected transcripts. Plaintiffs timely preserved their right to review and correct the transcripts under Federal Rule of Civil Procedure 30(e), and timely submitted corrections to the court reporter on June 17, 2026. Defendants' exhibits appear to be the initial uncorrected transcripts and do not appear to reflect those corrections. The Court should therefore disregard any citation to the uncorrected transcripts.

2. Ingram was the elected Sheriff and final policymaker. Dahl was the affiant and executing investigator who swore that he "conscripted" Snellgrove. Snellgrove's actions bind Martin County as their agent. The County acted through Ingram's final decisions. The remaining individual defendants' suggested peripheral disputes (even if true) cannot erase the undisputed core.

3. The undisputed core is simple. The warrant named two items: a Snap-On Plasma Cutter Model 301 and a Snap-On Air Compressor. Defendants found those items. They then seized at least forty-nine additional non-warrant categories and hundreds of non-warrant individual tools or contents. They used the complaining witness and acted in concert with him after 'conscripting' him to identify, load, transport, store, inventory, and later keep or sell property. They obtained no magistrate order authorizing cross-county removal. They provided no Chapter 47 hearing and no written notice of one. The property was not held in neutral law-enforcement custody, secured by a law-enforcement lock, or processed using mandatory ministerial obligations. In doing so, they broke clearly established law. That is more than enough for partial summary judgment.

4. Defendants' main answer is plain view. But to date, no Defendant has identified each and every item outside the warrant with the supposed plain-view fact that made that particular item readily apparent as contraband, stolen property, or evidence of theft. Not even so much as an explanation exists for how, by mere looking and without additional examination, Snellgrove or any officer could tell that a particular set of Snap-On item was Snellgrove's property rather than a Snap-On item purchased, gifted, traded, financed, or otherwise lawfully possessed.

**ARGUMENT**

**I. The Response does not create a genuine dispute on the controlling facts.**

5.  Defendants use the phrase "disputed facts" as a magic wand in the apparent hope that doing so will make their liability disappear. But their so-called disputed facts are nearly universally immaterial. For example, Defendants repeatedly defend the issuance of the underlying warrant. This is odd, as Plaintiffs do not seek summary judgment on a *Franks* challenge, and do not ask the Court to invalidate the warrant at inception. As to what matters, they admit the warrant identified only the plasma cutter and air compressor. Resp. paragraph 3. Ingram testified that the seizure was a "truckload" and that more than two items were seized. Ex. A at 37:4-12.[2] The inventory listed fifty-one categories they valued at $283,445, which means at least forty-nine categories of items seized were not listed in the warrant. Ex. A at 48:1-50:16.

6.  Defendants also do not meaningfully address the post-seizure facts. Ingram made the final decision to allow Snellgrove to transport the property and the final decision to allow him to store it. Ex. A at 58:25-59:6. The property was removed from Howard County to Martin County without a magistrate order. Ex. A at 69:11-70:7; 92:15-93:12. No court ordered release to Snellgrove, and no court held an ownership hearing. Ex. A at 13:15-21. No written Chapter 47 notice was provided. Ex. A at 71:23-72:11

7.  Defendants' reliance on "the body-camera record" is unjustified. Their own appendix filed with the Court identified only two video clips from the same Axon body-camera file number: one from 8:02 a.m. to 8:49 a.m. and another from 10:44 a.m. to 11:01 a.m., leaving an obvious two hour gap and covering only a fraction of the search - and depicting nothing of the transportation and storage. Docket 26-1, Ex. E. Defendants cannot use an incomplete record they controlled as a shield against summary judgment.

---

[2] Citations to Exhibits in this pleading refer to the exhibits filed as part of Plaintiff's motion for summary judgment (docket 78), unless otherwise indicated.

8. The Government Defendants' silence on Snellgrove's full role is especially important. Their conspiracy section treats him as a mere victim-witness who helped identify property. Resp. paragraphs 28-31. That is not the record. Snellgrove arrived because <u>officers</u> asked him to bring hauling capacity; he brought vehicles and an employee; <u>officers</u> directed the loading; <u>officers</u> loaded property onto his truck; the property was transported to his warehouse in a convoy in which <u>officers</u> participated; and <u>Ingram</u> made the final decisions approving that arrangement. Ex. B at 39:19-40:8; 50:1-51:19; 111:18-112:17; Ex. A at 58:25-61:2.

9. The Response also leaves Plaintiffs' strongest *Monell* theory mostly untouched. Defendants answer as though Plaintiffs rely on pattern/custom liability. Instead, Plaintiffs rely on Ingram's final policymaker decisions. Ingram personally and materially participated every step of the way. And even a single decision by a final policymaker can be municipal policy under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-84 (1986). In Texas, the sheriff is the county's final policymaker for law-enforcement matters. Ingram admitted he was the final policymaker when he was Sheriff. Ex. A at 7:21-24. He personally approved the private transport and private storage. Ex. A at 58:25-59:6. That is County policy under *Monell*.

## II. Creamer controls, and Defendants cannot turn Snellgrove into a walking probable-cause generator.

10. *Creamer v. Porter*, 754 F.2d 1311 (5th Cir. 1985), controls. This case is the same constitutional violation with worse facts: a two-item warrant, the warrant items found, continued searching, a much larger over-seizure, and a private claimant embedded in the search, seizure, transport, storage, and later release. Defendants' own cited authority does not overrule *Creamer*; it distinguishes *Creamer* because *Creamer* involved two specific warrant items and no conceivable justification to keep searching once those items were found. That is this case.

11. Defendants' attempted distinction is backwards. They say this was an ongoing theft investigation involving Snap-On inventory and Snellgrove's identifications. That is not a limiting principle; it is an admission that the warrant was too narrow for what they wanted to do. If officers had probable cause to seize all property Snellgrove claimed, they could have asked the magistrate for that warrant. They did not, but seized everything in sight anyway.

12. *Alexander v. Arceneaux* does not save Defendants. Even as Defendants (incorrectly) describe Alexander, plain view requires probable cause that the particular item may be contraband, stolen property, or evidence of a crime. Resp. paragraphs 16-18. Defendants do not provide item by item specific probable cause. They provide a brand name as though it were magic. That is not plain view under *Horton v. California*, 496 U.S. 128, 136-37 (1990), *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987), or *Creamer*.

13. Defendants' "Snellgrove identified it" theory is not plain view. The rule is not that a complaining witness may accompany officers into a home and become a walking probable-cause generator for every item he claims. Third-party presence during warrant execution is permissible only insofar as the third party aids the warrant's authorized objective. *Wilson v. Layne*, 526 U.S. 603, 611–14 (1999). Plain view is item-specific. Officers must be lawfully positioned, must have lawful access, and the item's incriminating character must be immediately apparent. *Horton v. California*, 496 U.S. 128, 136-37 (1990). That requirement is not satisfied by later investigation, by a claimant's say-so, or by moving and inspecting property to find a reason to take it. Plain view required probable cause at the moment of seizure, *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987), and a private claimant's self-interested assertion that "this is mine" is not probable cause that every Snap-On-branded, non-Snap-On, containerized, promotional, household, or children's item was stolen.

14. The examples are devastating. Ingram was asked why a Snap-On popcorn maker was suspicious. His answer was that it had "Snap-On" on it and that Snellgrove said Austin was not supposed to have it. Ex. A at 48:13-49:12. Asked why Snap-On pliers from a Snap-On employee would be suspicious, Ingram answered that either Austin said it belonged to Snellgrove or Snellgrove said it was his. Ex. A at 49:13-50:5. That is not probable cause.

15. The child's toolbox is worse. Snellgrove directed seizure of a toolbox from the child's bedroom because it said Snap-On. Ex. B at 108:11-21. It was a standard black toolbox, not uniquely identifiable, and he did not recall Austin specifically saying that toolbox belonged to him. Ex. B at 109:1-16. Kiska objected. Ex. B at 110:15-21. No reasonable officer could believe that a standard toolbox in a child's bedroom became immediately incriminating because the complaining witness wanted it.

16. Nor can Defendants justify contents inside containers. Snellgrove admitted non-branded tools were seized because they were inside cabinets he claimed. Ex. B at 103:13-19. He admitted Harbor Freight tools could have been swept up for the same reason. Ex. B at 116:7-10. Hidden contents are not in plain view from outside the cabinet, and their incriminating character does not become immediately apparent because Snellgrove says the cabinet is his. Creamer forbids exactly this kind of warrant expansion.

17. Defendants' "Austin admitted it" theory is overbroad. Defendants identify no item-by-item admission covering every category, every container, every room, every non-Snap-On item, and every child or household item, and do not address Kiska's contemporaneous objections.

**III. The conspiracy is proven by coordinated conduct, not merely by text messages.**

18. Defendants reduce the conspiracy evidence to "coordination, relationships, and Snellgrove's presence." Resp. paragraph 29. That characterization is false. The conspiracy is shown by

agreement plus action: months of communication; Snellgrove's May 15 timing text about "all that needs to go down"; the Department telling him it might need help with "that much property"; Dahl's sworn statement that he 'conscripted' Snellgrove; Snellgrove bringing vehicles and an employee; officers and Snellgrove loading the property together; transport to Snellgrove's barn; and eventual verbal release back into Snellgrove's inventory. Ex. A at 9:23-10:6; 113:19-114:12; Ex. B at 39:19-40:8; 50:1-51:18; 73:21-74:16; 111:18-112:16.

19. The word "conscripted" matters because it is Dahl's word. Dahl swore that he 'conscripted' Snellgrove to appear, identify property, and store it at Snellgrove's business under law-enforcement control and supervision. Ex. D paragraph 4; Ex. A at 27:22-28:4. "Conscripted" is the definition of joint action. Snellgrove was not merely standing nearby to identify two warrant items. He became the government's identifying, loading, transporting, storing, and disposing arm.

20. The Government Defendants' failure to address Snellgrove as the material private participant leaves the conspiracy facts unrebutted. His actions matter because they reveal the Government Defendants' agreement and objective. A conspiracy can be demonstrated from coordinated conduct. The coordinated conduct here was not subtle. The Sheriff helped facilitate loading by buying a hand truck, made the final storage decision, and approved private custody. Dahl conscripted the complaining witness, supervised him, and sent the property to his warehouse. Snellgrove and his employee loaded the property under deputy direction, then traveled with law enforcement to the barn. If Defendants wanted to defeat conspiracy at summary judgment, they had to argue against that conduct. They did not.

21. *Wilson v. Layne* does not help Defendants. Wilson recognizes that third-party presence may be permissible only when tied to the warrant's legitimate objectives. 526 U.S. 603, 611-14

(1999). Here the warrant objective was two items. Snellgrove's role expanded far beyond identifying those items. He entered the home after the warrant items had been located, opened drawers, identified additional property, loaded it, transported it, stored it, inventoried it with his employees, and later sold or integrated it. Law enforcement may not use a private claimant to search for property beyond the warrant. *Wilson*, 526 U.S. at 614.

**IV. The notary issue is immaterial; Defendants' real omissions are dispositive.**

22. Defendants' New Mexico notary argument is immaterial. Plaintiffs do not offer the Kniepkamp statement as a dispositive title judgment, but rather as evidence that ownership was disputed and that Austin had an alternative lawful source for Snap-On tools.

23. What matters is what Defendants do not answer. They do not identify item-specific probable cause for the forty-nine unlisted categories; do not deny that Snellgrove and his employee loaded property under deputy direction; do not deny that Ingram made the final transport and storage decisions; do not produce a magistrate order, Chapter 47 notice, court hearing, written release, complete chain of custody, or neutral evidence custody; and do not answer Plaintiffs' final-policymaker *Monell* theory except by arguing against a pattern theory Plaintiffs neither argued in the first place. Those omissions are not peripheral. They are the controlling facts for the Fourth Amendment, due process, conspiracy, and *Monell* issues.

24. Article 18.06(b) required the executing officer, before taking property from the place, to prepare a written inventory of the property to be taken, endorse his name on it, and present a copy to the owner or person in possession. Tex. Code Crim. Proc. art. 18.06(b). Defendants do not identify any such inventory prepared before removal and presented to Plaintiffs. The only list was generated later at Snellgrove's warehouse, by Snellgrove, using Snellgrove's business system and employees. Ex. B at 54:2-13; 56:16-23

25. Defendants' Article 47.01a argument is backwards. Article 47.01a provides a hearing when no criminal action is pending. It does not excuse officers from preserving warrant-seized property in lawful custody, providing the required inventory, obtaining Article 18.10 safekeeping and removal orders, or holding contested alleged stolen property subject to court order. A theoretical hearing after property has been placed in the claimant's warehouse, mixed with his business access, released without a written court order, and sold is not meaningful process. See *Zinermon v. Burch*, 494 U.S. 113, 136-39 (1990); *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972).

**V. Due process and *Monell* liability are independently established.**

26. Defendants' due-process response is equally thin. They say Plaintiffs could have invoked Article 47.01a. But the government first had to preserve the property in neutral custody and provide meaningful process. It did neither. Article 18.10 required a magistrate order before removing property from Howard County. No order existed. Ex. A at 69:11-70:7; 92:15-93:12. No court held a possession hearing. Ex. A at 13:15-21. No written Chapter 47 notice was provided. Ex. A at 71:23-72:11. Snellgrove was later told he could return the property to inventory and sell it without any judicial determination. Ex. B at 73:21-74:16; 96:25-97:7.

27. *Monell* liability follows from the same facts. Ingram was the final policymaker. He made the final decisions allowing Snellgrove to transport and store the property. He did not obtain a magistrate order. He did not limit access to the barn. He did not ensure neutral evidence custody. He chose not to wear a body camera. Ex. A at 31:19-33:16; 58:25-61:2; 69:11-70:7; 75:24-76:18; 88:10-89:19. Those were not rogue deputy errors; they were County policy made by the final law-enforcement policymaker.

28. Defendants also fail to answer the policy-manual evidence. Ingram admitted the recordkeeping chain of custody was probably none; the handwritten inventory location was unknown; two officers were available but he did not know whether two officers conducted or signed the inventory; no expert was obtained; the property was not transported to the appropriate agency office; evidence was not delivered to the property room; audits were not performed; and when policy deviations were identified, no immediate investigation occurred because everyone knew what was happening. Ex. A at 84:13-86:12; 88:10-91:16; 96:17-97:25. Defendants' response does not neutralize those admissions. It merely calls them operational disputes, which is not enough when the final policymaker made the decisions and the County's own rules identify the risk those decisions created.

## CONCLUSION

29. Defendants do not create a genuine dispute by saying ownership, consent, plain view, and reasonableness over and over. The warrant listed two items. The two items were found. The search and seizure then expanded through a private claimant who identified, loaded, transported, stored, inventoried, and later received the property without court process. *Creamer* controls. The plain-view theory fails because Defendants never supply item-specific probable cause. The conspiracy is proven by coordinated action, not merely messages. Due process fails because the County bypassed the very statutory process that made a meaningful hearing possible. *Monell* liability follows from Ingram's final policymaker decisions.

30. Plaintiffs respectfully request that the Court grant partial summary judgment against Martin County, Ingram, and Dahl on the claims and issues addressed in Plaintiffs' Motion and this Reply, deny qualified immunity as to those issues, and grant such further relief as the Court finds proper. In the alternative, Plaintiffs request that the Court enter Rule 56(g) established

facts including: the warrant listed only two items; more than the warrant items were seized; Snellgrove was conscripted to identify and store property; Snellgrove and his employee loaded property under officers' directions; the property was transported to Snellgrove's barn; Ingram made the final transport and storage decisions; no Article 18.10 order authorized cross-county removal; no Chapter 47 hearing occurred; no written release order exists; and the property was not maintained in neutral law-enforcement custody.

## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF filing stamp, I filed this document with the Clerk of Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/ Kurt Mueller

_____
Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com