IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

|  |  |  |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN | § | |
| | § | |
| VS. | § | |
| | § | NO.    7:25-cv-00245 |
| MARTIN COUNTY, TEXAS | § | |
| | § | |
| BRAD INGRAM, | § | |
| | § | |
| ANDERS DAHL, | § | |
| | § | |
| KELSEY BROWN, | § | |
| | § | |
| RORY GAMMONS, | § | |
| | § | |
| WESTON PHELPS, and | § | |
| | § | |
| BRIAN SNELLGROVE | § | |

**PLAINTIFFS' REPLY TO DEFENDANT SNELLGROVE'S RESPONSE TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1. Defendant Brian Snellgrove's response confirms the material facts Plaintiffs moved on. He was not a bystander. By his own admission, he reported the alleged theft, coordinated with law enforcement, came to Plaintiffs' home when summoned, entered the property and residence, identified property, loaded property, transported it to his own warehouse, inventoried it with his employees, held it outside neutral custody, and later put it back into inventory and sold or disposed of it after an unwritten release. Those facts establish state action, agreement, and participation. His response mostly argues different issues: that he subjectively believed he was the victim, that the officers acted in good faith, that a magistrate issued the warrant, and that ownership of some items is disputed. Those points do not defeat partial summary judgment because they do not answer Snellgrove's admitted participation in

the search, seizure, transport, storage, inventory, release, and disposition of disputed property.

### I. Snellgrove answers claims Plaintiffs are not making.

2. Plaintiffs do not challenge the issuance of the warrant, do not assert a *Franks* claim, and do not ask this Court to hold that the criminal case judge lacked probable cause to authorize a search for the two listed items. Rather, plaintiffs' claims arise from what happened after law enforcement arrived: a two-item warrant became a bulk seizure; the complaining witness became part of the search-and-seizure team; property was transported across county lines to that same claimant's barn; neutral custody and Chapter 47 process were bypassed; and the property was later released and sold without judicial determination. Pre-search evidence remains relevant because it shows planning, intent, agreement, and causation. But Snellgrove's repeated reliance on warrant validity answers the wrong question.

3. The same is true of his good-faith framing. Snellgrove invokes the officers' lawful authority, the neutral magistrate, and law-enforcement directives as if this were an officer qualified-immunity brief. It is not. Snellgrove is a private actor, and private defendants sued under Section 1983 are not entitled to qualified immunity. *Wyatt v. Cole*, 504 U.S. 158, 168-69 (1992). To the extent he asks for some generalized private good-faith defense, his own evidence defeats it: he did not merely rely on police from a distance; he joined the operation and acted as though he was a walking real-time probable cause generator -- identifying, loading, transporting, storing, inventorying, and later disposing participant in the challenged deprivation.

4. Nor do the two body-camera clips resolve this case. Snellgrove calls the video evidence crucial, but Defendants' own appendix identifies only two clips from one Axon body-camera

file: 8:02 a.m. to 8:49 a.m. and 10:44 a.m. to 11:01 a.m. Defs.' App. Ex. E. The two hour gap from that one body camera is manifest on the plain record, to say nothing of the body cameras of the other officers which according to county policy should exist but do not. Further, that partial recording does not show the full search, seizure, or any of the loading, transport, barn storage, release, or disposition. It also does not cure the policy failure that other officers did not create comparable recordings. Snellgrove cannot convert a gap-ridden record into conclusive proof that the constitutional deprivation did not occur.

## II. Snellgrove's affidavit is evidence against him.

5. Snellgrove's new affidavit attached to his response is long on motive and short on material denial. He states he believed he was the victim of continuing theft, believed employees were not authorized to keep his merchandise at home, and believed Austin's explanations about trade-ins, warranties, promotional items, and personal items were insufficient, as though Austin bore the burden to disprove Snellgrove's accusation at the scene (he did not). That is not a defense. It is the motive for the private repossession Plaintiffs challenge. A complaining witness does not become the judge of ownership merely because he is indignant.

6. His affidavit also admits the participation that matters. He says the Sheriff called him to the Hamblin residence; officers directed him first to the trailer and then into the home; Austin claimed trade-ins, warranty returns, and promotional items; Snellgrove nevertheless told officers those items were not supposed to be away from his warehouse; the Sheriff said the County lacked storage capacity in advance of the seizure; Snellgrove provided storage; he inventoried the seized items; and later the Sheriff told him he could return the items to inventory and sell them in the ordinary course of business. Snellgrove Aff. at 2-3. That is not passive victim assistance. It is direct participation in the search, seizure, transport, custody,

and disposition of disputed property. His own affidavit continues to reveal and affirm the central undisputed facts.

7. Most importantly, Snellgrove admits he knew ownership was not clean. His affidavit says he 'did point out to the Sheriffs that some of the items there were in fact Austin's.' Id. at 2. His deposition confirms Plaintiffs asserted ownership of items being taken, that Kiska objected to the child's toolbox, and that non-branded tools were swept up because they were inside tool cabinets. Ex. B at 102:6-103:19; 108:11-110:4. Those admissions defeat plain view and due process. If some items were Austin's, if some items were disputed, and if some items were non-branded contents inside containers, Snellgrove and the officers could not constitutionally treat his say-so as ownership adjudication.

### III. Snellgrove was not a lawful walking probable-cause generator.

8. Snellgrove relies on *Wilson v. Layne* for the broad proposition that a victim may help identify stolen property. *Wilson* says no such thing at this level of abstraction. *Wilson* permits third-party presence only to the extent it aids the warrant's authorized objective. 526 U.S. 603, 611-14 (1999). *Wilson* also identified *Bills v. Aseltine* as the boundary: officers exceed a warrant when they allow a private claimant to participate in searching for and identifying property beyond the warrant. *Bills v. Aseltine*, 958 F.2d 697, 704, 709-10 (6th Cir. 1992).

9. That boundary decides this case. Snellgrove could at most assist with the two items listed in the warrant: the Snap-On plasma cutter model 301 and the Snap-On air compressor. He could not be conscripted into Plaintiffs' residence, rooms, drawers, cabinets, and storage areas as a substitute for item-specific probable cause for forty-nine additional categories of property. A Snap-On logo shows manufacturer, not ownership. A private claimant's bare statement that 'this is mine' is not the item's incriminating character. *Arizona v. Hicks* requires probable

cause at the moment of seizure. 480 U.S. 321, 326-27 (1987). Snellgrove's presence supplied baseless accusation, not probable cause.

10. *Creamer* remains the controlling Fifth Circuit analogue. Officers with a warrant for two specific items may not find the listed property and continue into a general search and seizure of additional property without item-specific lawful justification. *Creamer v. Porter*, 754 F.2d 1311, 1316-19 (5th Cir. 1985). This case is worse than *Creamer* because the complaining witness did not merely identify the two warrant items. He was called to the scene because officers found 'more' than expected, brought vehicles, entered the home, identified additional items, loaded them, transported them, stored them, inventoried them, and later sold or integrated them. *Creamer* forbids the general search; *Wilson* and *Bills* forbid using the private claimant to make it happen.

11. Snellgrove's Response depends in large part on a sweeping plain-view theory, but to date no Defendant has identified each and every item outside the warrant with the supposed plain-view fact that made that particular item readily apparent as stolen. There is no explanation of how Snellgrove could tell by mere looking, without further examination, that a particular set of Snap-On pliers, a screwdriver, a socket, a wrench, or a toolbox was his property rather than a Snap-On tool purchased or owned by someone else at the moment of seizure. That omission matters because plain view is not a brand-recognition doctrine. The item's incriminating character must be immediately apparent at the time of seizure. *Horton v. California*, 496 U.S. 128, 136-37 (1990).

12. The record confirms that the alleged stolen character was not readily apparent. Snellgrove admitted many large items have serial numbers and that serial numbers should be placed with end-user sales documents. Ex. B at 20:6-13. Yet he did not document seized serial numbers

in the inventory and did not perform a serial-number trace at the scene. Ex. B at 57:2-21; 59:15-60:4; 66:2-10. He admitted the inventory used part numbers, not serial numbers. Ex. B at 57:2-14.

### IV. Exigency is a post-hoc distraction.

13. Snellgrove's response newly suggests exigent circumstances because Austin allegedly could have hypothetically loaded a trailer and removed evidence if officers paused to seek additional authority. That argument is unsupported and immaterial. By the time the alleged exigency supposedly arose, officers were already physically present with a warrant, had control of the scene, and had located the two warrant items.

14. Snellgrove points to no actions from either Plaintiff during the search or seizure that makes any suggestion of exigency anything more than a baseless, fantastical speculation. If officers believed additional property required preservation, they could secure the premises while seeking additional judicial authorization or keep the property in neutral law-enforcement custody. *Cupp* and *McNeely* do not authorize a private claimant to haul away fifty-one categories of disputed property and later sell them.

15. The claimed exigency also does not explain the property handling that followed. Even assuming *arguendo* some on-scene seizure were justified, that would not authorize transport across county lines without a magistrate order, storage in Snellgrove's private business warehouse, no written notice, no Chapter 47 hearing, no neutral custody, no written release, and eventual sale. Snellgrove's exigency argument therefore does not create a material fact dispute on the constitutional deprivation actually alleged.

### V. Disputed ownership supports Plaintiffs; it does not defeat them.

16. Snellgrove repeatedly says ownership is disputed. That helps Plaintiffs. Disputed ownership is precisely why law enforcement could not let one claimant take custody and later sell the property without judicial process. A genuine dispute of material fact means a dispute that matters under the governing law; it does not mean every disagreement Snellgrove can identify. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). His asserted victim status, business practices, subjective belief, and disagreement over ownership of some items do not change the undisputed facts of joint action, seizure, private custody, and disposition.

17. For the Fourth Amendment, disputed ownership defeats the 'immediately apparent' requirement for plain view. For due process, disputed ownership required notice, neutral custody, and a meaningful opportunity to be heard. For conversion and the Texas Theft Liability Act, the record need not establish every item in the same way to establish liability. Plaintiffs possessed the property at their home; Snellgrove knowingly accepted control over disputed property through state action; he later integrated or sold it; and no court ever awarded him possession. At minimum, Plaintiffs are entitled to established facts under Rule 56(g) that Snellgrove identified, loaded, transported, stored, inventoried, and later disposed of property seized from Plaintiffs without court order or ownership hearing.

18. The failed indictment does not change that result. An indictment is not a civil ownership judgment, not a Chapter 47 possession hearing, not a magistrate's Article 18.10 safekeeping order, and not permission for a private claimant to sell evidence. The criminal case was later dismissed because the State represented it had insufficient evidence. Snellgrove cannot use an untried and dismissed indictment to retroactively validate his possession and disposition of disputed property.

**VI. The conspiracy is shown by conduct, not labels.**

19. Snellgrove denies that he conspired, but conclusory denial is not summary-judgment evidence capable of erasing admitted conduct. See *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Section 1983 conspiracy does not require a written contract to violate rights. Agreement may be inferred from coordinated conduct, communications, joint action, and the sequence of events. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

20. The coordinated conduct is extensive and largely undisputed. Snellgrove and law enforcement discussed the alleged inventory issue for months. Snellgrove texted Ingram about the timing of 'all that needs to go down.' Dahl swore that he conscripted Snellgrove to appear, identify property, and store it under law-enforcement control. Officers asked Snellgrove to bring vehicles. Snellgrove brought vehicles and an employee. Officers directed him into areas of the property and home. He identified property beyond the warrant. He and officers loaded property onto his vehicles. A county unit followed the truck. The property was unloaded into his warehouse. He and employees inventoried it. Later, Ingram or Dahl told him to put it back into inventory and sell it. Those facts establish a common objective and overt acts: use state power to obtain possession of disputed property for Snellgrove.

21. Snellgrove's insistence that he was 'just following directions' does not help him. Private parties jointly engaged with state officials in the challenged action act under color of law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970). Following police direction is the joint action; it is not immunity from it. Once Snellgrove accepted law-enforcement authority to enter, identify, load, transport, store, inventory, and sell disputed property, he became a participant in the constitutional deprivation.

**VII. The Texas claims survive Snellgrove's misdirection.**

22. Snellgrove's state-law response collapses into the same mistaken premise: because he believed the property was his, he thinks the use of criminal process and later sale were proper. Texas law does not permit a private party to use a search warrant as a shortcut around civil process and then dispose of disputed property without a court order. Conversion turns on unauthorized dominion inconsistent with another's possessory rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Abuse of process turns on perverted use of process after issuance. *Detenbeck v. Koester*, 886 S.W.2d 477, 480 (Tex. App. Houston [1st Dist.] 1994, no writ). The Texas Theft Liability Act turns on unlawful appropriation with intent to deprive, and intent may be inferred from conduct. Tex. Civ. Prac. & Rem. Code §§ 134.002, 134.003; Tex. Penal Code §§ 31.03, 31.01. Plaintiffs moved on that conduct: Snellgrove used the process to obtain, hold, integrate, sell, and make unreturnable property that was disputed and never judicially awarded to him.

23. Nor does his professed ignorance of evidence procedures excuse the result. He knew enough that the property had come from Plaintiffs' home through a criminal search and was potential evidence. And he knew no court had adjudicated ownership because he received only an unwritten call from Ingram or Dahl, not a court order. A private claimant who accepts disputed evidence from police and later sells it to profit does so at his own risk.

24. Snellgrove's response therefore does not create a material dispute on liability. It confirms the key facts and reframes them as good faith, victimhood, and ownership disagreement. Those themes may be arguments for a jury on damages or state of mind, but they do not defeat the legal effect of the undisputed conduct. Plaintiffs respectfully request that the Court grant partial summary judgment against Snellgrove on the claims asserted against him, or at

minimum enter Rule 56(g) established facts reflecting his participation in the identification, removal, transport, storage, inventory, release, and disposition of Plaintiffs' property.

## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF filing stamp, I filed this document with the Clerk of Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/ Kurt Mueller

_____

Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com