IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

AUSTIN HAMBLIN and KISKA HAMBLIN,
    **Plaintiffs and Counter Defendants,**

v.

MARTIN COUNTY, TEXAS, BRAD INGRAM,
ANDERS DAHL, KELSEY BROWN, RORY
GAMMONS, WESTON PHELPS, each in their
individual capacities,
    **Defendants,**

v.

BRIAN SNELLGROVE,
    **Defendant and Counter Plaintiff.**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No.
7:25-CV-00245-RCG

## STIPULATED FACTS

COME NOW Defendants Martin County, Texas, Brad Ingram, Anders Dahl, Kelsey Brown, Rory Gammons, and Weston Phelps, each in their respective capacities as pleaded (collectively, the "Martin County Defendants"), and respectfully submit the following stipulated facts pursuant to Local Rule CV-16(f), subject to further stipulation by the parties, any order of the Court, and any objections or qualifications necessary to preserve disputed issues for trial.

1. Plaintiffs Austin Hamblin and Kiska Hamblin are individuals and spouses who, at relevant times, resided at 3700 Hamilton Street, Big Spring, Howard County, Texas.

2. Martin County, Texas, is a political subdivision of the State of Texas.

3. Brad Ingram served as Sheriff of Martin County during the events at issue.

4. Anders Dahl and Kelsey Brown were employed by Martin County through the Martin County Sheriff's Office during relevant times.

5. Rory Gammons was employed by Howard County through the Howard County Sheriff's Office during relevant times.

6. Weston Phelps was employed by Martin County through the Martin County Sheriff's Office during relevant times.

7. Brian Snellgrove owned or operated a Snap-On tools business associated with Snellgrove Enterprises at relevant times.

8. On or about May 17, 2023, a search warrant was executed at the Hamblin residence located at 3700 Hamilton Street, Big Spring, Texas.

9. The search warrant and affidavit were issued in connection with an investigation concerning alleged theft of Snap-On tools, equipment, and/or inventory.

10. Certain tools, equipment, and related property were removed from the Hamblin residence during or following execution of the warrant.

11. The parties dispute the legality, scope, ownership, disposition, and damages associated with the property removed during or following the search.

12. The criminal case against Austin Hamblin was dismissed on or about November 13, 2024, for insufficient evidence.

13. Austin Hamblin and Kiska Hamblin filed this civil action asserting federal civil-rights claims and related claims arising out of the search and seizure.

14. This matter is set for jury selection and trial on August 24, 2026, before the Honorable United States Magistrate Judge Ronald C. Griffin, unless otherwise ordered.

Respectfully submitted,

*/s/ Denis Dennis*
DENIS DENNIS
State Bar No. 05655566
BENJAMIN PETTY
State Bar No. 24105934

OF

KELLY, MORGAN, DENNIS,
CORZINE & HANSEN, P.C.
P.O. Box 1311
Odessa, Texas 79760-1311
(432) 367-7271 / FAX: (432) 363-9121
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing, July 21, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Denis Dennis*
DENIS DENNIS

**ATTACHMENT D**
**PLAINTIFFS' PROPOSED STIPULATED FACTS**

Plaintiffs propose the following stipulations to narrow the issues for trial. Each numbered paragraph is intended to stand independently so the parties may agree to individual facts without agreeing to the entire list. Agreement to a fact does not concede its legal effect, waive a claim or defense, or waive an evidentiary objection not expressly addressed.

## I. PARTIES, ROLES, AND EMPLOYMENT

1. Austin Hamblin and Kiska Hamblin resided at 3700 Hamilton Street, Big Spring, Howard County, Texas, on May 17, 2023.

2. Brad Ingram was the elected Sheriff of Martin County on May 17, 2023.

3. For the Martin County law-enforcement operations at issue in this case, Ingram was the County's final policymaker concerning execution of search warrants and handling of seized property.

4. Anders Dahl, Kelsey Brown, and Weston Phelps were employed by the Martin County Sheriff's Office during the relevant period.

5. Rory Gammons was employed by the Howard County Sheriff's Office during the relevant period.

6. Brian Snellgrove owned and operated Snellgrove Enterprises, a Snap-On tools franchise located at 2100 Westside Drive in Stanton, Texas.

7. Brian Snellgrove was Austin Hamblin's employer when the May 17, 2023 search began.

8. Snellgrove's residence and the warehouse used by Snellgrove Enterprises were separate structures located on the same property at 2100 Westside Drive.

9. Snellgrove testified that Austin began working for him in approximately 2019.

10. Snellgrove testified that Austin managed the 5F mobile route, operated a point-of-sale store, and received commissions on sales.

11. Ingram and Snellgrove knew each other before the search and attended Bible-study meetings together.

12. Martin County admitted in written discovery that it was aware of a personal relationship or prior dealings between Ingram and Snellgrove outside official law-enforcement business.

## II. THE INITIAL INVESTIGATION AND THE WARRANT

13. Ingram testified that the Sheriff's Office and Snellgrove had discussed the reported inventory problem for several months before the formal May 11, 2023 report.

14. The May 11, 2023 offense report states that Snellgrove had been unable to identify a specific theft incident or suspect before employee Andrew Nichols approached him with customer information that caused Nichols and Snellgrove to suspect Austin.

15. On May 11, 2023, at approximately 7:30 p.m., Snellgrove and Nichols met with Phelps at the Martin County law-enforcement center, and Phelps opened Martin County Sheriff's Office Case No. 23-0135.

16. Before the May 17, 2023 search, Phelps did not interview Austin Hamblin or Kiska Hamblin.

17. Before the May 17, 2023 search, Phelps did not contact the customer identified in the alleged zeroed-ticket transaction.

18. Before the May 17, 2023 search, the Martin County Sheriff's Office did not subpoena or obtain business records from Snap-On corporate.

19. Before the May 17, 2023 search, the Martin County Sheriff's Office did not obtain independent financial records concerning the alleged loss.

20. On May 15, 2023, Dahl interviewed Snellgrove, who stated that his claimed loss of products or proceeds was approximately $200,000.

21. On May 15, 2023, Snellgrove sent Ingram a text message stating: "If it's ok I'd like to visit about timing of all that needs to go down. Brian."

22. Ingram replied to that message: "Let me check and see where we are."

23. On May 16, 2023, Judge Shane R. Seaton of the 118th Judicial District Court issued a search warrant for 3700 Hamilton Street.

24. For purposes of this civil trial, Plaintiffs do not challenge the issuance or facial validity of the search warrant.

25. The warrant's operative command authorized officers to search for and seize "a Snap-On Plasma Cutter model 30i and a Snap-On Air Compressor, and to seize the same and bring it before" the issuing judge.

26. The warrant's operative command identified no other item of property to be seized and contained no catch-all authorization to seize all tools, all Snap-On-branded property, all property claimed by Snellgrove, all containers and contents, or evidence of theft generally.

27. Ingram testified and admitted in written discovery that he did not personally read the warrant before or during its execution.

28. Brown stated in written discovery that she looked over the warrant during a pre-search briefing.

29. Gammons admitted in written discovery that he did not read the warrant and instead relied on a briefing from other officers.

30. Phelps admitted in written discovery that he did not read the warrant.

31. Snellgrove testified that he did not review the warrant before or during the search and did not meaningfully review it afterward.

### III. THE MAY 17, 2023 SEARCH AND REMOVAL OF PROPERTY

32. Law-enforcement officers began executing the warrant at the Hamblin residence at approximately 8:00 a.m. on May 17, 2023.

33. Ingram, Dahl, Brown, Chief Deputy Jesse Metcalf, and Gammons were present at the Hamblin residence during at least part of the search.

34. Phelps admitted in written discovery that he was not present at the Hamblin residence during execution of the warrant and did not personally seize property there.

35. Items matching the two descriptions in the warrant were located in an exterior outbuilding area before the principal residence was searched.

36. Snellgrove testified that officers called him during the search, told him they had found more Snap-On-branded merchandise than anticipated, and asked him to assist in identifying merchandise.

37. In a sworn statement, Dahl stated that he "conscripted" Snellgrove to appear at the search location, identify property subject to the warrant, and store property at 2100 Westside Drive under Dahl's control and supervision.

38. Snellgrove testified that officers told him they had no vehicle or equipment available to haul large items and asked him to bring trailers or trucks.

39. Snellgrove came to the Hamblin residence with privately controlled trucks or trailers and at least one Snellgrove Enterprises employee.

40. Snellgrove testified that officers asked him to identify merchandise that might belong to him.

41. Snellgrove testified that a law-enforcement officer accompanied him while he identified property.

42. Snellgrove testified that officers directed him to begin loading property.

43. Snellgrove testified that he and employee Randy Jones loaded and transported property under deputies' directions.

44. Snellgrove testified that officers also assisted in loading property onto privately controlled vehicles.

45. Property beyond the plasma cutter and air compressor described in the warrant was removed from the Hamblin residence.

46. A later Martin County inventory grouped the removed property into fifty-one categories.

47. Ingram admitted that at least forty-nine categories listed in the later inventory were not listed in the warrant.

48. After the two warrant-described items had been located, the search continued into the principal residence and included rooms, tool-storage drawers, cabinets, and containers.

49. Snellgrove testified that non-Snap-On tools were removed because they were located inside tool cabinets that were being removed.

50. Gammons admitted in written discovery that either Austin or Kiska objected to the seizure of one or more specific items and asserted that the items belonged to Plaintiffs rather than Snellgrove.

51. During the search, Austin asserted that he had lawfully purchased at least some of the Snap-On products, and officers instructed him to provide receipts for forwarding to the district attorney.

52. In his affidavit, Snellgrove stated that he pointed out to the sheriffs that some items at the residence were Austin's.

53. In a contemporaneous text concerning one item, Snellgrove stated that the item "might have been his personal or a trade-in he took and didn't tell me about."

54. Snellgrove testified that he did not inspect serial numbers on the property at the scene.

55. Ingram testified that the Sheriff's Office did not conduct an independent serial-number ownership inquiry before the expanded seizure.

56. Snellgrove testified that many large Snap-On items have serial numbers and that serial numbers ordinarily should appear on end-user sales documents.

## IV. TRANSPORTATION, STORAGE, AND CHAIN OF CUSTODY

57. No complete contemporaneous item-by-item outgoing inventory, including all container contents and available serial numbers, was prepared at the Hamblin residence before the property was removed.

58. No handwritten scene inventory bearing the signatures of two officers, as contemplated by the Martin County Sheriff's Office policy manual when two officers are available, has been produced or identified.

59. Chief Deputy Billy Reynolds stated that the principal problem he observed was the absence of a proper inventory as items left the Hamblin property and that, as a result, he could not determine whether particular items actually left with the Sheriff's Office.

60. At least some of the property was loaded into vehicles owned or controlled by Snellgrove or Snellgrove Enterprises.

61. The removed property was transported from Howard County to 2100 Westside Drive, Stanton, Martin County, Texas.

62. The removed property was not taken to a Martin County or Howard County law-enforcement property room.

63. Ingram testified that he made the final decisions permitting Snellgrove to transport the property and permitting storage at Snellgrove's private barn or warehouse.

64. No magistrate's order authorizing removal of the seized property from Howard County under Texas Code of Criminal Procedure article 18.10 was obtained.

65. The property was stored in a private barn or warehouse controlled by Snellgrove at 2100 Westside Drive.

66. No court order awarded possession or ownership of the disputed property to Snellgrove when the property was transported to or stored at 2100 Westside Drive.

67. The property was not segregated in an area marked and controlled by law enforcement.

68. No law-enforcement lock was installed on the barn or warehouse.

69. The Sheriff's Office did not have independent access to the barn or warehouse.

70. Snellgrove testified that approximately eleven private business employees had access to the barn or warehouse.

71. Snellgrove testified that he gave those employees no specific instructions concerning preservation or handling of the removed property.

72. No written inventory, receipt, acknowledgment, or chain-of-custody form documenting the transfer of the property into the barn or warehouse has been produced or identified.

73. Ingram testified that the Sheriff's Office conducted no written inventory, audit, or inspection of the property while it was stored at the barn or warehouse.

74. No complete item-by-item chain-of-custody record identifies every custodian, transfer, storage location, release, sale, or disposition for every item removed.

75. Ingram testified that he was present at the barn shortly after unloading and took photographs of the property there.

76. Ingram could not confirm the current location of the photographs he took at the barn.

77. Dahl stated that he later met Snellgrove at the barn, recorded video of the property, and instructed Snellgrove not to dispose of the property until authorized by the district attorney.

78. Dahl admitted that he received no written authorization from a prosecutor, judge, or magistrate before the property was released or transferred to Snellgrove.

### V. POST-SEIZURE INVENTORIES AND VALUATION

79. The later fifty-one-category inventory assigned a total claimed value of $283,445 to the listed property.

80. The fifty-one-category inventory did not identify every individual hand tool or every item contained within the removed cabinets and chests.

81. Ingram testified that the $283,445 valuation was supplied by Snellgrove.

82. The Martin County Sheriff's Office did not obtain an independent appraisal or conduct independent research to verify the $283,445 valuation.

83. The detailed inventory produced by Snellgrove was generated after the property had been removed from the Hamblin residence and taken to his warehouse.

84. Snellgrove testified that the detailed inventory was prepared through his business system with assistance from business personnel.

85. The detailed inventory did not state a total item count; when Plaintiffs' counsel stated during the deposition that Plaintiffs had counted 607 line items, Snellgrove did not dispute that count.

86. The post-seizure inventories did not consistently record serial numbers for serialized equipment.

87. Snellgrove testified that he had no complete list of the serial numbers for the removed serialized items and no remaining documentation that would permit every such item to be traced.

88. The Martin County Sheriff's Office later published a social-media post stating that a very large amount of new tools had been recovered and that the person identified as the owner had valued the tools at approximately $283,000.

## VI. BODY-WORN CAMERAS, VEHICLE CAMERAS, AND POST-EVENT REVIEW

89. The only body-worn-camera footage produced or identified by the Government Defendants for the May 17, 2023 search is Dahl's partial recording.

90. Dahl's produced recording consists of two clips from the same Axon file, approximately 8:02 a.m. to 8:49 a.m. and 10:44 a.m. to 11:01 a.m., leaving a gap of approximately one hour and fifty-five minutes.

91. No body-worn-camera recording from Ingram, Brown, or Gammons has been produced or identified for the May 17, 2023 search.

92. No produced body-worn-camera footage depicts the complete item-by-item seizure, bulk loading, cross-county transportation, unloading, barn storage, later release, or disposition of the property.

93. Martin County stated in written discovery that, to the best of its knowledge, no vehicle-mounted-camera footage of the search or transportation ever existed.

94. The Martin County Sheriff's Office policy manual required body-worn-camera recording during searches and seizures.

95. The Martin County Sheriff's Office policy manual prohibited an officer from turning off a body-worn camera during a law-enforcement event covered by the policy.

96. Ingram testified that he chose not to wear or activate a body-worn camera during the search.

97. Brown admitted in written discovery that she did not activate a body-worn camera during the search.

98. Martin County admitted in written discovery that no internal investigation, review, audit, or evaluation was conducted concerning the May 17, 2023 search or the handling and disposition of the property.

99. Martin County admitted in written discovery that no individual Defendant received discipline, a reprimand, or counseling arising from the search or the handling of the property.

100. Martin County identified no post-event corrective action or new training arising from the search or the handling of the property.

### VII. NOTICE, HEARING, RELEASE, AND DISPOSITION

101. Plaintiffs requested an inventory and the return of property removed from their residence.

102. Kiska sent Dahl written requests for a complete inventory, identified non-Snap-On property that had been removed, and stated that Plaintiffs had provided or could provide purchase information.

103. No hearing under Chapter 47 of the Texas Code of Criminal Procedure was held to determine the right to possession of the disputed property.

104. Plaintiffs received no written notice of a Chapter 47 possession hearing.

105. No written judicial order releasing the disputed property to Snellgrove has been produced or identified.

106. No written authorization from a prosecutor, judge, or magistrate releasing the disputed property to Snellgrove has been produced or identified.

107. Martin County admitted in written discovery that property removed from Plaintiffs' residence was given to Snellgrove without a court order, without notice to Plaintiffs, and without a judicial determination that Snellgrove was the owner.

108. Martin County admitted in written discovery that Plaintiffs did not consent to release of their property to Snellgrove.

109. No court adjudicated that every item removed from the Hamblin residence belonged to Snellgrove.

110. Snellgrove testified that Ingram and Dahl later told him the property had been released to him.

111. Snellgrove testified that he was told he could return the property to sellable inventory and sell it in the ordinary course of business.

112. Snellgrove testified that at least some of the property was returned to business inventory, sold, integrated, or otherwise disposed of.

113. Snellgrove testified that the items eventually went to end users.

114. No complete item-by-item record identifies the disposition or sale proceeds for every item removed from the Hamblin residence.

115. Martin County admitted that it cannot presently account for the location and disposition of every item removed from the Hamblin residence.

116. After the related criminal proceeding ended, no Chapter 47 hearing occurred and the disputed property was not returned to Plaintiffs.

## VIII. THE RELATED CRIMINAL PROCEEDING AND DISCLAIMED ITEMS

117. No person was arrested at the Hamblin residence during execution of the warrant on May 17, 2023.

118. The criminal indictment against Austin alleged one theft offense and did not charge a drug-possession, drug-paraphernalia, or firearm offense.

119. The related criminal proceeding ended on November 13, 2024, without a trial or conviction, when the State dismissed the charge for insufficient evidence.

120. No laboratory report, field-test result, or other chemical test result identifying the alleged substance as methamphetamine has been produced or identified in this civil action.

121. The firearm listed in the later Sheriff's Office inventory was returned to Plaintiffs.

122. Plaintiffs do not seek damages, return, or any other relief arising from the seizure, custody, testing, storage, or disposition of the alleged substance, the glass pipes, or the firearm identified as items 46 through 49 in Dahl's July 17, 2023 inventory.

123. Plaintiffs' disclaimer concerning items 46 through 49 does not extend to the tools, toolboxes, equipment, or other property that remain at issue.