# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND / ODESSA DIVISION

| | | |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN | § § | |
| VS. | § § | NO. 7:25-cv-00245 |
| MARTIN COUNTY, TEXAS | § § § | |
| BRAD INGRAM, | § § | |
| ANDERS DAHL, | § § | |
| KELSEY BROWN, | § § | |
| RORY GAMMONS, | § § | |
| WESTON PHELPS, and | § § | |
| BRIAN SNELLGROVE | § § | |

## PLAINTIFFS' MOTION IN LIMINE

1.      Plaintiffs Austin Hamblin and Kiska Hamblin move under Federal Rules of Evidence 103, 104, 105, 106, 401, 402, 403, 404, 602, 607, 608, 609, 611, 701, 702, 704, 801, 802, 803, and 901; Federal Rules of Civil Procedure 26(a)(2), 37(c)(1), 43(a), and 45(c); and Western District of Texas Local Rule CV-16(f), for the evidentiary rulings below and the limited trial-management relief described in Section IV. Plaintiffs request that counsel and witnesses obtain a ruling outside the jury's presence before mentioning an excluded matter in voir dire, opening statement, witness examination, exhibit display, or closing argument.

## GOVERNING STANDARD

2.      A motion in limine permits the Court to address anticipated prejudicial evidence before it reaches the jury. Luce v. United States, 469 U.S. 38, 40 n.2 (1984). Evidence is relevant only if it tends to make a consequential fact more or less probable. Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Even relevant evidence may be excluded when its probative value is

substantially outweighed by unfair prejudice, confusion, misleading the jury, undue delay, or wasting time. Fed. R. Evid. 403. The Court may determine preliminary questions of admissibility and foundation outside the jury's presence under Rule 104 and may restrict evidence to a proper purpose through Rule 105. When a party offers part of a statement or recording, Rule 106 permits the adverse party to require contemporaneous introduction of other portions necessary for fairness.

3. The requested rulings are preliminary. Plaintiffs preserve the right to make contemporaneous objections to any proffered evidence. A party that believes a particular item falls outside a ruling may make a specific Rule 104 proffer outside the jury's presence. Plaintiffs will make any trial objection needed to preserve error under Rule 103.

## REQUESTED RULINGS

### Exclude Unrelated Prior Acts, Criminal History, and Propensity Character Evidence

4. Defendants should be prohibited from mentioning or offering evidence concerning unrelated prior acts, alleged wrongdoing, arrests, charges, criminal history, or general character traits of Austin or Kiska Hamblin for the purpose of suggesting that either Plaintiff acted in conformity with a bad character. In a civil case, Rule 404(a)(1) bars use of character evidence to prove conduct in conformity, and Rule 404(b)(1) separately bars use of another crime, wrong, or act for that propensity purpose. The issues remaining for trial concern Defendants' conduct during and after the search, the handling and disposition of disputed property, the parties' respective possessory interests, causation, and damages. A collateral trial about unrelated conduct would create unfair prejudice and distract from those issues.

5. Before mentioning any such matter for a potentially allowable purpose (e.g., Rule 404(b)(2), however, Defendants should be required to identify outside the jury's presence the precise act or conviction, the permissible purpose, the evidentiary foundation, and the Rule 403 balance. Mere

arrests, accusations, and unadjudicated allegations are not convictions under Rule 609 and may not be used as a shortcut to propensity evidence.

### Limit the Underlying Criminal Accusation to Neutral Background

6. Plaintiffs concede for trial that a judge issued a valid search warrant after law enforcement received a complaint concerning certain tools. Plaintiffs do not bring a Franks claim and do not ask the jury to decide whether probable cause supported issuance of the warrant. Rather, the remaining disputes concern how the warrant was executed and how the seized property was transported, stored, released, retained, and disposed of.

7. Detailed allegations that Austin stole tools, diverted proceeds, zeroed sales tickets, possessed property inconsistent with his income, made statements to a babysitter, or committed other misconduct would produce a collateral criminal trial. The same is true of evidence or argument concerning arrest, bond, indictment, grand-jury action, plea discussions, and inflammatory criminal labels. None of those matters adjudicated ownership, expanded the warrant's operative command, supplied a safekeeping order, authorized cross-county transport, provided a possession hearing, or entered a judicial release order. An accusation or indictment is not proof of guilt.

8. Plaintiffs therefore request that the parties use the following neutral background unless the Court first permits additional detail outside the jury's presence:

> Law enforcement received a complaint concerning certain missing tools, investigated, and obtained a search warrant. The warrant authorized a search for and seizure of a Snap-On Plasma Cutter model 301 and a Snap-On Air Compressor. The investigation ended without a trial or conviction, and no court adjudicated ownership or the right to possess the disputed property.

9. The Court should exclude hearsay accusations, Snapchat or babysitter narratives, salary-to-property comparisons, alleged customer statements, alleged zeroed-ticket transactions, arrest, bond,

indictment, grand-jury action, plea discussions, and related criminal pleadings under Rules 401, 402, 403, 404, 410, and 802. This request does not prevent a party from seeking a limited ruling on a specific statement offered for a proper nonhearsay purpose, such as contemporaneous notice, motive, bias, coordination, or effect on the listener. Any such evidence should first be proffered under Rule 104 and, if admitted, limited under Rule 105. Plaintiffs likewise will not argue that dismissal alone proves factual innocence.

**Require Neutral Terminology and Bar Conclusory Ownership or Theft Labels**

10.     Ownership and superior possession remain disputed as to at least some items. No court adjudicated that every item removed from the Hamblin residence belonged to Snellgrove, was stolen, or was properly released to him. Texas law provides judicial procedures for safekeeping seized property and resolving competing claims to possession. See Tex. Code Crim. Proc. arts. 18.10, 18.11, 47.01, 47.01a. No such possession hearing or judicial ownership determination occurred before the private release and alleged disposition at issue.

11.     Counsel and witnesses therefore should not present disputed conclusions as adjudicated facts through labels such as 'stolen tools,' 'recovered stolen property,' 'the owner,' 'the victim,' 'thief,' or 'contraband.' Permitted neutral terms include 'property seized from the Hamblin residence,' 'disputed property,' 'property Snellgrove claimed,' and 'complaining witness.' A witness may accurately testify that the witness claimed, believed, or was told that a particular item belonged to someone, subject to personal knowledge, hearsay, and limiting rules.

12.     Plaintiffs do not seek to exclude properly founded, item-specific evidence relevant to ownership, superior possession, valuation, conversion, the Texas Theft Liability Act, or damages. The requested ruling concerns conclusory labels and argument, not admissible proof. The jury may

resolve factual issues properly submitted to it, but it should not be told that a prior accusation or unilateral label already settled those issues.

**Limit Snellgrove's Post-Seizure Inventories and Valuations as Substantive Proof**

13. The record reflects that at least one item list and valuation was generated after the property had been removed to Snellgrove's warehouse, using his business system and personnel. Dkt. 78, Ex. B at 54:2-13, 56:16-23. The resulting documents did not provide a complete contemporaneous outgoing inventory from the Hamblin property and did not consistently record serial numbers for serialized equipment. Id. at 57:2-21. A self-generated post-seizure list does not, merely by existing, prove that every listed item belonged to Snellgrove, was stolen, was actually removed from the residence, remained in custody, or had the assigned value.

14. Any such inventory, quote, valuation, or later reconstruction should be excluded as substantive proof of ownership, theft, chain of custody, or value unless the offering party first establishes authentication, personal knowledge, a nonhearsay use or hearsay exception, and reliability under Rules 602, 801 through 803, and 901. A document is not automatically a business record merely because software used in a business generated it. Rule 803(6) requires, among other things, a record made at or near the relevant time by a person with knowledge, kept in the course of regularly conducted activity, made as a regular practice, and sufficiently trustworthy.

15. Plaintiffs recognize that a document may be admissible for a limited nonhearsay purpose, such as showing the claim or valuation communicated to law enforcement, notice, bias, state of mind, or the scope of the private inventory process. If admitted for such a purpose, the Court should instruct under Rule 105 that the document is not itself a judicial determination of title, theft, chain of custody, or fair market value.

**Exclude Inflammatory References to the Alleged Substance, Pipes, and Firearm**

16.     The post-search inventory labels two glass pipes and two small bags as methamphetamine and describes a firearm in criminally suggestive terms. No laboratory report, field-test result, chain-of-custody test record, or disclosed expert chemical identification has been produced. Ingram testified that he did not know whether any drug test was performed. Dkt. 78, Ex. A at 51:1-3. An inventory label does not establish chemical identity, and a lay witness may not supply a scientific conclusion without a proper perception-based foundation. Fed. R. Evid. 701-702. The firearm was not illegal and was returned to Plaintiffs.

17.     Plaintiffs do not seek damages, return, or other relief arising from the seizure, custody, testing, storage, or disposition of the alleged substance, the pipes, or the firearm identified as items 46 through 49 in Dahl's July 17, 2023 inventory. Plaintiffs disclaim any cause of action as to those specific items for purposes of this trial. Their presence does not make it more or less likely that Defendants lawfully seized the other tools and equipment, transported them across county lines, stored them with a private claimant, provided notice and a hearing, maintained custody, or lawfully released and disposed of them.

18.     References to methamphetamine, meth, drugs, narcotics, controlled substances, contraband, drug paraphernalia, an illegal firearm, a short-barreled rifle, a ghost gun, or similar terms would invite jurors to decide a property and civil-rights case through unproven criminal propensity and moral condemnation. The danger substantially outweighs any marginal background value. Fed. R. Evid. 401-404. Plaintiffs request complete exclusion. Alternatively, Defendants should make a Rule 104 proffer before any reference and should be limited, if the Court permits mention, to the neutral terms 'unidentified, untested substance,' 'pipes,' and 'firearm,' with a limiting instruction that those

items do not establish ownership of or authority to seize, transfer, store, release, retain, or dispose of any tool or equipment at issue.

**Exclude Unverified Hearsay Concerning Alleged Harassment by Kiska Hamblin**

19.     Defendants should be prohibited from mentioning an allegation that Kiska Hamblin harassed an employee's wife unless they first establish outside the jury's presence a competent, nonhearsay basis and a material purpose. No police report, investigation, adjudication, or other reliable determination concerning that collateral allegation has been identified. Offered for its truth, the allegation is hearsay. Offered merely to smear Plaintiffs' character, it is barred by Rule 404 and substantially more prejudicial than probative under Rule 403.

20.     A witness with personal knowledge may, after a Rule 104 proffer, describe a communication if it is directly relevant to bias, motive, or another material issue and is not offered for an improper propensity purpose. But Defendants should not repeat layered statements from unnamed persons, use extrinsic evidence to litigate a collateral credibility issue contrary to Rule 608(b), or convert an unverified accusation into substantive proof of character or liability.

**Limit Abandonment and Mitigation Arguments Concerning Plaintiffs' Failure to Initiate a Property Hearing**

21.     Defendants should not argue that Plaintiffs abandoned their property, consented to its release, waived constitutional rights, or caused the deprivation merely because Plaintiffs did not themselves commence a Chapter 47 proceeding. Failure to pursue a particular procedure does not, without evidence of intentional relinquishment, establish abandonment. The record also includes evidence that Plaintiffs requested an inventory and return, identified non-Snap-On property, supplied ownership information, and continued seeking the property after the criminal case ended.

22.     The legal significance of Texas's safekeeping and possession procedures to the due-process claims is for the Court to define in the instructions, not for witnesses to resolve through burden-shifting labels. Defendants may not tell the jury that Article 47.01a imposed on Plaintiffs the legal duty to cure Defendants' alleged failure to provide notice, neutral custody, or judicial process.

23.     Plaintiffs do not seek to foreclose a properly supported mitigation defense if the Court determines that such a defense is legally available as to a particular category of damages. Any mitigation argument must be shown to be relevant and if allowed should be limited to damages, should identify a specific reasonable step Plaintiffs could have taken and the loss that step would have avoided, and should not be presented as a defense to a completed constitutional violation. A Rule 104 ruling and a tailored instruction are necessary to prevent confusion of liability, causation, abandonment, and mitigation.

**Prevent Misuse of the Incomplete Body-Camera Record and Other Missing Digital Evidence**

24.     Government Defendants identified two clips from the same Dahl Axon file, approximately 8:02 a.m. to 8:49 a.m. and 10:44 a.m. to 11:01 a.m. Dkt. 26-1, Ex. E. No produced recording depicts the complete seizure, loading, cross-county transportation, unloading, barn storage, release, or disposition. No body-worn-camera footage from Ingram, Brown, Gammons, or Phelps has been produced or identified for the search.

25.     Defendants should be prohibited from calling the clips a complete recording, suggesting that the entire material operation was recorded, arguing that an event did not occur merely because it does not appear in the incomplete footage, or suggesting that Plaintiffs caused the absence of body-camera footage, dash-camera recordings, audit logs, or other government-controlled records. They also should not offer speculative explanations for missing evidence or imply that an unproduced

record supports them. The parties remain free to argue reasonable inferences from what an admitted clip affirmatively depicts.

26.     If Defendants seek to explain whether a recording was never created, was retained, was overwritten, was deleted, or cannot be located, they should first make a Rule 104 proffer outside the jury's presence through a witness with personal knowledge or competent system evidence. The Court should instruct that the recordings cover only the periods shown and that silence outside those periods is not proof that an event did or did not occur. Plaintiffs preserve any separately presented request for spoliation relief and their right to offer admissible evidence concerning body-camera policy, nonactivation, gaps, preservation, production, and the absence of a complete record.

### Prohibit Lay Witnesses from Offering Legal Conclusions and Exclude References to Qualified Immunity

27.     Witnesses may describe what they saw, said, knew, were told, believed at the time, and did. They may testify about training, policies, ordinary practices, and factual reasons for their actions when otherwise admissible. They should not opine that a search or seizure was 'lawful,' 'reasonable under the Fourth Amendment,' 'within the scope of the law,' satisfied 'plain view,' established 'valid consent,' provided 'due process,' made a person a 'state actor,' created municipal liability, or entitled anyone to qualified immunity. Those formulations apply legal standards to disputed facts and risk replacing the Court's instructions with witness advocacy.

28.     Rule 704(a) abolishes a categorical objection merely because an opinion embraces an ultimate issue, but it does not permit a witness to state a legal conclusion. Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983). The Fifth Circuit likewise recognizes that whether conduct was unreasonable for Fourth Amendment purposes is a legal conclusion. United States v. Williams, 343 F.3d 423, 435 (5th Cir. 2003). Such testimony is not helpful within Rule 701 and invades the

Court's role. Qualified immunity is a legal issue and should not be mentioned before the jury unless the Court expressly submits a related historical fact question.

## Exclude Undisclosed Expert and Specialized Opinions

29. No unqualified witness should offer undisclosed expert or specialized opinions concerning chemical identity, firearm classification, police practices, Axon systems or audit logs, Snap-On serial-number ownership, accounting, causation, or other subjects that depend on scientific, technical, or specialized knowledge. Fed. R. Civ. P. 26(a)(2), 37(c)(1); Fed. R. Evid. 701-702. A fact witness may testify from properly founded personal knowledge, and an owner may offer a properly supported lay value opinion when the governing law permits it, but a party may not use a lay label to deliver technical testimony based on specialized training or undisclosed data.

## Preclude 'Good Faith' and 'Reasonable Reliance' as Uninstructed Legal Defenses

30. Ingram admitted that he did not personally read the warrant, and Gammons admitted that he did not read it and instead relied on a briefing. Dkt. 78, Ex. A at 10:11-19, 36:10-13; Ex. L at 3 (Interrogatory No. 2), 11 (RFA No. 4). Defendants should not be permitted to tell the jury that issuance of the warrant conclusively establishes their 'good faith' or 'reasonable reliance,' or that those labels defeat liability. The Leon exclusionary-rule good-faith exception and qualified immunity are legal doctrines, not free-standing jury defenses to be supplied by counsel or witnesses without instruction.

31. Plaintiffs do not seek to exclude factual testimony about what each officer knew, what the officer was told, whether the officer reviewed the warrant, what the officer believed, or why the officer acted. Such evidence may bear on disputed facts, punitive damages, or state-of-mind elements if otherwise admissible. The requested ruling is narrower: counsel and witnesses should not

apply legal labels of good faith, objective reasonableness, reasonable reliance, or immunity, and should not suggest that subjective sincerity changes the warrant's text or supplies a missing judicial order.

**Exclude Adverse Inferences from Plaintiffs' Assertion of Constitutional Rights**

32.     Defendants should be prohibited from characterizing Plaintiffs' requests to see the warrant, refusal or limitation of consent, objections to continued searching or seizure, assertion of privacy, requests for receipts or an inventory, or demands for return of property as evidence of guilt, consciousness of guilt, resistance, obstruction, or improper noncompliance. Exercising or attempting to exercise a constitutional or procedural right is not propensity evidence and should not be used to punish a party before the jury. Asking to see the warrant, withholding consent beyond its scope, or asserting privacy does not establish theft or wrongdoing. The statements and conduct may be described as part of the chronology when relevant, but no adverse inference or inflammatory label should be permitted under Rules 401, 403, and 404.

**Preclude the Labels 'Confession,' 'Admission of Criminal Activity,' or 'Admitted Theft' Without an Exact Foundation and Complete Context**

33.     Defendants have characterized statements by Austin at the scene as a confession or an admission of criminal activity. The record, however, reflects a dispute over which items belonged to whom, assertions that Austin had purchased tools over a period of years, and instructions that he provide receipts. A statement that a particular item may have belonged to an employer is not, without more, an admission of unlawful appropriation, lack of effective consent, or criminal intent.

34.     Plaintiffs do not seek to exclude an exact statement by Austin that is otherwise admissible as an opposing-party statement under Rule 801(d)(2). They seek to prevent counsel or witnesses from replacing the words actually used with the prejudicial legal labels 'confession,' 'admission of criminal

activity,' 'admitted theft,' or equivalent terms unless the Court first determines outside the jury's presence that the exact statement supports that characterization. If any excerpt is offered, Plaintiffs are entitled under Rule 106 to place necessary surrounding statements and context before the jury, including contemporaneous assertions of lawful purchase, trade-in, warranty, promotional, gift, or personal ownership.

35.     The dismissal of the criminal case does not itself prove factual innocence, and Plaintiffs will not argue otherwise. By the same token, the prior accusation, arrest, or indictment does not prove guilt. The jury should hear admissible words and facts, not counsel's criminal-law conclusion.

### Exclude Settlement, Insurance, Taxpayer-Burden, Golden-Rule, and Improper Wealth Appeals

36.     The Court should exclude settlement or mediation communications, insurance or indemnity, attorney-fee shifting, and the effect of a verdict on taxpayers, county budgets, public services, or law-enforcement operations. Fed. R. Evid. 408, 411, 401, 403. Counsel should also be prohibited from asking jurors to place themselves in a party's position, decide liability as a referendum on law enforcement or local politics, or decide compensatory liability through a request to send a message.

37.     Appeals to a party's wealth or poverty should be excluded during liability and compensatory damages. Properly admitted net-worth evidence, if any, should be reserved for a separate punitive-damages phase or otherwise handled as the Court directs.

### REQUESTED PROCEDURE

38.     Plaintiffs request that counsel instruct every witness concerning the Court's rulings; that counsel approach the bench before opening the door to an excluded subject; that foundation disputes be heard outside the jury's presence under Rule 104; that limiting instructions be given under Rule 105 where appropriate; and that any violation be addressed through an instruction, exclusion, or other relief sufficient to cure prejudice.

39. Plaintiffs also give advance notice that certain timely disclosed, material nonparty witnesses may reside outside Texas and beyond Rule 45(c)'s ordinary trial-subpoena range. Plaintiffs request leave under Rule 43(a), or reservation for witness-specific determination, to present a willing witness by Zoom or another Court-approved contemporaneous two-way video platform upon a showing of good cause in compelling circumstances and appropriate safeguards. Plaintiffs will identify proposed remote witnesses with their Local Rule CV-16(f) submissions and, if required, file a witness-specific motion under Local Rule CV-7 addressing materiality, availability, location, prejudice, and safeguards.

40. Plaintiffs also give notice they may call any individual Defendant in their case-in-chief. Rule 611(c)(2) ordinarily permits leading questions when a party calls an adverse party, a hostile witness, or a witness identified with an adverse party. Plaintiffs request an advance ruling that each individual Defendant is an adverse party and may be examined by leading questions from the outset without a separate showing of actual hostility, subject to the Court's control under Rule 611(a). Plaintiffs preserve the same request, after an appropriate proffer, for a disclosed nonparty witness identified with an adverse party or shown to be hostile.

## CONCLUSION

Plaintiffs respectfully request that the Court grant the foregoing motions in limine, grant or reserve the additional trial-management relief requested, enter an appropriate order, and grant all further relief to which Plaintiffs are entitled.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), on July 17, 2026, undersigned counsel conferred by email with counsel for all defendants regarding the relief sought in this motion. As of the filing of this

Motion, neither counsel for the defendants has responded. Plaintiffs accordingly treat this Motion as opposed.

## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF filing stamp, I filed this document with the Clerk of Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Respectfully submitted,

THE KURT MUELLER LAW FIRM, PLLC

By: /s/ Kurt Mueller
Kurt Mueller
Texas Bar No. 24133133
565 S Mason Rd PMB 223
Katy, Texas 77450
Tel: (713) 360-2110
Email: kurt@kurtmuellerpllc.com