**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN** | § | |
| | § | |
| **VS.** | § | |
| | § | **NO.    7:25-cv-00245** |
| **MARTIN COUNTY, TEXAS** | § | |
| | § | |
| **BRAD INGRAM,** | § | |
| | § | |
| **ANDERS DAHL,** | § | |
| | § | |
| **KELSEY BROWN,** | § | |
| | § | |
| **RORY GAMMONS,** | § | |
| | § | |
| **WESTON PHELPS, and** | § | |
| | § | |
| **BRIAN SNELLGROVE** | § | |

### PLAINTIFFS' OBJECTIONS UNDER LOCAL RULE CV-16(g)(2) AND RELATED PRETRIAL OBJECTIONS

1.    Plaintiffs and Austin Hamblin and Kiska Hamblin file these objections to the Martin County Defendants' Exhibit List (Doc. 88) and Defendant Brian Snellgrove's Exhibit List (Doc. 104) pursuant to Western District of Texas Local Rule CV-16(g)(2). Plaintiffs also preserve their objections to the Martin County Defendants' proposed jury instructions and verdict form (Docs. 92 and 94) under Federal Rule of Civil Procedure 51, Defendant Brian Snellgrove's proposed voir dire questions (Doc. 102), and the Martin County Defendants' proposed voir dire questions (Doc. 86) under Federal Rule of Civil Procedure 47. Plaintiffs' response to the Martin County Defendants' Motion in Limine (Doc. 91) is filed separately under Local Rule CV-16(g)(3).

**THE PRETRIAL SUBMISSIONS MUST BE CONFORMED TO THE JULY 24, 2026 OMNIBUS ORDER**

2. Documents 86, 88, 92, 94, 102, and 104 were filed before the Court's July 24, 2026 Omnibus Order. The Court dismissed the Fourteenth Amendment claim against all Defendants; dismissed the Fourth Amendment claim against Weston Phelps; limited the Section 1983 conspiracy claim to Brad Ingram, Anders Dahl, and Brian Snellgrove; and limited the surviving municipal-liability theory to the single act of Sheriff Ingram as Martin County's final policymaker. (Doc. 110 at 29-33, 38-49).

3. Accordingly, Plaintiffs object to any proposed instruction, verdict question, voir dire question, exhibit designation, or stated evidentiary purpose that assumes the continued existence of a dismissed claim or theory.

4. Plaintiffs further object to submitting the legal application of qualified immunity to the jury in the generalized form proposed in Document 94. If disputed historical facts remain material to qualified immunity, those facts should be submitted through specific interrogatories and the Court should then apply the law. See Fed. R. Civ. P. 49. Document 92 itself correctly states that the Court determines the legal application of qualified immunity. (Doc. 92 at 3). Document 94 instead instructs the jury to decide entitlement to qualified immunity and to return a defense verdict on that basis. (Doc. 94 at 9-10). The latter formulation should not be given.

**OBJECTIONS TO THE MARTIN COUNTY DEFENDANTS' EXHIBIT LIST (DOC. 88)**

**Global Objections to Compound, Categorical, and Unclear Designations**

5. Local Rule CV-16(f)(4) requires an appropriate identification of each exhibit, and Local Rule CV-16(h) requires trial exhibits to be marked consecutively. Local Rule CV-16(g)(2)

then requires the opposing party to disclose exhibit objections and their grounds. Many entries in Document 88 combine multiple writings, recordings, photographs, or broad categories under one exhibit number, while other entries use open-ended descriptions that do not identify the actual item to be offered. Those compound and categorical descriptions prevent meaningful exhibit-specific objections and should not operate as blanket admission tickets for any item falling within the stated category.

6.  Plaintiffs object, where applicable, under Federal Rules of Evidence 801 through 805 to hearsay and hearsay within hearsay; under Rules 1002 through 1004 when a summary, screenshot, excerpt, still image, or secondary description is offered in place of the original writing or recording or a proper duplicate; under Rule 106 when an excerpt is presented without necessary context; and under Rules 403 and 611(a) when numerous overlapping exhibits would be needlessly cumulative, confusing, or unduly time-consuming. To the extent a party seeks to summarize genuinely voluminous admissible records, the proponent must satisfy Rule 1006 and make the underlying records reasonably available.

7.  Plaintiffs therefore request that each actual writing, recording, photograph, report, communication, demonstrative, or summary intended for substantive use be separately identified and assigned an exhibit number, or at minimum an identified subpart, before it is offered. If evidence is admitted only for a limited nonhearsay purpose, Plaintiffs request an appropriate limiting instruction under Rule 105.

### G-1: Search Warrant, Affidavit, Attachments, Return, and Inventory

8.  G-1 is compound because the signed warrant, supporting affidavit, attachments, return, and inventory are separate writings serving different evidentiary purposes. Plaintiffs request separate exhibit numbers or clearly identified subparts. The warrant itself may establish the operative command and scope. The affidavit and attachments contain

statements attributed to Snellgrove, Nichols, the babysitter, customers, and other declarants that constitute hearsay or hearsay within hearsay if offered for their truth. The return and inventory do not, merely by their labels, prove that every listed item was stolen, belonged to Snellgrove, or had the assigned value. Any selected excerpt, summary, or reconstructed version is also subject to Rules 1002 through 1004 and Rule 106.

### G-2 and G-3: Body-Camera Footage, Clips, Photographs, and Still Images

9.  G-2 and G-3 are insufficiently specific. The phrases 'body-worn camera footage and related video clips' and 'photographs or still images' do not identify native filenames, dates, timestamps, the number of clips or images, or whether any item is edited, cropped, annotated, or extracted from another recording. Each recording and each photograph or still image should be identified separately. Where the content of a recording is at issue, the full recording or a proper duplicate is the best evidence, and edited clips or still frames are subject to Rules 1002 through 1004 and Rule 106. Recorded out-of-court statements remain subject to Rules 801 through 805. Repetitive clips, still frames, and photographs depicting the same event are also subject to exclusion or limitation as cumulative under Rules 403 and 611(a).

### G-4: Reports and Dismissal Documentation

10. G-4 improperly combines an offense report, an incident report, supplemental reports, and dismissal documentation. Each document should be separately identified. Statements of third parties embedded in law-enforcement reports require their own nonhearsay basis or exception and are not automatically admissible merely because they appear in a public record. The dismissal documentation may establish the disposition and date of the criminal case, but not the truth of the accusations or any party's factual innocence. Any

excerpt or synopsis is subject to Rules 1002 through 1004, and duplicative reports recounting the same allegations should be limited under Rules 403 and 611(a).

### G-5 and G-6: Deposition Excerpts and Exhibits Marked Therein

11. G-5 and G-6 are compound because each designation combines unspecified deposition excerpts with every exhibit 'marked therein.' Any deposition testimony must be used in conformity with Rule 32, and the certified transcript or properly recorded deposition is the best evidence of the testimony. Counsel-created screenshots, highlighted compilations, or summaries should not substitute for the certified record. Each embedded deposition exhibit should be separately identified and subjected to its own evidentiary ruling. To the extent Austin Hamblin or Kiska Hamblin testifies live, repetitive presentation of the same testimony by deposition is subject to Rules 403 and 611(a), without limiting proper impeachment, adverse-party use, or completeness designations.

### G-7: Unspecified Collection of Deposition Exhibits

12. G-7 is facially compound and unclear. It groups an inventory, sales history, a customer statement, bank statements, photographs, credit-sale contracts, a search warrant, and another inventory under one number. Those are materially different exhibits and must be separately identified. The customer statement and any other third-party statement are hearsay if offered for their truth. Bank statements, sales histories, contracts, and other business records require an applicable hearsay exception. Any summary or excerpt is subject to Rules 1002 through 1004. The repeated warrant and inventories overlap with G-1 and other categories and are subject to cumulative-evidence limitations.

### G-8 and G-9: Discovery Responses and Disclosures

13. G-8 and G-9 combine multiple sets of discovery responses, supplements, disclosures, property lists, and damages computations without identifying the particular request,

response, page, or document to be offered. The actual signed response or complete document, rather than counsel's summary, should be used when its contents are at issue. Plaintiffs' admissible statements may be offered against Plaintiffs as permitted by the Rules, but discovery requests, attorney objections, legal argument, and counsel-prepared disclosures are not automatically substantive evidence. The Martin County Defendants may not use their own denials or self-serving interrogatory answers for the truth merely because those statements appeared in discovery, and a denial of a request for admission is not affirmative proof of the opposite proposition. Repetitive use of discovery responses and live testimony on the same point is subject to Rules 403 and 611(a).

### G-10 and G-11: Communications, Policies, Training, and TCOLE Records

14. G-10 and G-11 are broad, compound categories covering communications among numerous people, several subjects, multiple policy documents, TCOLE records, training records, and body-camera policies. Each proposed communication, message thread, policy, or training record should be separately identified by date, participants, and subject. Statements within communications remain subject to Rules 801 through 805, and complete threads should be used where necessary for context under Rule 106. The operative policy version in effect during the relevant period, rather than an excerpt or later version, is the best evidence of its terms. Duplicate copies and multiple records proving the same policy or training point should be limited as cumulative.

### G-12, G-13, and G-14: Financial, Employment, Medical, and Snap-On Records

15. G-12, G-13, and G-14 each aggregate numerous categories of records without identifying specific documents or relevant time periods. Tax, payroll, employment, job-search, wage, business, medical, pharmacy, counseling, prescription, account, invoice, credit, customer, inventory, serial-number, warranty, and return records must be separately identified or

organized into clearly defined sets. The records and embedded statements are subject to Rules 801 through 805. Customer statements present an additional hearsay layer. The complete records or proper duplicates should be used when their contents are offered under Rules 1002 through 1004. Because these categories may be voluminous, the Court should prevent needless cumulative presentation and require compliance with Rule 1006 for any evidentiary summary.

### G-15: Any Exhibit Designated by Another Party

16. G-15 does not identify an exhibit at all. Plaintiffs agree that relevant and otherwise admissible evidence is not proprietary to the party that first identified it, and that any party may use an exhibit designated by another party for an admissible purpose. Plaintiffs object only to G-15 as a substitute for the identification required by Local Rule CV-16(f)(4). If the Martin County Defendants intend to offer another party's exhibit substantively in their case-in-chief, the actual exhibit should be identified, subject to the ordinary exceptions for true impeachment, rebuttal, and completeness evidence.

### G-16, G-17, and G-18: Public Records, Property Records, and Social-Media Materials

17. G-16, G-17, and G-18 are open-ended categories covering public records, court records, docket entries, law-enforcement records, business records, storage and disposition records, and social-media statements by any party or witness. Each proposed item should be separately identified. The existence of a pleading, indictment, report, or docket entry does not make the factual assertions inside it true. Social-media posts and public statements are subject to Rules 801 through 805, and the complete post, thread, date, and surrounding context should be presented when content is at issue. Screenshots or summaries are subject to Rules 1002 through 1004 and Rule 106. Repetitive records and posts addressing the same event should be limited as cumulative.

**G-19: Demonstratives, Timelines, Charts, and Summaries**

18. G-19 combines every possible diagram, map, demonstrative, timeline, summary, chart, and Rule 1006 summary into a single catchall. Each actual item should be disclosed and separately identified before it is shown to the jury, subject to any different procedure ordered by the Court. A Rule 1006 summary is admissible evidence only if its source materials are voluminous, admissible, and reasonably available for examination. An illustrative aid governed by Rule 107 is not itself evidence and should not be sent to the jury unless the Court orders otherwise. Argumentative, selective, duplicative, or cumulative demonstratives should be excluded or limited under Rules 403 and 611(a).

**G-20: Prior Statements, Affidavits, Declarations, Errata, and Corrections**

19. G-20 is an unidentified catchall covering every prior statement, affidavit, declaration, errata sheet, and deposition correction of any testifying witness. Each actual statement must be identified separately. A party may use an admissible prior inconsistent statement, qualifying prior statement, or completeness material under the governing Rules, but affidavits and declarations offered by the declarant's own side remain hearsay absent an exclusion or exception. The complete statement, certified deposition record, and applicable errata should be used rather than a selective summary or screenshot. Repetitive presentation of prior statements and live testimony is subject to Rules 403 and 611(a).

20. Plaintiffs respectfully request that the Court require the Martin County Defendants to provide a conformed exhibit list identifying and separately numbering the actual items they intend to offer, or else limit each designation to a specifically identified exhibit for which admissibility can be evaluated. Plaintiffs further request that the Court sustain the hearsay, best-evidence, completeness, and cumulative-evidence objections stated above as applied to the particular exhibits and purposes presented at trial.

**OBJECTIONS TO DEFENDANT SNELLGROVE'S EXHIBIT LIST (DOC. 104)**

21.   Plaintiffs incorporate the global objections stated above. Plaintiffs do not object to authenticity, but they object to compound and unclear designations and preserve the identified hearsay, best-evidence, completeness, voluminous-record, and cumulative-evidence grounds.

### S-1: Snellgrove Inventory List

22.   S-1 is a post-seizure inventory created by or for Snellgrove. If offered by Snellgrove to prove the truth of his own item descriptions, ownership claims, quantities, or values, it is hearsay unless he establishes an applicable exception. Its preparation for the investigation or litigation does not automatically make it a business record. The document should not be treated as substantive proof that each listed item was seized, belonged to Snellgrove, or had the stated value. To the extent it summarizes underlying invoices or inventory systems, Rule 1006 applies. The Court should also limit cumulative presentation of the same inventory through S-1, G-7, G-14, deposition exhibits, and live testimony.

### S-2: Invoices and Purchase Receipts

23.   S-2 is compound and does not identify the number, dates, vendors, purchasers, or Bates ranges of the invoices and receipts. Each invoice or coherent transaction set should be separately identified. The records are hearsay if offered for their truth unless an applicable exception is established. The complete records or proper duplicates should be used under Rules 1002 through 1004. A bulk invoice or receipt does not prove ownership of a particular seized item without an evidentiary link to that item. Repetitive and voluminous invoices should be limited under Rules 403 and 611(a), or summarized only in compliance with Rule 1006.

### S-3: Search Warrant Package

24. S-3 is compound because it combines the search warrant, supporting affidavit, attachments, return, and inventory. Plaintiffs request separate exhibit numbers or identified subparts and incorporate their objections to G-1. The warrant may establish its own scope, but third-party statements in the affidavit and attachments are hearsay if offered for their truth, and the return or inventory does not itself prove ownership, theft, or value. S-3 also duplicates G-1 and Plaintiffs' warrant exhibits and should be limited to avoid cumulative presentation.

### S-4, S-5, and S-6: Body-Camera Footage and Related Clips

25. S-4 through S-6 identify 'footage #1,' 'footage #2,' and 'footage #3' together with unspecified 'related video clips.' Those descriptions do not identify native filenames, duration, timestamps, or the relationship between the full files and the clips. Snellgrove should identify each actual recording and each proposed excerpt. The full recording or a proper duplicate is the best evidence of its contents; edited clips and stills are subject to Rules 1002 through 1004 and Rule 106. Recorded statements remain subject to Rules 801 through 805. These exhibits also overlap with G-2 and Plaintiffs' body-camera exhibits and should be limited to avoid repetitive presentation.

### S-7, S-8, and S-9: Warehouse Videos

26. S-7 through S-9 appear to identify three separate warehouse videos, but the list does not provide dates, times, native filenames, duration, or whether the videos are complete or edited. Plaintiffs request that those details be supplied before use. The full recording or a proper duplicate is the best evidence of each video's contents, and any audio statements remain subject to hearsay rules. To the extent the three videos repeatedly depict the same property, location, or condition, the Court should limit needlessly cumulative presentation under Rules 403 and 611(a).

**S-10: Martin County Sheriff's Office Delivery to DAA**

27. S-10 is unclear. The phrase 'Martin County Sheriff's Office delivery to DAA' does not identify the document type, author, date, recipient, contents, or what 'DAA' means. The item should not be offered until it is specifically identified. Any out-of-court statements contained in it are subject to Rules 801 through 805, and the complete document or proper duplicate should be used if its contents are at issue. If it duplicates a case-delivery record, report, or communication already designated elsewhere, cumulative presentation should be limited.

28. Plaintiffs respectfully request that the Court require Defendant Snellgrove to separately identify and number the actual writings and recordings he intends to offer, and sustain the foregoing hearsay, best-evidence, completeness, and cumulative-evidence objections as applied to the purpose for which each exhibit is offered.

## OBJECTIONS TO DOCUMENT 92, PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

29. Document 94 appears to amend portions of the instructions in Document 92, while Document 92 also contains the proposed verdict form. To the extent any challenged language in Document 92 remains before the Court, Plaintiffs preserve the following objections under Federal Rule of Civil Procedure 51 and will renew or refine them at the charge conference after the evidence closes.

### Instruction I: Personal Participation

30. Plaintiffs do not dispute that direct Section 1983 liability ordinarily requires each individual Defendant's own acts or omissions. Plaintiffs object to Instruction I if given without a qualification addressing the surviving conspiracy claim. Standing alone, the instruction

could cause jurors to reject conspiracy liability merely because they cannot identify which conspirator personally performed a particular search or seizure.

31.    A Section 1983 conspiracy is the mechanism through which liability may be imposed on participants in the agreement without regard to which conspirator committed the particular act that caused the constitutional deprivation. Bevill v. Fletcher, 26 F.4th 270, 283 (5th Cir. 2022). The Court should add the following clarification:

> The personal-participation requirement applies to direct constitutional liability. It does not limit the separate conspiracy instruction. If you find that a Defendant knowingly joined an agreement to violate Plaintiffs' constitutional rights and that a constitutional deprivation occurred in furtherance of that agreement, the Defendant may be liable for the resulting injury even if another conspirator performed the particular act.

### Instruction L: Municipal Liability

32.    Plaintiffs do not object to the abstract proposition that Martin County is not liable merely because it employed a tortfeasor. Monell does not impose respondeat-superior liability. Plaintiffs object because Instruction L is materially incomplete after the Omnibus Order and may mislead the jury into believing Plaintiffs must prove a separate pattern, custom, ratification, or deliberate-indifference theory.

33.    The Court held that Martin County admitted Ingram was the final policymaker for execution of search warrants and handling of seized property, and that this case fits the single-act final-policymaker exception. The Court further held that an unconstitutional act by Ingram, or Ingram's participation in the surviving conspiracy, if proven, constitutes County policy and can impose liability on Martin County. (Doc. 110 at 40-41). See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); Turner v. Upton County, 915 F.2d 133, 136-38 (5th Cir. 1990).

34.  Instruction L should be replaced with an instruction tailored to the only surviving theory:

Martin County is not liable merely because it employed a person who violated the Constitution. The Court has determined that Brad Ingram was Martin County's final policymaker concerning execution of search warrants and handling of seized property. If you find that Ingram committed the challenged Fourth Amendment violation, or participated in the conspiracy that caused that violation, then his decision and conduct constitute official policy of Martin County. No separate pattern, widespread custom, ratification, or deliberate-indifference finding is required under this theory.

### Instruction M: Conspiracy

35.  Plaintiffs do not dispute that mere presence or parallel conduct, standing alone, is insufficient to establish an agreement. Plaintiffs object to Instruction M as incomplete because it does not explain that cooperation, communications, timing, relationships, presence, and coordinated conduct may be considered together as circumstantial evidence of an agreement.

36.  The Court's Omnibus Order did exactly that. It considered friendship, months of communications, timing messages, advance planning for a large seizure, Dahl's communications during the search, Snellgrove's vehicles and employees, and the joint unloading at Snellgrove's barn. (Doc. 110 at 34-38). The instruction should add:

Mere presence, communication, or parallel conduct alone does not establish a conspiracy. You may, however, consider communications, cooperation, relationships, timing, coordinated conduct, and all surrounding circumstances together in deciding whether the Defendants reached an agreement or shared a common design to accomplish an unlawful objective.

## OBJECTIONS TO DOCUMENT 94, PROPOSED AMENDED JURY INSTRUCTIONS

### The Proposed Income-Tax Instruction Is Unsupported and Incorrectly Overbroad

37.  Document 94 instructs the jury to calculate lost earnings after income taxes and then states that 'any amount' awarded is not subject to income tax. (Doc. 94 at 5-6). Plaintiffs

object. The proposal cites no authority making an after-tax instruction mandatory in this Section 1983 and Texas-law case, supplies no evidentiary method for calculating hypothetical taxes, and invites collateral speculation.

38.    The blanket statement that any award is not taxable is also inaccurate. Federal tax treatment varies by the character of the recovery. For example, 26 U.S.C. § 104(a)(2) generally excludes damages received on account of personal physical injury or physical sickness, but expressly states that emotional distress is not treated as physical injury or physical sickness. Lost wages, punitive damages, interest, and other components may receive different treatment. Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490, 493-98 (1980), concerned a federal statutory FELA wrongful-death claim and does not justify a categorical statement that every award in this case is tax free.

39.    The Court should strike both tax paragraphs. Alternatively, the Court should determine the governing rule for each damages category outside the jury's presence and give only a narrowly supported instruction tied to evidence in the record. The safer course is to instruct the jury not to add to or subtract from damages based on speculation about tax consequences.

**The Consent Instruction Must Address a Physically Present Co-Occupant's Express Refusal**

40.    Document 94 explains that consent must be voluntary and may be limited, but it does not instruct the jury on the legal effect of a physically present co-occupant's express refusal. (Doc. 94 at 7-9). That omission is material because the Court identified a central fact dispute concerning whether Kiska expressly told the officers to leave and whether particular officers heard her. (Doc. 110 at 13-16)

41. A warrantless search of a shared dwelling cannot be justified by one occupant's consent over the express refusal of another physically present occupant. Georgia v. Randolph, 547 U.S. 103, 120 (2006). The Fifth Circuit likewise recognizes that consent may be limited or withdrawn by a physically present co-occupant. Gates v. Texas Department of Protective & Regulatory Services, 537 F.3d 404, 426 (5th Cir. 2008). The objection is dispositive as to reliance on the consent exception, although another independently valid exception could still be considered if supported by the evidence and the Court's instructions.

42. Plaintiffs request the following instruction:

If Kiska Hamblin was physically present and expressly refused or withdrew consent to search the shared residence, the officers could not rely on consent given by Austin Hamblin to justify continuing the warrantless search as to her. You must separately determine when any refusal or withdrawal occurred, which officers heard or knew of it, and whether another valid exception authorized the particular search or seizure at issue.

43. Plaintiffs further object to submitting exigent circumstances absent evidence supporting that exception. The Omnibus Order identified consent and plain view as the asserted exceptions relevant to this record. (Doc. 110 at 12-23).

**The Damages Instruction Must Be Conformed to the Claims and Evidence**

44. Document 94 uses personal-injury template language referring to an 'accident,' physical disability, physical impairment, future medical care, and physical-condition-based loss of earning capacity. (Doc. 94 at 4-6). Plaintiffs object to language unsupported by the pleadings and proof. The final instruction should identify the actual categories supported by the surviving claims, including property value, loss of use, proven economic loss, emotional distress, nominal damages, and punitive damages against eligible individuals, without inviting recovery for unsupported physical-injury categories.

## OBJECTIONS TO DEFENDANT SNELLGROVE'S PROPOSED VOIR DIRE QUESTIONS (DOC. 102)

### Question No. 2: Church Deacons

45. Question No. 2 asks whether prospective jurors believe 'Church Deacons cannot be trusted.' (Doc. 102 at 1). Plaintiffs object under Rules 401, 403, and 610. No claim or defense turns on whether church deacons as a class are trustworthy. The question injects religious status into credibility, invites impermissible bolstering, and risks suggesting that Snellgrove should receive a credibility presumption because of a religious title.

46. Plaintiffs' separate use of Bible-study attendance as evidence of the factual relationship between Ingram and Snellgrove does not open the door to religious credibility questions. The Court should strike Question No. 2.

### Question No. 6: "Victims of Crime" and Police Reports

47. Question No. 6 asks whether jurors believe 'victims of crime have rights and should not be punished for making police reports.' (Doc. 102 at 1). Plaintiffs object because the question is argumentative, assumes a crime occurred, labels Snellgrove a victim, and reframes civil liability as punishment for reporting suspected crime. The question risks committing jurors to a defense narrative before the evidence and instructions.

48. A neutral question could ask whether any juror would automatically believe or disbelieve a witness merely because that person made a police report. The proposed wording should not be used.

**OBJECTIONS TO THE MARTIN COUNTY DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS (DOC. 86)**

**Question No. 4: Presumption That a Complainant Is Lying or Self-Interested**

49.  Question No. 4 asks whether jurors believe a person who complains about suspected theft should be presumed to be lying, acting out of self-interest, or improperly influencing the investigation. (Doc. 86 at 2). Plaintiffs object because no party seeks such a presumption. The question is loaded, argues the defense's view of the evidence, and suggests that scrutiny of a financially interested complainant is equivalent to an improper presumption of dishonesty.

50.  A neutral alternative would ask: 'Would you give more or less weight to a witness merely because the witness reported suspected criminal conduct to law enforcement?'

**Question No. 13: Mistakes, Negligence, Poor Judgment, and Constitutional Violations**

51.  Question No. 13 asks prospective jurors whether they can distinguish alleged mistakes, negligence, poor judgment, or imperfect recordkeeping from a constitutional violation. (Doc. 86 at 2). Plaintiffs object because the question embeds legal distinctions that jurors have not yet been taught, minimizes disputed conduct as mere error, and operates as premature defense argument rather than an inquiry into bias.

52.  The Court may appropriately ask whether jurors can follow the Court's instructions and decide liability only from the admitted evidence. It should not ask jurors to pre-classify the alleged conduct using defense-favorable legal labels before trial.

**PRAYER**

53.  Plaintiffs respectfully request that the Court: (1) sustain Plaintiffs' objections to the compound, categorical, hearsay, best-evidence, incomplete, voluminous, and cumulative

designations in Documents 88 and 104 and require the actual exhibits to be separately identified and numbered before use; (2) sustain Plaintiffs' objections to Documents 92 and 94 and conform the final charge and verdict form to the Omnibus Order; (3) strike or revise the challenged voir dire questions in Documents 102 and 86; and (4) grant such other and further relief to which Plaintiffs may be entitled.

**Certificate of Service**

I certify that on the date reflected by the CM/ECF date stamps I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully Submitted,

/s/ Kurt Mueller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com