IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND / ODESSA DIVISION

| | | |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN | § | |
| | § | |
| VS. | § | |
| | § | NO. 7:25-cv-00245-RCG |
| MARTIN COUNTY, TEXAS | § | |
| | § | |
| BRAD INGRAM, | § | |
| | § | |
| ANDERS DAHL, | § | |
| | § | |
| KELSEY BROWN, | § | |
| | § | |
| RORY GAMMONS, | § | |
| | § | |
| WESTON PHELPS, and | § | |
| | § | |
| BRIAN SNELLGROVE | § | |

**PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S JULY 24, 2026 ORDER AS TO COUNT 2 (FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS)**

## I. INTRODUCTION

1. Plaintiffs Austin Hamblin and Kiska Hamblin respectfully move under Federal Rule of Civil Procedure 54(b) for partial reconsideration of the Court's July 24, 2026 Order (Doc. 110), solely as the Order disposes of Count 2, the Fourteenth Amendment procedural due process claim. Plaintiffs do not ask the Court to revisit any other portion of the Order.

2. The Order applies the *Parratt-Hudson* doctrine, concludes that Texas Code of Criminal Procedure article 47.01a supplied an adequate post-deprivation remedy after the criminal case ended, and holds that Defendants had no obligation to advise Plaintiffs of that remedy. Doc. 110 at 29-33. The Order also acknowledges fact issues concerning whether Defendants supplied the required inventory, returned the warrant, obtained a safekeeping

order, and immediately transferred the property to the complaining witness. *Id.* at 32-33 & nn.14-16.

3. Controlling authority confines *Parratt-Hudson* to a narrow setting. A post-deprivation remedy bars a procedural due process claim only when the deprivation was genuinely unpredictable, pre-deprivation process was impracticable, and the conduct was outside the officials' express or implied authority. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821-22 (5th Cir. 2007). Viewed in Plaintiffs' favor, the record permits a finding that the County's final policymaker personally authorized the complaining witness to transport and store disputed property after advance coordination with him. That is not the unforeseeable act of a line employee that *Parratt* and *Hudson* address.

4. Article 47.01a's practical adequacy also cannot be resolved against Plaintiffs as a matter of law on this record. Texas law directed officers to preserve contested property, place it under judicial control, identify the competing claimants, and retain custody until a magistrate directed safekeeping. The evidence permits a finding that Defendants instead placed the property in the claimant's private barn, where it was commingled with commercial inventory and sold or integrated before the criminal case was dismissed. At minimum, that evidence creates a fact issue whether a later petition could have produced meaningful relief.

5. *City of West Covina v. Perkins*, 525 U.S. 234 (1999), does not resolve that issue. *West Covina* holds that officials need not provide an individualized explanation of published state-law remedies once the owner has adequate notice of the seizure. However, the officers there left an itemized inventory, and the Supreme Court did not decide whether seizure notice was adequate when the owner lacked the information needed to identify

the property and seek its return. *Id.* at 236, 240-43. Here, the Order itself recognizes a fact dispute over whether the required inventory was provided.

6. Plaintiffs therefore ask the Court to vacate the portion of the Order granting summary judgment on Count 2 and reinstate that claim against the Defendants against whom it was pleaded. Independently, because Defendant Snellgrove did not join the Martin County Defendants' motion, any ruling entered for him without notice should be vacated under Rule 56(f).

## II. THE PORTION OF THE ORDER AT ISSUE

7. The Order acknowledges that "many Texas state statutes regarding the return of a search warrant and disposition of stolen property may have been ignored by Martin County Defendants." Doc. 110 at 29-30. It nevertheless concludes that "Plaintiffs had adequate notice and a meaningful opportunity to be heard" and that "no Fourteenth Amendment violation exists." *Id.* at 30.

8. The reasoning proceeds in four steps. The Order states that a random and unauthorized intentional deprivation does not violate due process if the State supplies an adequate post-deprivation remedy; article 47.01a became available after the November 13, 2024 dismissal of the indictment; Plaintiffs did not petition a judge under that article; and *West Covina* relieved Defendants of any duty to explain the remedy. Doc. 110 at 30-33.

9. The unresolved facts identified in the Order are not collateral. Whether Defendants provided an inventory, returned the warrant and inventory to a magistrate, obtained a safekeeping order, retained custody, and preserved identifiable property bears directly on both questions controlling the analysis: whether the deprivation was random and

unavoidable, and whether article 47.01a supplied meaningful relief under the actual circumstances.

## III. STANDARD FOR RECONSIDERATION

10. The Order adjudicates fewer than all claims and liabilities and is interlocutory. Rule 54(b) therefore permits the Court to revise it before entry of final judgment. Fed. R. Civ. P. 54(b); *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018).

11. Rule 54(b) is less exacting than Rule 59(e). *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Under Rule 54(b), the Court may reconsider an interlocutory decision for any reason it deems sufficient, even without new evidence or an intervening change in substantive law. *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

12. Plaintiffs rely on the existing summary judgment record and ask the Court to apply the controlling due process framework to that record. No final judgment has been entered, and Rule 54(b) supplies the governing standard.

## IV. ARGUMENT

### A. The Parratt-Hudson doctrine does not govern an authorized and foreseeable deprivation.

#### *1. Supreme Court and Fifth Circuit authority impose three threshold conditions.*

13. *Parratt* and *Hudson* address deprivations the State cannot predict and guard against in advance. *Zinermon v. Burch*, 494 U.S. 113, 128-30 (1990) (discussing *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986), and *Hudson v. Palmer*, 468 U.S. 517 (1984)). *Hudson* expressly states that

post-deprivation remedies "do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." 468 U.S. at 532.

14. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), applied that limitation one year after *Parratt*. The Court held that *Parratt* was not designed to reach a deprivation produced through the State's own procedure and that a later tort action was not a constitutionally adequate substitute for process at a meaningful time. *Id.* at 435-37.

15. *Zinermon* and the Fifth Circuit identify three conditions for *Parratt-Hudson* preclusion: the deprivation must have been genuinely unpredictable or unforeseeable; pre-deprivation process must have been impossible or ineffective to prevent the conduct; and the conduct must have been unauthorized in the sense that it fell outside the officials' express or implied authority. *Stotter*, 508 F.3d at 821-22. Conduct is not unauthorized merely because it violated state law where the State delegated officials "the power and authority to effect the very deprivation complained of" and the accompanying duty to use procedural safeguards. *Zinermon*, 494 U.S. at 138.

16. The Fifth Circuit has repeatedly enforced that boundary. *Allen v. Thomas* vacated judgment of a property claim because confiscation under an administrative directive was not random or unauthorized. 388 F.3d 147, 149 (5th Cir. 2004). *Brooks v. George County* rejected as "blatantly misleading" the argument that the mere existence of a post-deprivation remedy defeats due process, explaining that conduct pursuant to official policy or local custom cannot fairly be labeled random and unauthorized. 84 F.3d 157, 165-66 (5th Cir. 1996).

17. The substituted opinion in *Alexander v. Ieyoub* is consistent. The plaintiff there alleged that officials seized her car and then followed their customary practice of failing to institute a timely forfeiture proceeding. The Fifth Circuit held that the allegation of customary conduct negated the random and unauthorized element required for *Parratt-Hudson* preclusion. It further held that the same delay, which effectively blocked the plaintiff from asserting her rights to the car, undermined the adequacy of the existing state remedies. Because neither the pre-deprivation nor the post-deprivation condition was satisfied, the court reversed the dismissal of her Section 1983 claim. 62 F.3d 709, 713 (5th Cir. 1995)

18. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir. 1992), illustrates the other side of the line. The officer there departed from an express neutrality policy in response to a series of independent and unforeseeable private acts, and the Fifth Circuit found that no practical additional procedure could have prevented the one-off violation. *Id.* at 643-45. Plaintiffs' evidence permits the opposite finding here: advance coordination with the private claimant, a personal decision by the official responsible for seized-property handling, and a Department-approved plan to use the claimant's vehicles and private barn.

***2. The evidence permits a finding that this deprivation was authorized, predictable, and personally directed.***

19. The Martin County Sheriff's Office admitted that Sheriff Ingram was the final policymaker for the Department concerning execution of search warrants and handling of seized property in May 2023, and Ingram confirmed that admission. Ex. N at 13 (RFA No. 6); Ex. A at 7:21-24. That admission is independently significant under *Brooks* and *Stotter* because it permits a finding that the challenged conduct reflected authorized decision-making rather than an unforeseeable departure by a subordinate.

20. Ingram admitted that he personally made the final decisions to allow Snellgrove to transport the seized property and to store it at Snellgrove's private barn. Ex. A at 58:25-59:6. He further testified that no magistrate authorized the removal from Howard County, no court order released the property to Snellgrove, and no court held an ownership hearing. Ex. A at 13:15-21; 69:11-70:7; 92:15-93:12. The Department admitted that property was removed from Plaintiffs' home and given to Snellgrove without a court order, notice, or judicial ownership determination. Ex. N at 16 (RFA No. 29).

21. The record also permits a finding of predictability and advance planning. Ingram testified that the Sheriff's Office and Snellgrove communicated for "several months" before the formal report and discussed the possibility that the Office would need help moving a large quantity of property. Ex. A at 9:23-10:6. Two days before the warrant issued, Snellgrove texted Ingram about the "timing of all that needs to go down," and Ingram responded that he would check the status. Ex. A at 113:19-114:12; Ex. F at 1-7. Dahl later swore that he "conscripted" Snellgrove to identify and store property under his supervision. Ex. D at 1, paragraph 4.

22. The relevant question is not whether Texas law permitted the transfer alleged by Plaintiffs. It did not. The question is whether Texas delegated the officers broad authority over custody and safekeeping of seized property, together with duties designed to prevent an erroneous transfer. Articles 18.10, 47.01(a), and 47.03 did exactly that. An abuse of delegated authority does not become random and unauthorized merely because the official failed to comply with the legal limits accompanying that authority. *Zinermon*, 494 U.S. at 135-39; *Allen*, 388 F.3d at 149.

23. The Department's response after the event reinforces, at minimum, the existence of a fact issue. The Department admitted that it conducted no internal investigation, review, audit, or evaluation and imposed no discipline or corrective action. Ex. N at 6 (Interrog. No. 10); Ex. N at 11 (RFP No. 19). Ingram testified that policy-required audits and inspections of the property and evidence function were not performed. Ex. A at 79:2-5; 96:17-97:25. On this record, the Court cannot characterize the deprivation as an isolated rogue act as a matter of law.

**B. Article 47.01a cannot be deemed an adequate remedy as a matter of law on this record.**

***1. Texas law supplied pre-deprivation controls and a return procedure directed at identifiable property.***

24. Even when *Parratt-Hudson* applies, the available state remedy must be adequate under the circumstances. The question here is not whether article 47.01a exists in the abstract. It is whether, after the alleged transfer, commingling, and disposition, that procedure remained capable of providing meaningful relief to these Plaintiffs.

25. The statutory scheme begins with officer custody and judicial control. Article 47.01(a) requires an officer who comes into custody of allegedly stolen property to hold it subject to the proper court when ownership is contested. Article 47.03 requires the officer immediately to file a schedule and value with the court and notify the court of each known claimant. Article 18.10 requires the seizing officer to return the warrant and inventory, retain custody until a magistrate directs safekeeping, and obtain a magistrate's order before removing property from the county of seizure. Article 18.06 requires a written inventory before property is taken and delivery of a copy to the owner or person in possession. Tex. Code Crim. Proc. arts. 18.06(b), 18.10(a), 47.01(a), 47.03.

26. Article 47.01a then permits an interested person, county, city, or the State to petition a magistrate when no related criminal action is pending. The court shall order the property delivered to the person with the superior right to possession or award it to a peace officer pending investigation. Tex. Code Crim. Proc. art. 47.01a(a). The principal relief is thus an order concerning identifiable property capable of delivery or official custody, not a damages award against a private recipient who has already sold or absorbed the property into inventory.

27. The Texas Supreme Court has described Chapter 47 as the mechanism that protects a claimed possessory interest in seized property, and it has characterized the relief the chapter affords as "actual possession." *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 235-36 (Tex. 2011). *VSC* held that a vehicle storage company that knew which cars had been seized and knew who seized them could not bypass that procedure in favor of a constitutional takings claim, because the statutory scheme remained available to it as a means of regaining possession or obtaining compensation. The claimant there conceded that the procedure, properly used, adequately protects its interests, and the record bore that out: forty-seven of the seized vehicles were the subject of Chapter 47 proceedings in municipal court, and the claimant recovered possession of some and compensation for others. That is what an adequate Chapter 47 remedy looks like in operation. Each of its features, actual knowledge of what was taken, continued official custody of the property, and a functioning judicial process, is disputed or absent on this record.

28. Plaintiffs' evidence permits a finding that the property was placed beyond the practical reach of the statutory return remedy. Snellgrove testified that approximately eleven employees had access to the barn, no segregation or marking separated seized property

from business inventory, the Sheriff's Office installed no lock and had no independent access, and employees received no preservation instructions. Ex. B at 54:8-13; 55:2-12. He further testified that, before the criminal case ended, he returned items to sellable inventory and sold, integrated, or otherwise disposed of property without an item-by-item disposition record. Ex. B at 86:1-87:8; 96:25-97:7. The Department admitted that it cannot account for the present location of all seized items. Ex. N at 15 (RFA No. 15).

29. If a factfinder credits that evidence, a petition filed after the November 2024 dismissal could not have produced delivery of items already sold or rendered unidentifiable. At minimum, the timing and extent of the dissipation present a genuine dispute over the practical adequacy of the remedy on which the Order relied.

***2. The officers had mandatory duties that were part of the statutory process.***

30. Article 47.01a allows an interested person to petition, but that does not erase the officer's separate duties under articles 47.01 and 47.03. Article 47.03 states that the seizing officer "shall immediately" file a schedule and value and notify the court of each known claimant. Those duties are how the court obtains formal notice of the property and competing claims while the evidence remains preserved.

31. Viewed in Plaintiffs' favor, the record permits a finding that no article 47.03 schedule identifying the competing claimants was filed, despite ownership objections at the scene and later requests for a complete inventory. Ex. L at 12 (RFA No. 10); Doc. 78 ¶ 38. Instead of holding the property subject to court order, Ingram authorized storage with the claimant. Ex. A at 58:25-59:6; Ex. N at 16 (RFA No. 29). Those facts bear directly on whether the statutory process remained meaningful.

32. Plaintiffs do not contend that every violation of Chapter 18 or Chapter 47 is automatically a federal constitutional violation. The statutes matter because they demonstrate that pre-deprivation controls were available and practicable, and because the alleged bypass of those controls bears directly on predictability, authorization, and practical adequacy under *Zinermon* and *Stotter*.

**C. West Covina does not resolve the disputed notice and remedy issues.**

33. *West Covina* holds that, when police seize property for a criminal investigation and the owner has notice of the seizure, due process does not require officials to provide an individualized explanation of generally available state-law remedies. 525 U.S. at 240-41. Plaintiffs do not ask the Court to impose such an explanatory duty.

34. The factual setting in *West Covina* included a notice identifying the search, the agency, the warrant and issuing court, contact persons, and an attached itemized list of seized property. *Id.* at 236. The Court separately emphasized that individualized notice of the seizure itself was necessary because the owner otherwise lacked a reasonable means to identify who caused the loss. *Id.* at 240-241. The Court did not reach the merits of that argument because the district court had made an explicit factual finding that the owners failed to establish they needed the missing information. *Id.* at 242-44.

35. Here, the Order acknowledges a genuine issue whether Defendants provided the article 18.06 inventory. Doc. 110 at 32 & n.14. On Defendants' motion, that dispute must be resolved in Plaintiffs' favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). So resolved, this case lacks the itemized notice that formed part of the actual record in West Covina.

.

36. The evidence also permits a finding that the later list was incomplete. Ingram testified that he did not know where the policy-required handwritten inventory was, whether two officers conducted or signed it, or whether any of the property was transported to the agency office or property room. Ex. A at 84:13-85:25; 86:1-12; 90:6-11. The list Plaintiffs received was generated on Snellgrove's sales software, contained no serial numbers, and stated no total item count. Ex. B at 54:2-13; 56:4-23; 57:2-21.

37. Plaintiffs' physical presence during portions of a search establishes general awareness that property was being removed. It does not conclusively establish that they knew which hundreds of individual tools were taken, which agency or private custodian controlled each item, or whether the items remained identifiable when article 47.01a became available. The material issue is not whether Plaintiffs knew that something was taken, but whether they had a meaningful opportunity to identify the disputed property and obtain effective relief before its alleged disposition. The present record does not permit that issue to be decided against Plaintiffs as a matter of law.

38. *VSC* does not require a different result. The claimant there knew the vehicles were seized from its lot and knew who seized them, and the Texas Supreme Court addressed a takings claim requiring use of the statutory return process. 347 S.W.3d at 235-36. It did not apply *Parratt-Hudson* to a Section 1983 claim based on an alleged state-assisted transfer to a private claimant, nor did it decide adequacy where the inventory, custody, identity, and continued existence of the property were disputed.

**D. The challenged deprivation is the post-seizure transfer of disputed property, not issuance of the warrant.**

39. Plaintiffs do not contend that an adversary hearing was required before the search warrant issued. See *Fuentes v. Shevin*, 407 U.S. 67, 93 n.30 (1972). The challenged deprivation is the later decision to place disputed property in the possession and effective control of the competing private claimant without notice or adjudication of the right to possession.

40. *Fuentes* and *Connecticut v. Doehr* confirm the general due process concern when state power transfers or encumbers disputed property between private claimants without prior adjudication. *Fuentes*, 407 U.S. at 80-84; *Doehr*, 501 U.S. 1, 11-12, 18 (1991). They are not search-warrant cases, but they illuminate why the post-seizure transfer alleged here must be analyzed separately from the issuance of the warrant.

41. A private party who jointly participates with state officials in effecting the challenged deprivation may act under color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). The evidence that officers directed Snellgrove to identify, load, transport, and store the property is therefore material to Count 2, not collateral to it.

42. The existing record also requires application of the *Mathews* factors to the alleged post-seizure transfer. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The private interest included Plaintiffs' extensive tool collection and trade instruments. The risk of error was heightened by a known ownership dispute and reliance on the financially interested claimant. Ingram testified that he personally ran no serial numbers, contacted no one at Snap-On corporate, examined no receipts, and made no independent ownership investigation beyond Snellgrove's representations. Ex. A at 29:6-13; 31:2-5; 50:7-19. The record permits a finding that the governmental burden of preserving neutral custody and

presenting the dispute to a magistrate was limited. Those issues cannot be resolved against Plaintiffs without the balancing the due process inquiry requires.

**E. At minimum, genuine disputes of material fact preclude summary judgment on Count 2.**

43. The Order identifies fact issues concerning four matters: whether Defendants provided an inventory, returned the warrant and inventory, obtained a safekeeping order, and immediately turned the property over to the complaining witness. Doc. 110 at 32-33 & nn.14-16. Each fact bears on notice, preservation, judicial control, predictability, and the practical operation of article 47.01a.

44. There is an additional dispute over when and to what extent the property was dissipated. Snellgrove testified that he returned items to sellable inventory and sold or integrated them before the criminal case ended. Ex. B at 86:1-87:8; 96:25-97:7. If credited, that testimony would permit a finding that the remedy described as available in November 2024 was already incapable of returning substantial portions of the property. The Court must draw that inference in Plaintiffs' favor on Defendants' motion. *Anderson*, 477 U.S. at 255; *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

45. The disputed facts also prevent a legal determination that the deprivation was random and unauthorized. Under *Stotter*, evidence of foreseeability, delegated authority, common practice, and available pre-deprivation safeguards is sufficient at minimum to create a jury question. 508 F.3d at 821-22.

**F. The judgment for Defendant Snellgrove warrants clarification and, if notice was lacking, relief under Rule 56(f).**

46. The Order grants "Martin County Defendants' Motion for Summary Judgment (Doc. 26)" on Count 2 "against all Defendants." Doc. 110 at 33. Doc. 26 was filed by the Martin County Defendants, not Defendant Snellgrove. Rule 56(f) generally requires notice and a reasonable time to respond before judgment is entered for a nonmovant or on an unraised ground. Fed. R. Civ. P. 56(f)(1)-(2). Plaintiffs recognize that Count 2 was also briefed through their own motion. The remaining question is whether that briefing supplied fair notice of the particular ground on which judgment was entered for him.

47. Snellgrove's potential Section 1983 liability depends on his alleged joint participation with the officers in accepting custody, commingling the disputed property, and disposing of it before adjudication. See *Lugar*, 457 U.S. at 941-42; *Dennis*, 449 U.S. at 27-28. Plaintiffs respectfully request that the Court clarify the basis for judgment in his favor and, to the extent the adopted ground was not fairly noticed and fully briefed, vacate that judgment.

## V. CONCLUSION

48. The state statutes identified in the Order do not themselves convert every evidence-handling error into a constitutional violation. They do, however, show that pre-deprivation safeguards were available and practicable: contested property was to remain subject to court order, the court was to receive a schedule identifying the claimants, the seizing officer was to retain custody until a safekeeping order issued, and the owner was to receive an inventory. Viewed in Plaintiffs' favor, the record permits a finding that Defendants bypassed those safeguards and transferred the property to the competing claimant, who commingled and sold it.

49. Under *Zinermon*, *Stotter*, *Allen*, *Brooks*, and the substituted opinion in *Alexander*, the existence of a later state-law procedure does not defeat Count 2 as a matter of law where the deprivation was foreseeable, effected through delegated authority, and preventable through pre-deprivation process. At minimum, the record contains genuine disputes of material fact on those issues and on whether article 47.01a remained capable of affording meaningful relief.

**PRAYER**

Plaintiffs Austin Hamblin and Kiska Hamblin respectfully request that the Court:

a. GRANT this motion and, under Federal Rule of Civil Procedure 54(b), VACATE the portion of the Court's July 24, 2026 Order (Doc. 110) granting summary judgment on Count 2;

b. REINSTATE Count 2 for trial against Defendants Brad Ingram, Anders Dahl, Kelsey Brown, Rory Gammons, Weston Phelps, and Brian Snellgrove;

c. in the alternative, HOLD that genuine disputes of material fact preclude summary judgment on Count 2;

d. as to Defendant Snellgrove, CLARIFY the basis of judgment and, to the extent Rule 56(f) notice was lacking, VACATE the judgment or provide notice and a reasonable opportunity to respond; and

e. GRANT Plaintiffs such other and further relief to which they may be entitled.

**CERTIFICATE OF CONFERENCE**

Plaintiffs' counsel was unable to complete a conference before filing this motion. This motion was not finalized until the morning of the pretrial conference. Plaintiffs filed promptly so that the

Court could address the proposed motion at the conference rather than after it. Plaintiffs do not represent that this motion is unopposed. Service through CM/ECF will provide all counsel immediate electronic notice of the motion, and Plaintiffs will be prepared to confer before or at the final pretrial conference. Plaintiffs respectfully request that the Court waive the conference requirement under Local Rule CV-1(e), or alternatively permit Defendants to state their positions at the conference before the Court rules.

**CERTIFICATE OF SERVICE**

I certify that on the date reflected by the CM/ECF date stamps I filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that those participants in the case that are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Kurt Mueller
-------------------------------------
Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com
ATTORNEY FOR PLAINTIFFS