**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MARTIN COUNTY, TEXAS, et al.,** | § | **NO. 7:25-CV-00245** |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' TRIAL BRIEF REGARDING ACCRUAL AND LIMITATIONS OF THE CONVERSION CLAIM AGAINST BRIAN SNELLGROVE**

Plaintiffs submit this brief at the Court's request in opposition to Defendant Brian Snellgrove's oral motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) related to Conversion. Snellgrove's proposed accrual date of May 17, 2023 depends on two mutually incompatible premises. Texas conversion requires an **unauthorized and wrongful** exercise of dominion. Yet Snellgrove has maintained throughout this case that he lawfully took and initially held the property at law enforcement's direction as part of the lawful warrant execution and ensuing criminal investigation. Accepting that contention *arguendo*, his initial possession **could not** itself be the conversion. Under controlling Texas and Fifth Circuit authority, conversion instead occurred when that assertedly lawful custodial possession later became unequivocally adverse.

According to Snellgrove's testimony at trial, the Sheriff's Office told him that he could release the property in fall 2023. At that point, the jury could find Snellgrove folded it into his business, sold it, transferred it, or otherwise disposed of it for his own benefit. That is the kind of later act that Texas law treats as conversion. Alternatively, the claim accrued when Plaintiffs

demanded return after the criminal case was dismissed on November 13, 2024, or when they first learned that the asserted evidence custodian had secretly disposed of the property. Because a reasonable jury could adopt any of these valid later accrual dates, Rule 50 relief is unavailable.

**THE TRIAL EVIDENCE SUPPORTS A LATER ACCRUAL DATE.**

The admitted search warrant authorized seizure of a Snap-On Plasma Cutter model 30i and a Snap-On Air Compressor. The Sheriff's records nevertheless describe dozens of categories of property removed from Plaintiffs' home. Most important here, the Sheriff's contemporaneous offense supplement states that the seized Snap-On property was released to Snellgrove for "storage and inventory" so that its value could be assessed. That record describes custodial evidence storage. The evidence further permits findings that officers directed Snellgrove to load and transport the property; that the property went to a barn or facility he controlled rather than a government evidence room; and that Investigator Dahl instructed him not to dispose of it until authorized. According to Snellgrove, this authorization occurred sometime after Fall 2023.

**RULE 50 AND THE AFFIRMATIVE-DEFENSE BURDEN REQUIRE ALL REASONABLE INFERENCES IN PLAINTIFFS' FAVOR.**

Judgment as a matter of law is proper only when a reasonable jury would lack a legally sufficient evidentiary basis to find for the nonmovant. Fed. R. Civ. P. 50(a)(1). The Court must draw all reasonable inferences for Plaintiffs and may not weigh credibility or substitute its view of disputed evidence for the jury's. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000).

Statute of Limitations is Snellgrove's affirmative defense. He therefore bears the burden to establish exactly when the conversion claim accrued and that the applicable two-year period expired before suit. *Draughon v. Johnson*, 631 S.W.3d 81, 88-90 (Tex. 2021); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). If the evidence supports a timely accrual

date, or competing reasonable inferences concerning the accrual date, the defense cannot be established as a matter of law.

**WHEN POSSESSION BEGINS LAWFULLY, CONVERSION ACCRUES ONLY UPON LATER ADVERSE DOMINION OR DEMAND AND REFUSAL.**

Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over another's property to the exclusion of, or inconsistently with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Thus, when the defendant's original possession is not wrongful, receipt of the property does not complete the tort.

The Fifth Circuit, applying Texas law, identifies two later events that complete conversion following lawful initial possession: (1) the rightful owner demands return and the possessor refuses, or (2) the possessor unequivocally exercises dominion inconsistent with the owner's claim. *Goodbody & Co. v. McDowell*, 530 F.2d 1149, 1151-52 (5th Cir. 1976). Texas law is the same. *Pierson v. GFH Financial Services Corp.*, 829 S.W.2d 311, 314-15 (Tex. App.-Austin 1992, no writ); *Taylor v. Walston & Co.*, 502 S.W.2d 613, 615-16 (Tex. Civ. App.-Dallas 1973, writ ref'd n.r.e.).

A later unauthorized sale is independently sufficient. In *Presley v. Cooper*, the Texas Supreme Court held that a bailee's sale in violation of the bailment was a "distinct act of dominion" and a "distinct, independent act of conversion." 284 S.W.2d 138, 141 (Tex. 1955). Demand and refusal were unnecessary because the sale itself established the tort. *Id.*

**COMMERCIAL METALS AND SNELL ADDRESS THIS PRECISE EVIDENCE-CUSTODY SETTING.**

The closest Texas authority is *Southwestern Bell Telephone Co. v. Commercial Metals Co. of Houston*, 389 S.W.2d 116 (Tex. Civ. App.-Houston 1965, no writ). There, a sheriff seized bulky copper wire after Southwestern Bell claimed it had been stolen. The sheriff had the wire delivered to Southwestern Bell's warehouse, using transportation arranged by the private

claimant, to be held as evidence during the criminal cases. *Id.* at 117-19. Southwestern Bell argued that limitations began when it physically received the wire. The court rejected that argument. It held that the factfinder could treat Southwestern Bell as the sheriff's nominee, possessing the wire solely for the evidentiary purpose, and could find no conversion until the criminal cases were dismissed and the company refused to return it. *Id.* at 119.

The Fifth Circuit adopted that analysis in *Snell v. Short*, 544 F.2d 1289 (5th Cir. 1977) (per curiam). There, even a demand and refusal did not create conversion while police remained legally entitled to hold the property as criminal evidence. The court held that the conversion claim "could accrue only after the police lost the protection" of Texas Code of Criminal Procedure article 47.01. *Id.* at 1291. Current article 47.01 likewise treats disputed property alleged to have been stolen as property held subject to the proper court's order.

The parallels are direct. Here, law enforcement caused disputed property to be transported by the private complainant to his private facility; the Sheriff's report described the arrangement as "storage and inventory"; and an investigator instructed the private custodian not to dispose of the property until authorized. Under *Commercial Metals* and *Snell*, physical delivery to Snellgrove did not necessarily start the clock running on a conversion claim.

**RULE 8 PERMITS ALTERNATIVE THEORIES, AND SNELLGROVE'S OWN LAWFUL-AUTHORITY PREMISE FORECLOSES MAY 17 ACCRUAL.**

At the Rule 50(a) hearing held on August 26, 2026, when the Court asked whether Snellgrove was a state actor for purposes of Plaintiffs' Fourth Amendment claim, Plaintiffs' counsel answered that he was. Plaintiffs continue to maintain that Snellgrove acted jointly with law enforcement and under color of state law, contend that judgment as a matter of law on the federal claims was error, and will separately requested reconsideration of this ruling in a separate

filing. Nothing in this brief withdraws that position or waives Plaintiffs' preservation of the Fourth or Fourteenth Amendment claims.

Plaintiff's position does not foreclose Plaintiffs' alternative state-law theory. Rule 8(d)(2) expressly permits a party to state claims alternatively or hypothetically, and Rule 8(d)(3) permits a party to state as many claims as it has regardless of consistency. The Fifth Circuit likewise holds that "both in pleadings and in presentation of evidence, a party may make alternative submissions." *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 418 (5th Cir. 2012). Accordingly, if the Court leaves its Rule 50 ruling in place over Plaintiff's objection, Plaintiffs proceed in the alternative, for purposes of the conversion claim to be submitted to the jury, on the premise that Snellgrove's later appropriation and disposition of the property was private conduct.

Counsel's response during the Rule 50 hearing was legal advocacy directed to the state-action element of the constitutional claims. It was not a stipulation abandoning conversion, nor an intentional waiver relieving Snellgrove of proof.

Moreover, if the Court does not reverse its Rule 50 ruling, the Fourth and Fourteenth Amendment claims against Snellgrove will not be submitted to the jury. The jury will hear only the conversion theory and will not be asked to decide whether Snellgrove was a state actor. There is therefore no risk of confusing the jury with inconsistent theories, producing inconsistent verdicts, or permitting double recovery.

Snellgrove has consistently maintained that his May 17 participation was lawful because officers summoned him, directed the loading, authorized transport, and entrusted the property to him. Plaintiffs dispute that characterization. But assuming it *arguendo*, his initial custody was authorized and subordinate to law enforcement's asserted evidentiary purpose. Under *Waisath*, *Goodbody*, *Commercial Metals*, and *Snell*, that lawful initial custody was not yet conversion.

Snellgrove may assert alternatives, but he cannot obtain judgment as a matter of law on a May 17 accrual date while relying on the premise that his possession on that date was lawful.

**THE FALL 2023 APPROPRIATION, INTEGRATION, OR SALE IS A TIMELY CONVERSION.**

The evidence supplies the later adverse act required by Texas law. According to Snellgrove, the Sheriff's Office told him in the fall of 2023 that he could release the property. That communication may have ended the asserted evidence-storage arrangement, but it did not adjudicate legal ownership. No court had awarded him the disputed property. When he thereafter folded the property into his business, sold it, transferred it, or otherwise disposed of it for his benefit, he exercised dominion inconsistent with Plaintiffs' rights.

Under *Presley*, that unauthorized disposition was the conversion. 284 S.W.2d at 141. Under *Goodbody*, it was the unequivocal adverse dominion that completed the tort. 530 F.2d at 1151-52. And under *Commercial Metals*, it marked the end of any protected nominee or evidence-custodian status. 389 S.W.2d at 119. A fall 2023 accrual date falls within two years even if the Court uses the June 2025 date on which Snellgrove contends the claim was first asserted against him.

**PLAINTIFFS' KNOWLEDGE THAT SNELLGROVE HELPED LOAD THE PROPERTY DID NOT ESTABLISH NOTICE OF HIS LATER PRIVATE CONVERSION.**

Snellgrove emphasizes that Plaintiffs saw him and his vehicles during the search. That proves knowledge of physical handling at the time of initial seizure, not knowledge that he had privately repudiated the asserted evidence-storage role and disposed of the property. The plaintiff in *Commercial Metals* knew the sheriff had removed the wire and that the private claimant was involved in its delivery and storage. The court nevertheless held that limitations could begin later

because the private claimant initially possessed the wire as the sheriff's nominee. 389 S.W.2d at 117-19.

The parallel is especially strong here. The criminal case remained pending, the property was represented as seized evidence, Dahl instructed Snellgrove not to dispose of it, and no hearing or court order awarded ownership to him. A reasonable jury could find that Plaintiffs had no reason on May 17 to understand that the asserted evidence custodian would later fold the property into his business and sell it before the prosecution ended. Their awareness of the loading does not compel a finding that they then knew of, or had already suffered, Snellgrove's later private appropriation.

**POST-DISMISSAL KNOWLEDGE & DEMAND IS AN ADDITIONAL ALTERNATIVES**

For any property still retained rather than previously sold (Fall 2023 is the earliest possible date; the testimony did not reveal when the last item was disposed of), *Commercial Metals* supports accrual upon demand and refusal after the criminal case ended. Austin's prosecution was dismissed on November 13, 2024. The jury may find that any asserted evidentiary purpose ended by that date, as a jury may conclude that is when Plaintiff's first learned of it, Plaintiffs demanded return, and the property was not returned. That November 2024 accrual date potentially reflecting Plaintiff's first knowledge of the property permanent loss presents a factual and legally viable basis for a jury to basis its findings on.

**CONCLUSION**

The evidence permits a reasonable jury to find that Snellgrove initially received the property under an asserted lawful evidence-storage arrangement and converted it only later, when he folded it into his business, sold it, transferred it, disposed of it, or refused to return it. The closest Texas case and binding Fifth Circuit authority both reject automatic accrual upon

private receipt of police-seized evidence. Rule 8 permits Plaintiffs to preserve their federal state-action theory while proceeding on the alternative private action conversion theory, and the Court's existing Rule 50 ruling removes any possible jury-confusion concern. Snellgrove therefore has not established May 17, 2023 as the only viable accrual date as a matter of law. The Court should deny his Rule 50(a) motion and submit conversion and limitations to the jury.

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2026, I filed the foregoing document through the Court's CM/ECF system, which will serve all counsel of record who are registered CM/ECF users.

Respectfully submitted,

**/s/ Kurt Mueller**
Kurt Mueller
Texas Bar No. 24133133
THE KURT MUELLER LAW FIRM PLLC
565 S. Mason Road, PMB 223
Katy, Texas 77450
Telephone: (713) 360-2110
Email: kurt@kurtmuellerpllc.com

**COUNSEL FOR PLAINTIFFS**