**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

**AUSTIN HAMBLIN and KISKA HAMBLIN,**

Plaintiffs,

v.

**MARTIN COUNTY, TEXAS, et al.,**

Defendants.

**CIVIL ACTION NO. 7:25-CV-00245-RCG**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' MOTION TO RECONSIDER INTERLOCUTORY RULE 50(a) RULINGS IN FAVOR OF BRIAN SNELLGROVE, ALTERNATIVE MOTION UNDER RULES 15(b)(2) AND 15(c), AND REQUEST FOR EXPEDITED ORAL ARGUMENT**

Plaintiffs Austin Hamblin and Kiska Hamblin move under Federal Rules of Civil Procedure 54(b) and 50(a), and alternatively Rules 15(b)(2) and 15(c), for reconsideration of the Court's August 26, 2026 interlocutory rulings granting Defendant Brian Snellgrove judgment as a matter of law on the Fourth Amendment based on limitations. Plaintiffs also request expedited oral argument and, if needed to decide Rule 15(c) notice, a limited factual inquiry under Rule 43(c) and Federal Rule of Evidence 614. The jury has not received the case, no final judgment has been entered, and the completed record supports submission of both claims.

The admitted evidence establishes the following: law enforcement required Snellgrove to store the seized property, sometime in fall of 2023 the Martin County Sheriffs' Office called Snellgove to release the property to him; and Snellgrove then sold or otherwise disposed of the property through his mobile stores to end users.

*United States v. Jacobsen* recognizes that property already detained may be **subjected to a further Fourth Amendment seizur**e when later official conduct **converts a temporary deprivation into a permanent one.** 466 U.S. 109, 124-25 (1984). (emphasis added) *Soldal v. Cook County* likewise holds that police-assisted private dispossession implicates the Fourth Amendment because the Amendment protects possessory interests even when the challenged conduct resembles a private property dispute. 506 U.S. 56, 61-72 (1992).

The later Fourth Amendment claim is timely without tolling or relation back. Helton v. Clements rejects use of a continuing conspiracy to revive an old injury, but preserves liability for a later overt act that itself causes a constitutional deprivation. 832 F.2d 332, 335-36 (5th Cir. 1987). The unrestricted release occurred sometime in Fall 2023 according to Snellgrove, within the two year statue of limitations.

Alternatively, the fourth amendment claim against Snellgrove relates back because the timely pro se petition expressly alleged that Snellgrove converted and sold the property, and he received formal service within Rule 4(m)'s period.

The prior ruling was made at the close of Plaintiffs' case. The defense has now rested, the jury has not received the case, and further Rule 50 argument was deferred until the morning. Rule 54(b) permits revision of the interlocutory ruling now, on the completed record, without disturbing a final judgment or prejudicing any party.

## I. RELEVANT RECORD

### A. Law enforcement initially imposed restricted evidentiary custody.

The search occurred on May 17, 2023. The evidence permits the jury to find that law enforcement did not then award the property to Snellgrove or authorize unrestricted personal use. The Sheriff's Department asked Snellgrove to transport and warehouse the property because it

lacked the space, resources, and expertise to place the volume of items into evidence storage. P-26, Answer No. 3.

Snellgrove described the government's restrictions under oath. He "was told to isolate the items, to do an internal inventory, and not to do anything with the items seized until further notice." Id., Answer No. 2. He also stated that, "[p]er the instructions from the Sheriff's Department, the items remained at the warehouse at 2100 Westside Dr., Stanton, Texas due to the ongoing investigation." Id., Answer No. 3. Although the property physically sat in a private warehouse, the evidence permits a finding that Snellgrove held it as the government's chosen custodian, subject to an official command that barred sale, integration, transfer, or disposal.

That distinction matters. While isolated, the property remained identifiable and potentially recoverable. It could have been preserved for trial, presented to a magistrate, retrieved by law enforcement, or returned after resolution of the competing claims. The initial instruction therefore maintained **a temporary evidentiary restraint** rather than accomplishing **an irreversible transfer of title**.

**B. The later release and sale were separate affirmative acts.**

In his verified answers, Snellgrove admitted:

> Sometime after the case was indicted, Snellgrove received a call from Sheriff Ingram stating that the items no longer needed to be isolated and were released to Snellgrove without restriction. Over the following year or more, the items were sold via the mobile stores to end users.

P-26, Answer No. 3. Answer No. 2 similarly states that the items remained isolated until law enforcement told him he could dispose of them, after which they were sold and were no longer in his possession.

The indictment was filed October 2, 2023. Thus, even using only the chronology in Snellgrove's verified response, the unrestricted release occurred after that date. The trial evidence

further permits a finding that the release occurred during the pending criminal case. Trial Test. of Brian Snellgrove (Aug. 26, 2026). The prosecution was not dismissed until November 13, 2024.

The sequence was therefore not a single completed act followed by static consequences. First, the government imposed continued isolation because the items remained connected to an ongoing investigation. Later, the Sheriff removed that restraint and authorized unrestricted dominion. Snellgrove then implemented the release by returning the items to commercial circulation and selling them to end users. The later acts eliminated the possibility of returning identifiable property and **made the deprivation permanent**.

### C. The prior Rule 50 ruling is interlocutory and the evidentiary record is now complete.

At the close of Plaintiffs' evidence on August 26, 2026, Snellgrove moved under Rule 50(a). The parties addressed limitations in open court, and the Court granted judgment as a matter of law for Snellgrove as to the 4th amendment and 1983 conspiracy claim. The defense thereafter presented its evidence and rested. Further Rule 50 argument was deferred until the morning before submission to the jury.

No final judgment disposing of all claims and parties has been entered, and no partial final judgment has been certified. The challenged ruling remains interlocutory. Reconsideration now would require no reopening of evidence, no continuance, and no disruption of a completed judgment.

## II. GOVERNING STANDARDS

Rule 54(b) provides that an order adjudicating fewer than all claims or all parties' rights and liabilities "may be revised at any time" before final judgment. Fed. R. Civ. P. 54(b). The Fifth Circuit applies this authority flexibly. A district court may reconsider an interlocutory decision for any reason it deems sufficient, even without new evidence or an intervening change

in law. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017) (per curiam); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010).

Under Rule 50(a), judgment may be granted only when a reasonable jury would lack a legally sufficient evidentiary basis to find for the nonmovant. Fed. R. Civ. P. 50(a)(1). The Court must review the record as a whole, draw all reasonable inferences for Plaintiffs, disregard evidence favorable to the movant that the jury need not believe, and refrain from weighing evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

Texas's two-year personal-injury period applies to a Section 1983 claim, but federal law determines accrual. *Frame v. City of Arlington*, 657 F.3d 215, 237-38 (5th Cir. 2011) (en banc); Tex. Civ. Prac. & Rem. Code Section 16.003(a). A federal claim accrues when the plaintiff has a complete and present cause of action and knows or has reason to know of the injury and its causal connection to the defendant. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). Limitations is an affirmative defense, so judgment is proper only if the evidence permits no reasonable finding of timeliness. See Fed. R. Civ. P. 8(c)(1); Frame, 657 F.3d at 239-40.

## III. THE POST-INDICTMENT RELEASE AND DISPOSITION SUPPORT A TIMELY FOURTH AMENDMENT CLAIM.

### A. Jacobsen recognizes a further seizure when later conduct makes a temporary deprivation permanent.

A seizure occurs when government action meaningfully interferes with a person's possessory interest in property. *Jacobsen*, 466 U.S. at 113. Critically, the constitutional inquiry does not end at the first moment of detention. *Jacobsen* states that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." Id. at 124.

The property in *Jacobsen* was already lawfully detained. Federal agents later destroyed a portion during testing. The Supreme Court treated **that later destruction as a further seizure** because it "converted what had been only a temporary deprivation of possessory interests into a permanent one." Id. at 124-25. The later seizure was reasonable there because only a trace quantity of virtually certain contraband was destroyed for a substantial law-enforcement purpose. Id. at 125-26. The important point here is the Court's recognition that prior detention does not exhaust the Fourth Amendment. A later act that permanently enlarges the possessory interference is separately subject to reasonableness review.

The same principle applies to the evidence viewed favorably to Plaintiffs. The May arrangement required isolation and prohibited disposition. The later call removed the restriction and released the property without limitation to the financially interested complaining witness. Sales to end users then made return impossible. A reasonable jury could find that those acts converted temporary evidentiary custody into permanent deprivation and therefore constituted a further seizure under *Jacobsen*.

**B. Soldal confirms that state-assisted private appropriation is a Fourth Amendment event.**

*Soldal* rejected the premise that a property deprivation falls outside the Fourth Amendment merely because it resembles repossession or can also be analyzed under due process principles. 506 U.S. at 61-72. Deputies there assisted private parties in dispossessing a family of its mobile home without lawful judicial authority. The Court held that the Fourth Amendment protects possessory interests as such and that a wrong may implicate more than one constitutional provision. Id. at 62, 70.

Here the State's alleged involvement is more direct than passive presence. The Sheriff's Department selected Snellgrove as custodian, ordered isolation, later removed the restriction, and released the property without restriction. Snellgrove then used his commercial network to

dispose of it. A jury could characterize that sequence as a state-assisted private repossession rather than ordinary evidence handling.

Fifth Circuit authority likewise recognizes that later treatment of seized property may require a separate constitutional justification. Barker v. Norman distinguished continued retention from the initial seizure and explained that property may be held only so long as a lawful basis remains. 651 F.2d 1107, 1131 (5th Cir. Unit A July 1981) (See also Mason v. Pulliam, 557 F.2d 426, 429 (5th Cir. 1977)). Combined with Jacobsen, those cases support analysis of the later release and disposition as a separate interference.

These cases do not require the Court to hold that every day of retention is a new seizure. They establish the narrower proposition presented here: Fourth Amendment analysis can attach to a later affirmative change in the manner, purpose, or permanence of interference with property already detained.

**C. The later acts did not merely continue the original injury.**

The defense may rely on *Matter of Hoffman*, 955 F.3d 440 (5th Cir. 2020) (per curiam), which held that a single seizure followed by nonreturn did not, without more, become a continuing tort suspending limitations forever. Id. at 444 & n.3. Plaintiff's claim rests instead on a later affirmative event: the Sheriff removed an express preservation restriction and released disputed evidence to the private claimant without limitation, after which the property entered commercial inventory and was sold.

*Hoffman* also considered a later order that finalized divestment, but rejected the claim because that order itself fell outside limitations. Id. at 444. Here the later divestment is within the limitations period and occurred without a hearing, judicial finding, or ownership order. *Hoffman* therefore reinforces the relevant inquiry: whether the affirmative act that made the deprivation permanent was timely. On this record, it was.

## IV. HELTON AND McGREGOR PRESERVE CLAIMS BASED ON TIMELY LATER ACTS.

Helton supplies the correct limitations framework. It rejects the proposition that a later conspiratorial act automatically delays accrual of every earlier injury, but reinstates claims based on later overt acts that themselves caused timely constitutional deprivations, even when pleaded as acts in furtherance of the conspiracy. 832 F.2d at 335-36. Thus, a later act does not revive an old injury, but a later act that itself violates a constitutional right has its own accrual date.

*McGregor v. Louisiana State University Board of Supervisors* states the same distinction: a single violation followed by continuing consequences does not restart limitations, but repeated violations begin their own limitations periods. 3 F.3d 850, 867 & n.28 (5th Cir. 1993). Restricted storage may have continued the May seizure; the later release without restriction and sales were new acts that permanently altered Plaintiffs' possessory rights.

A cause of action based on those acts could not accrue on May 17, 2023 because they had not yet occurred. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Seeing Snellgrove assist with official transport did not reveal that the Sheriff would later authorize unrestricted private dominion or that Snellgrove would sell the property while the criminal case remained pending. Plaintiffs preserve delayed-accrual and relation-back arguments as to the original May 17, 2023 seizure, but the Court need not resolve them to submit the independently timely post-indictment seizure. Additionally, the period would only start to run once Plaintiffs became aware that their property was permanently deprived to them.

## V. A REASONABLE JURY COULD FIND THE LATER SEIZURE UNREASONABLE AND ATTRIBUTABLE TO SNELLGROVE UNDER SECTION 1983.

### A. The evidence supports unreasonableness.

*Jacobsen* found the later destruction reasonable because it involved a trace amount of nearly certain contraband and served a substantial investigative purpose. 466 U.S. at 125-26. The

completed record permits the opposite finding here. Ownership was openly disputed, Plaintiffs produced evidence of ownership, no court adjudicated the competing claims, and the Sheriff's release was oral, unrestricted, and directed to the financially interested complainant while the criminal prosecution remained pending. A jury could find no legitimate evidentiary need for placing disputed evidence into ordinary commercial circulation.

At Rule 50, the Court need not determine ownership of every item. Plaintiffs introduced evidence supporting ownership or a superior possessory interest in at least part of the collection. The jury may determine which property belonged to Plaintiffs and what loss resulted when recoverable custody became permanent disposition.

**B. The evidence supports joint action and color of law.**

Private persons act under color of law when they are willful participants in joint activity with state officials. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982). The evidence permits more than an inference of governmental acquiescence. The Department directed the initial isolation; Sheriff Ingram removed the restriction; and Snellgrove implemented the release by selling the property through his business.

*Soldal* involved private parties performing the physical dispossession with police assistance. 506 U.S. at 58-61. Here, the government supplied the authority and release that made permanent private disposition possible, while Snellgrove supplied the commercial machinery that completed it. A reasonable jury could find that the official release and private sales were coordinated steps in the same state-assisted deprivation.

## VI. THE PLEADINGS PRESERVE THE LATER-SEIZURE AND CONVERSION CLAIMS.

**A. Count One encompasses the later seizure, or Rule 15(b)(2) applies.**

Count One challenges the manner in which Defendants executed the warrant and the scope of the resulting seizure. Third Am. Compl. paras. 93-103. It incorporates allegations

describing transport, private custody, government-directed isolation, release, and disposition. Id. paras. 62-80. It also alleges that Snellgrove acted jointly with officers as the intended private recipient and custodian. Id. paras. 91, 97-112.

Helton instructs that a timely constitutional deprivation is not lost merely because the same act was also described as part of a conspiracy. 832 F.2d at 336. Read as a whole, the operative complaint encompasses the official release and permanent disposition. Alternatively, Rule 15(b)(2) requires an issue tried by express or implied consent to be treated as if raised in the pleadings. The release and sales were central trial subjects, supported by Snellgrove's own verified answers, and litigated without surprise. If the Court concludes that Count One did not separately label the temporary-to-permanent seizure, Plaintiffs request conformity to the evidence already tried.

**B. In the alternative, the 4th amendment claim against Snellegrove relates back under Rule 15(c)(1)(C).**

Even if accrual is otherwise fixed at May 17, 2023, Rule 15(c)(1)(C) provides an alternative. The same-transaction requirement must be satisfied and, within Rule 4(m)'s period, the added party must receive notice without prejudice and know or have reason to know that, but for a mistake concerning the proper party's identity, the action would have been brought against it. Fed. R. Civ. P. 15(c)(1)(B)-(C). The focus is the prospective defendant's understanding, and knowledge of the person's existence does not itself defeat mistake. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548-49, 553-54 (2010).

The Fifth Circuit likewise distinguishes technical pleading error from a conscious choice to spare a defendant. Sanders-Burns v. City of Plano, 594 F.3d 366, 377, 379-80 (5th Cir. 2010). Relation back applied there because the pleading as a whole made the intended personal claim clear despite an erroneous formal designation. Id. at 380.

The same transaction and intended target were explicit here. The May 6, 2025 pro se petition alleged that Dahl allowed Snellgrove to claim contested items, that disputed property was placed into Snellgrove's vehicles, and, most directly, that 'Defendant ingram allowed Mr. Snellgrove to convert the seized property without due process. Subsequently, Mr. Snellgrove sold it for financial gain.' Doc. 2-3. The amendment formalized against Snellgrove the precise conversion already pleaded; it did not add a new occurrence, actor, or injury.

Notice, lack of prejudice, and mistake are also supported. The First Amended Complaint was filed July 10, summons issued that day, and Snellgrove was served July 17, 2025, within ninety days of both the May 6 state filing and May 22 removal. Docs. 15, 17, 18. He answered and asserted his own conversion counterclaim on August 6. Doc. 20. The timely petition did not mention him as background; it attributed selection, receipt, conversion, sale, and financial benefit to him. Those allegations support a finding that the caption omission was a pro se naming error and that he understood the claim from the outset.

Plaintiffs acknowledge Quiroz v. Hernandez's rule against ordinarily adding a wholly new defendant and Winzer v. Kaufman County's rejection of amendments replacing unknown officers with newly identified persons. Quiroz, No. 25-40032, slip op. at 9-12 (5th Cir. Feb. 12, 2026) (substituted opinion); Winzer, 916 F.3d 464, 470-71 (5th Cir. 2019). Those pleadings did not identify the later-added defendants and charge them with the same tort. The original petition here repeatedly identified Snellgrove and expressly alleged his conversion and sale. This case therefore fits Sanders-Burns's technical-error rationale rather than the addition of a new factual target.

**C. The May 2025 chronology independently supports actual notice and defeats prejudice.**

Formal service on July 17, within Rule 4(m)'s period, independently supplies notice. The earlier chronology adds evidence of actual knowledge and negates prejudice. The pro se petition

was filed May 6 and Martin County was served May 8. Doc. 2-3. Snellgrove was then a County Commissioner. Plaintiffs request judicial notice of the Court's docket and County meeting notices for April 22 (itself referencing a future meeting scheduled for May 13) and May 27, the latter including an executive session. Fed. R. Evid. 201. See attached exhibits. The County removed through Mr. Dennis on May 22 and answered on May 27. Docs. 2-4. At trial, Mr. Dennis stated that he advises the Commissioners Court.

These facts support a strong inference that Snellgrove knew of the action before formal service. He sat on the governing body of the served County defendant, and the petition repeatedly named him and alleged his conversion and sale. He testified that he told the other commissioners that he and the County had been sued, while denying executive-session discussion. Snellgrove Dep. 134:5-9. He again denied Commissioners Court discussion at trial.

When Plaintiffs first asked at trial about such discussion, County counsel objected on privilege grounds. Plaintiffs seek no adverse inference and do not offer the objection as proof a communication occurred. It confirms only that the timing and source of knowledge remain disputed. Privilege protects communications, not historical facts such as when Snellgrove learned of the suit or received the pleading. Upjohn, 449 U.S. at 395-96.

Rule 15 notice may be actual or constructive and, in proper circumstances, inferred through a close relationship or counsel. Kirk v Cronvich, 629 F.2d 404, 407-09 & n.4 (5th Cir. 1980); Jacobsen v Osborne, 133 F.3d 315, 320 (5th Cir. 1998). . Plaintiffs do not rely on public office alone. County service, prompt removal, the meeting chronology, his presence at the commissioner meetings, Snellgrove's role and admitted disclosure, and the petition's direct allegations collectively support notice within Rule 4(m) and negate prejudice after full discovery and trial.

Because jury submission is imminent, Plaintiffs request expedited oral argument. If pre-service knowledge is material and disputed, Rule 43(c) permits limited testimony and Evidence Rule 614 permits the Court to examine a witness. Plaintiffs ask the Court to recall and directly question Snellgrove outside the jury's presence, or in the alternative permit Plaintiffs briefly to recall him, about when and how he first learned of the suit, whether before service he knew the petition named him and alleged conversion and sale, and whether he received or reviewed it. These are historical facts, not legal advice. Each side may conduct limited follow-up, allowing the Court to assess credibility and decide notice on a complete record.

## VII. RECONSIDERATION BEFORE SUBMISSION IS EFFICIENT AND NONPREJUDICIAL.

The jury has not received the case, and the evidence is complete. Snellgrove has long possessed his verified answers and has defended storage, release, sales, conversion, notice, and limitations through full discovery and trial. Reconsideration creates no unfair surprise. Submission preserves judicial economy because Rule 50(b) remains available after verdict, while an erroneous pre-verdict dismissal could require a second trial. The Court may also distinguish damages attributable solely to temporary removal from damages caused by later permanent disposition.

## VIII. RELIEF REQUESTED

Plaintiffs request that the Court:

1. reconsider and revise its August 26, 2026 interlocutory Rule 50(a) rulings in favor of Brian Snellgrove;
2. reinstate the fourth amendment claim against Brian Snellgrove at least as to the post-indictment release without restriction, the resulting integration, sale, transfer, or disposal of the property, and damages proximately caused by that later interference;

3. reinstate the fourth amendment claim because the evidence permits later accrual and, alternatively, because the claim relates back under Rule 15(c)(1)(C);
4. alternatively, treat the later-seizure issue as tried by consent and conform the pleadings under Rule 15(b)(2); and
5. grant expedited oral argument and, if the Court considers actual notice disputed and material, conduct the limited nonprivileged inquiry requested above under Rule 43(c) and Evidence Rule 614;
6. Reinstate the 1983 conspiracy claim based on the restored fourth amendment claim; and
7. grant any further relief needed to submit the Fourth Amendment and C to the jury.

## CONCLUSION

The completed record supports a timely later Fourth Amendment seizure and a conversion claim accruing when restricted custody became unrestricted private dominion. Alternatively, the pro se petition's express conversion allegations, timely formal service, and the May 2025 notice chronology support relation back under Rule 15(c). Rule 54(b) permits correction before judgment. The Court should hear expedited argument, conduct the limited inquiry if needed, and submit both claims against Snellgrove to the jury.

## CERTIFICATE OF CONFERENCE AND CONSULTATION NOTICE

The undersigned certifies that these issues were addressed in Court on August 26, 2026, during Defendant Brian Snellgrove's request for judgment as a matter of law and the parties' argument. Plaintiffs now provide this written motion based on the Rule 50 rulings discussed and argued before the Court. Defendant opposed the requested relief, and further Rule 50 argument was deferred until the morning. Given that on-record consultation and the imminent argument, a separate conference was neither necessary nor practicable. The motion is opposed.

**CERTIFICATE OF SERVICE.** I certify that on the date reflected by the CM/ECF filing stamp, I electronically filed this motion through CM/ECF, which will serve all counsel of record.

Respectfully submitted,
/s/ Kurt Mueller

Kurt Mueller, Texas Bar No. 24133133
THE KURT MUELLER LAW FIRM PLLC
565 S. Mason Road, PMB 223, Katy, Texas 77450
(713) 360-2110 | kurt@kurtmuellerpllc.com
**COUNSEL FOR PLAINTIFFS**