**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,** | § | **CIVIL ACTION NO. 7:25-CV-00245-RCG** |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, RORY GAMMONS, each in their individual capacity; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE,** | § | |
| | § | |
| Defendants. | | |

---

**PLAINTIFFS' POST-TRIAL MOTION FOR FINDINGS OF FACT, CONCLUSIONS OF LAW, AND EQUITABLE JUDGMENT ON COUNT NINE; ALTERNATIVELY, MOTION TO REVISE ANY INTERLOCUTORY RULING**

Plaintiffs Austin Hamblin and Kiska Hamblin ask the Court to adjudicate Count Nine of the Third Amended Complaint, their separately pleaded claim for unjust enrichment against Defendant Brian Snellgrove. The Court did not submit that claim to the jury. During the charge conference, the Court explained that it understood unjust enrichment not to be an independent cause of action under Texas law, but instead only a measure of damages or an otherwise unavailable theory. That legal premise is inconsistent with binding Fifth Circuit authority. *King v. Baylor University* holds that a district court errs when it treats unjust enrichment as facially invalid under Texas law. 46 F.4th 344, 367-70 (5th Cir. 2022). Texas permits unjust enrichment to be pleaded as a separate, alternative basis for equitable relief, and, in the Fifth Circuit's words, "the claim exists." *Id.* at 368. Plaintiffs preserved the issue by objecting to the exclusion of any

cause of action dismissed, withdrawn, or otherwise adjudicated against plaintiff by the Court as part of its formal objections as part of the charge conference.

The decision not to send the equitable claim to the jury did not dispose of it. Count Nine seeks restitution of specific property and proceeds, disgorgement, an accounting, and a constructive trust. Those aspects of the claim are for the Court to decide under Federal Rules of Civil Procedure 39(c) and 52(a). The Court should therefore make findings and conclusions on the existing trial record before entering final judgment. Nonsubmission cannot operate as an unannounced merits dismissal of a claim the Court reserved from the verdict.

Liability is established at least as to the property Snellgrove conceded was not his. At trial, Snellgrove admitted that some property transferred into his possession did not belong to him, that he knew it did not belong to him, and that its value was not his to retain. The documentary record supplies the item-by-item identification. Plaintiff's Exhibit 14 is Snellgrove's own thirteen-page accounting of the property taken. Plaintiff's Exhibit 13 is Warren Kniepkamp's customer statement identifying Austin Hamblin as the purchaser, and Plaintiff's Exhibit 31 contains Snap-on Credit contracts and appendices identifying Austin as the buyer or debtor. Nineteen exact product numbers appear both in Exhibit 14 and in Exhibit 13 or 31. On Exhibit 14's own values, that conservatively counted subset equals $4,697.20 before tax. Snellgrove's receipt of property independently documented as Austin's is therefore established by Snellgrove's own accounting cross-matched to Austin's purchase records. The Court should enter judgment on liability, order a sworn accounting, and award restitution and disgorgement in the amount proved by the records and accounting, without duplicating any recovery on another claim.

If, as the defense contends, the May 17, 2023 possession was lawful because he held the property only for law enforcement, then the unjust enrichment did not arise until fall 2023, when

the custodial restriction ended and he began treating the property as his own. Plaintiffs named Snellgrove as a defendant on July 10, 2025, less than two years after that event. Doc. 15. Count Nine arises from the same transaction and occurrence alleged against him and relates back under Rule 15(c)(1)(B).

## I. PROCEDURAL POSTURE AND PRESERVATION

Count Nine was pleaded as a separate count against Snellgrove. Third Am. Compl., Doc. 46, ¶¶ 189-93. It alleges that he received and retained the physical property and commercial sale proceeds, obtained that benefit through the use of law-enforcement authority and the avoidance of ordinary ownership procedures, and should be required to make restitution and disgorge the resulting benefit. The prayer separately requests a constructive trust over sale proceeds and other equitable relief. *Id.* ¶¶ 194-203. The claim was a pleaded theory of liability tied to specifically requested equitable remedies.

Plaintiffs also treated the issue as one reserved for the Court. Their charge proposal stated that unjust enrichment and disgorgement should be omitted from the verdict form because those equitable issues should be decided by the Court. The Court did not submit any unjust-enrichment question, and no advisory verdict was requested or returned under Rule 39(c). The jury therefore made no finding on whether Snellgrove was unjustly enriched, the amount of his gain, whether specific property or proceeds are traceable, or what equitable relief should issue.

No final judgment has been entered. Any oral or interlocutory ruling that Count Nine is unavailable may be revised at any time before entry of a judgment adjudicating all claims and all parties' rights. Fed. R. Civ. P. 54(b). Rule 54(c) separately directs that a final judgment grant the relief to which each party is entitled. The Court thus retains full authority to correct the legal premise stated at the charge conference and to adjudicate the reserved claim now.

The official trial transcript has not yet been made available to counsel. For trial testimony, as the Court was present for the relevant testimony and arguments, this motion identifies the witness and subject matter and cites the admitted documentary record where possible. Plaintiffs will supplement with audio timestamps if the Court requests them.

## II. BINDING FIFTH CIRCUIT LAW RECOGNIZES THE CLAIM

### A. King directly rejects the premise stated at the charge conference.

*King* involved the same legal question. The plaintiff pleaded unjust enrichment as a separate count and sought disgorgement and restitution. The district court held that unjust enrichment was not an independent cause of action. The Fifth Circuit held that the district court "erred in its initial statement of Texas law" and "erred by implying that unjust enrichment is a facially invalid theory." 46 F.4th at 367-68. It explained that many Texas courts recognize unjust enrichment as a "valid alternative basis for equitable relief" when pleaded in that manner. *Id.* at 368.

*King* ultimately denied recovery because a valid express contract governed the precise subject of the university-student dispute. *Id.* at 368-70. That limitation does not apply here. There is no contract between Plaintiffs and Snellgrove that determines title to the seized tools, authorizes Snellgrove to retain property admittedly belonging to Plaintiffs, governs sale proceeds from that property, or prescribes a remedy for the transfer at issue. Austin's former employment does not convert ownership of his separately purchased and gifted tools into a contractual subject governed by an employment agreement. The reason *King* rejected recovery is therefore absent, while its holding that the claim exists is controlling.

The Texas Supreme Court's cases confirm the same point. It has repeatedly analyzed "unjust enrichment claims" as claims subject to a two-year limitations period. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870-71 (Tex. 2007) (per curiam); *Wagner &*

*Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885, 891 (Tex. 1998). It has also applied the doctrine where a person obtains a benefit by fraud, duress, or taking undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41-42 (Tex. 1992). Those authorities cannot be reconciled with treating unjust enrichment as no claim at all.

**B. The trial record supports both recognized forms of unjust enrichment.**

Texas recognizes two forms of unjust enrichment. A defendant may actively and wrongfully secure a benefit through fraud, duress, or taking undue advantage. A defendant may also passively receive a benefit that would be unconscionable to retain. *Digital Drilling Data Systems, LLC v. Petrolink Services, Inc.*, 965 F.3d 365, 379-83 (5th Cir. 2020); *Matter of KP Engineering, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023). Plaintiffs proved both routes.

First, the evidence permits a finding that Snellgrove actively obtained the property through an undue advantage. He was the complaining witness, was invited into the warrant execution, identified items for removal, supplied private employees and vehicles, received the property at his own facility, and later treated the property as his own inventory. He received this commercial benefit without a civil ownership judgment and without paying Plaintiffs. Second, even if the initial receipt is treated as a law-enforcement decision rather than Snellgrove's active procurement, his continued retention and sale of property he admitted was not his fits the passive theory. Once he knew particular items belonged to Plaintiffs, retaining their value was unconscionable regardless of how he first obtained custody.

**C. The defense's lawful-custody theory places accrual in fall 2023, making Count Nine timely.**

Plaintiffs do not concede that Snellgrove's conduct on May 17 was lawful for § 1983 purposes. Their primary position remains that he jointly procured and immediately received a private benefit from an unlawful seizure. But limitations must also be tested against the defense's

own alternative account. The defense maintains that the May 17 transfer was lawful because Snellgrove did not take the property for himself; he merely stored it for law enforcement while the criminal case remained pending. Dahl instructed him not to dispose of the property until authorized by the District Attorney. Under that account, Snellgrove's initial possession was restricted, subordinate custody, not possession for his own account. For the purposes of the unjust enrichment claim only, Plaintiffs therefore agree with the Defense that Snellgrove was acting lawfully in his initial acquisition of the property. The unjust enrichment only occurred when his coordinated law enforcement role stopped. Mutually inconsistent pleading and argument by Plaintiffs is permissible. See Federal Rule of Civil Procedure 8(d)(2-3).

Texas follows the legal-injury rule: a cause accrues when facts exist that authorize the claimant to seek a judicial remedy. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). *Mayo v. Hartford Life Insurance Co.* is particularly instructive because the Fifth Circuit treated the underlying claim as unjust enrichment or conversion and held that the legal injury arose when the defendant received proceeds that should have gone to the plaintiff, which was also when a constructive trust arose. 354 F.3d 400, 409-11 (5th Cir. 2004). The relevant event for Count Nine is therefore not bare custody for another. It is receipt and retention of a personal benefit that in equity belongs to Plaintiffs.

On the defense's version of the facts, that event occurred in fall 2023. Snellgrove testified that, while Austin's criminal case was still pending, someone from the Martin County Sheriff's Office called him. He believed the caller may have been Sheriff Ingram. According to Snellgrove, the caller authorized him to take the seized property as his own and deal with it as he wished. Before that call, the defense says he held evidence he was forbidden to dispose of (or, at least according to him, Snellgrove was holding it as a lawful agent of Martin County).

Assuming solely for purposes of this motion that Snellgrove's receipt of the property on May 17, 2023 was lawful because he accepted it only in a custodial capacity on behalf of law enforcement, his receipt on that date did not yet confer upon him a personal benefit that equity required him to restore. Under Defendants' own account, the property remained held for law enforcement until fall 2023, when Snellgrove was authorized to take the property as his own and dispose of it as he wished. Only then did his possession become personal and adverse to Austin, and only then did Snellgrove begin enriching himself from Austin's property.

*Mayo* also recognized that injury could be framed under either the equitable theory unjust enrichment or the legal theory conversion. 354 F.3d at 409-11. "If the original possession of the property is lawful, the limitations period does not begin to run until the return of the property has been demanded and refused, or until the person in possession has unequivocally exercised acts of domination over the property inconsistent with the claims of the owner or the person entitled to possession". *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 700-01 (Tex. App. Dallas 2012); *Pierson v. GFH Financial Services Corp.*, 829 S.W.2d 311, 314 (Tex. App. Austin 1992); Sloane v. Brisco, No. 12-20-00080-CV (Tex. App. Tyler Dec. 16, 2020). The fall 2023 decision to claim and deal with the property as his own was the first unequivocal adverse dominion under the defense's custodial theory.

Limitations is an affirmative defense, and Snellgrove bears the burden to establish both accrual and expiration. *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021). If Snellgrove's premise is accepted, accrual occurred no earlier than fall 2023. Plaintiffs named Snellgrove as a defendant in the First Amended Complaint filed July 10, 2025, less than two years later. Doc. 15. Count Nine arises from the same seizure, transfer, custodial storage, retention, and disposition

alleged against him in that pleading and therefore relates back under Rule 15(c)(1)(B). The claim is timely.

## III. NONSUBMISSION TO THE JURY RESERVED THE EQUITABLE CLAIM FOR THE COURT

### A. The pleaded remedies are traditionally equitable to the extent they seek specific property, traceable proceeds, an accounting, and net gain.

Restitution is equitable when the plaintiff seeks return of particular property or identifiable funds in the defendant's possession, rather than merely imposing personal liability for an undifferentiated debt. *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 212-15 (2002). A constructive trust likewise prevents unjust enrichment by attaching to an identifiable res or its traceable product. *KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015); *Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 872-73 (Tex. 2017). Disgorgement is gain based and generally limited to the wrongdoer's net profits for the benefit of victims. *Liu v. SEC*, 591 U.S. 71, 79-85 (2020).

That is what Count Nine requests. Plaintiffs seek return of any tools still held (with particular attention to those tools inherited by Austin from his grandfather, as they have sentimental value), the value or proceeds of identified tools placed into Snellgrove's inventory, disgorgement of profits from sales, an accounting necessary to identify those proceeds and profits, and a constructive trust or equitable lien on identifiable property and proceeds. The recent Supreme Court decision in *Sripetch v. SEC* reinforces the distinction: damages ordinarily measure the plaintiff's loss, while equitable disgorgement measures the defendant's gain. 608 U.S. ___, No. 25-466, slip op. at 8-11 (June 4, 2026). Count Nine asks the Court to remove a benefit that, on Snellgrove's own testimony, was never his.

Rule 52(a)(1) governs this reserved, nonjury portion of the case. It requires the Court to find the facts specially and state its conclusions of law separately in an action tried on the facts without a jury or with an advisory jury. Rule 39(c) made an advisory jury optional, not mandatory. Because no advisory question was submitted, the Court remains the factfinder on the equitable issues.

**B. The Court must respect, but need not invent, jury findings.**

When causes of action have partial overlap, the Court is only bound by facts the jury actually and necessarily decided. *Bogan v. MTD Consumer Group, Inc.*, 919 F.3d 332, 337-38 (5th Cir. 2019). The verdict contained no unjust-enrichment question and no finding concerning Snellgrove's gain, specific proceeds, traceability, accounting, or unconscionable retention. Silence on an issue withheld from the jury is not an adverse finding on that issue or that cause of action.

The Court can therefore decide Count Nine consistently with the verdict by making the additional findings unique to equity. In particular, the Court may determine whether Snellgrove retained a benefit that he admitted was not his and fashion gain-based relief without redetermining any legal claim submitted to the jury. The final judgment can and should include an express no-double-recovery limitation so that Plaintiffs do not recover the same property value twice.

**C. Nonsubmission requires adjudication, not dismissal.**

The Court withheld Count Nine from the verdict because it regarded unjust enrichment as unavailable as an independent claim. Once that legal premise is corrected under King, the consequence is straightforward: the claim remains pending for adjudication. Nothing in the verdict resolved it, and nothing in the nonsubmission decision supplied findings against Plaintiffs.

Rule 52 provides the path forward. The Court should decide liability and equitable relief on the trial record, require the accounting needed to trace property and proceeds, and, if necessary, conduct a focused evidentiary hearing to complete the accounting. The procedural choice not to submit the claim cannot be transformed into an adverse merits judgment on a claim no factfinder was permitted to decide.

## IV. THE EVIDENCE ESTABLISHES LIABILITY AT LEAST AS TO THE CONCEDED AND MATCHED PROPERTY

### A. Snellgrove received possession, control, and commercial value.

The first requirement is a benefit. The proof is direct. Snellgrove admitted that he brought vehicles and employees to the Hamblin residence, received the seized property at his facility, stored it with or alongside business inventory, and later sold or transferred property to end users. Snellgrove Dep. 39:19-40:8, 55:2-18, 86:1-10, 96:25-97:2, 113:3-9. His physical custody is undisputed. Under the defense's lawful-custody theory, the personal benefit began in fall 2023, when he says the Sheriff's Office released the custodial restriction and authorized him to claim and deal with the property as his own. He ultimately obtained business control, inventory value, and the ability to realize sale proceeds.

The benefit existed even if some property was later sold, dissipated, or commingled. Sale converted the physical res into proceeds or avoided acquisition costs. Integration into inventory supplied an asset available for ordinary business use or sale. Retention of goods or proceeds is enrichment because it increases the recipient's assets or saves an expenditure he otherwise would have borne.

### B. His trial admission establishes knowledge and the injustice of retention.

Snellgrove admitted at trial that at least some property taken from Plaintiffs was not his, that he knew it was not his, and that the value of that property was not his. He also admitted before trial that Warren Kniepkamp was a separate Snap-on dealer from whom Austin could

have acquired tools, that he had no specific basis to dispute Kniepkamp's sworn ownership statement, and that those identified items were never returned. Snellgrove Dep. 31:16-32:16, 104:13-105:4.

That admission is decisive for liability on the conceded subset. A person cannot knowingly retain, sell, or consume the value of property that he admits belongs to another and then characterize the resulting enrichment as just. No contract authorizes the retention. No court awarded title to Snellgrove. He paid Plaintiffs nothing for the items. Even under the narrower active theory, using a criminal seizure to obtain property known to have an independent source of ownership is the taking of an undue advantage. Under the passive theory, continued retention after knowledge is unconscionable.

**C. The documentary cross-match independently proves source, possession, and value.**

The records do more than establish ownership in the abstract. Plaintiff's Exhibit 14 is not Plaintiffs' reconstruction. It is Snellgrove's own itemized accounting of the property taken, produced by him and valued by him. As offered against Snellgrove, it is an opposing-party statement admissible as substantive evidence under Federal Rule of Evidence 801(d)(2)(A). Exhibits 13 and 31, both admitted at trial, independently identify Austin as the purchaser, buyer, or debtor for the same products based on authenticated business records offered at trial. Exhibit 31 further states that the buyer acknowledges receipt of the product. The exact product numbers provide the bridge between Austin's acquisition records and Snellgrove's custody record. They defeat any contention that the non-Snellgrove property cannot be identified or that his receipt of it is speculative.

Plaintiffs compared the product numbers in Exhibit 14 against Exhibits 13 and 31 and identified the following nineteen exact matches. This schedule excludes near matches, model variants, and generic descriptions. Although Exhibit 14 lists TDL8 twice, at pages 4 and 8, the

schedule counts only one unit. The acquisition-price column corroborates Austin's acquisition; the final column uses Snellgrove's own Exhibit 14 valuation as the conservative restitution floor:

| Product no. | Austin acquisition record | Acquisition price | Ex. 14 page | Ex. 14 value |
|---|---|---|---|---|
| AT154RA | Ex. 31, 8/26/2015 | $249.95 | 2 | $405.95 |
| FAR7200 | Ex. 13, 4/24/2014 | $325.50 | 2 | $453.00 |
| YA6490A | Ex. 13, 1/6/2016 | $156.00 | 4 | $174.50 |
| CYCLESET | Ex. 13, 12/9/2015 | $330.00 | 4 | $432.00 |
| 212EFTAY | Ex. 31, 8/26/2015 | $249.00 | 4 | $317.00 |
| TDL8 | Ex. 13, 11/23/2016 | $72.00 | 4 | $95.00 |
| MRPB10MP5 | Ex. 13, 8/26/2014 | $70.00 | 5 | $95.75 |
| 87ACF | Ex. 31, 8/26/2015 | $44.50 | 6 | $58.50 |
| FCF72 | Ex. 13, 4/24/2014 | $85.50 | 8 | $136.00 |
| FC72 | Ex. 13, 4/24/2014 | $73.00 | 8 | $111.50 |
| FX80A | Ex. 13, 7/28/2016 | $128.95 | 8 | $183.50 |
| 207IPFM | Ex. 13, 4/24/2014 | $176.80 | 8 | $418.00 |
| 110STMDY | Ex. 13, 3/10/2016 | $200.50 | 9 | $270.00 |
| 112STMMY | Ex. 31, 1/10/2014 | $119.00 | 9 | $339.00 |
| 211SFSY | Ex. 31, 1/10/2014 | $248.00 | 10 | $358.00 |
| 212FSMSY | Ex. 31, 1/10/2014 | $212.00 | 10 | $306.00 |
| 212SFSMY | Ex. 31, 1/10/2014 | $119.00 | 10 | $372.00 |
| IMSFXL33 | Ex. 13, 7/28/2014 | $89.60 | 11 | $136.00 |
| IMD242A | Ex. 13, 7/12/2019 | $19.25 | 12 | $35.50 |
| **Conservatively counted exact-match subtotal** | | | | **$4,697.20** |

The nineteen exact product-number matches carry an aggregate Exhibit 14 value of $4,697.20 before tax. Exhibit 14 values the full thirteen-page accounting at $283,445.70 before tax and $301,161.06 including tax. The $4,697.20 floor is deliberately conservative. It omits property supported by testimony, gifts, generic descriptions, near matches, or records outside Exhibits 13 and 31; and counts only one unit when Austin's purchase records independently establish one unit. The matched subset therefore isolates the portion of Snellgrove's admitted custody for which Austin's acquisition is independently documented by exact product number.

The cross-match leaves no evidentiary gap as to this minimum subset. Exhibits 13 and 31 establish Austin's acquisition of each exact product number. Exhibit 14 establishes that the same product numbers were included in Snellgrove's own accounting of the property taken. Snellgrove's trial admission establishes that some of the seized property was not his and that he knew its value was not his to retain. Read together, those admissions and records establish by at least a preponderance that Snellgrove received a benefit belonging to Austin. The historical

acquisition amount is not necessarily the final measure of equitable gain, but Exhibit 14's valuation is competent evidence of retained value because it is Snellgrove's own valuation. If actual sale proceeds or net gain differ, Snellgrove controls the records showing the difference. Equity should require disclosure of those records rather than reward commingling or the absence of item-specific disposition records.

**D. The Court should order an accounting because the gain information is in Snellgrove's control.**

The record shows that seized property was stored at Snellgrove's facility, accessible to his employees, not segregated from business inventory, and later sold or distributed. It also shows the absence of a reliable item-by-item government chain of custody. Those conditions make an accounting appropriate. The accounting should identify each item received, its model and serial number if any, whether it remains in possession, whether it was sold or transferred, the recipient, the gross proceeds, any direct incremental cost claimed as an offset, the resulting net profit, and the location of identifiable proceeds or substitute property.

An accounting is not a substitute for proving liability. Liability is already supported by the receipt of the property, the admissions, and the cross-matched documents. The accounting is the means of fixing the precise equitable remedy and tracing the res after Snellgrove exercised exclusive control over the records and disposition.

## V. REQUESTED FINDINGS, CONCLUSIONS, AND RELIEF

On the existing record, Plaintiffs request the following findings of fact:

1. Law enforcement transferred possession and practical control of property seized from Plaintiffs to Snellgrove and his business.

2. Snellgrove received a commercial benefit through possession, inventory value, use, sale, transfer, or avoided acquisition cost.

3. At least some of the property did not belong to Snellgrove, and he knew that it did not belong to him.

4. Plaintiff's Exhibits 13 and 31 identify Austin as the purchaser, buyer, or debtor for nineteen exact product numbers that also appear in Snellgrove's own itemized accounting, Plaintiff's Exhibit 14.

5. The exact product-number matches shown above carry an aggregate value of $4,697.20 before tax on Exhibit 14. Exhibit 14 values its full thirteen-page accounting at $283,445.70 before tax and $301,161.06 including tax.

6. No express contract between Plaintiffs and Snellgrove governs title to the property or authorizes him to retain the property or proceeds.

7. No judicial ownership determination awarded the conceded non-Snellgrove property to him, and he did not pay Plaintiffs for it.

8. Retention of the conceded property, proceeds, or value would be unconscionable and would unjustly enrich Snellgrove.

9. Under the defense's alternative account, Snellgrove's possession beginning May 17 was lawful only because he held the property for law enforcement and was not authorized to dispose of it for his own benefit.

10. In fall 2023, while Austin's criminal case remained pending, someone from the Martin County Sheriff's Office told Snellgrove that he could take the seized property as his own and deal with it as he wished. From that point, he treated the property for his own commercial benefit through integration, sale, transfer, or disposition.

11. Plaintiffs named Snellgrove as a defendant in the First Amended Complaint filed July 10, 2025. Doc. 15. Count Nine arises from the same conduct, transaction, and occurrence alleged against him in that pleading.

Plaintiffs request the following conclusions of law:

1. Texas law recognizes unjust enrichment as a cognizable claim and an independent alternative basis for equitable relief. *King*, 46 F.4th at 367-70.

2. Count Nine is not barred by the express-contract limitation because no express contract governs the disputed property or proceeds.

3. The evidence satisfies active unjust enrichment through taking undue advantage and, independently, passive unjust enrichment through receipt of a benefit that would be unconscionable to retain.

4. The Court may award equitable restitution, return of specific property, an accounting, a constructive trust or equitable lien on identifiable property and proceeds, and disgorgement of net gain.

5. Under the legal-injury rule, Count Nine accrued when Snellgrove first received and retained for himself the personal benefit that should have gone to Plaintiffs and the restitutionary remedy arose. *Mayo*, 354 F.3d at 409-11.

6. Assuming the May 17 possession was lawful and custodial as Snellgrove has urged, Count Nine accrued no earlier than fall 2023, when Snellgrove first exercised unequivocal personal dominion and treated the property as his own.

7. Plaintiffs named Snellgrove on July 10, 2025, less than two years after the fall 2023 accrual date. Count Nine arises from the same conduct, transaction, and occurrence

alleged against him in the First Amended Complaint and relates back under Rule 15(c)(1)(B). It is not time-barred.

8. Any award should be structured to avoid duplicative recovery while ensuring that Snellgrove does not retain a benefit belonging to Plaintiffs.

The Court should order Snellgrove, within fourteen days, to provide a verified item-by-item accounting and produce the supporting records. The Court should order return of any identified property still held, impose a constructive trust or equitable lien on identifiable proceeds or substitute property, and enter disgorgement or restitution measured by the proven retained value or net proceeds. On the present record, Exhibit 14 is Snellgrove's own prima facie valuation of the property listed there, subject to item-specific proof and lawful offsets. At the irreducible minimum, the Court should find liability and a directly documented value of $4,697.20 before tax for the nineteen exact product-number matches, then determine whether additional amounts are due after the accounting.

**PRAYER**

Plaintiffs respectfully request that the Court:

1. revise any oral or interlocutory ruling that Count Nine is not a cognizable claim;

2. hold that Count Nine states a separate equitable unjust-enrichment claim or, at minimum, an independent alternative basis for equitable relief under Texas law;

3. hold that Count Nine is timely because, under Snellgrove's own lawful-custody theory, no personal enrichment or unequivocal adverse dominion occurred before fall 2023, Plaintiffs named him on July 10, 2025, and Count Nine relates back under Rule 15(c)(1)(B);

4. make findings of fact and conclusions of law under Rule 52(a) on the existing trial record;

5. find Snellgrove liable for unjust enrichment at least as to the property he admitted was not his and the items established through the Kniepkamp records, Snap-on Credit records, and Snellgrove's own inventory list;

6. order a verified accounting within fourteen days and production of the underlying inventory, sales, transfer, customer, receipt, and disposition records;

7. order return of any identified property still possessed, impose a constructive trust or equitable lien on identifiable property and proceeds, and award restitution or disgorgement of retained value and net profits;

8. find that nineteen exact product numbers appear both in Plaintiff's Exhibit 14 and in Plaintiff's Exhibit 13 or 31, that the conservatively counted matched subset has an aggregate Exhibit 14 value of $4,697.20 before tax, that Exhibit 14 values the full listed property at $283,445.70 before tax and $301,161.06 including tax, and set any focused evidentiary hearing necessary to complete the accounting and fix the full award;

9. provide that the equitable award shall be reduced only to the extent necessary to prevent double recovery of the same property value under another claim;

10. defer entry of final judgment until Count Nine and its remedy are adjudicated; and

11. grant all further relief to which Plaintiffs are entitled.

## CONFERENCE REQUIREMENT

This motion seeks adjudication of a pleaded cause of action and entry of substantive relief and is therefore dispositive. The conference requirement of Local Rule CV-7(g), which applies to nondispositive motions, does not apply.

**CERTIFICATE OF SERVICE**

I certify that on the date reflected by the CM/ECF filing stamp, I filed the foregoing document through the Court's CM/ECF system, which will serve all counsel of record who are registered CM/ECF users.

Respectfully submitted,

**/s/ Kurt Mueller**
Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
Telephone: (713) 360-2110
Fax: None
Email: kurt@kurtmuellerpllc.com
**Counsel for Plaintiffs**