**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,** *Plaintiffs,* | § § § § | |
| v. | § | **MO:25-CV-00245-RCG** |
| **BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, RORY GAMMONS, each in their individual capacity; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE,** *Defendants.* | § § § § § § § § | |

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) AS TO DEFENDANT ANDERS DAHL'S FOURTH AMENDMENT LIABILITY, OR ALTERNATIVELY FOR A NEW TRIAL UNDER RULE 59**

Plaintiffs Austin Hamblin and Kiska Hamblin renew their motion under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law against Defendant Anders Dahl on liability for discrete Fourth Amendment violations captured on admitted body-camera footage: Dahl opened closed drawers in a Snap-On tool cabinets even though the only two objects described in the warrant, a plasma cutter and an air compressor, could not fit inside that drawers. Alternatively, Plaintiffs move under Rule 59 for a new trial limited to Dahl's liability and the remedy for that violation.[1]

**RELIEF REQUESTED**

The verdict cannot stand as to the drawer searches. Martin County's Exhibit 1 identifies exactly two objects to be searched for and seized. Plaintiffs' Exhibit 1 and Exhibit 2 show Dahl opening a closed tool-cabinet drawers. Dahl repeatedly admitted under oath that neither warrant object could fit inside the drawers under oath at trial. He further admitted that, absent consent,

[1] As of the filing of this motion, no recording or transcript of the proceedings has been made available to Plaintiffs' counsel. Accordingly, this motion necessarily relies upon counsel's good-faith recollection of the Court proceedings. The relevant arguments and statements were made in open court and in the Court's presence and the Court may assess the accuracy of counsel's account against its own firsthand recollection of those proceedings.

property beyond the two warrant items was outside the authority conferred by the warrant, and would have to be covered by consent. However, during closing argument, counsel for the Martin County Defendants expressly called the entire consent issue a "red herring" and told the jury it needed only the Court's instructions and Martin County's Exhibit 1, the warrant and attached affidavit, to decide the case. This was not a stray or passing statement - it was the core and gravamen of Martin County's entire closing argument.

A search warrant's scope is a question of law, not of fact. Under binding Supreme Court and Fifth Circuit law, a warrant permits officers to search only places capable of containing the objects described. *United States v. Ross*, 456 U.S. 798, 824 (1982); *Horton v. California*, 496 U.S. 128, 140-41 (1990). The Fifth Circuit applied that rule in the nearly identical two-item-warrant setting in *Creamer v. Porter*, 754 F.2d 1311, 1314-19 (5th Cir. 1985), where officers holding a warrant for two televisions searched drawers that could not contain the televisions ("Under no circumstances could the officers justify their intrusion into an area such as a desk drawer, a filing cabinet or a nightstand to search for a television set.") The Fifth Circuit has now reaffirmed *Creamer* in a published opinion, explaining that the warrant there "listed two specific items, and when police seized them, their search should have ended." *Alexander v. Arceneaux*, 172 F.4th 455, 462 (5th Cir. 2026).

Plaintiffs therefore request an order setting aside the defense verdict as to these discrete acts, entering judgment that Dahl violated Austin Hamblin's Fourth Amendment right by opening the closed drawers, awarding Austin Hamblin and Kiska Hamblin damages for each distinct violation, and recognizing Austin Hamblin and Kiska Hamblin as a prevailing party for purposes of 42 U.S.C. Section 1988. The amount of any fee award should be reserved for a timely motion under Rule 54(d)(2).

## PROCEDURAL POSTURE AND THE UNDISPUTED TRIAL RECORD

### A. This motion renews the same ground preserved under Rule 50(a).

After Plaintiffs and the opposing parties were fully heard, Plaintiffs moved orally under Rule 50(a) for judgment as a matter of law against Dahl as to Fourth Amendment liability. The motion identified the same discrete acts presented here: Dahl's opening of closed tool-cabinet drawers depicted on Plaintiffs' Exhibit 1 and 2, the drawers' inability to contain either item named in the warrant, and the absence of consent specifically authorizing that drawer searches (Plaintiffs' Exhibit 1, native time stamps 8:10:32, 8:10:42; Plaintiffs Exhibit 2, native time stamps 10:51:03, 10:52:16, 10:59:13, 10:59:25). The Court denied the motion and submitted the Fourth Amendment claim to the jury on the premise the issue of consent was an open question, a premise that Defense Counsel emphatically insisted during its closing is of no consideration. The jury returned a verdict finding Dahl did not violate the fourth amendment. The Court then expressly permitted Plaintiffs to file this written reurging after the verdict.

This renewed reurging does not add a new Rule 50 ground. It presents the same warrant-scope issue preserved before submission. The defense closing argument matters because it indicated, after the evidence closed, the theory on which Defendants deliberately chose to defend the search. It narrows rather than expands the preserved Rule 50 issue.

### B. Martin County's Exhibit 1 identifies two particular objects.

Martin County's Exhibit 1 contains the search warrant and the affidavit Dahl prepared and swore to. The warrant incorporates the affidavit, describes the residence and associated outbuildings, and commands officers to search for the following property:

> "Property acquired by theft or in any other manner which makes its acquisition a penal offense **to-wit**: a Snap-On Plasma Cutter model 30I and a Snap-On Air Compressor, and to seize the same and bring it before me." (emphasis added)

The affidavit's operative description of property to be found is the same: "a Snap-On Plasma Cutter model 30I and a Snap-On Air Compressor." Its narrative discusses other observations relating to the house and the outbuildings and includes generic training-and-experience language concerning documents that may indicate occupancy or control. The warrant commands seizure of "the same," referring to the two specifically named objects. It is the warrant's operative text, not broader language in the supporting affidavit that defines the search and seizure authorized by the issuing judge. *Groh v. Ramirez*, 540 U.S. 551, 557–58, 561 (2004); *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 325-26 (1979); *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005); *United States v. Sedaghaty*, 728 F.3d 885, 913–14 (9th Cir. 2013).

**C. Dahl confirmed the two-item limit and the physical impossibility of the drawer search.**

At trial, Dahl confirmed that he personally drafted the affidavit and warrant and participated in executing the resulting warrant. When Plaintiffs' counsel asked what "to-wit" meant, Dahl answered "particularly." He confirmed that the warrant's operative language was strictly limited to a plasma cutter and an air compressor. He explicitly and repeatedly confirmed under oath the scope of the warrant went no further then the two specific items.

For example, Dahl testified concerning the transportation of property seized under a warrant across county lines. He distinguished property seized pursuant to a warrant from property obtained through consent. Dahl testified that only air compressor and the plasma cutter required judicial permission because those were the only warrant items. He explicitly labeled all other items seized as consent items outside the scope of the warrant and thus would not require judicial permission. When asked whether, assuming no consent, seizure beyond those two items would exceed the warrant search, Dahl testified yes.

Plaintiffs' Exhibit 1 and 2 depicts Dahl entering the detached laundry room / workshop and opening closed drawers in a Snap-On tool cabinets. Dahl repeatedly admitted at trial that

neither the air compressor nor the plasma cutter could fit inside the drawers under oath. Those admissions eliminate any factual dispute over the warrant's stated objects, the drawer's dimensions relative to those objects, and Dahl's act of opening it.

**D. Defendants deliberately and unequivocally waived reliance on consent, and Plaintiffs materially relied on that waiver.**

During closing argument, Mr. Dennis, speaking for the unified Martin County defense, including Dahl, expressly told the jury that consent was a "red herring." He then told the jury that only two documents were necessary to decide the claim: the Court's instructions and Martin County’s Exhibit 1. That was not a passing or stray argument - it was the very foundation and central core of the Defense closing argument. They implored the jury consider only the warrant, explicitly abandoned the concept of consent.

The Fifth Circuit recognizes that a statement by counsel during a proceeding may bind the party when it is made intentionally as a waiver that removes a matter from contention. *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001) (“A statement made by counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver [].”). The Supreme Court likewise has long recognized the power of a court to act upon matters deliberately conceded by counsel. *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880). Calling consent a "red herring" and directing the jury to decide from the warrant alone was clear, deliberate, unambiguous, and directed to the precise constitutional justification now at issue. The defense cannot be permitted to obtain a judgment in its favor after expressly withdrawing consent from the jury's decisional path and then preserve that judgment by reviving consent in any post-verdict filing.

The Court need not treat every stray statement in closing as a judicial admission to enforce this particular explicit waiver. The statement here was central and unequivocal, was

made after the evidentiary record closed, and identified the sole and exclusive basis on which Defendants requested a verdict - namely, the warrant and the warrant alone.

Plaintiffs' rebuttal argument makes the reliance point concrete. After Mr. Dennis told the jury that consent was a "red herring" and that the case should be decided from the Court's instructions and Martin County's Exhibit 1, Plaintiffs expressly and unambiguously adopted that warrant-only framework in rebuttal. Plaintiffs adopted the Defense's theory of the case, and argued the case to the jury accordingly: that the legality of Dahl's conduct rose or fell with the warrant. Plaintiffs accepted Defendants' stated narrowing of the case and answered the warrant-scope question on its merits.

That sequence reinforces waiver and supplies an additional reliance-based fairness ground for holding Defendants to the theory they deliberately submitted. Waiver is the intentional relinquishment or abandonment of a known right. See *Wood v. Milyard*, 566 U.S. 463, 474 (2012); *United States v. Olano*, 507 U.S. 725, 733 (1993). And the Fifth Circuit's invited-error cases apply the same anti-gamesmanship principle in the jury-trial setting: a litigant may not induce or expressly endorse a decisional framework, speculate on the verdict, and then escape the consequences when that framework becomes inconvenient. *McCaig v. Wells Fargo Bank* (Tex.), N.A., 788 F.3d 463, 476-77 (5th Cir. 2015) (quoting *Ala. Great S. R.R. Co. v. Johnson*, 140 F.2d 968, 971 (5th Cir. 1944)). Here the reliance is stronger still because Plaintiffs affirmatively conformed their rebuttal to Defendants' warrant-only presentation.

The Supreme Court's estoppel framework confirms why allowing a post-verdict retreat would be inequitable. Courts consider whether a later inconsistent position would give the proponent an unfair advantage or impose an unfair detriment on the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); See also *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638-40 (5th Cir. 2024). Plaintiffs adopted Defendants'

stated warrant-only theory in the final presentation to the jury, and Defendants should be held to that deliberate election when the legal sufficiency of the resulting verdict is tested.

## RULE 50(b) STANDARD

Rule 50 requires judgment as a matter of law when a party has been fully heard and "a reasonable jury would not have a legally sufficient evidentiary basis" to find for that party on an issue. Fed. R. Civ. P. 50(a)(1). After verdict, the Court may allow judgment on the verdict, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

The Court reviews the record as a whole, draws reasonable inferences for the nonmovant, and does not weigh credibility. But an inference must be reasonable and grounded in evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-51 (2000). A verdict cannot rest on speculation, and the jury receives no deference on a purely legal conclusion concerning what an unambiguous warrant constitutionally authorizes. The jury may resolve disputed historical facts, but it cannot supply a broader legal construction of Martin County's Exhibit 1.

The body-camera recording is objective evidence. When a video unambiguously depicts the relevant event, a court need not accept an account that the recording contradicts. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). Both side repeatedly agreed the video tape is accurate at least as to what it depicts, so there is not dispute of fact as to whether Dahl opened the drawers in question. Here, the video, the warrant, and Dahl's admissions relating to the opening of the drawers converge. No credibility finding is necessary to determine that Dahl opened the drawers and that neither warrant object could be located inside it.

## NO LEGALLY SUFFICIENT BASIS SUPPORTS THE VERDICT AS TO THE DRAWER SEARCH

### A. The warrant authorized a search for two particular objects, not a general search for Snap-On property.

The Fourth Amendment requires warrants to particularly describe both the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. Particularity prevents a

warrant from becoming a general license to rummage. *Marron v. United States*, 275 U.S. 192, 196 (1927); *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). It also confines officer discretion to the probable cause determination the issuing judge actually made.

Martin County's Exhibit 1 is unambiguous. It authorizes a search for a plasma cutter and an air compressor alone. The geographic description permits officers to look for those two objects in the residence and associated structures. It does not enlarge the category of things sought. A warrant may be broad as to places but narrow as to objects, and the breadth of the premises description cannot convert two identified objects into more, as Dahl confirmed under oath.

The generic occupancy and control paragraph in the affidavit does not change the result. That paragraph explains Dahl's training and experience regarding proof of control over premises. The Supreme Court has rejected efforts to use an affidavit or an officer's subjective knowledge to supply particularity absent from the warrant's command. *Groh v. Ramirez*, 540 U.S. 551, 557-59 (2004)..

Dahl's testimony confirms the text. He wrote the affidavit, defined "to-wit" as "particularly," identified the compressor and cutter as the only two warrant items when discussing the issue of cross-county transport (as well as in multiple other contexts during his testimony), and agreed that, without consent, seizure beyond those items would exceed the warrant. No reasonable reading of Martin County's Exhibit 1 authorized a general search for items beyond the two items specifically mentioned.

**B. Supreme Court law prohibited searching a drawer incapable of containing either warrant object.**

The governing rule is settled. The permissible scope of a search is defined by its object and by the places in which the object may be found. *Ross*, 456 U.S. at 824. *Horton* likewise explains that a warrant for one type of property authorizes officers to search only where that

property might reasonably be located. 496 U.S. at 140-41. Thus, officers searching for a large object may not open a small closed container that cannot hold it.

The rule applies at the moment a container is opened. It is not necessary to wait until the officers locate the warrant items elsewhere. If the object cannot fit, the warrant supplies no authority to invade the container at all. Because Dahl admitted that neither the plasma cutter nor the air compressor could fit in the tool drawer, opening the drawers was outside the warrant as a matter of law.

That conclusion follows from the undisputed physical facts, not a disputed inference. Once the video and Dahl's testimony established that the drawer was incapable of containing either described object, no warrant-based justification remained.

**C. Creamer controls, and Alexander confirms the rule.**

*Creamer v. Porter* is the Fifth Circuit case that fits these facts. The warrant there authorized a search for two stolen television sets described by size, color, and serial number, and no other property. 754 F.2d at 1314. Officers found the televisions within approximately fifteen minutes but continued searching for more than three hours. They searched a locked office, a separate apartment, files, and drawers in which the televisions could not fit, and seized twenty-nine items. *Id.* at 1314-16.

The Fifth Circuit held that the officers violated the Fourth Amendment. Items beyond those described could be seized only if an exception such as plain view applied, including an immediately apparent incriminating character or a sufficient nexus to the crime. *Id.* at 1318. Critically for this motion, *Creamer* held that even if the televisions had not yet been found, there was "no justification for rummaging through drawers and private areas where no television set could have been found." *Id.* at 1319. The warrant could not serve as an admission ticket for a general search. *Id.* at 1318-19.

In *Alexander v. Arceneaux*, the Fifth Circuit recently reaffirmed *Creamer* in a published Section 1983 decision. The court summarized the controlling distinction: in *Creamer*, the warrant "listed two specific items, and when police seized them, their search should have ended." 172 F.4th at 462. *Alexander* reached a different result because the warrant there broadly authorized "any and all firearms" and related items, and the additional property was already in plain view with independent probable cause that it was stolen. *Id.* at 458, 460-63.

This case falls on the *Creamer* side of the line. Martin County's Exhibit 1 identifies two specific objects. Dahl opened closed drawers, so what was inside those drawers was obviously not in plain view. He admitted the drawer could not contain either warrant object. *Alexander* did not create a new rule after the May 2023 search. It authoritatively described and applied the rule *Creamer* had established in 1985.

**D. Plain view cannot justify the act of opening the closed drawer.**

The plain-view doctrine permits seizure only when officers lawfully reach a vantage point, the item is actually in plain view, its incriminating character is immediately apparent, and officers have lawful access to it. *Horton*, 496 U.S. at 136-37; *Alexander*, 172 F.4th at 460. It does not authorize officers to create the view by conducting an otherwise unauthorized search.

In *Arizona v. Hicks*, moving stereo equipment to expose serial numbers was a separate search because the concealed information was not in plain view. 480 U.S. 321, 324-27 (1987). Opening a closed tool drawer is at least as intrusive. The closed drawer blocked the view of what was inside it. Whatever Dahl saw after opening it cannot retroactively justify opening it. The constitutional injury occurred when he invaded the closed drawers without warrant authority or another exception.

Nor was the incriminating nature of ordinary tool drawers immediately apparent before it was opened. Thus, the key features that supported plain view in *Alexander* are absent here –

indeed, the Court has already ruled on the inapplicability of plain view in its prior rulings for this very reason. Nothing has changed warranted reviving the doctrine of plain view.

**E. Defendants waived consent, and the evidence did not establish consent to this drawer search in any event.**

Defendants made a deliberate trial choice. Their counsel called consent a "red herring" and directed the jury to the warrant as the exclusive decisional source. Plaintiffs then expressly adopted that same warrant-only framework in rebuttal and presented their final argument on that premise. The mutual closing presentation matters because consent was the only identified exception that might otherwise have supplied authority to search somewhere the warrant did not reach. Having induced and obtained Plaintiffs' reliance on the narrowed warrant-only theory before the jury, Defendants cannot revive consent after the verdict as a fallback rationale for sustaining it. See *McCaig*, 788 F.3d at 476-77; *New Hampshire*, 532 U.S. at 750-51.

Even if the Court independently considers consent despite the Defense’s waiver (which Plaintiffs’ respectfully suggest the Court should not), the trial record did not supply a legally sufficient basis to find consent to open the drawer. Plaintiffs' Exhibit 1 and 2 does not depict Dahl asking permission to open the drawers. Austin does not tell Dahl to open them, open them for him, point inside them, hand over a key, or otherwise affirmatively authorize that intrusion. Austin stands silently nearby while an officer who has invoked warrant authority opens the drawers.

The Supreme Court has held that acquiescence to an officer's claimed warrant authority is not consent. *Bumper v. North Carolina*, 391 U.S. 543, 548-50 (1968). The government bears the burden of proving genuine consent, and it cannot discharge that burden by showing only submission to asserted lawful authority. *Id.*

Consent is also limited by objective scope. The question is what a typical reasonable person would understand from the exchange, and the expressed object of the search ordinarily defines the permitted scope. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Here the asserted

lawful object was the search authorized by Martin County's Exhibit 1: a plasma cutter and an air compressor. A reasonable person who accompanied Dahl would not understand that cooperation as permission to open closed drawers incapable of containing either object.

Fifth Circuit law is equally direct. Silence or failure to object does not establish implied consent when no express or implied request for that search preceded it. *United States v. Jaras*, 86 F.3d 383, 390 (5th Cir. 1996); *United States v. Staggers*, 961 F.3d 745, 757 (5th Cir. 2020). Austin was not required to physically obstruct an officer executing a claimed warrant to preserve the privacy of a closed drawer. On this record, consent cannot support the verdict.

**F. Qualified immunity does not support the verdict.**

To the extent qualified immunity remains for the Court, both prongs favor Plaintiffs on this discrete search. Opening the drawer violated the Fourth Amendment for the reasons above. The unlawfulness was also clearly established well before May 17, 2023.

*Ross* established in 1982 that officers may search only places capable of concealing the object sought. 456 U.S. at 824. *Creamer* applied that rule in 1985 to officers who opened drawers while executing a two-item warrant for televisions. 754 F.2d at 1314-19. The Fifth Circuit then stated without qualification that officers who require a warrant and search beyond its scope violate clearly established constitutional rights. *Husband v. Bryan*, 946 F.2d 27, 29 (5th Cir. 1991). *Horton* reaffirmed the object-and-location limitation in 1990. 496 U.S. at 140-41.

No reasonable officer could believe a warrant for an air compressor and plasma cutter authorized opening a drawer that could contain neither. The point is especially clear as to Dahl because he drafted the affidavit, knew the two-item language, testified that "to-wit" meant "particularly," admitted the objects could not fit, admitted the warrant covered nothing more, and acknowledged the general rule limiting searches to places where the object might be found. See *Groh*, 540 U.S. at 563-65 (officer who prepared and led execution could not reasonably disregard an obvious particularity defect).

*Alexander* confirms rather than newly creates the governing rule. Its published discussion demonstrates that *Creamer* remains binding and that a narrow two-item warrant is fundamentally different from a warrant authorizing any and all items in a broad category. 172 F.4th at 462-63. Qualified immunity therefore cannot sustain the verdict as to Dahl's opening of the drawer.

**G. The general defense verdict cannot be reconciled with either possible justification.**

There are only two conceivable rationales presented by this record. If the verdict rested on the warrant, it rests on a legal error because the drawer could not contain either described object. If the verdict rested on consent, it rests on a theory Defendants expressly abandoned before deliberations, a waiver Plaintiffs expressly accepted and relied upon in rebuttal, and that the evidence did not legally establish as to this drawer. Defendants cannot defend the verdict on a theory they told the jury was a red herring after Plaintiffs materially conformed their own final presentation to that representation.

Rule 50 does not permit a verdict to survive merely because the jury returned it. It requires a legally sufficient evidentiary basis. *Reeves*, 530 U.S. at 149-51. Because none exists for the drawer search, the Court should enter judgment as a matter of law on liability against Dahl for that discrete Fourth Amendment violation.

## REMEDY

**A. The Court should enter liability and nominal damages for each violation.**

The jury's verdict prevented it from reaching causation and compensatory damages. Plaintiffs do not ask the Court to determine disputed compensatory damages for this discrete drawer search without a jury. Instead, to permit final relief without a second damages trial, Austin and Kiska requests nominal damages each for each drawer opened.

Nominal damages are the established remedy for a completed constitutional violation when compensatory injury is not separately determined. *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978). They are not merely symbolic in the jurisdictional sense. An award on the merits

redresses the violation and changes the parties' legal relationship. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290-92 (2021).

**B. Austin would be a prevailing party under Section 1988.**

A plaintiff who obtains an enforceable judgment and nominal damages on a Section 1983 claim is a prevailing party under 42 U.S.C. Section 1988. Accordingly, the Court should recognize Austin and Kiska as prevailing parties if it grants this motion and enters nominal damages.

Prevailing-party status and the amount of a reasonable fee are distinct questions. *Id.* at 114-15. Plaintiffs do not ask the Court in this motion to fix the amount of fees or to prejudge the degree-of-success analysis. They request only that the judgment recognize prevailing-party status and permit a fee application under Section 1988 and Rule 54(d)(2) on the schedule established by the Rules or the Court.

**ALTERNATIVELY, THE COURT SHOULD ORDER A NEW TRIAL UNDER RULE 59**

If the Court concludes that Rule 50 relief is unavailable, it should order a new trial under Rule 59(a)(1)(A), limited to Dahl's liability for the drawer searches and the resulting remedy. A district court may grant a new trial when necessary to prevent injustice, including when the verdict is against the great weight of the evidence. *Seibert v. Jackson County, Mississippi*, 851 F.3d 430, 438-39 (5th Cir. 2017); *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).

A partial new trial is proper when the issue to be retried is "so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). That requirement is satisfied here. This motion concerns discrete acts by one Defendant, captured on admitted video, measured against

one warrant, and capable of a separate liability and remedy determination without disturbing the verdict as to any other Defendant or theory.

The objective video, the two-item warrant, and Dahl's admissions leave no sound basis for the verdict. Defendants told the jury consent was a red herring and asked it to decide from the warrant. Plaintiffs expressly adopted that framing in rebuttal and argued the case on the same warrant-only premise. Yet the warrant could not authorize the drawer search under Ross, Horton, and Creamer. At minimum, allowing Defendants to obtain the benefit of a narrowed theory at closing and then revive the abandoned theory only after the verdict would create the kind of unfair, verdict-dependent gamesmanship the Fifth Circuit has rejected. See McCaig, 788 F.3d at 476-77. A new trial is therefore warranted if the Court does not enter judgment under Rule 50(b).

**CONCLUSION AND PRAYER**

Plaintiffs respectfully request that the Court grant this renewed motion under Rule 50(b); set aside the verdict only to the extent it found Anders Dahl not liable for opening the closed tool-cabinet drawers depicted in Plaintiffs' Exhibit 1 and 2; enter judgment that Dahl violated Austin Hamblin's and Kiska Hamblin's Fourth Amendment rights by opening a drawer incapable of containing either object identified in Martin County's Exhibit 1; award Austin and Kiska nominal damages; recognize Austin and Kiska as a prevailing party under Section 1988; permit Plaintiffs to seek reasonable attorney's fees and nontaxable expenses through a timely Rule 54(d)(2) motion and taxable costs under Rule 54(d)(1); and grant all other relief to which Plaintiffs are entitled. Alternatively, Plaintiffs request a limited new trial under Rule 59.

**CERTIFICATE OF CONSULTATION**

I certify that counsel for all represented parties were contacted via email on August 31, 2026 for the purposes of consultation required by the local rules. Only Mr. Dennis responded, who indicates the motion is opposed, but did not specify any reason.

## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF filing stamp, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record who are registered CM/ECF users.

Respectfully submitted,
/s/ Kurt Mueller
Kurt Mueller
Texas Bar No. 24133133
THE KURT MUELLER LAW FIRM PLLC
565 S. Mason Rd., PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com
Attorney for Plaintiffs