**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, RORY GAMMONS, WESTON PHELPS, each in their individual capacity; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br>7:25-cv-00245-RCG |

**PLAINTIFFS' POST-VERDICT, PRE-JUDGMENT MOTION UNDER RULE 54(b) TO RECONSIDER THE EXCLUSION OF BILLY REYNOLDS, FOR A NEW TRIAL UNDER RULE 59(a), AND FOR A LIMITED EVIDENTIARY HEARING**

1. Plaintiffs Austin Hamblin and Kiska Hamblin move under Federal Rule of Civil Procedure 54(b) to reconsider the interlocutory ruling excluding Billy Reynolds and under Rule 59(a)(1)(A) for a new trial because that exclusion removed a distinct and material source of evidence. Reynolds was the chief deputy and second in command under Sheriff Randy Cozart, who assumed office in October 2024, approximately one month before the criminal case was dismissed. Cozart personally assigned Reynolds to investigate Kiska Hamblin's inquiries about return of the seized property.

2. Reynolds was the only available witness who could supply a firsthand account of that investigation under the successor administration, including his search for missing property, body-camera footage, reports, audit records, and chain-of-custody logs. The County Defendants themselves designated him to testify about these subjects, expressly including later review.

3. His exclusion also deprived Plaintiffs of independent law-enforcement corroboration when defense counsel argued that real victims seek police help.
4. Plaintiffs request reconsideration under Rule 54(b), a new trial under Rule 59(a), and, if useful to decide this motion, a limited hearing under Rule 43(c).

**RULE 54(b) RECONSIDERATION AND RULE 59 RELIEF**

5. The jury has returned its verdict and has been discharged. Plaintiffs therefore seek a new trial, at which admissible testimony can be presented to a jury. Any testimony received now would assist the Court in deciding this motion and evaluating the exclusion; it would not become evidence retroactively considered by the discharged jury. Rule 43(c) permits the Court to hear a motion on affidavits, oral testimony, or depositions when the motion depends on facts outside the existing record. Rule 103(c) also permits clarification of an evidentiary ruling and an offer of proof in question-and-answer form.
6. No final judgment has been entered. Plaintiffs expressly invoke Rule 54(b) to request reconsideration of the interlocutory ruling excluding Reynolds. The Fifth Circuit recognizes that Rule 54(b) permits reconsideration of interlocutory rulings for a sufficient reason, even without newly discovered evidence or an intervening change in law. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017). Plaintiffs ask the Court to revise its determination that Reynolds's proposed factual testimony was needlessly cumulative, based on his distinct investigative role and the Rule 403 analysis set out below. Rule 54(b)'s flexible reconsideration standard governs that request before judgment.
7. Plaintiffs separately invoke Rule 59(a)(1)(A) for the new trial necessary to remedy the prejudicial exclusion after the jury's discharge. See *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A new-trial motion may properly be filed before formal entry of judgment. *Greater Hous. Chapter of ACLU v. Eckels*, 755 F.2d 426, 427-28 (5th Cir. 1985). Rule 59(b) presently requires filing no later than 28 days after entry of judgment.

Reconsideration of the exclusion under Rule 54(b) and the request for a new trial under Rule 59(a) present related but distinct questions: whether the evidentiary ruling should be revised, and whether the erroneous exclusion affected substantial rights sufficiently to require a new trial. Fed. R. Evid. 103(a); Fed. R. Civ. P. 61.

## RELEVANT BACKGROUND

8. This case concerns the search and seizure of Plaintiffs' property and its subsequent custody, storage, and disposition. The Sheriff's Office transferred seized property into Snellgrove's possession, and the criminal case remained pending until November 2024. Sheriff Cozart assumed office in October 2024. Defendants emphasized that Ingram left office before disposition of the criminal case. That transition makes Reynolds's testimony especially material: the jury needed the account of the investigator assigned to determine what property and official records the successor administration could locate when Plaintiffs sought its assistance.

9. Reynolds served as chief deputy and second in command under Cozart. In response to Kiska Hamblin's inquiries seeking return of her property, Cozart directly tasked Reynolds with this case and investigation. Reynolds personally investigated the inherited records and missing property. Plaintiffs designated him as a case-in-chief witness. Doc. 103. Local Rule CV-16(f)(5) requires identification of expected and may-call witnesses and previously unprovided contact information; that subsection does not itself require a subject-matter summary. More directly, Defendants' own filing supplied such a summary for Reynolds.

10. The Martin County Defendants listed Reynolds as a may-call witness concerning "policy, inventory, recordings, property handling, or later review." Doc. 89 at 3. They separately identified Cozart concerning policies, storage, cooperation with other counties, and present departmental matters. Id. at 3. Those designations confirm advance notice of Reynolds's

distinct investigative subjects. His proposed testimony concerned what he personally received, reviewed, searched for, found, could not find, and did in response.

11. Reynolds's proposed testimony included these distinct subjects:

- Kiska Hamblin's request to the Sheriff's Office for assistance recovering the seized property and Cozart's assignment of the investigation to Reynolds.
- Reynolds's own communications with the Hamblins, the information he requested and received, and the steps he took in response to their request for assistance.
- The particular case files, body-camera repositories, reports, inventories, audit materials, property records, and chain-of-custody logs he personally searched or reviewed.
- The records his investigation could not locate, including missing or incomplete documentation of inventory, evidence intake, custody, transfer, release, , and the property's location.
- The body-camera footage, reports, and audit documentation he could and could not locate, and the resulting limits on reconstructing the seizure and subsequent handling of the property.
- His actual efforts to trace and recover the property during Cozart's administration and the results of those efforts within his personal knowledge.
- Independent confirmation that Plaintiffs sought police assistance and that their request prompted an official inquiry.

12. Reynolds's title was not the reason his testimony was unique. His personal work was. The witnesses called about Ingram's administration did not conduct Reynolds's later investigation or supply his firsthand account of it. Cozart's assignment of that inquiry likewise did not duplicate Reynolds's execution of it. Plaintiffs' own testimony could describe their requests, but could not substitute for Reynolds's account of the official searches, unavailable records,

and investigative response. Some overlap in subject labels did not eliminate these distinct facts.

13. The Court excluded Reynolds as cumulative. Plaintiffs had designated and sought to present him; the absence of his testimony resulted from that ruling. Plaintiffs rested at approximately 2:30 p.m. on Wednesday, August 26, 2026. A focused examination confined to the later investigation could have been completed well within the trial schedule. Defendants had advance notice of both the witness and the investigative subjects and could have cross-examined him.

14. During closing argument on August 27, 2026, defense counsel for Snellgrove argued, in substance, that victims seek police help, inviting an adverse inference from Plaintiffs' supposed failure to do so. Reynolds could have independently confirmed that Kiska sought assistance from the Sheriff's Office, that Cozart assigned him to investigate, and that he undertook the inquiry. Plaintiffs rely on that argument to demonstrate the prejudice from the exclusion. The descriptions of the oral ruling and argument reflect counsel's recollection of proceedings conducted in the Court's presence.

**GOVERNING LAW**

15. Rule 403 permits exclusion on cumulative-evidence grounds only when the evidence's probative value is substantially outweighed by the specified countervailing concerns. The Fifth Circuit requires consideration of the content of anticipated testimony before excluding it as needlessly cumulative or wasteful. *United States v. Colomb*, 419 F.3d 292, 301-03 (5th Cir. 2005). *Colomb* distinguishes testimony about different conduct from a succession of witnesses merely repeating the same fact. Id. at 301-02. Although *Colomb* arose in a criminal prosecution, this reasoning applies the same Rules 403 and 611(a) that govern this trial.

16. The Supreme Court likewise explains that two pieces of evidence addressing the same point need not be reduced to one; Rule 403 calls for appraisal of the evidence's contribution in the context of the case. *Old Chief v. United States*, 519 U.S. 172, 183 (1997). That general evidentiary reasoning supports evaluating Reynolds's independent factual contribution. The Fifth Circuit's civil decisions likewise require meaningful consideration before wholesale exclusion of probative evidence. See *Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441 (5th Cir. 2024) (as revised Aug. 8, 2024). See also *Herrington v. Hiller*, 883 F.2d 411, 414 (5th Cir. 1989) (exclusion of probative evidence under Rule 403 is "an extraordinary remedy that must be used sparingly."); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005)

17. An erroneous evidentiary ruling warrants relief when it affects substantial rights. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). In *Bocanegra*, the exclusion was harmful because it deprived the jury of evidence on a critical issue and prevented the plaintiff from answering the defense's account. Id. at 590. In *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 423-24 (5th Cir. 2006), the Fifth Circuit rejected a cumulative-evidence defense where the excluded proof could have materially strengthened the plaintiff's rebuttal, notwithstanding the admission of some evidence on the subject.

18. *Gibson* applied *Bocanegra*'s substantial-rights analysis in ordering a new trial after wholesale exclusion of evidence supporting the defendant's principal defense. 107 F.4th 441. Its reasoning requires evaluation of the effect of the missing proof on the issues actually tried. A partial new trial is appropriate only where the affected issue is sufficiently distinct and separable to be tried alone without injustice. *Gasoline Prods. Co. v. Champlin Refin. Co.*, 283 U.S. 494, 500 (1931).

## ARGUMENT

### I. REYNOLDS'S DISTINCT INVESTIGATION SHOULD HAVE BEEN EVALUATED UNDER RULE 403.

**A. Reynolds's testimony was important and highly probative.**

19. Defendants' emphasis on Ingram's departure made the transition particularly important. Cozart took office in October 2024, before the November 2024 disposition of the criminal case. Reynolds then became the officer personally assigned to investigate Kiska's request for return of the property. He could explain the searches he performed, what the successor administration's available records documented, what could not be located, and the practical obstacles to tracing the property. The fact that he did not participate in the original seizure does not diminish his personal knowledge of this later investigation.

20. Reynolds's testimony supplied substantive facts concerning the availability of official inventories, recordings, reports, audit records, and custody documentation. Those facts could corroborate or contradict the trial accounts of property handling and bear on Plaintiffs' recovery efforts and credibility. For conversion and any related damages issues, the tracing and recovery evidence could address which items remained unreturned and what efforts were made to recover them. For the jury-tried constitutional and municipal claims, the investigative findings could test the reliability of the accounts and records offered concerning the challenged seizure and handling of the property. Plaintiffs seek admission of those concrete facts, with their relevance evaluated against the issues the jury was asked to decide.

21. The pleaded conspiracy concerns the individual defendants' joint transportation, storage, and retention of the property as well as its seizure. Third Am. Compl. ¶¶ 126-31. The County is separately sued for municipal liability. Id. ¶¶ 133-51. Reynolds's later findings could illuminate those earlier acts and their consequences even though Ingram no longer held office. Municipal responsibility turns on the policy or attributable policymaker decision that caused the constitutional injury. *Monell v. Department of Social Services*, 436 U.S. 658, 690-

94 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). The personnel change did not make evidence of those decisions and consequences immaterial. Reynolds's concrete findings should be considered alongside the other evidence bearing on the relevant claims.

**B. The testimony was not needlessly cumulative, and any overlap could have been handled by narrowing the examination.**

22. Shared subject matter is not the same as needless repetition. Plaintiffs could describe asking for help; Reynolds was the official investigator who acted on that request. Ingram-era witnesses could describe their own conduct; Reynolds personally examined what their administration left in the official files. Documents could show particular entries; Reynolds could establish the scope and results of his search for records that were absent. These are distinct evidentiary contributions under *Colomb*, 419 F.3d at 301-03, and *Old Chief*, 519 U.S. at 183.

23. A focused examination could have eliminated repetitive questions while preserving that core. The Court could confine Reynolds to the specific repositories he searched, records he could not locate, and investigative steps he personally took. Rule 611(a)'s authority to manage the examination and Rule 403's balancing standard permit that approach. *Colomb*, 419 F.3d at 297-98, 302-03. A generalized characterization of the witness as cumulative did not adequately account for the only available firsthand account of the successor administration's investigation.

**C. The County Defendants' own designation demonstrates notice of Reynolds's distinct subjects.**

24. Plaintiffs designated Reynolds for their case in chief, and the County Defendants expressly identified him for later review as well as inventory, recordings, policy, and property handling. Docs. 103; 89 at 3. Those are the subjects at issue here. The designation is concrete evidence of advance notice and an opportunity to prepare cross-examination. It substantially

undercuts surprise as a justification for excluding the proposed factual examination. Defendants' designation of Cozart separately also confirms that the roles of sheriff and assigned investigator were identifiable before trial.

**D. Reynolds could supply an admissible factual foundation for the missing-records evidence.**

25. Reynolds's own acts and observations are fact testimony under Rule 602. An officer's description of investigative methods personally used does not become expert opinion merely because the officer has professional experience. *United States v. Enclade*, No. 24-30684, slip op. at 18, 20 (5th Cir. Aug. 18, 2026). Reynolds could describe what he requested, searched, and located without offering a specialized police-practices opinion. Any lay inference would remain subject to Rule 701, and the Court could limit questions seeking legal conclusions or opinions dependent on specialized methodology.

26. Rule 803(10)(A)(i) expressly permits testimony that a diligent search failed to disclose a public record. Reynolds's direct participation gives him a distinct basis to identify the records searched for and explain the search's results. If absence is offered to prove that an underlying event did not occur, Rule 803(10)(A)(ii) additionally requires proof that the office regularly kept a record of that kind of event. The examination could establish his access, repositories, methods, and results. A generic assertion that documents were missing would not replace that foundation.

27. His receipt of Kiska's request for assistance and the actions it prompted are independently relevant. Offered to show that assistance was sought and an official inquiry followed, those communications do not depend on the truth of every underlying accusation. Fed. R. Evid. 801(c). If needed, the Court could give a limiting instruction under Rule 105. These factual uses permit the jury to hear Reynolds's distinct evidence while reserving conclusions about ownership, constitutional liability, and the defendants' intent to the proper decisionmaker.

## II. THE DEFENSE CLOSING ARGUMENT CONFIRMED THAT THE EXCLUSION AFFECTED PLAINTIFFS' SUBSTANTIAL RIGHTS.

28. The closing argument demonstrates materiality and harm from the evidentiary ruling. Defense counsel for Snellgrove asked the jury to assess whether Plaintiffs behaved like victims by seeking police help. Reynolds was the official who could independently corroborate that very conduct and explain the investigation it produced. The exclusion therefore affected Plaintiffs' ability to meet a factual inference the defense affirmatively invited the jury to draw.

29. *Bocanegra* and *Brazos River Authority* address this problem: exclusion can leave a party unable to answer the opposing account even though some evidence on the general subject reaches the jury. *Bocanegra*, 320 F.3d at 590; *Brazos River Auth.*, 469 F.3d at 423-24. Reynolds's account would have supplied both independent confirmation that Plaintiffs sought assistance and facts about what the Sheriff's Office found when it investigated. The jury could have evaluated Plaintiffs' conduct against that official response rather than the absence of the excluded testimony.

30. Reynolds's value was especially pronounced because his knowledge arose from an assignment by the successor sheriff. He could describe his own investigation of the institution's records, separately from Plaintiffs' allegations and the original officers' accounts. Counsel's rebuttal argument could not replace that testimony. Nor could the repetition of Plaintiffs' own account supply the same evidentiary foundation for unavailable official records.

31. The harmful effect must be assessed against the trial evidence, instructions, verdict questions, and closing argument. Plaintiffs submit that exclusion substantially prejudiced their presentation because it removed the only available investigator's account of the successor administration's review and independent corroboration of conduct the defense used to attack their credibility. The specific resulting gaps concern custody documentation, missing

recordings and reports, property tracing, and requests for assistance. Those gaps, considered together with the defense argument, affected Plaintiffs' substantial rights under Rule 103(a), Rule 61, *Bocanegra*, and *Brazos River Authority*.

**III. RULE 54(b) WARRANTS RECONSIDERATION OF THE EXCLUSION, WITH NEW-TRIAL RELIEF UNDER RULE 59(a).**

32. Rule 54(b) provides the procedural basis to reconsider the exclusion itself. The reasons for revision are concrete: Reynolds personally conducted the successor administration's investigation; the witnesses called about Ingram's tenure did not supply that account; and Defendants' own designation identified Reynolds's later-review subjects. A focused examination could have preserved those distinct contributions while limiting actual repetition. Those circumstances provide a sufficient reason to revise the interlocutory cumulative-evidence ruling under *Austin*, 864 F.3d at 336-37, and the Rule 403 authorities discussed above. The defense's later closing argument further demonstrates the prejudice supporting the accompanying Rule 59(a) request.

33. Rule 103(a)(2) recognizes an offer of proof or circumstances making the substance of excluded evidence apparent. A formal offer is unnecessary when the substance has otherwise been shown. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000). See also Fed. R. Evid 103(a)(2) (the "substance was apparent from the context"). Plaintiffs request consideration of the trial presentation concerning Reynolds's proposed testimony, the discussion and examination concerning its admissibility, and the Court's exclusion ruling. Appendix A describes the testimony for purposes of this motion. If further factual development would assist, Plaintiffs request a short oral hearing under Rule 43(c), with focused questions and cross-examination, and such clarification of the ruling and proposed testimony as Rule 103(c) permits.

34. *Garcia v. Woman's Hospital of Texas* identifies the importance and probative value of proposed evidence, the explanation for its earlier absence, and prejudice to the opponent as pertinent reopening considerations. 97 F.3d 810, 814-15 (5th Cir. 1996). Those considerations support the requested limited hearing: Reynolds's investigative knowledge is material, his testimony is absent because the Court excluded him, and Defendants already identified his subjects and could cross-examine him. *Garcia* concerned reopening before the defense case and does not itself authorize altering a discharged jury's evidentiary record. The request to set aside this verdict rests on Rule 59 and the substantial prejudice described above.

35. If the Court determines that the erroneous exclusion affected substantial rights, Plaintiffs request a new trial on the affected jury-tried claims. The testimony bears on overlapping factual disputes about property handling, the adequacy of the official account, credibility, and recovery. Where those disputes cannot fairly be separated, a complete new trial is appropriate. *Gasoline Prods.*, 283 U.S. at 500. The Court should determine the necessary scope by examining the actual verdict questions and the relationship of the excluded proof to each claim.

36. Alternatively, Plaintiffs request a new trial limited to any affected claims or issues that the Court finds distinct and separable. As to the conspiracy and due-process theories previously withheld from the jury, Plaintiffs request consideration of Reynolds's proffered facts in connection with their requests to reconsider those interlocutory dispositions under Rule 54(b). See *Austin*, 864 F.3d at 336-37. The new-trial request here independently rests on prejudice to the claims actually tried. Plaintiffs preserve the significance of the later investigation to the pleaded course of joint property handling and the separate municipal-liability theory.

## CONCLUSION

37. Plaintiffs respectfully request that the Court (1) under Rule 54(b), reconsider and revise the interlocutory ruling excluding Reynolds's non-cumulative factual testimony, determining that the distinct factual testimony and proper foundations described in this motion should have been permitted; (2) if necessary to decide this motion, receive focused oral testimony under Rule 43(c) and clarify the proposed testimony and ruling under Rule 103(c); (3) set aside the verdict and grant a new trial under Rule 59(a)(1)(A) on all affected jury-tried claims, or on any distinct and separable affected claims or issues; (4) consider the proffered facts in addressing Plaintiffs' requests under Rule 54(b) to reconsider pertinent interlocutory dispositions; and (5) grant all further relief to which Plaintiffs are entitled.

## CONFERENCE STATEMENT

Plaintiff's counsel reached out to all parties via email on September 2, 2026. Only Mr. Dennis on behalf of the Martin County defendants responded, indicating he opposed the motion on September 3, 2026. No reason was provided.

## CERTIFICATE OF SERVICE

I certify that on the date reflected by the CM/ECF filing stamp, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

Respectfully submitted,
/s/ Kurt Mueller
Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S. Mason Rd., PMB 223
Katy, Texas 77450
(713) 360-2110
kurt@kurtmuellerpllc.com

Counsel for Plaintiffs