**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,** *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 7:25-CV-00245-RCG** |
| **BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, and RORY GAMMONS, each in their individual capacities; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE;** *Defendants*. | § | |

**MARTIN COUNTY, BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, AND RORY GAMMONS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED RULE 50(b) MOTION AS TO ANDERS DAHL, OR ALTERNATIVELY FOR A NEW TRIAL UNDER RULE 59**

1. Defendants Martin County, Brad Ingram, Anders Dahl, Kelsey Brown, and Rory Gammons file this Response in Opposition to Plaintiffs' Renewed Rule 50(b) Motion as to Anders Dahl, or alternatively for a new trial under Rule 59. Plaintiffs' motion asks the Court to disregard the jury's defense verdict and enter judgment on a narrow post-verdict theory that neither the charge nor the record requires. The motion should be denied.

## I. INTRODUCTION

2. Plaintiffs ask the Court to set aside the jury's defense verdict as to Anders Dahl based on a narrow "drawer search" theory that the jury rejected under the Court's charge. Plaintiffs' motion acknowledges that the jury returned a verdict finding Dahl not liable after the Court denied their Rule 50(a) motion and submitted the Fourth Amendment claim to the jury. *See* Jury Verdict 1–2, ECF No. 163. The verdict form required Plaintiffs to prove, separately as to each Defendant, that the Defendant personally participated in or caused an unreasonable search or seizure not authorized by the warrant or valid consent. *Id.* at 1–2. The Court's instructions likewise told the jury that Plaintiffs bore the burden to prove a search or seizure was unreasonable, that a

search within the warrant's scope was reasonable, that a search beyond the warrant's scope was presumptively unreasonable, and that, in this context, reasonableness could be supplied by consent. Court's Instructions to the Jury 5–6, ECF No. 158.

3. Under Rule 50(b), the Court must consider all evidence in the light most favorable to the verdict, draw all reasonable inferences for the nonmovant, and leave credibility determinations and the weighing of evidence to the jury. *United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 649 F. Supp. 3d 404, 412–13 (W.D. Tex. 2023) (explaining that credibility determinations, evidentiary weighing, and the drawing of legitimate inferences remain jury functions). Judgment as a matter of law must be denied unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion. *Id.* at 413.

4. Nor can Plaintiffs avoid the verdict by recasting defense closing argument as a binding waiver of consent. The Court instructed the jury that counsel's statements are not evidence, that counsel's arguments may be considered only in light of admitted evidence, and that the jury must determine the facts from testimony and exhibits. Court's Instructions to the Jury 1–2, ECF No. 158. A judicial admission is a formal concession made intentionally as a waiver that releases the opposing party from proving the admitted fact. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001) (holding that counsel's intentional waiver of all physical-injury claims was a binding judicial admission that withdrew those claims from contention). Plaintiffs identify no such deliberate, clear, and unequivocal concession here.

5. The motion should be denied. It should also be denied to the extent it seeks any order disturbing the verdict in favor of Martin County, Brad Ingram, Kelsey Brown, or Rory Gammons. Plaintiffs' renewed motion is expressly directed to Dahl, and the verdict form and

instructions required separate consideration of each Defendant and each claim. *See* Jury Verdict 1–3, ECF No. 163; Court's Instructions to the Jury 5–8, ECF No. 158.

## II. RELEVANT PROCEDURAL AND RECORD BACKGROUND

6. Plaintiffs' renewed motion seeks judgment as a matter of law against Dahl on Fourth Amendment liability for alleged drawer searches, or alternatively a new trial limited to Dahl's liability and remedy. Plaintiffs contend that the warrant identified only a Snap-On plasma cutter and a Snap-On air compressor, that Dahl opened closed tool-cabinet drawers, and that Dahl admitted those warrant items could not fit inside the drawers. Plaintiffs also rely on their characterization of defense closing argument, asserting that defense counsel called consent a "red herring" and argued from the Court's instructions and the warrant.

7. The Court's charge did not submit Plaintiffs' claim as a warrant-scope question alone. The verdict form asked whether each listed Defendant "personally participated in or caused an unreasonable search or seizure that was not authorized by the warrant or valid consent." Jury Verdict 1–2, ECF No. 163. The charge instructed that Plaintiffs had to prove that each Defendant committed an act that violated the particular Plaintiff's constitutional rights and that each Defendant's act caused that Plaintiff's damages. The charge further instructed that an individual Defendant is liable only for his or her own acts or omissions, and that Plaintiffs had to prove personal participation or causation through that Defendant's own conduct. Court's Instructions to the Jury 5, ECF No. 158.

8. The jury was also instructed on consent. The Court told the jury that valid consent must be freely and voluntarily given by someone with authority, that silence or passivity is not enough, that acquiescence to a show of lawful authority is not enough, that consent may be limited or withdrawn, and that Defendants could search only areas for which consent was given. Court's Instructions to the Jury 6, ECF No. 158.

9. The verdict form separately addressed qualified immunity only if the jury first answered "Yes" to the Fourth Amendment violation question for a Defendant. It instructed that if the jury answered "No" as to any Defendant, damages could not be awarded against that Defendant. Plaintiffs acknowledge the jury returned a defense verdict for Dahl. Jury Verdict 1–2, ECF No. 163.

## III. LEGAL STANDARD

10. A Rule 50 motion challenges the legal sufficiency of the evidence supporting a jury's verdict. *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (describing review of a jury verdict as especially deferential and permitting judgment as a matter of law only when the facts and inferences overwhelmingly favor the movant). Judgment as a matter of law is proper only when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue. *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 337–38 (5th Cir. 2001) (requiring review of the entire record in the nonmovant's favor without weighing evidence or making credibility determinations). In deciding the motion, the Court must review the entire record, draw all reasonable inferences for the nonmovant, and refrain from making credibility determinations or weighing the evidence. *Id.* at 337–38. The Court must disregard evidence favorable to the movant that the jury was not required to believe, while crediting evidence favoring the nonmovant and uncontradicted and unimpeached evidence from disinterested witnesses. *Id.* at 338.

11. The post-verdict standard is especially deferential to the jury. The Court must deny judgment as a matter of law unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion. *Flowers*, 247 F.3d at 235; *Montcrieff*, 649 F. Supp. 3d at 412–13.

12. A renewed Rule 50(b) motion is limited to grounds advanced in the pre-verdict Rule 50(a) motion. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290–91 (5th Cir. 2019) (holding that a party could not pursue in its renewed Rule 50(b) motion a statutory-employee theory first raised after the verdict); *In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014) (holding that the appellant waived a contract-interpretation theory by failing to raise it at trial or in its Rule 50(a) motion). A party may not use Rule 50(b) to assert a ground omitted from its earlier motion. *Puga*, 922 F.3d at 290–91. That restriction gives the trial court an opportunity to address the asserted evidentiary deficiency before submission and gives the opposing party an opportunity to cure any defect in its proof. *Id.* at 290–91.

## IV. ARGUMENT

### A. Plaintiffs' motion asks the Court to replace the jury's charge-bound verdict with Plaintiffs' preferred inference.

13. The verdict must be tested against what the jury was asked to decide. The jury was not asked whether the warrant alone authorized every act Dahl took. It was asked whether Plaintiffs proved that Dahl personally participated in or caused an unreasonable search or seizure not authorized by the warrant or valid consent. Jury Verdict 1–2, ECF No. 163. The Court's instructions likewise made Plaintiffs' burden broader than the warrant-only theory Plaintiffs now press: Plaintiffs had to prove unreasonableness, personal participation, and causation as to the particular Defendant and Plaintiff. Court's Instructions to the Jury 5–6, ECF No. 158.

14. Rule 50 does not permit the Court to weigh Plaintiffs' selected testimony against other evidence or to decide credibility anew. *Montcrieff*, 649 F. Supp. 3d at 412–13 (explaining that a court may not reweigh evidence or reevaluate witness credibility when deciding a renewed Rule 50 motion). The Court must consider the entire record and draw reasonable inferences in favor of the verdict. *Coffel v. Stryker Corp.*, 284 F.3d 625, 630–31 (5th Cir. 2002) (applying

especially deferential review to the jury's verdict and drawing reasonable inferences for the nonmovant). Plaintiffs' motion depends on treating their account of the body-camera footage, Dahl's testimony, and closing argument as conclusively establishing liability. But the Rule 50 question is not whether Plaintiffs offered evidence supporting their theory; it is whether the evidence permits no reasonable jury to reject it. *Flowers*, 247 F.3d at 235 (requiring denial unless the facts and inferences so overwhelmingly favor the movant that reasonable jurors could not reach a contrary conclusion).

15. The Court's instructions supplied several permissible grounds on which the jury could reject Plaintiffs' claim. *See* Court's Instructions to the Jury 5–8, ECF No. 158. The general verdict does not disclose which ground the jury accepted. *See* Jury Verdict 1–2, ECF No. 163. The verdict may reflect a failure to prove an unreasonable search or seizure by Dahl, Plaintiffs' failure to prove the absence of valid consent—or a finding that valid consent authorized the challenged conduct—a failure to prove Dahl's personal participation or causation, or a failure of proof as to the claim of a particular Plaintiff. Accordingly, Plaintiffs must show that the evidence was legally insufficient under every reasonable view of the record that could support the verdict; their narrower post-verdict framing does not satisfy that burden.

16. Plaintiffs' preferred interpretation of the body-camera footage does not establish liability conclusively. The footage's failure to depict express verbal consent before each drawer opening does not, by itself, resolve whether earlier consent remained effective or whether the other admitted evidence supported the jury's verdict. The jury was instructed that silence or passivity alone was insufficient, but it also was entitled to evaluate the testimony, the recorded and unrecorded circumstances, the scope and duration of any consent, and the reasonable inferences arising from the entire record. Court's Instructions to the Jury 2–3, 6, ECF No. 158. Having

resolved those matters against Plaintiffs, the jury's determination may not be displaced merely because Plaintiffs now advance a competing interpretation of the footage. *See* Jury Verdict 1–2, ECF No. 163.

**B. The Court's instructions and verdict form defeat Plaintiffs' effort to reduce the returned verdict to a warrant-only determination.**

17. Plaintiffs did not obtain a verdict question isolating the alleged drawer searches from the broader Fourth Amendment submission, and they do not contend that they preserved an objection to the inclusion of valid consent in Question 1 or to the consent instructions. *See* Jury Verdict 1–2, ECF No. 163; Court's Instructions to the Jury 5–6, ECF No. 158. A party may not accept a general submission that permits the jury to resolve liability on multiple grounds and, after an adverse verdict, ask the Court to reconstruct the verdict under a narrower theory that the charge did not separately submit. Plaintiffs' post-verdict request should therefore be evaluated under the charge actually given, not a warrant-only question that was never submitted.

18. Plaintiffs' motion repeatedly says Defendants elected a "warrant-only" theory, and it asks the Court to test the verdict solely against Plaintiffs' warrant-scope argument. That is not the case the Court charged to the jury. The jury was instructed that the law contained in the Court's instructions was the only law it could follow, that it had to follow those instructions, and that it had to consider the instructions as a whole. Court's Instructions to the Jury 1, ECF No. 158. Those instructions expressly included consent as part of the Fourth Amendment reasonableness analysis in this case. *Id.* at 5–6.

19. The verdict form also included consent in the liability question itself. Question 1 asked whether each Defendant personally participated in or caused an unreasonable search or seizure "that was not authorized by the warrant or valid consent." Jury Verdict 1–2, ECF No. 163.

Plaintiffs' requested post-verdict ruling would remove the words "or valid consent" from the verdict form after the jury already rendered its verdict. The Court should not do that.

20. The jury also was instructed that counsel's statements were not evidence and that arguments could be considered only in light of admitted evidence. Court's Instructions to the Jury 1–2, ECF No. 158. Plaintiffs' motion relies heavily on defense counsel's alleged "red herring" phrasing, but that argument could not alter the Court's charge or the evidentiary burden the Court gave the jury. The legally operative framework was the Court's instruction, not either side's closing characterization.

**C. Plaintiffs have not shown a binding judicial admission or waiver of consent.**

21. Plaintiffs' waiver theory does not establish that consent was removed from the case. Plaintiffs characterize defense counsel as calling consent a "red herring" and directing the jury to the Court's instructions and Martin County's Exhibit 1. But a trial statement constitutes a binding judicial admission only when it is a deliberate, clear, and unequivocal concession of a fact that removes the matter from dispute. *Martinez*, 244 F.3d at 476–77 (distinguishing a binding intentional waiver from an ordinary evidentiary admission that may be explained or controverted). Plaintiffs identify advocacy concerning the significance of the evidence, made in response to Plaintiffs' counsel's own arguments pertaining to consent, not a formal concession withdrawing consent as a factual or legal issue from the jury.

22. The filed motion further acknowledges that no recording or transcript of the proceedings was available to Plaintiffs' counsel and that its account therefore rests on counsel's good-faith recollection. That caveat is consequential. A recollected characterization of closing argument—without an authenticated transcript establishing the exact words, context, and responsive argument—cannot establish the clear, deliberate, and unequivocal relinquishment

required to support judgment as a matter of law. At minimum, the absence of a transcript forecloses treating Plaintiffs' characterization as an undisputed record fact.

23. Plaintiffs' reliance on defense counsel's closing argument is further weakened by the position Plaintiffs' counsel placed before the Court in his own pre-verdict Rule 50(a) motion. In that motion, Plaintiffs' counsel expressly characterized the constitutional issue in terms inconsistent with the position now advanced, specifically that there were no Fourth Amendment violations and instead a violation of Texas tort law. Plaintiff's counsel's formal request for a ruling on that motion from the Court bears at least as directly on Plaintiffs' post-verdict theory as Defendants' later advocacy to the jury. At minimum, Plaintiffs cannot treat Defendants' closing characterization as dispositive while disregarding their own counsel's pre-verdict formulation of the Fourth Amendment issue. Neither statement displaced the Court's charge, and the jury remained responsible for resolving the factual questions submitted to it.

24. Plaintiffs' own description does not identify a concession that no consent existed, that Dahl lacked consent to open any particular drawer, or that Defendants withdrew consent from the Court's charge. It identifies an argument about what mattered under the evidence and instructions. The Court told the jury that what lawyers say is not evidence, and that the jury had to determine the facts from testimony and exhibits. Court's Instructions to the Jury 1–2, ECF No. 158. Plaintiffs' effort to convert a closing theme into a conclusive factual waiver conflicts with that instruction.

25. Defendants' decision to emphasize that the warrant's scope permitted a search for stolen Snap-on tools was a litigation choice concerning the relative force of available arguments—not a deliberate relinquishment of consent as an alternative basis supporting the search. Plaintiffs do not identify any contemporaneous objection asserting that defense counsel had withdrawn

consent from the case, any request for a curative instruction, or any request to modify the charge. Instead, Plaintiffs' motion describes a rebuttal response to Defendants' warrant-scope argument. On Plaintiffs' own account, that sequence reflects advocacy concerning the evidence and the Court's instructions rather than a formal concession removing consent from the jury's consideration.

26. Attorney statements may be chargeable against a party when they amount to binding admissions, including a sufficiently definite concession made during closing argument. *Dillon v. Wal-Mart Stores, Inc.*, No. 97-20613, 1998 U.S. App. LEXIS 39409, at *5–6 (5th Cir. Oct. 5, 1998) (unpublished) (holding that counsel's acknowledgment of $39,118.26 in medical costs was chargeable against the client and capped the recoverable medical-expense award). But *Dillon* involved counsel's express acknowledgment of a specific maximum amount of recoverable medical expenses. *Id.* at *5. It does not establish that advocacy concerning the significance of consent necessarily withdraws consent from the jury's consideration. Plaintiffs identify no comparably definite concession here.

27. Nor do Plaintiffs' additional warrant authorities resolve the Rule 50 question presented. *Lo-Ji Sales, Inc. v. New York* and *United States v. Waldrop* address warrant particularity and the circumstances in which an affidavit may inform a warrant's scope. They do not eliminate consent as an independently submitted justification, establish the historical facts surrounding each alleged drawer opening, prove Dahl's personal participation in each act, resolve causation or either Plaintiff's asserted injury, overcome qualified immunity, or establish damages as a matter of law. Likewise, Plaintiffs' quotation from *Creamer v. Porter* may bear on what the warrant alone authorized, but it does not relieve Plaintiffs of their charge-defined burden to negate valid consent and prove each remaining element as to each Plaintiff and each challenged act.

**D. To the extent Plaintiffs' Rule 50(b) motion rests on a closing-argument waiver theory, it exceeds Rule 50(b)'s permissible scope.**

28. To the extent Plaintiffs offer statements made during closing argument as an independent legal ground for judgment, that theory differs from the evidentiary-insufficiency grounds identified in their pre-verdict Rule 50(a) motion. A renewed Rule 50(b) motion may not introduce a materially new ground after the verdict. *Puga*, 922 F.3d at 290–91 (holding that a party could not pursue in its renewed Rule 50(b) motion a theory first raised after the verdict); *In re Isbell Records, Inc.*, 774 F.3d at 867 (holding that the appellant waived a theory by failing to raise it at trial or in its Rule 50(a) motion). Plaintiffs therefore may not transform Defendants' later closing advocacy into a new and independent basis for post-verdict judgment that was absent from the Rule 50(a) motion.

29. Plaintiffs' own chronology confirms the problem. They say their Rule 50(a) motion challenged Dahl's alleged drawer searches, the alleged inability of the warrant items to fit in the drawers, and the alleged absence of consent; they then say defense closing argument "confirmed" the theory Defendants chose after the evidence closed. If Plaintiffs now rely on defense closing argument as an independent waiver, estoppel, or dispositive concession, that theory is not the same as the asserted evidentiary insufficiency in the pre-verdict motion.

30. That limitation is not technical. The limitation on a renewed Rule 50(b) motion ensures that the district court and the opposing party receive notice of the asserted evidentiary deficiency before the case is submitted to the jury, thereby affording an opportunity to address or cure the alleged defect. *See In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014) (holding that the appellant waived a contract-interpretation theory by failing to raise it at trial or in its Rule 50(a) motion); *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 290–91 (5th Cir. 2019) (explaining that Rule 50(b) prevents a litigant from ambushing the court and opposing counsel after trial and

permits counsel to cure an asserted evidentiary deficiency before deliberations). Plaintiffs cannot use the jury's verdict as a reason to transform closing argument into a new legal basis for judgment.

**E. Plaintiffs have not established entitlement to judgment on qualified immunity.**

31. Even if Plaintiffs could establish a constitutional violation as a matter of law, they would not automatically be entitled to judgment imposing liability on Dahl. Under the verdict form, the jury was to answer the qualified-immunity question only for a Defendant as to whom it first found a constitutional violation. Because the jury answered Question 1 in Dahl's favor, it did not reach qualified immunity. Jury Verdict 1–2, ECF No. 163. Any post-verdict judgment for Plaintiffs therefore would require the Court to address that unresolved issue under the governing law and the trial record.

32. Plaintiffs' motion does not justify bypassing that charge. The Court instructed that officers are permitted to rely on information given by other officers regarding consent or the withdrawal or modification of consent. Court's Instructions to the Jury 7, ECF No. 158. The Court also instructed that the qualified-immunity question applies to each Defendant individually. *Id.* at 7–8. Plaintiffs' request for judgment against Dahl therefore would require more than a warrant-scope ruling; it would require a court-entered finding that Plaintiffs proved the no-reasonable-officer qualified-immunity question as a matter of law.

33. Plaintiffs have not established that the governing law and undisputed record permit only one conclusion: that no reasonable officer possessing the same information could have believed the drawer search lawful. The Court therefore should not enter liability against Dahl without first resolving qualified immunity under the proper legal standard. *See Flowers*, 247 F.3d at 235; *Ellis*, 258 F.3d at 337–38.

**F. Plaintiffs' requested remedy would improperly disturb issues the jury never reached because it found no liability.**

34. The filed motion asks the Court to enter liability and nominal damages for both Austin and Kiska Hamblin and expands the challenged conduct to plural drawers depicted across Plaintiffs' Exhibits 1 and 2. But the verdict form told the jury not to answer damages questions unless it first answered "Yes" to the liability question for the relevant claim. It also instructed that if the jury answered "No" as to a Defendant on Question 1, damages could not be awarded against that Defendant. Jury Verdict 1–3, ECF No. 163.

35. That expanded request underscores the absence of the individualized proof Rule 50 requires. Plaintiffs do not identify, act by act and Plaintiff by Plaintiff, each allegedly unconstitutional drawer opening; the Plaintiff whose Fourth Amendment rights were implicated; Dahl's personal participation in each act; the scope of any consent then in effect; the particular Plaintiff's privacy or possessory interest; causation; or an independent basis for nominal damages. In particular, Plaintiffs do not identify evidence establishing that any specific drawer opening violated Kiska Hamblin's Fourth Amendment rights, caused her a distinct constitutional injury, or supports a separate nominal-damages award in her favor.

36. The Court's damages instructions likewise depended on a predicate liability finding as to the relevant Plaintiff, Defendant, and act. The Court instructed that damages were to be considered only if Plaintiffs proved a claim against a Defendant by a preponderance of the evidence. Court's Instructions to the Jury 9, ECF No. 158. The nominal-damages instruction applied only if a Plaintiff proved a constitutional violation but did not prove actual compensable injury caused by that violation. *Id.* at 12. Rule 50(b) does not permit a generalized liability judgment or an undifferentiated nominal-damages award where the charge required individualized findings and the jury found no liability as to Dahl. *See* Jury Verdict 1–2, ECF No. 163.

37. The Rule 50 record does not support that step. The Court should therefore deny the requested entry of judgment and nominal damages.

**G. The motion provides no basis to disturb the verdict for Martin County, Brad Ingram, Kelsey Brown, or Rory Gammons.**

38. Plaintiffs' renewed motion is directed to "Defendant Anders Dahl's Fourth Amendment liability." It does not seek Rule 50 relief against Ingram, Brown, or Gammons, and Plaintiffs' requested merits ruling concerns Dahl's alleged opening of tool-cabinet drawers. The verdict form required the jury to consider each Defendant separately. Jury Verdict 1–2, ECF No. 163. Nothing in Plaintiffs' motion supports altering the verdict as to Ingram, Brown, or Gammons.

39. Nor does Plaintiffs' motion support altering the verdict as to Martin County. The Court instructed that Martin County could be liable only if Plaintiffs proved that Sheriff Ingram, acting as final policymaker, committed or participated in a Fourth Amendment violation and made a deliberate choice that was the moving force behind the violation. Court's Instructions to the Jury 8, ECF No. 158. The verdict form likewise limited municipal liability to conduct legally attributable to Martin County through Sheriff Ingram as final policymaker and instructed the jury not to base municipal liability solely on conduct by Rory Gammons as a Howard County officer. Jury Verdict 3, ECF No. 163. Plaintiffs' Dahl-specific motion provides no basis to alter the judgment for Martin County.

**H. The alternative Rule 59 request should be denied.**

40. A motion for new trial under Rule 59 is governed by a standard distinct from Rule 50. Although the Court may weigh the evidence, the jury's verdict may not be lightly set aside. *Ellis*, 258 F.3d at 343. A new trial may be warranted when the verdict is against the weight of the evidence, the damages are excessive, the trial was unfair, or prejudicial error occurred. *Montcrieff*,

649 F. Supp. 3d at 413. Plaintiffs therefore must show more than that the evidence could support a different result.

41. Plaintiffs' proposed limited new trial also fails because the alleged drawer searches cannot be retried fairly in isolation from consent, the officers' information and conduct, personal participation, causation, qualified immunity, and damages. Those issues formed an integrated liability submission under the Court's charge. *See* Court's Instructions to the Jury 5–12, ECF No. 158; Jury Verdict 1–6, ECF No. 163. A retrial confined to one alleged act by Dahl would risk presenting that act outside the factual and legal context in which the jury considered it and could produce findings inconsistent with the undisturbed portions of the verdict. Plaintiffs therefore have not shown that Dahl's alleged drawer searches are sufficiently distinct and separable to permit a partial new trial without injustice.

## V. CONCLUSION AND PRAYER

42. For these reasons, Defendants Martin County, Brad Ingram, Anders Dahl, Kelsey Brown, and Rory Gammons respectfully request that the Court deny Plaintiffs' Renewed Rule 50(b) Motion as to Anders Dahl; deny Plaintiffs' alternative request for a new trial under Rule 59; preserve the jury's verdict and resulting judgment in all respects; and grant Defendants all other relief to which they are entitled.

Respectfully submitted,

*/s/ Denis Dennis*
DENIS DENNIS
State Bar No. 05655566
BENJAMIN PETTY
State Bar No. 24105934

OF
KELLY, MORGAN, DENNIS,
CORZINE & HANSEN, P.C.

P.O. Box 1311
Odessa, Texas 79760-1311
(432) 367-7271 / FAX: (432) 363-9121
ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Denis Dennis*
DENIS DENNIS