**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,** *Plaintiffs,* | § | |
| v. | § | **MO:25-CV-00245-RCG** |
| **BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, RORY GAMMONS, each in their individual capacity; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE,** *Defendants.* | § | |

## PLAINTIFFS' MOTION TO RECONSIDER DISMISSAL OF THE ABUSE-OF-PROCESS CLAIM UNDER RULE 54(b) AND, TO THE EXTENT NECESSARY, FOR A NEW TRIAL UNDER RULE 59(a)

Plaintiffs Austin Hamblin and Kiska Hamblin move under Federal Rule of Civil Procedure 54(b) to reconsider the interlocutory ruling that withheld their Texas abuse-of-process claim against Brian Snellgrove from the jury on limitations grounds. Plaintiffs request reinstatement of that claim and a jury trial on it, with a new trial under Rule 59(a)(1)(A) to the extent necessary to afford that relief. The jury has returned its verdict, but final judgment has not been entered.

### THE LIMITATIONS RULING SHOULD BE RECONSIDERED IN LIGHT OF THE LATER MISUSE SHOWN AT TRIAL.

The evidence permits a finding that Snellgrove first held the disputed property as law enforcement's evidence custodian and later used the authority of that custody to appropriate the property for private commercial purposes. Snellgrove testified that the Sheriff's Office authorized release in fall 2023, after which he began treating the property as his own through business use, sales, transfers, or other disposition. Accepting his asserted lawful initial custody for purposes of

the alternative argument, a jury could find that the later diversion, through the asserted warrant-derived custody, constituted the actionable misuse and injury. It occurred within two years of the June 2025 date on which Snellgrove contends he was first sued. See Dkt. 147 at 1-2, 5-7.

Plaintiffs argued orally that abuse of process accrued under the same theory as the conversion claim, which the Court did allow to go to the jury. The common factual event is the change from asserted evidence custody to adverse commercial appropriation. The claims have different elements, but those elements can be satisfied by the same later conduct. Plaintiffs seek application of the abuse-of-process elements to that conduct, rather than an automatic limitations date based solely on the May 17, 2023 seizure.

**THE PLEADINGS AND TRIAL RECORD IDENTIFY THE LATER CONDUCT.**

Count 7 of the Third Amended Complaint alleges a valid court-issued search warrant, followed by Snellgrove's misuse of its execution to obtain compulsory control of disputed property and position himself or his business to retain, use, sell, or derive commercial benefit from it. The pleading specifically identifies the \objective as unilateral recovery and transfer of ownership without civil adjudication of title or competing claims. Third Am. Compl. ¶¶ 175-179, 181-182. Count 7 incorporates the preceding allegations concerning police-directed storage, instructions against disposal, the absence of a judicial ownership determination, and Snellgrove's subsequent sale or integration of the property into his inventory. Id. ¶¶ 63-80, 175. The later disposition theory therefore falls within the pleaded claim.

The contemporaneous trial arguments identifies the critical evidence. The Sheriff's offense supplement described the arrangement as “storage and inventory.” Investigator Dahl instructed Snellgrove not to dispose of the property until authorized. Snellgrove testified to the later Sheriff's Office communication permitting release, followed by his commercial

appropriation or disposition. Dkt. 147 at 2, 6-7. Austin's criminal case was not dismissed until November 13, 2024. Id. at 2, 7. No court had adjudicated the disputed property to belong to Snellgrove. Id. at 6.

Plaintiffs rely on the admitted evidence and testimony underlying Dkt. 147, not on the brief as a substitute for evidence. The brief contemporaneously identifies the testimony and evidentiary sequence presented to the Court. References here to oral argument and testimony describe proceedings the Court itself heard; Plaintiffs request leave to supplement these references with the official transcript citations when available.

**RULE 54(b) PERMITS CORRECTION BEFORE FINAL JUDGMENT.**

Rule 54(b) permits revision of an order or decision adjudicating fewer than all claims before entry of judgment adjudicating all claims and all parties' rights and liabilities. Its reconsideration standard is flexible: the Court may revisit an interlocutory ruling for any sufficient reason, even without new evidence or an intervening change in law. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017). The return of a verdict on the claims that reached the jury does not itself turn the earlier dismissal of this claim into a final judgment adjudicating all claims and parties.

Reconsideration is warranted because a May 17 accrual date does not resolve the later misuse theory presented at trial. Plaintiffs ask the Court to revisit the legal significance of the evidence already heard, including Snellgrove's own explanation of the initial custody and subsequent release. The opportunity to correct that ruling remains available before judgment.

To the extent the challenged ruling granted Snellgrove judgment as a matter of law, Rule 50(a)(1) requires a legally insufficient evidentiary basis for a reasonable jury to find for Plaintiffs. The Court must consider the record as a whole, draw reasonable inferences in

Plaintiffs' favor, and refrain from weighing credibility. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). Limitations is Snellgrove's affirmative defense. Fed. R. Civ. P. 8(c)(1); *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). Plaintiffs retain their burden on the tort's elements, but Snellgrove must establish the defense against the actionable conduct actually at issue.

**ACCRUAL TURNS ON INJURIOUS MISUSE OF PROCESS, WHICH CAN OCCUR AFTER LAWFUL INITIAL CUSTODY.**

Texas abuse of process requires an improper use of legal process beyond its authorization, an ulterior purpose, and resulting damage. The focus is on misuse after process is obtained. The process must be used to compel a collateral act that it would not otherwise require. *In re Dallas Roadster, Ltd.*, 846 F.3d 112, 124-25 (5th Cir. 2017). Thus, the existence of a valid warrant does not foreclose liability for its subsequent perversion to a collateral commercial end.

The applicable limitations period is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Patrick v. Howard*, 904 S.W.2d 941, 943-44 (Tex. App.-Austin 1995, no writ). Under *Patrick*, accrual of abuse of process turns on a wrongful act causing injury. Unlike malicious prosecution, abuse of process does not categorically await termination of the prosecution. Id. at 944 & n.4. Plaintiffs' principal theory therefore identifies the fall 2023 diversion itself as the timely wrongful act and injury.

The conversion authorities cited in Dkt. 147 explain why initial physical custody need not be the legally adverse act. Where possession begins lawfully, conversion occurs upon demand and refusal or an unequivocal exercise of dominion inconsistent with the owner's rights. *Goodbody & Co. v. McDowell*, 530 F.2d 1149, 1151-52 (5th Cir. 1976). A bailee's unauthorized sale can itself establish conversion and make a demand unnecessary. *Presley v. Cooper*, 284 S.W.2d 138, 140-41 (Tex. 1955).

The closest custody analogue is *Southwestern Bell Telephone Co. v. Commercial Metals Co. of Houston*, 389 S.W.2d 116, 118-19 (Tex. Civ. App.-Houston 1965, no writ). A private claimant received allegedly stolen wire at the sheriff's direction to preserve it as criminal evidence. The court rejected automatic accrual on physical delivery, recognizing that the claimant could initially possess the wire solely as the sheriff's nominee. On that record, conversion occurred upon refusal to return the wire after dismissal of the criminal cases. Id. at 119.

In *Snell v. Short*, 544 F.2d 1289, 1290-91 (5th Cir. 1977) (per curiam), the Fifth Circuit addressed a § 1983 property-deprivation claim using Texas conversion principles. It held that refusal of a demand while police lawfully held property as criminal evidence did not itself establish conversion. The relevant later point was loss of the protection afforded by the evidence-custody law. Id. at 1291. These decisions supply the custody analogy; the separate abuse-of-process requirements remain governed by *Dallas Roadster*. Together, they support examining when the asserted lawful custodial role was actually used for the alleged collateral purpose.

## THE FALL 2023 DIVERSION SUPPORTS A TIMELY ABUSE-OF-PROCESS THEORY.

### A. The process nexus is the use of compulsory evidence custody to accomplish private appropriation.

Plaintiffs identify the court-issued warrant as the legal process. Its execution placed their property in compulsory custody. Snellgrove's asserted authority to retain the property came from that custody, and his testimony about awaiting police permission permits an inference that he continued to hold it subject to law enforcement's control until the later release. The alleged misuse is his participation in turning that compulsory evidence custody into a means of forcing

Plaintiffs to surrender disputed property permanently for his business's benefit, without an adjudication giving him that right.

Texas law confirms the continuing judicial character of custody following execution. Article 18.10(a) required the seizing officer to retain custody until the magistrate directed safekeeping. Article 47.01(a) required contested property alleged to have been stolen to be held subject to the proper court's order. Tex. Code Crim. Proc. arts. 18.10(a), 47.01(a) (2023). Those provisions support Plaintiffs' contention that the property remained subject to the judicial process that produced its seizure. A unilateral law-enforcement communication did not adjudicate the competing ownership claims.

The collateral objective was permanent private recovery of the tools and their commercial value. That objective exceeded preservation of evidence for the criminal proceeding. Plaintiffs submit that using the warrant-derived custodial authority to accomplish that forced surrender constitutes the required collateral compulsion. The claimed authority mattered concretely: Snellgrove says he awaited official release before beginning the disposition. The jury could infer that he knowingly employed that release as the means to translate the custodial arrangement into private ownership and commerce.

*Dallas Roadster* requires both post-issuance misuse and collateral compulsion; improper motives or an ordinary use of authorized process are insufficient. 846 F.3d at 124-25. Here, the proposed finding concerns affirmative diversion of disputed evidence to private ownership and disposition while the prosecution remained pending. The telephone call is evidence of how the warrant-based custody was allegedly perverted. The ensuing sales and business integration evidence implementation of the collateral objective and the resulting property injury. This

application of the governing principles supports Plaintiffs' proposed connection between the disposition and misuse of process, which a private sale standing alone would lack.

**B. On the lawful-custody premise, the injurious misuse occurred within two years of suit.**

Snellgrove maintains that his initial participation and possession were lawful because officers enlisted him and entrusted the property to him. Assuming that account, a reasonable jury could find that he initially acted as evidence custodian and later departed from that role when official release was used to appropriate the property for commercial purposes. The latter event is the factual basis for both the later conversion and the later abuse of process. See Dkt. 147 at 5-7.

On that permissible view of the evidence, May 17 marks the beginning of the asserted custody, while fall 2023 marks its injurious perversion to private commercial recovery. That accrual date precedes the June 2025 filing date relied on by Snellgrove by less than two years. The passage of two years from the seizure alone therefore does not establish limitations against this theory.

Plaintiffs continue to dispute the legality of the initial seizure for the purposes of the fourth amendment claims. Rule 8(d)(2)-(3) permits alternative and inconsistent claims, and the Fifth Circuit recognizes alternative submissions in both pleading and presentation of evidence. *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 418 (5th Cir. 2012). Snellgrove likewise may assert alternatives. But when deciding his limitations motion, the Court must address the timely alternative supported by the evidence rather than treat Plaintiffs' challenge to the initial seizure as a concession that every subsequent misuse was complete that day.

**C. The theory identifies a later actionable act, rather than continuing damages from a completed May 17 tort.**

Plaintiffs do not contend that continued possession, later realization of additional damages, or each sale automatically restarts limitations on a completed abuse of process. The

distinction is between a completed earlier misuse and a later act that itself satisfies the tort's requirements. On the lawful-custody alternative, the conversion of asserted evidence custody into private commercial recovery supplies that later act.

Plaintiffs' awareness that Snellgrove helped load the property establishes awareness of his handling during the seizure. It does not establish that his later use of the release authority and ensuing disposition had already occurred. The principal argument depends on the date of the actionable conduct, not on postponing an already accrued claim until Plaintiffs learned every detail. Likewise, the November 2024 criminal case dismissal and subsequent demands are relevant to the custody chronology, but Plaintiffs do not ask the Court to import conversion's demand-and-refusal rule wholesale into abuse of process or to make termination of the prosecution an element of this tort. *Patrick*, 904 S.W.2d at 944.

**PLAINTIFFS PRESERVED THE RULING AND REQUEST A TRIAL ON THE RESTORED CLAIM.**

At oral argument, Plaintiffs opposed the limitations disposition and expressly argued that abuse of process accrued on the same later date as conversion. Dkt. 147 set out the conversion accrual argument and the trial evidence supporting it. Plaintiffs also objected at the formal charge conference to the jury instructions and verdict form for omitting causes of action dismissed or otherwise adjudicated against them over their objection. Those objections included the abuse-of-process claim the Court had withheld on limitations grounds.

Rule 46 requires a party to state the action it seeks and the grounds for its objection; it does not require a formal exception. Plaintiffs' specific oral accrual argument identified both. The charge and verdict objections additionally communicated Plaintiffs' continuing request for submission under Rule 51. Plaintiffs renew that request here and ask the Court to rule expressly on the fall 2023 misuse theory. This motion seeks reconsideration of the adverse dismissal and a

jury determination of the restored claim; it does not seek a first post-verdict judgment as a matter of law in Plaintiffs' favor.

Because the jury was never asked to decide abuse of process, reinstatement should be accompanied by an order providing a trial on that claim. To the extent a new-trial order is necessary, Plaintiffs move under Rule 59(a)(1)(A) based on the erroneous limitations disposition and resulting exclusion of the claim. A Rule 59 motion may properly be filed before formal entry of judgment. *Greater Hous. Chapter of ACLU v. Eckels*, 755 F.2d 426, 427 (5th Cir. 1985). Rule 50(d) also expressly permits a party against whom judgment as a matter of law is rendered to seek a new trial under Rule 59.

The exclusion affected a substantial right because the timely theory of deliberate diversion through the evidence-custody arrangement was withheld from jury determination. The Court should assess any overlap with the actual verdict through the questions and instructions submitted, without assuming that rejection of another claim necessarily resolved every element of this omitted claim. See Fed. R. Civ. P. 61. Plaintiffs request trial of abuse of process against Snellgrove, including liability, applicable defenses, and damages, together with any issues that cannot fairly be separated from it. A partial retrial is appropriate only when the issues are sufficiently distinct and separable to avoid injustice. *Gasoline Prods. Co. v. Champlin Refin. Co.*, 283 U.S. 494, 499-500 (1931).

**PRAYER**

Plaintiffs respectfully request that the Court reconsider and vacate the interlocutory ruling excluding their abuse-of-process claim against Brian Snellgrove on limitations grounds; reinstate Count 7 to the extent based on timely misuse of the warrant-derived evidence custody; and order a jury trial on that claim, including liability, applicable defenses, and damages. To the extent

required, Plaintiffs request a new trial under Rule 59(a)(1)(A), encompassing any inseparable issues necessary to avoid injustice. Plaintiffs further request that the Court resolve this motion before entry of final judgment and grant such further relief as is just.

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(g), counsel certifies it contacted attorneys for all parties via email on September 8, 2026 in regards to this motion. Only Mr. Dennis responded, who indicates their opposition, but without any particularly stated basis or reason.

**CERTIFICATE OF SERVICE**

I certify that on the date reflected in the CM/ECF filing notice, I electronically filed the foregoing document through the Court's CM/ECF system, which provides service on all counsel of record registered to receive electronic notice.

Respectfully submitted,
/s/ Kurt Mueller
Kurt Mueller
Texas Bar No. 24133133
THE KURT MUELLER LAW FIRM PLLC
565 S. Mason Road, PMB 223
Katy, Texas 77450
Telephone: (713) 360-2110
Email: kurt@kurtmuellerpllc.com
COUNSEL FOR PLAINTIFFS