**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,** *Plaintiffs*, | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 7:25-CV-00245-RCG** |
| **BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, and RORY GAMMONS, each in their individual capacities; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE;** *Defendants*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**MARTIN COUNTY DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' POST-VERDICT, PRE-JUDGMENT MOTION UNDER RULE 54(b), MOTION FOR NEW TRIAL UNDER RULE 59(a), AND REQUEST FOR A LIMITED EVIDENTIARY HEARING**

1. Defendants Martin County, Texas, Brad Ingram, Anders Dahl, Kelsey Brown, and Rory Gammons (collectively, the "Martin County Defendants") file this Response in Opposition to Plaintiffs' Post-Verdict, Pre-Judgment Motion Under Rule 54(b) to Reconsider the Exclusion of Billy Reynolds, for a New Trial Under Rule 59(a), and for a Limited Evidentiary Hearing (Doc. 166), including Appendix A (Doc. 166-1), and respectfully show as follows:

## I. INTRODUCTION

2. Plaintiffs received a full trial on the claims submitted to the jury. The Court instructed the jury that Plaintiffs bore the burden of proving that each individual officer personally participated in or caused an unreasonable search or seizure beyond the warrant and without valid consent. The Court further instructed that Martin County could be liable only if Sheriff Ingram, acting as final policymaker, made a deliberate choice that was the moving force behind a Fourth Amendment violation. Court's Instructions to the Jury 5–11, ECF No. 158. The jury answered "No" as to each officer on the threshold Fourth Amendment question and found no conversion by Defendant Brian Snellgrove. Jury Verdict 1–2, 8, ECF No. 163.

3. Plaintiffs now seek to set aside that verdict based on the exclusion of Billy Reynolds, a member of a successor sheriff's administration who did not participate in the May 17, 2023 search and whose proposed testimony concerns a later investigation into records, recordings, property custody, and Plaintiffs' requests for assistance. Plaintiffs' own motion and appendix establish that Reynolds would have testified about what he searched for or attempted to reconstruct after Sheriff Randy Cozart took office in October 2024—approximately seventeen months after the challenged search. Additionally, the proposed testimony relates to the Fourteenth Amendment claims which were previously dismissed.

4. That proposed testimony does not address the dispositive questions the jury answered. It does not establish what any individual officer did during the search, the scope of the warrant, whether Plaintiffs gave or withdrew consent, or what information each officer possessed at the time. Nor does it establish that Sheriff Ingram made a deliberate policymaking choice that caused a Fourth Amendment violation. At most, it concerns later recordkeeping, property tracing, mitigation, damages, and corroboration that Plaintiffs eventually asked a successor administration for assistance. Those matters could not reasonably have changed the jury's threshold finding that no Martin County Defendant violated the Fourth Amendment.

5. Plaintiffs also have not presented sworn testimony from Reynolds. Appendix A merely describes what Plaintiffs' counsel predicts Reynolds "would" say, often without identifying the dates, records, repositories, findings, or particular missing materials at issue. A post-verdict hearing should not be used to create the substance and foundation that Plaintiffs did not provide when the Court made its evidentiary ruling.

6. Rule 59 does not permit a new trial merely because excluded evidence had some conceivable relevance. The moving party must show harmful error affecting substantial rights, and

courts must disregard errors that do not affect those rights. Fed. R. Civ. P. 61. Plaintiffs cannot make that showing in light of the instructions, the verdict, and the limited substance of their proffer. The motion should be denied.

## II. RELEVANT BACKGROUND

7. The Court's summary-judgment order confined the surviving claims against these Defendants. The Court denied summary judgment on Plaintiffs' Fourth Amendment claims against Ingram, Dahl, Brown, and Gammons; on the civil-rights conspiracy claims against Ingram and Dahl; and on municipal liability against Martin County under a single-act-of-a-final-policymaker theory. It granted summary judgment on Plaintiffs' Fourteenth Amendment procedural-due-process claim, the conspiracy claims against Brown and Gammons, and the remaining municipal-liability theories. Order on Motions for Summary Judgment 11–42, ECF No. 110.

8. At trial, the Court submitted Plaintiffs' Fourth Amendment claims against Ingram, Dahl, Brown, and Gammons and the corresponding single-policymaker claim against Martin County. The charge required Plaintiffs to prove separately that each officer personally participated in or caused an unreasonable search or seizure. The charge further instructed that the relevant inquiry was objective and depended on the facts and reasonably trustworthy information available to each officer at the time—not hindsight.

9. The Court instructed the jury that the search and seizure beyond the warrant were reasonable only if supported by valid consent. It explained that silence or passive acquiescence was insufficient, that consent could be limited or withdrawn, and that a physically present co-occupant could withdraw consent to shared areas through an express refusal. The jury was also instructed to evaluate qualified immunity individually, based on whether a reasonable officer with the information possessed by the particular Defendant could have believed the search or seizure was lawful.

10. As to Martin County, the charge required proof of an underlying Fourth Amendment violation and a deliberate choice by Sheriff Ingram, acting as final policymaker, that was the moving force behind that violation. Court's Instructions to the Jury 10–11, ECF No. 158. The jury answered "No" as to each officer on the threshold question whether that officer personally participated in or caused an unreasonable search or seizure not authorized by the warrant or valid consent. Jury Verdict 1–2, ECF No. 163. Under the verdict form's instructions, those answers ended the jury's consideration of the remaining constitutional questions; the jury therefore made no affirmative finding on qualified immunity, municipal liability, causation, or constitutional damages. Id. at 2–7.

11. The Court also instructed the jury that counsel's statements were not evidence and that the verdict had to be based entirely on admitted evidence and governing law. The jury was specifically instructed not to speculate about testimony excluded by sustained objections.

12. Plaintiffs' motion asserts that Reynolds served as chief deputy in Sheriff Cozart's successor administration and was assigned to investigate Plaintiffs' later inquiries concerning the property. Mot. ¶¶ 8–12, ECF No. 166. According to Plaintiffs, Reynolds would testify about later searches for records, body-camera footage, audit materials, chain-of-custody documents, and the property itself. Id. ¶¶ 19–27. Appendix A does not contain an affidavit or declaration from Reynolds. Instead, it provides counsel's conditional description of testimony Reynolds purportedly "would" give after foundational questioning. Appendix A 1–3, ECF No. 166-1.

## III. LEGAL STANDARD

13. Rule 59(a)(1)(A) permits a district court, after a jury trial, to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). That authority is discretionary, but it is not a vehicle for relitigating every adverse trial ruling. A new trial may be granted when the verdict is against the weight of the

evidence, damages are excessive, the trial was unfair, or prejudicial error was committed in the course of trial. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985) (identifying recognized grounds for a new trial and emphasizing the trial court's duty not to substitute its judgment merely because it would have reached a different result); *Chamberlain Grp., LLC v. Overhead Door Corp.*, 668 F. Supp. 3d 560, 566 (E.D. Tex. 2023) (applying Rule 59 and Rule 61 and requiring prejudicial, rather than harmless, error).

14. The burden is on the party seeking the new trial to show harmful error. The Fifth Circuit states the rule in demanding terms: courts do not grant new trials unless it is reasonably clear that prejudicial error entered the record or substantial justice was not done, and appellate review of the ruling is limited. *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)). Where the attack is merely that the jury credited one side's admissible proof over the other's, that is not a basis for judgment as a matter of law or a new trial if substantial evidence supports the verdict. *Chamberlain*, 668 F. Supp. 3d at 580–82 (declining to disturb a verdict where the jury heard competing evidence, was entitled to make credibility determinations, and substantial evidence supported its findings); *Armstrong v. Curves Int'l, Inc.*, No. 15-294, 2017 U.S. Dist. LEXIS 203451, at *10–11, *15–17 (W.D. Tex. Nov. 2, 2017) (denying a new trial because conflicting evidence did not permit the court to substitute its judgment for the jury's and the movant failed to establish an unfair trial or prejudicial error).

15. Rule 61 separately bars relief for harmless error. Unless justice requires otherwise, "no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order," and the court "must disregard all errors and defects that do not

affect any party's substantial rights." Fed. R. Civ. P. 61. Thus, even assuming an evidentiary ruling was debatable, Plaintiffs must still show that the exclusion affected a substantial right in light of the issues tried, the charge, the admitted evidence, and the verdict. *Chamberlain*, 668 F. Supp. 3d at 566 (recognizing that Rule 61 requires courts to disregard evidentiary errors that do not affect substantial rights).

16. Because final judgment has not been entered, Rule 54(b) supplies the procedural mechanism for revisiting the interlocutory exclusion ruling. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336–37 (5th Cir. 2017) (holding that Rule 54(b), rather than Rule 59(e), governs reconsideration of an interlocutory order and applies a more flexible standard). *Austin* holds that Rule 54(b) is more flexible than Rule 59(e) and permits reconsideration of interlocutory orders for any sufficient reason, even absent newly discovered evidence or an intervening change in law. *Id.* at 336–37 (explaining that a district court may reconsider an interlocutory ruling for any reason it deems sufficient). But that flexibility answers only whether the Court may reconsider the exclusion; it does not answer whether the discharged jury's verdict may be set aside. For that relief, Plaintiffs must satisfy Rule 59(a) and Rule 61 by showing prejudicial error affecting substantial rights.

## IV. ARGUMENT

### A. Reynolds's proposed testimony did not address the questions that produced the defense verdict.

17. The jury's verdict rested on the threshold question whether each officer personally participated in or caused an unreasonable search or seizure not authorized by the warrant or valid consent. The charge directed the jury to evaluate the reasonableness of the officers' conduct from the facts and reasonably trustworthy information available at the time, rather than through hindsight. Qualified immunity likewise depended on the information possessed by each officer at

the time of the challenged conduct.

18. Reynolds had no identified role in the May 17, 2023, search. According to Plaintiffs, his involvement began under Sheriff Cozart, who took office in October 2024. Plaintiffs describe Reynolds's subjects as:

- Plaintiffs' later requests for assistance;
- Reynolds's searches of inherited records and repositories;
- records, recordings, reports, inventories, and chain-of-custody materials he allegedly could not locate;
- his later attempts to trace or recover property; and
- the limitations those circumstances placed on reconstructing the property's history.

19. None of that proposed testimony addresses the scope of the warrant, whether Austin or Kiska Hamblin consented to the search, whether either Plaintiff limited or withdrew consent, which officer heard any objection, what each officer searched or seized, or what each officer reasonably understood during the search. Those were the disputes identified by the Court before trial and ultimately presented to the jury. A later investigator's inability to locate particular records does not establish any fact about the scope of consent or an individual Defendant's conduct and knowledge on May 17, 2023.

20. Nor would the testimony establish municipal liability. The jury could find Martin County liable only upon proof that a Fourth Amendment violation occurred and that Sheriff Ingram, acting as final policymaker, made a deliberate choice that was the moving force behind it. Plaintiffs' proffer does not identify testimony from Reynolds concerning a policy decision by Sheriff Ingram. It instead concerns what the successor administration found—or did not find—long after Ingram left office. That evidence cannot supply the underlying constitutional violation the jury found absent.

21. The verdict confirms the point. The jury did not reach a finding that a violation occurred but that damages, custody records, property tracing, or mitigation were unproven. It found no Fourth Amendment violation at all. Evidence primarily directed to later custody documentation, recovery efforts, or the extent of unreturned property could not reasonably have altered that antecedent finding.

**B. Plaintiffs have not shown that exclusion of Reynolds affected their substantial rights.**

22. Even if some portion of Reynolds's testimony had marginal relevance, Rule 61 requires the Court to disregard evidentiary errors that do not affect substantial rights. Fed. R. Civ. P. 61. The burden of demonstrating harmful error belongs to Plaintiffs as the parties requesting a new trial. *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (holding that the movant bears the burden to show harmful error and that a new trial is warranted only when prejudicial error entered the record or substantial justice was not done).

23. Plaintiffs do not connect any specific statement Reynolds would have made to any element of the Fourth Amendment or municipal-liability questions the jury decided. Instead, they argue generally that his testimony would have addressed missing documentation, property tracing, credibility, and Plaintiffs' requests for assistance. That generalized assertion does not demonstrate that the jury would have answered the constitutional-violation question differently.

24. The Court instructed the jury that Plaintiffs bore the burden of proving every element by a preponderance of the evidence and that failure to prove any element required a verdict for Defendants. It further instructed that an individual officer could be liable only for his or her own intentional acts or omissions. Reynolds's later investigation did not supply evidence of any particular officer's conduct during the search. Accordingly, it could not fill an evidentiary gap concerning individualized participation, consent, causation, or contemporaneous knowledge.

25. Plaintiffs' reliance on *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581 (5th Cir.

2003), and *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006), is misplaced. In *Bocanegra*, the excluded toxicology evidence directly addressed the central liability issue—whether a driver who admitted smoking marijuana before the fatal collision suffered impaired perception and reaction time—and was supported by peer-reviewed studies, the driver's admission that he became "high," contemporaneous observations suggesting intoxication, and testimony from both sides' experts. 320 F.3d at 583–90. The exclusion prevented the jury from considering the "critical issue" of impairment and left it with a materially incomplete account of the accident, while the defendants affirmatively argued that the driver had reacted reasonably. *Id.* at 590. Reynolds, by contrast, neither witnessed nor participated in the May 2023 search; his proposed testimony about a successor administration's later investigation and inability to locate particular records or property does not, without additional admissible evidence, establish consent, withdrawal of consent, any individual officer's acts or contemporaneous knowledge, or a policymaking decision by Sheriff Ingram. In *Brazos River Authority*, the district court applied legally inapplicable Rules 404(b) and 407 to exclude the "crushing majority" of evidence of substantially similar equipment failures and internal investigations bearing on the product defect, warranty, and competing causation theories at the core of the case. 469 F.3d at 423–32. The exclusion transformed the scarcity of admitted failures into affirmative proof against the plaintiff, created an "atmosphere of disbelief" that permeated the trial, and, together with the Rule 407 errors, prevented the court of appeals from saying with positive assurance that the verdict would have been the same. *Id.* at 424–25, 432. No comparable circumstance exists here: the challenged testimony was not a substantial body of firsthand or contemporaneous proof on the issues submitted to the jury, its exclusion did not distort the admitted evidence into affirmative proof for the Martin County Defendants, and it did not prevent Plaintiffs from presenting evidence

concerning the search, consent, the officers' conduct, or their contemporaneous knowledge. Both decisions therefore reinforce—not relax—Rule 61's requirement that the excluded evidence bear materially on an issue actually decided and that the movant demonstrate resulting prejudice.

26. Courts do not grant a new trial simply because excluded evidence might have added another layer to a party's presentation. Relief is reserved for prejudicial error affecting substantial rights, and where the jury heard competing evidence and substantial evidence supports the verdict, the court may not reweigh credibility or substitute its own view of the evidence for the jury's. *Chamberlain Grp., LLC v. Overhead Door Corp.*, 668 F. Supp. 3d 560, 566, 580–82 (E.D. Tex. 2023) (denying renewed judgment as a matter of law and a new trial where the jury heard competing evidence, was entitled to credit one party's presentation, and Rule 61 required disregard of errors not affecting substantial rights). Here, the jury could resolve the claims based on the testimony and exhibits concerning the search itself, including whether consent existed or was withdrawn and what each officer personally did. The successor administration's later experience searching for records did not displace that evidence.

**C. The closing argument of separate counsel does not establish harmful error as to the Martin County Defendants.**

27. Plaintiffs place substantial weight on an argument purportedly made by counsel for Snellgrove that "real victims" seek police assistance. But Snellgrove is a separate Defendant represented by separate counsel. Plaintiffs identify no comparable argument made on behalf of the Martin County Defendants.

28. More fundamentally, the Court expressly instructed the jury that counsel's statements were not evidence and that the jury must distinguish argument from admitted evidence. The jury was also instructed to base its verdict solely on legally admissible evidence and not speculate about excluded testimony. Plaintiffs' contention assumes that the jury disregarded those

instructions, treated counsel's argument as evidence, and then used that argument to decide the separate Fourth Amendment claims against the officers and Martin County. Nothing in the verdict supports that chain of assumptions.

29. Reynolds's proposed corroboration that Plaintiffs eventually sought police assistance also does not answer the verdict's threshold question. Whether Plaintiffs contacted the successor sheriff's administration in or after October 2024 does not establish whether the 2023 search exceeded valid consent or whether any particular officer personally caused an unconstitutional search or seizure. Plaintiffs therefore have not shown that the closing argument made Reynolds's exclusion harmful as to these Defendants.

**D. Plaintiffs' proffer remains conditional, generalized, and unsupported by sworn testimony.**

30. Plaintiffs seek the extraordinary remedy of setting aside a jury verdict without submitting an affidavit or declaration from Reynolds. Appendix A is not his testimony. It is counsel's description of what Reynolds purportedly "would" identify or explain after future foundational questioning.

31. The description omits the concrete content needed to evaluate materiality and prejudice. It does not identify:

- when Reynolds received the assignment;
- when Plaintiffs requested assistance;
- the specific property he attempted to locate;
- the particular records or recordings he found;
- the particular records or recordings he did not find;
- the repositories available to him;
- whether records were missing, never created, maintained elsewhere, or outside his access; or

- any fact he would offer concerning the conduct or knowledge of Ingram, Dahl, Brown, or Gammons during the May 2023 search.

32. Rule 59(c) provides that when a new-trial motion is supported by affidavits, those affidavits must be filed with the motion, subject to the time allowed for opposing and reply affidavits. Fed. R. Civ. P. 59(c). Plaintiffs submitted no affidavit or declaration from Reynolds. Although Rule 43(c) permits the Court, in its discretion, to hear a motion on affidavits, oral testimony, or depositions, it does not relieve Plaintiffs of their burden to identify the substance, admissibility, and prejudicial effect of the evidence on which they seek to set aside the verdict. Fed. R. Civ. P. 43(c), 59(a), 61. Plaintiffs' unsworn, conditional summary does not establish that Reynolds would have supplied admissible evidence material to the verdict against these Defendants.

33. The proposed testimony also depends on foundations that Plaintiffs concede have not been established. Appendix A states that Reynolds would need to explain access, repositories, search methods, regular recording practices, and the limits of his search. A proposed witness's anticipated ability to lay a foundation at a future hearing is not proof that the excluded testimony was admissible or outcome-determinative at trial.

**E. A post-verdict evidentiary hearing would not cure Plaintiffs' failure to demonstrate prejudice.**

34. Plaintiffs request a limited hearing so Reynolds can supply the specificity missing from their motion. But the jury has been discharged, and Plaintiffs acknowledge that testimony taken now could not become evidence retroactively considered by that jury.

35. A hearing would therefore not alter the governing inquiry: whether the exclusion of the evidence Plaintiffs sought to offer at trial affected their substantial rights. Rule 43(c) authorizes the Court to choose a method for receiving evidence on a motion; it does not permit a party to use a post-verdict hearing to enlarge an inadequate trial proffer or to establish prejudice

through materially different testimony developed after the jury's discharge. The motion and Appendix A show that Reynolds's involvement arose under a successor administration and concerned a later investigation into records, property custody, and recovery. Mot. ¶¶ 8–12, 19–31, ECF No. 166; Appendix A 1–3, ECF No. 166-1. Those subjects do not bear materially on the contemporaneous, individualized Fourth Amendment questions that produced the verdict.

36. Plaintiffs had also identified Reynolds before trial and knew the general subjects on which they intended to call him. Nothing in the motion identifies newly discovered facts preventing Plaintiffs from obtaining a declaration or making a concrete proffer before requesting post-verdict relief. Rule 54(b)'s flexible standard does not require the Court to reopen the evidentiary presentation whenever a party wishes to expand an earlier proffer after an adverse verdict. Although a district court has inherent power to reconsider interlocutory orders, that discretion is properly exercised sparingly to avoid perpetual reexamination, burdens, and delay. *Berk-Cohen Assocs., LLC v. Landmark Am. Ins. Co.*, No. 07-9205, 2009 U.S. Dist. LEXIS 103201, at *3–5 (E.D. La. Nov. 5, 2009) (recognizing broad authority to revise interlocutory orders while cautioning that reconsideration should be exercised sparingly to prevent repetitive litigation and delay).

**F. Rule 54(b) reconsideration of the exclusion would not justify setting aside the verdict.**

37. Rule 54(b) permits reconsideration of an interlocutory evidentiary ruling under a more flexible standard than Rule 59(e). *Austin*, 864 F.3d at 336–37 (vacating and remanding where the district court applied Rule 59(e)'s heightened standard instead of Rule 54(b)'s more flexible interlocutory standard). That proposition helps Plaintiffs only at the first step. Even if the Court revisited the ruling and concluded that some narrowly confined portion of Reynolds's testimony could have been admitted, Plaintiffs would still have to establish that the exclusion affected substantial rights under Rule 61 and justified a new trial under Rule 59(a). Fed. R. Civ. P.

59(a)(1)(A), 61; *Chamberlain*, 668 F. Supp. 3d at 566 (requiring harmful error affecting substantial rights before an evidentiary ruling may support a new trial).

38. They cannot do so. Reynolds's proposed testimony did not concern the central liability facts identified in the charge. It did not supply firsthand evidence of the 2023 search, the scope of the warrant, consent, withdrawal of consent, the individual officers' participation, or their contemporaneous information. It did not establish an unconstitutional policymaking decision by Sheriff Ingram. And it did not answer the jury's finding that Plaintiffs failed to prove any underlying Fourth Amendment violation.

39. Rule 59 does not authorize a new trial merely because the Court might refine an earlier evidentiary ruling. Courts do not grant new trials unless prejudicial error entered the record or substantial justice was not done, and the moving party bears the burden of proving harm. *Sibley*, 184 F.3d at 487 (affirming new-trial relief only after concluding that intervening controlling authority exposed prejudicial legal error in the issues submitted to the jury). Plaintiffs' motion does not carry that burden.

**G. Reynolds's testimony does not warrant reconsideration of the previously resolved Fourteenth Amendment and conspiracy theories.**

40. Plaintiffs separately ask the Court to use Reynolds's proposed testimony to reconsider "pertinent interlocutory dispositions," including due-process and conspiracy theories. That request should also be denied.

41. The Court granted summary judgment on the Fourteenth Amendment claim because Plaintiffs had notice of the seizure and an available, meaningful post-deprivation procedure under Texas law, which they did not invoke after the indictment was dismissed. Order on Motions for Summary Judgment 29–33, ECF No. 110. The Court expressly recognized factual disputes concerning the inventory, return of the warrant, safekeeping authorization, and transfer

of the property, but held that those disputes did not alter Plaintiffs' notice or the availability of the state procedure. Id. at 31–33. Reynolds's later efforts to locate records or trace property therefore do not undermine the legal and factual grounds on which the Court resolved the due-process claim.

42. The Court also granted summary judgment on the conspiracy claims against Brown and Gammons, while allowing the conspiracy theory against Ingram and Dahl to proceed past summary judgment based on evidence concerning an alleged preceding agreement with Snellgrove. Reynolds joined the successor administration long after the alleged agreement and search. Plaintiffs identify no proposed testimony from Reynolds concerning any agreement involving Brown or Gammons, or any earlier agreement among Ingram, Dahl, and Snellgrove.

43. Rule 54(b) does not require reconsideration based on evidence unrelated to the grounds supporting the prior disposition. Plaintiffs' generalized invocation of Reynolds's later investigation does not demonstrate a sufficient reason to revise those rulings.

**H. Plaintiffs have shown no basis for a complete or partial new trial against the Martin County Defendants.**

44. Plaintiffs request a new trial on all affected claims or, alternatively, on unspecified claims or issues deemed separable. Neither request is supported.

45. A new trial is unwarranted because Reynolds's proposed testimony does not materially address the liability questions decided against Plaintiffs. A partial new trial is equally unwarranted because Plaintiffs do not identify a distinct finding against these Defendants that Reynolds's testimony could have changed. The jury found no constitutional violation by any officer. Without that predicate, the questions concerning qualified immunity, municipal liability, causation, and constitutional damages did not provide an independent basis for recovery.

46. The conversion verdict concerned Snellgrove, not the Martin County Defendants. Plaintiffs' assertions that Reynolds might have offered evidence relevant to property ownership,

tracing, return, or conversion therefore do not establish prejudice requiring a retrial of the claims against these Defendants.

## V. CONCLUSION AND PRAYER

47. The jury decided the claims submitted against Martin County, Brad Ingram, Anders Dahl, Kelsey Brown, and Rory Gammons under instructions requiring individualized proof of an unreasonable search or seizure and, as to Martin County, proof of a constitutional violation caused by Sheriff Ingram's deliberate policymaking choice. The jury found no Fourth Amendment violation by any officer and no constitutional violation caused by Sheriff Ingram's deliberate policymaking choice.

48. Billy Reynolds's proposed testimony concerned a later investigation by a successor administration. It did not address the officers' conduct, consent, contemporaneous knowledge, or a policymaking decision at the time of the challenged search. Plaintiffs have therefore failed to show that its exclusion affected their substantial rights. They likewise have not supplied sworn testimony or a sufficiently concrete proffer warranting a post-verdict evidentiary hearing.

49. The Martin County Defendants respectfully request that the Court deny Plaintiffs' Post-Verdict, Pre-Judgment Motion Under Rule 54(b) to Reconsider the Exclusion of Billy Reynolds, for a New Trial Under Rule 59(a), and for a Limited Evidentiary Hearing (Doc. 166), including all relief requested through Appendix A (Doc. 166-1).

Respectfully submitted,

*/s/ Denis Dennis*

DENIS DENNIS
State Bar No. 05655566
BENJAMIN PETTY
State Bar No. 24105934

OF
KELLY, MORGAN, DENNIS,

CORZINE & HANSEN, P.C.
P.O. Box 1311
Odessa, Texas 79760-1311
(432) 367-7271 / FAX: (432) 363-9121
ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Denis Dennis*
DENIS DENNIS