**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| AUSTIN HAMBLIN and KISKA HAMBLIN,<br>Plaintiffs,<br>v.<br>BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, RORY GAMMONS, each in their individual capacity; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **7:25-CV-00245-RCG** |

**PLAINTIFFS' MOTION FOR A NEW TRIAL, TO ALTER OR AMEND THE FINAL JUDGMENT, AND RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW**

## INTRODUCTION

The Martin County Sheriff's Office went to the Hamblins' home with a warrant for exactly two items - a plasma cutter and an air compressor. It left with a popcorn maker, a bicycle, a fish tank, household tray tables, truck parts, tool cabinets, and hundreds of tools. The complainant, Brian Snellgrove, was brought into the home during the search and claimed whatever he wanted was his. Deputies loaded all the property Snellgrove claimed into his personal vehicle and delivered it to his residence. Ex. C at 1; Ex. B ¶ 9(e). By Snellgrove's own testimony, the Sheriff's Office released the property to him roughly a year before the criminal case against Austin Hamblin was even dismissed, denying any opportunity at due process.

The County's own Chief Deputy, Billy Reynolds, later reviewed the case file and the body-camera video. The file held documents showing Austin Hamblin's ownership. Ex. B ¶ 8. It held no receipts or other proof of ownership from Snellgrove. Ex. C at 1. When the Hamblins asked for their property back, Reynolds told the Hamblins the property was gone. Ex. B ¶ 10; Ex. C at 1. Both sides designated him as a witness. Yet the jury never heard from him because the Court excluded him.

Instead the jury heard something else. The jury heard defense counsel raise subjects this Court had forbidden, beginning with opening statements. The jury heard counsel point to redaction boxes and tell jurors to "use their imagination." And it heard counsel single out one juror to recount a car repair the two of them had shared, prejudicing the Plaintiffs.

Plaintiffs ask the Court to (1) enter judgment as a matter of law against Dahl on Fourth Amendment liability; (2) order a new trial on the Fourth Amendment, County and conversion claims; and (3) amend the judgment to restore the claims dismissed before trial, including procedural due process, for trial with the retried claims.

**I. Relief requested and rulings renewed**

Plaintiffs Austin Hamblin and Kiska Hamblin move under Rules 50(b), 59(a)(1)(A) and 59(e) for relief from the September 30, 2026 judgment, Doc. 190. The motion is timely. Doc. 190 rests on the jury's "no" answers to Question 1 for Ingram, Dahl, Brown and Gammons and to Questions 11, 12 and 13 on Snellgrove and conversion. Plaintiffs renew the following motions and the grounds, offers, requested instructions and objections asserted in them:

| Motion | Ruling | Issue |
|---|---|---|
| Doc. 165 | Doc. 189 | Dahl's liability (Rule 50) and new trial |
| Doc. 166 | Doc. 188 | Exclusion of Billy Reynolds |
| Doc. 148 | Docs. 186 | Snellgrove: Fourth Amendment, § 1983 conspiracy, Rules 15(b)(2) and 15(c) |
| Doc. 123 | Docs. 110, 127, 145 | Procedural due process (Count 2) and County predicate |
| Doc. 169 | Docs. 187 | Abuse of process |
| Doc. 151 | Docs. 185 | Unjust enrichment |
| Doc. 78 | Doc. 110 | Partial summary judgment; dismissed claims and County theories |

This motion also raises additional new trial grounds that were not addressed in the pre-judgment filings.

## II. Standards

### A. Judgment as a matter of law under Rule 50(b)

Rule 50 permits judgment as a matter of law when a party has been fully heard and a reasonable jury would lack a legally sufficient evidentiary basis to find for that party on a controlling issue. Fed. R. Civ. P. 50(a)(1), (b). The Court reviews the trial record as a whole, draws all reasonable inferences in favor of the nonmovant, and may not weigh evidence or make credibility determinations. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000). On issues for which Plaintiffs bear the burden of proof, the evidence must compel the favorable finding. *See Arleth v. Freeport-McMoRan Oil & Gas Co.,* 2 F.3d 630, 634 (5th Cir. 1993)

### B. A new trial under Rule 59(a)

Rule 59(a)(1)(A) permits a new trial when the verdict is against the great weight of the evidence, the trial was unfair, or prejudicial error occurred. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 269-270 & 270 n.2 (5th Cir. 1998). In deciding a weight-of-the-evidence challenge, the Court may weigh the evidence without viewing it most favorably to the verdict winner. The verdict must be against the great, rather than merely the greater, weight of the evidence. *Whitehead*, 163 F.3d at 269. Unfairness and prejudicial trial error provide independent grounds for relief even when the record contains legally sufficient evidence to support the verdict. Erroneous exclusion of evidence warrants relief when it affects those rights. *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584, 590 (5th Cir. 2003). Prejudice must be assessed in the context of the entire proceeding, including whether the Court can say with fair assurance that the verdict was not

substantially influenced by the error. *Hollybrook Cottonseed Processing, L.L.C. v. American Guarantee & Liability Insurance Co.*, 772 F.3d 1031, 1034–35 (5th Cir. 2014). Improper closing argument warrants a new trial when it irreparably prejudices the verdict. A general instruction that argument is not evidence does not necessarily cure serious or repeated misconduct. *Clapper v. American Realty Investors, Inc.*, 95 F.4th 309, 313–316 & 316 n.2 (5th Cir. 2024)

**C. Instructions, preservation, and unpreserved error**

Instructional error is evaluated against the charge as a whole and its effect on the verdict: the challenger must demonstrate substantial and ineradicable doubt that the instructions properly guided deliberations, and an error that could not have affected the outcome is harmless. *Puga v. RCX Solutions, Inc.,* 922 F.3d 285, 291-92 (5th Cir. 2019). A properly requested instruction that the Court definitively rejects on the record is preserved under Rule 51(d)(1)(B) without an additional objection. Rule 103(d) separately requires the Court, to the extent practicable, to prevent inadmissible evidence from being suggested to the jury.

For any unpreserved evidentiary or instructional error, relief requires an error that is clear or obvious, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. Fed. R. Evid. 103(e); Fed. R. Civ. P. 51(d)(2); *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1124–25 (5th Cir. 1997); *Jimenez v. Wood County*, 660 F.3d 841, 845–46 (5th Cir. 2011) (en banc). For improper arguments determined to have been not timely challenged, a new trial remains available when substantial justice is at stake and the argument seriously prejudices the right to a fair trial. *Clapper*, 95 F.4th at 316 n.2; *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 778–79 (5th Cir. 2009).

**D. Alteration or amendment of the judgment under Rule 59(e)**

Following final judgment, Rule 59(e) governs the request to reconsider the antecedent rulings embodied in that judgment. Rule 59(e) permits correction of manifest errors of law or fact, consideration of newly discovered evidence, and relief warranted by an intervening change in controlling law. *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019). Preventing manifest injustice is also a recognized ground. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Reconsideration requires balancing finality against the need for a just decision on all the facts. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). Plaintiffs invoke Rule 59(e) to correct the identified errors underlying the final judgment and to restore the affected claims.

**E. Scope of relief and conditional ruling**

Rule 59(a)(1) authorizes a new trial on all or some issues and as to any party. A partial retrial is proper only when the issues to be retried are sufficiently distinct and separable that trying them alone will not cause injustice. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). If the Court grants the renewed Rule 50 motion, it must also conditionally decide the alternative new-trial motion, stating whether a new trial should be granted if the judgment is later vacated or reversed and the grounds for that decision. Fed. R. Civ. P. 50(c)(1).

**III. Dahl searched drawers the warrant could not reach, and no exception fills the gap**

**A. The warrant limited the search to places a plasma cutter or air compressor could be**

A warrant authorizes a search only of places where the described objects might be found. *United States v. Ross*, 456 U.S. 798, 820–21, 824 (1982). As the Supreme Court put it, “probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to

search an upstairs bedroom." *Id.* at 824; See also *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) and *Wilson v. Layne*, 526 U.S. 603, 611 (1999). The same is true of an allegedly stolen plasma cutter and an air compressor, which were the only two items the warrant authorized. The body-camera footage shows Dahl opening toolbox drawers, and Dahl acknowledged those drawers could not hold either item. Doc. 189. That ends the warrant analysis.

*Creamer v. Porter* controls. There, officers holding a warrant for two television sets kept searching after they found them, including drawers too small to hold a television. 754 F.2d 1311, 1318–19 (5th Cir. 1985). The Fifth Circuit held the continued search unconstitutional. *Id.* *Creamer* decides this case on either version of the facts. If the officers found the warrant items, as Doc. 110 assumed, their authority to search ended at that moment. If they found none, as the County's own Chief Deputy concluded from the file and video, Ex. B ¶ 9(d); Ex. C at 1, the warrant still allowed them to look only where a plasma cutter or welder could be. A toolbox drawer is not that place under either account.

**B. Consent does not justify the drawer search**

Doc. 110 identified consent as the exception that might justify opening the drawers. The record does not support it. The officers entered under claimed warrant authority.When an officer claims a warrant, "he announces in effect that the occupant has no right to resist the search." *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968). Acquiescence to that claim is not consent. *Id.* at 548–49. And any consent extends only as far as a reasonable person would understand it to extend. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Nothing in the recorded exchanges authorized an unrestricted search of every drawer and the removal of everything in them.

The defense waived consent as a justification. In closing, counsel for the County defendants rested the search on the warrant alone. An attorney's remarks in closing "constitute[]

binding admissions against the party he represents." *Montano v. Orange County*, 842 F.3d 865, 882 (5th Cir. 2016). Having tied Dahl's defense to warrant authority alone, the defense cannot now sustain the verdict on a consent theory it waived.

**C. Plain view cannot justify opening drawers or seizing a fish tank**

Plain view requires a lawful vantage point, a lawful right of access, and an incriminating character that is immediately apparent. *Horton v. California*, 496 U.S. 128, 136–37 (1990). It does not authorize opening closed containers to find more property. *Arizona v. Hicks*, 480 U.S. 321, 324–27 (1987). Nothing about a bicycle, a fish tank, or household tray tables is immediately apparent evidence of an allegedly stolen plasma cutter. Nor did Snellgrove's blanket claim to anything stamped "Snap-on" supply probable cause item by item. Austin was one of Snellgrove's top Snap-on salesmen, recognized as a top 100 salesman at the national level and worked as a mechanic for many years prior to his employment by Snellgrove. Ex. B ¶ 9(a). A Snap-on salesman and mechanic who owns Snap-on tools is not evidence of a theft. Snellgrove produced no proof of ownership for any specific item when he made the report or at the time of seizure. *Id.* ¶ 9(b).

**D. The Court should enter judgment against Dahl or, alternatively, order a new trial**

Dahl opened drawers the warrant did not reach, with no valid consent and no plain-view justification. The jury's "no" to Question 1 does not change that. A verdict that does not reveal its rationale is not insulated from Rule 50 review of the evidence actually presented. Plaintiffs renew their Rule 50(a) motion and ask for judgment on liability against Dahl, with damages to be tried. Alternatively, the footage, the drawer dimensions, the timing of the search and the absence of consent place the verdict against the great weight of the evidence, and the Court should order a new trial on the Fourth Amendment claims against Ingram, Dahl, Brown and Gammons and

the corresponding County claim. Brown's described inventory role, Dahl's acknowledgment that the officers should not have taken the property at issue, and Snellgrove's direction of what to take confirm that this was an inventory of the house, not a search for two tools.

## IV. The defense tried Plaintiffs' character and invited the jury to imagine excluded evidence

### A. Excluded subjects from opening through closing

Before trial, the Court excluded inflammatory inventory subjects and related evidence. Defense counsel raised them in the opening statement anyway, casting Plaintiffs as criminals. The Court later admonished counsel. Nevertheless, the excluded subjects returned through questions and exhibit references. The theme was constant: Plaintiffs were hiding things from the jury, and the officers were just protecting the community. That theme had nothing to do with whether a two-item warrant authorized an inventory of the house or who owned the tools. Counsel repeatedly tried to get the Plaintiffs to open the door to excluded matter by questioning about "safety of the children" and questioning the "protection of the children", casting Plaintiff as evasive while Plaintiff was following the Court's rulings. Plaintiffs were pushed against a line while defense counsel jumped back and forth in an attempt to circumvent the ruling.

### B. "Use your imagination"

In closing, Mr. Dennis pointed to the same black boxes he referenced in opening to the redacted exhibits and told jurors to "use their imagination." The Court had indicated in chambers that counsel could make that argument. Plaintiffs respectfully submit that permitting it was plain error as it invited wanton speculation. The invitation told jurors that Plaintiffs were hiding something, and it put Plaintiffs in an impossible position: any objection would have reinforced the suggestion of concealment. The Fifth Circuit has reversed where a prosecutor's closing commented on excluded evidence, even on plain-error review. *United States v. Flores-Chapa*, 48

F.3d 156, 159–61 (5th Cir. 1995). It has also condemned arguments that "may improperly suggest to the jury that inadmissible evidence exists." *United States v. Vaglica*, 720 F.2d 388, 394–95 (5th Cir. 1983). Counsel here did not merely suggest that such inadmissible evidence existed. He asked the jury to invent it when jurors are charged with being the finder of facts not fantasies.

**C. The personal appeal to one juror**

Also in closing, Mr. Dennis addressed an individual juror by recounting a car repair the two of them had shared. That exchange was not evidence. It was a personal bond between counsel and a juror, pushed on the panel at the moment the jury was weighing credibility. Argument that invokes matters outside the record or appeals to jurors on a personal basis warrants a new trial when, as here, it compounds other prejudice. *See, e.g., Clapper v. American Realty Investors, Inc.*, 95 F.4th 309, 314–16 & 316 n.2 (5th Cir. 2024); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284–86 (5th Cir. 1975).

**D. A general instruction did not cure the prejudice**

Improper argument is judged "collectively and in the specific context of the trial," in light of objection rulings, the charge and any curative measures. *Clapper*, 95 F.4th at 314. In *Clapper*, two curative instructions and sidebar conferences were not enough. *Id.* at 316 & n.2. Repeated violations of in limine rulings warrant retrial. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1308–09 (5th Cir. 1977). So does intentional introduction of excluded matter that leaves the court with no fair assurance the verdict was unaffected. *Hollybrook Cottonseed Processing, L.L.C. v. American Guarantee & Liability Insurance Co.*, 772 F.3d 1031, 1033–34 (5th Cir. 2014) (affirming new trial).

Doc. 188 relied on Doc. 158's general instruction that argument is not evidence. That instruction could not undo an opening statement delivered before any correction, questions that renewed the theme, and a closing that told jurors to imagine the rest. These themes went to the heart of the case: Plaintiffs' credibility, their receipts and ownership proof, and the competing accounts of the search. The same jury decided conversion, so the prejudice reached Snellgrove's claims even where his own counsel did not make the remark. Combined with the exclusion of Reynolds, the Court cannot have fair assurance that the verdict was substantially unaffected. *Banner v. Wright*, No. 25-30381 slip op. at pp. 13-14 (5th Cir. Oct. 16, 2026)

**E. The errors are preserved, and they meet the plain-error standard regardless**

Plaintiffs renew their objections and offers under Rule 46 and Evidence Rule 103. Rule 103(d) independently required the Court, to the extent practicable, to keep inadmissible evidence from being suggested to the jury. To the extent any part of this ground is reviewed for plain error, each element is met. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 778–79 (5th Cir. 2009); *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1124–25 (5th Cir. 1997). Inviting jurors to imagine excluded facts was plain error. It plainly contradicted the Court's exclusion rulings. It affected the credibility and ownership proof central to both verdicts. And a pattern of circumvention that culminated in closing seriously affected the fairness and integrity of the proceeding.

**V. Excluding the County's own Chief Deputy kept the only neutral account from the jury**

Plaintiffs renew Doc. 166. Both sides designated Reynolds on inventories, recordings, custody and later review. His testimony covered a different administration and a different period than any other witness, so it could not have been cumulative.

Reynolds would have testified to what he did and saw. He reviewed the case file and found ownership documents for Austin and none for Snellgrove. Ex. B ¶ 8; Ex. C at 1. He

documented the 51-item inventory and the delivery of the property to Snellgrove's residence. Ex. C at 1. He told the Hamblins the Sheriff's Office no longer had their property, and he received from them the court document showing the case had been dismissed and the property should be returned. Ex. B ¶ 10. He asked the District Attorney for a Texas Rangers investigation, noting that the complainant was a sitting Martin County Commissioner. Ex. C at 1.

Reynolds would also have described the October 2025 report of a hard drive removed from Snellgrove's laptop. Snellgrove's employee said the drive held everything that "exonerated Snellgrove, and Martin County." Ex. D at 1. Snellgrove then told Reynolds he still had all the data. Ex. A at 5. Reynolds told Snellgrove that "all of this seemed real suspicious and that it did not make sense," and Snellgrove "agreed it all did not make sense." *Id.* That testimony bore directly on the reliability of the ownership documents Snellgrove offered at trial.

This testimony also answered the defense theme that real victims go to the police. The Hamblins did. Kiska called and emailed the Sheriff's Office repeatedly, and the Chief Deputy who answered agreed the matter needed independent review. Ex. C at 1; Ex. D at 1. No instruction about argument could substitute for that firsthand account, and Plaintiffs' own testimony could not supply a neutral officer's corroboration.

The testimony was admissible. Rules 602 and 701 permit Reynolds's own observations and investigative actions, separate from the professional opinions in Ex. B ¶ 11. His reports of official activities and investigative findings qualify under Rule 803(8). Snellgrove's statements are admissions against him under Rule 801(d)(2)(A), and Plaintiffs renew their offer to lay the foundation Rules 805 and 803(10) require for embedded statements and absent records. Rule 403 permits exclusion only when probative value is substantially outweighed by a listed danger. Independent corroboration is not needlessly cumulative because another witness addressed

related events. *Old Chief v. United States*, 519 U.S. 172, 183 (1997); *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 590 (5th Cir. 2003). The exclusion, combined with a closing that invited jurors to imagine what the record did not show, warrants reconsideration of Doc. 188.

**VI. The conversion verdict is against the great weight of the evidence**

Conversion protects the right to possession against unauthorized dominion. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446–47 (Tex. 1971). Plaintiffs proved their interest with receipts, purchase and Kniepkamp evidence, inventories, and Snap-on credit records. Pls.' Trial Exs. 13, 14, 31. Snellgrove's pretrial affidavit admitted he told the sheriff that some of the items were Austin's, and he testified at trial that he later sold or otherwise disposed of the property. A bailee's unauthorized sale is itself a distinct act of conversion, and no demand and refusal is required. *Presley v. Cooper*, 284 S.W.2d 138, 140–41 (Tex. 1955).

Snellgrove's 935-page Trial Exhibit 2 proves that he bought tools. It does not establish those purchased tools are the same tools as those seized from the Hamblin home. Many of its documents postdate the May 17, 2023 seizure, with dates running from May 26 through December 6, 2023. *See* Snellgrove's Trial Ex. 2, Group 2; Group 3 at 014, 047, 083; Group 6 at 036; Group 9 at 066–067; Group 10 at 051; Group 11 at 039; Group 13 at 004, 020; *see also* DP_Snellgrove027, Group 2 (November 4, 2023). A purchase made after the seizure cannot establish ownership of a unit seized before it. May 2019 invoices that predate Austin's September 2019 employment show only that Snellgrove bought tools at some point, not that he bought these particular tools. Other entries reflect direct shipments to customers and credits issued, which are irrelevant to the tools seized *See* Trial Ex. 2, Group 1; Group 3 at 050, 061; Group 5 at 008–011, 016–017; Group 8 at 002; Group 9 at 044; Group 12 at 015. For example,

the gray/pink and black/pink toolbox transfer entries carry no serial numbers tying them to the seized units. *Id.*, Group 1 at DP_Snellgrove003, 028.

The inventories were incomplete. As Plaintiffs' errata-based guide to Snellgrove's Trial Exhibits 7, 8 and 9 shows, his list omits truck parts and household and novelty items that were taken. Reynolds's memorandum records the same gap: the official inventory listed 51 items while the Hamblins reported more. Ex. C at 1. The $283,445 inventory totals do not resolve whose property was taken.

Question 11 also distorted the verdict. Doc. 185 at 2 used Question 11 in the accrual analysis. A "no" answer on that question does not establish Snellgrove's limitations defense. To the extent Question 11 was used for either purpose, it infected Questions 12 and 13. Weighed objectively, the evidence of ownership, Snellgrove's admissions and his later sales require a new trial on conversion.

**VII. The procedural due process claim must be restored**

**A. The claim targets the official release for private sale, not the initial seizure**

Plaintiffs ask the Court to amend the judgment to vacate Doc. 110 at 29–33, as corrected by Doc. 145; the denial of Doc. 123; and the separate Count 2 disposition as to Snellgrove, Doc. 127 at 2. Count 2 alleged that officials transferred possession and control of Plaintiffs' property to Snellgrove, kept it there without any ownership proceeding, and released it for disposition without notice. Third Am. Compl. ¶¶ 115–122. Those allegations also supply the Count 4 municipal predicate.

The trial record confirmed the claim. Snellgrove testified that the Sheriff's Office released the property to him in the fall of 2023 and that he then sold or disposed of it, a year before the criminal case was dismissed. Plaintiffs had no contemporaneous information of this, believing the property remained in official custody. Ex. B ¶ 10 and Ex. C at 1 confirm that when

the Hamblins asked for it back, it was gone. Knowing about the May seizure told Plaintiffs nothing about a later, unannounced release for private sale.

**B. Texas law required a court order, so the deprivation was authorized and predictable**

Texas law forbids an officer holding property alleged to be stolen from releasing it except upon the order of a court or magistrate. Tex. Code Crim. Proc. art. 47.01(a). No court authorized this release. The process the State already provides, a judicial order before release, was available and was skipped. That makes this an authorized, predictable deprivation by officials entrusted with the property, not a random act the State could not anticipate. *Zinermon v. Burch*, 494 U.S. 113, 136–39 (1990). *Hudson v. Palmer*, 468 U.S. 517, 533–35 (1984), therefore does not apply.

*Stotter v. University of Texas at San Antonio* is directly on point. When officials authorized the disposal of a professor's property without adequate prior notice, the deprivation was "both predictable and foreseeable," the post-deprivation remedy defense failed, and the responsible official was denied qualified immunity. 508 F.3d 812, 821–23 (5th Cir. 2007). The availability of later remedies "does not affect [a plaintiff's] entitlement to predeprivation process." *Greene v. Greenwood Public School District*, 890 F.3d 240, 243 & n.6 (5th Cir. 2018). And § 1983 does not require exhaustion. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982).

Doc. 110 relied on article 47.01a. That statute applies only once no criminal action is pending. Tex. Code Crim. Proc. art. 47.01a(a). It could not have prevented the sale of property that was gone a year before the case was dismissed. *City of West Covina v. Perkins*, 525 U.S. 234, 240–41 (1999), holds that officials need not explain published state remedies. However, it does not hold that notice of a seizure is notice of a later, undisclosed release to a competing claimant for sale. *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 235–37 (Tex. 2011), addressed a takings claim where the owner knew of the seizure and had statutory remedies reaching the

proceeds of an authorized sale. Here there was no authorized sale. *Culley v. Marshall*, 601 U.S. 377, 384–88 (2024), declined to require a separate retention hearing in civil forfeiture. It did not approve permanent private disposition with no chance to contest entitlement.

Every *Mathews* factor favors Plaintiffs. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The private interest is ownership and possession of property the Hamblins valued at roughly $120,000. Ex. C at 1. The risk of error in handing disputed property to the accuser is obvious. The added safeguard, keeping the property in custody until a court ruled, imposed little burden and served the prosecution better by preserving the evidence.

**C. Snellgrove and the officials are each responsible**

Snellgrove is liable as a joint participant with state officials in the custody, release and disposition. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982). The officials who arranged the release had fair warning from *Stotter*. 508 F.3d at 823. A protected possessory interest need not amount to full title. *Fuentes v. Shevin*, 407 U.S. 67, 86–87 (1972). The conversion verdict does not identify which element the jury rejected, and neither a lawful initial search nor a general defense verdict decides whether officials could authorize a private sale without process. The pretrial dispositions kept an entire pleaded constitutional theory from the jury. Plaintiffs renew their charge-conference objection to omission of Count 2 and ask that Count 2 and the corresponding County claim be tried with the retried claims.

**VIII. The remaining dispositions should be reconsidered**

**A. Snellgrove's Fourth Amendment and conspiracy claims are timely**

Plaintiffs renew Doc. 148 and challenge Docs. 152 and 186. Treating May 17, 2023 as the only accrual date overlooks the separate fall 2023 release of the evidence into Snellgrove's commercial inventory. The initial May 2023 transfer was for storage. Doc. 110 at 4; Ex. B ¶ 9(e);

Ex. C at 1. The later release converted temporary evidentiary custody into permanent private appropriation. When an initially lawful seizure is converted into a permanent deprivation, it constitutes an independent seizure that must be separately justified under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 124–25 (1984); *Soldal v. Cook County*, 506 U.S. 56, 61–62, 68 (1992). *See also* Lathon v. City of St. Louis, 242 F.3d 841, 843–44 (8th Cir. 2001). The Fourth Amendment protects possessory interests independent of privacy. *Soldal v. Cook County*, 506 U.S. 56, 61, 70–71 (1992). *United States v. McRae*, 702 F.3d 806, 832–33 (5th Cir. 2012), reviewed a related question only for plain error and left the broader rule open. It does not fold every later intrusion into the original seizure.

The fall 2023 injury accrued when Plaintiffs knew or should have known of it. *Piotrowski v. City of Houston*, 237 F.3d 567, 576–77 (5th Cir. 2001). It occurred less than two years before Snellgrove was joined in June 2025. Plaintiffs do not contend that each sale restarts the clock; they contend that the release was a distinct seizure with its own accrual date. The release, retention and commercial disposition are pleaded at Doc. 74 ¶¶ 73–80, incorporated into Count 1, and the joint-action allegations appear at ¶¶ 125–131. Private parties who act jointly with officials are liable under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). The conspiracy claim should be restored with its predicate.

To the extent the later-disposition theory was clarified in the May 2026 pleading, it relates back under Rule 15(c)(1)(B) to the custody, release and disposition transaction set out in Doc. 15. Plaintiffs also renew the Rule 15(c)(1)(C) notice and mistake grounds in Doc. 148. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548–49 (2010), focuses on what the added defendant knew or should have known. *Winzer v. Kaufman County*, 916 F.3d 464, 470–71 (5th Cir. 2019), addressed the substitution of named officers for unidentified John Doe defendants,

not a known participant whose role the original pleading described. Plaintiffs separately renew Rule 15(b)(2): the release and sale were tried by consent through Snellgrove's own testimony, and he cannot claim prejudice from evidence he gave himself. *See United States v. Shanbaum*, 10 F.3d 305, 312–13 (5th Cir. 1994). Doc. 186 should address each alternative.

**B. Abuse of process and unjust enrichment**

Plaintiffs renew Doc. 169 and challenge Doc. 187 and the oral ruling at Doc. 176. Abuse of process requires an improper use of the issued process to compel a collateral act, an ulterior purpose and damage. *In re Dallas Roadster, Ltd.*, 846 F.3d 112, 124–25 (5th Cir. 2017). The warrant and the custody it created were used to accomplish what no process authorized: a permanent transfer of Plaintiffs' property to the complainant for sale. The claim accrues with the wrongful act, not the end of the criminal case. *Patrick v. Howard*, 904 S.W.2d 941, 943–44 (Tex. App. Austin 1995, no writ). The fall 2023 release falls within two years of Snellgrove's June 2025 joinder. Rule 8(d) permits Plaintiffs to plead initially lawful custody in the alternative. Snellgrove bore the burden on limitations, and his Rule 50(a) motion required every inference in Plaintiffs' favor. *Reeves*, 530 U.S. at 150–51.

Plaintiffs also renew Doc. 151 and challenge Doc. 185 and the August 27 oral dismissal, Doc. 176 at 0:45:51–0:46:22. Texas recognizes unjust enrichment where a party obtains a benefit through fraud, duress or undue advantage. *Heldenfels Brothers, Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *King v. Baylor University*, 46 F.4th 344, 367 (5th Cir. 2022). Snellgrove obtained Plaintiffs' property and its sale proceeds through an official release no court authorized. That is undue advantage. The claim should be restored and decided once the factual predicates are tried, without duplicate recovery.

### C. Other rulings and preservation

Plaintiffs renew their grounds against Doc. 110's dismissal of the Fourth Amendment claim against Phelps; the conspiracy claims against Phelps, Brown and Gammons; the County ratification, training, supervision and policy-enforcement theories, including the single-final-policymaker theory as to Ingram; and the denial of Plaintiffs' Doc. 78 partial summary-judgment motion. Restoring the constitutional predicates above changes the analysis of each. Plaintiffs also renew their requested instructions, verdict submissions, evidentiary offers and objections, including the objections to omitting claims dismissed over their opposition and to treating warrant authority or a claim of ownership as a substitute for consent or item-specific justification. Purely legal issues decided at summary judgment remain preserved without Rule 50 renewal. *Dupree v. Younger*, 598 U.S. 729, 735–36 (2023).

## IX. The trial record establishes joint action, and the dismissals and verdicts that ignored it should not stand

Snellgrove's texts and the sworn testimony of Snellgrove, Dahl and Ingram show a private complainant directing the Sheriff's Office and deputies carrying out his requests. Snellgrove texted Dahl a photo of a pickup, and Dahl promised, "Tomorrow I will find out who that truck is registered to." Pls.' Trial Ex. 15. Ingram testified that running plates for a civilian complainant "wouldn't be uncommon." Snellgrove confirmed he was the person texting Dahl on May 17 and 18, 2023, the days of the search and inventory. In that thread he told Dahl to "just drive up there" to the home of an employee's wife, and Dahl answered, "Yes sir.". Snellgrove testified that he asked the sheriff to "check it out," and Ingram admitted he went to the home himself. Snellgrove further testified that Dahl led the search and identification of tools, that Dahl helped load Plaintiffs' property onto Snellgrove's truck, and that Dahl and Ingram later

authorized Snellgrove to return the property to his sellable inventory with no court order. A private party who acts jointly with state officials acts under color of law. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Lugar v. Edmondson Oil Co., 457 U.S. 922, 941-42 (1982).

This evidence was admitted at trial and came largely from Snellgrove's own mouth, so he cannot claim surprise or prejudice. Fed. R. Civ. P. 15(b)(2). It shows that dismissing Snellgrove's Fourth Amendment and conspiracy liability and the conspiracy claims against the officers (Docs. 148, 152, 186) was a manifest error of law and fact that Rule 59(e) allows the Court to correct. Trevino v. City of Fort Worth, 944 F.3d 567, 570 (5th Cir. 2019). The record also bears on the County. Ingram was the final policymaker for Martin County law enforcement, and a single decision by a final policymaker can establish municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986). By Snellgrove's account, Ingram personally authorized the release of the property to Snellgrove for resale, without the court order Tex. Code Crim. Proc. art. 47.01(a) requires. That decision is the County's own act, and it supports restoring Count 2 and the Count 4 predicate.

The same evidence places the verdicts against the great weight of the evidence. Plaintiffs renew their Rule 50(b) request as to Dahl on the grounds preserved in Doc. 165 and Section III. As to Ingram and the County, Plaintiffs seek a new trial under Rule 59(a)(1)(A), because weighing the written texts, Dahl's loading of property onto Snellgrove's truck, and Ingram's own admissions without favoring the verdict, Smith, 773 F.2d at 613, shows that the "no" answers to Question 1 cannot stand. Plaintiffs also renew their objections to omitting the conspiracy and joint-action theories from the charge and verdict form under Rules 46, 50 and 51. The purely legal summary judgment rulings remain preserved without Rule 50 renewal. Dupree v. Younger,

598 U.S. 729, 735-36 (2023). To the extent any part of this section is reviewed for plain error, Plaintiffs rely on the showing in Section II.C.

**X. Scope of the new trial and prayer**

A partial retrial is proper where the issues are distinct and separable. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). The Fourth Amendment, Fourteenth Amendment, County, conversion and due process claims share the same search, the same property and the same release. They should be retried together.

Plaintiffs respectfully request that the Court:

1. enter judgment as a matter of law against Dahl on Fourth Amendment liability under Rule 50(b);
2. vacate Doc. 190 and order a new trial on liability and damages on the Fourth Amendment claims against Ingram, Dahl, Brown and Gammons, the County claims, and conversion;
3. amend the judgment under Rule 59(e) to vacate Docs. 110, 127, 145, 152 and 185 through 189 to the extent identified above and restore procedural due process, Snellgrove's Fourth Amendment and conspiracy claims, abuse of process and unjust enrichment for trial;
4. rule expressly on cumulative prejudice, the great-weight challenges, Reynolds's proffer, the authorized-disposition theory, separate accrual and the Rule 15 alternatives; and
5. grant all other relief to which Plaintiffs are entitled.

Exhibits A through D are attached and incorporated under Rules 43(c) and 59(c) and Federal Rule of Evidence 103(a)(2) in support of Reynolds's proffer and the prejudice from his exclusion.

**CERTIFICATE OF CONFERENCE**

Conference is not required under Local Rule CV-7(g) because this motion seeks a new trial and alteration or amendment of the final judgment and therefore constitutes a dispositive postjudgment motion.

**CERTIFICATE OF SERVICE**

I certify that on the date reflected by the Court's CM/ECF filing stamp, I electronically filed the foregoing motion, Exhibits A-D and accompanying proposed order with the Clerk of Court through CM/ECF, which will provide notice and service to all counsel of record registered to receive electronic service in this action.

Respectfully submitted,

/s/ Kurt Mueller

Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S Mason Rd PMB 223
Katy, Texas 77450
Telephone: (713) 360-2110
kurt@kurtmuellerpllc.com
ATTORNEY FOR PLAINTIFFS