**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **AUSTIN HAMBLIN and KISKA HAMBLIN,** *Plaintiffs*, | § § § | |
| **v.** | § § | **Civil Action No. 7:25-CV-00245-RCG** |
| **BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, and RORY GAMMONS, each in their individual capacities; MARTIN COUNTY, TEXAS; and BRIAN SNELLGROVE;** ***Defendants*.** | § § § § § | |

**MARTIN COUNTY, BRAD INGRAM, ANDERS DAHL, KELSEY BROWN, AND RORY GAMMONS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A NEW TRIAL, TO ALTER OR AMEND THE FINAL JUDGMENT, AND RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW**

Defendants Martin County, Texas, Brad Ingram, Anders Dahl, Kelsey Brown, and Rory Gammons (collectively, the "Martin County Defendants") file this Response in Opposition to Plaintiffs' Motion for a New Trial, to Alter or Amend the Final Judgment, and Renewed Motions for Judgment as a Matter of Law (Doc. 191), and respectfully show as follows:

## I. INTRODUCTION

1. Plaintiffs' omnibus post-judgment motion does not identify a basis for setting aside the jury's verdict or the Court's final judgment. It instead collects arguments that Plaintiffs made—or could have made—before judgment, including arguments that the Court already considered and rejected in separate post-verdict orders. *See* Doc. 191 at 2 (renewing, among others, Docs. 148, 151, 165, 166, and 169).

2. The jury heard the evidence, received instructions tailored to the surviving claims, and returned a defense verdict. As to each individual Martin County Defendant, the jury found that Plaintiffs had not proved that the Defendant personally participated in or caused an unreasonable

search or seizure not authorized by the warrant or valid consent. Doc. 163 at 1–2. Those answers left no predicate constitutional violation on which municipal liability against Martin County could rest. The Court thereafter denied Plaintiffs' renewed Rule 50 motion concerning Dahl, denied their challenge to the exclusion of Billy Reynolds, denied their efforts to revive claims withheld from the jury, and entered final judgment. Docs. 185–190.

3. Doc. 191 seeks to reopen nearly every stage of the litigation. Plaintiffs again challenge Dahl's alleged drawer searches, the exclusion of Reynolds, the Court's charge and evidentiary rulings, counsel's arguments, the sufficiency and weight of the evidence, and the pretrial or trial dismissal of additional claims and theories. They further seek a new trial against all four individual Martin County Defendants and Martin County, although much of the motion concerns claims against separately represented Defendant Brian Snellgrove, including conversion, abuse of process, and unjust enrichment. Doc. 191 at 12–13, 15–17, 20.

4. None of those grounds satisfies Rules 50(b), 59(a), or 59(e). The Rule 50 request concerning Dahl has already been adjudicated, Doc. 189 at 2–3, and remains inconsistent with the deferential standard governing a jury verdict. The Rule 59(a) arguments do not show that the verdict was against the great weight of the evidence, that any preserved error affected substantial rights, or that counsel's argument irreparably prejudiced the verdict. And Rule 59(e) does not authorize serial relitigation of arguments that were available before judgment.

5. The Court should deny Doc. 191 insofar as it seeks relief against Martin County, Ingram, Dahl, Brown, or Gammons. These Defendants take no position on relief directed exclusively to claims against another separately represented party except to the extent such relief would disturb the verdict, judgment, or prior rulings in their favor.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

6. The Court submitted Plaintiffs' Fourth Amendment claims against Ingram, Dahl, Brown, and Gammons under instructions requiring individualized proof that each Defendant personally participated in or caused an unreasonable search or seizure not authorized by the warrant or valid consent. Doc. 163 at 1–2; *see* Doc. 158 at 5–6. The charge separately required Plaintiffs to establish that Sheriff Ingram, acting as Martin County's final policymaker, made a deliberate choice that was the moving force behind a constitutional violation.

7. The jury answered "No" as to each officer on the threshold Fourth Amendment question. Doc. 163 at 1–2; Doc. 190 at 1–2. Under the verdict form's instructions, those answers ended the jury's consideration of the remaining constitutional questions, including qualified immunity, municipal liability, causation, and constitutional damages. *See* Doc. 190 at 2 (directing the jury, upon a "No" answer as to every Defendant, to skip to Question 11). The conversion questions concerned Snellgrove, not the Martin County Defendants. *Id.* (Questions 11–13).

8. Before entry of final judgment, Plaintiffs filed several post-verdict motions. Doc. 165 sought judgment as a matter of law against Dahl based principally on alleged drawer searches, or alternatively a new trial. The Martin County Defendants opposed that motion in Doc. 167. Plaintiffs separately filed Doc. 166 challenging the exclusion of Billy Reynolds, which the Martin County Defendants opposed in Doc. 170. Plaintiffs also sought reconsideration of other claims and theories before judgment through Docs. 148, 151, and 169.

9. On September 30, 2026, the Court denied Plaintiffs' renewed Rule 50 and Rule 59 motion concerning Dahl. Doc. 189. Examining the entire record in the light most favorable to the nonmovant, the Court found no facts "so strongly and overwhelmingly in the movant's favor" as to justify disturbing the jury's verdict. *Id.* at 3. It also found none of the recognized grounds for a new trial present. *Id.*

10. The Court separately denied Plaintiffs' challenge to Reynolds's exclusion. Doc. 188. It held that, even if the evidentiary ruling was in error, Plaintiffs had not shown an error affecting their substantial rights, noting its instruction that statements of counsel are not evidence. *Id.* at 2. The Court also denied Plaintiffs' motions concerning their abuse-of-process claim, the Court's ruling on their § 1983 Fourth Amendment and conspiracy claims against Snellgrove, and their unjust-enrichment claim. Docs. 185, 186, 187.

11. After the Court entered final judgment, Plaintiffs filed Doc. 191 on October 22, 2026. The motion invokes Rules 50(b), 59(a), and 59(e), renews numerous earlier motions and objections, and asks the Court to vacate the judgment, enter judgment against Dahl, order a new trial on claims against all Martin County Defendants, and restore claims and theories previously dismissed or withheld from the jury. Doc. 191 at 2, 20.

## III. LEGAL STANDARD

### A. Rule 50(b)

12. A Rule 50(b) motion challenges the legal sufficiency of the evidence supporting the jury's verdict. In deciding such a motion, the Court considers all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the nonmoving party. *Fairley v. Wal-Mart Stores, Inc.*, No. 15-462, 2017 U.S. Dist. LEXIS 111220, at *23 (E.D. La. July 18, 2017). Judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion. *Id.*; *see also Kilchrist v. Sika Corp.*, No. 3:10-CV-2567-B, 2012 U.S. Dist. LEXIS 118726, at *15–16 (N.D. Tex. Aug. 22, 2012).

13. A renewed Rule 50(b) motion is only a renewal of the preverdict Rule 50(a) motion; it therefore cannot assert a ground that the earlier motion omitted. *Isbell v. DM Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014).

**B. Rule 59(a)**

14. Rule 59 permits a new trial when the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). When the asserted ground is evidentiary weight, the verdict must be "against the great—not merely the greater—weight of the evidence." *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989) (quoting *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980)). That confining standard protects the jury's role as the principal trier of fact and ensures that the Court does not simply substitute its judgment for the jury's. *Id.* at 791.

15. The movant must also demonstrate harmful error. The Court must disregard an error in admitting or excluding evidence that does not affect a party's substantial rights, and the burden of showing such an effect rests with the movant. Fed. R. Civ. P. 61; *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 306–07 (5th Cir. 1978). An evidentiary ruling affects substantial rights only when it had a substantial effect on the outcome of the trial. *See Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 594 (5th Cir. 2016). And the erroneous exclusion of evidence is frequently harmless when the excluded evidence bears only on facts already established by other evidence in the record. *Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980).

**C. Rule 59(e)**

16. Rule 59(e) governs motions to alter or amend a final judgment. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam). It is "an extraordinary remedy that should be used sparingly," and it serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Relief may also be warranted by an intervening change in controlling law, but the rule "cannot be used to raise arguments which could, and should, have been made

before the judgment issued." *Pounds v. Katy Indep. Sch. Dist.*, 730 F. Supp. 2d 636, 641 (S.D. Tex. 2010) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003)). A manifest error is one that "is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Eckhardt v. Qualitest Pharms., Inc.*, 889 F. Supp. 2d 901, 912 (S.D. Tex. 2013) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)).

## IV. ARGUMENT

### A. Plaintiffs identify no basis to reconsider the Court's denial of their Dahl-specific Rule 50(b) and Rule 59 requests.

17. Insofar as it concerns the drawer searches, Doc. 191 presents substantially the same question the Court resolved in denying Doc. 165. *Compare* Doc. 191 at 5–7, *with* Doc. 165 at 1–2, 7–13. Plaintiffs again contend that Dahl opened tool-cabinet drawers that could not contain the two items expressly identified in the warrant and that consent did not independently authorize those acts. The Court rejected that contention after examining the entire record, observing that the verdict form did not require the jury to explain its answer and that the Court therefore could not know on what ground the jury found that Plaintiffs had failed to carry their burden. Doc. 189 at 3.

18. Nor was the verdict question limited to whether the warrant, standing alone, authorized an identified drawer opening. It asked whether Plaintiffs proved that Dahl "personally participated in or caused an unreasonable search or seizure that was not authorized by the warrant or valid consent." Doc. 163 at 1–2. The jury was instructed on personal participation, reasonableness, causation, warrant authority, and consent. *See* Doc. 158 at 5–6. Because the verdict form did not require the jury to explain its answer, Plaintiffs cannot establish that the jury accepted or rejected any single factual premise now isolated in Doc. 191. *See* Doc. 189 at 3.

19. The Court's summary-judgment order confirms that the justification for each drawer opening depended on when it occurred. For the first drawers Dahl opened, the Court left

to the jury whether he could reasonably have believed the plasma cutter would fit inside. Doc. 110 at 12–13 & n.6. For drawers opened after the warrant items had been located, it identified consent as the relevant exception, *id.* at 15, and it found genuine disputes about whether consent was given, limited, or withdrawn, by whom, when, and which officers heard any objection, *id.* at 13–16. Those consent questions were submitted to the jury, Doc. 163 at 1–2; *see* Doc. 158 at 5–6, and the general verdict does not reveal how the jury resolved them, Doc. 189 at 3.

20. Plaintiffs' renewed contention that counsel for the Martin County Defendants "rested the search on the warrant alone" in closing, Doc. 191 at 6, does not alter that analysis. Doc. 191 cites no transcript or other record support for that characterization. *See id.* at 6–7. In any event, the Court instructed the jury that "statements of counsel are not evidence; they are only arguments." Doc. 188 at 2 (quoting Doc. 158). Plaintiffs rely on *Montano v. Orange County*, 842 F.3d 865 (5th Cir. 2016), *see* Doc. 191 at 6–7, but the concession enforced there was an express factual admission: the county told the jury that the decedent "died because of medical negligence" and that "[t]he death is on our hands." *Montano*, 842 F.3d at 882–83. Plaintiffs identify no comparably definite concession here. Their account describes advocacy, not an express admission that consent did not exist or that Dahl lacked consent to open any particular drawer. The Court considered Plaintiffs' waiver contention when it denied Doc. 165 and was not persuaded to disregard the verdict. Doc. 189 at 2–3.

21. Doc. 191 identifies no intervening change in controlling law bearing on warrant scope, consent, or the sufficiency of the evidence against Dahl, no newly discovered evidence, and no manifest error of law or fact in the Court's September 30 ruling. It therefore supplies no proper Rule 59(e) ground for revisiting Doc. 189, and the Court should again deny both judgment as a matter of law against Dahl and a new trial concerning his alleged drawer searches. *See Templet*,

367 F.3d at 479.

**B. Rule 50(b) cannot support relief against Ingram, Brown, Gammons, or Martin County.**

22. A renewed Rule 50(b) motion cannot assert a ground omitted from the movant's Rule 50(a) motion. *Isbell*, 774 F.3d at 867. The limitation enables the trial court to reexamine an asserted evidentiary insufficiency, and alerts the opposing party to it, before the case is submitted to the jury, so that neither the court nor opposing counsel is ambushed after the verdict. *Id.* at 868.

23. Plaintiffs' earlier renewed Rule 50 motion sought judgment only on Anders Dahl's Fourth Amendment liability, and its factual theory concerned Dahl's alleged opening of tool-cabinet drawers. Doc. 165 at 1, 3, 15. Doc. 191 likewise seeks judgment as a matter of law only against Dahl; its requests concerning Ingram, Brown, Gammons, and Martin County rest on Rules 59(a) and 59(e). Doc. 191 at 7, 19–20. To the extent any portion of Doc. 191 could be read to seek judgment as a matter of law against those Defendants, no such ground was preserved.

24. To the extent Doc. 191 relies on the joint-action evidence it describes—plate checks, text messages, the loading of property, and later disposition—as a basis for judgment as a matter of law, the same limitation forecloses that use. Doc. 191 at 18–19. By Plaintiffs' own description, their Rule 50(a) motion concerning Dahl addressed his opening of closed tool-cabinet drawers, not joint action. Doc. 165 at 3. A renewed motion may not pivot to a materially different theory after the jury has returned its verdict. *Isbell*, 774 F.3d at 867–68.

25. The same is true of Plaintiffs' new plain-view argument concerning items seized from the home. Doc. 191 now contends that "[n]othing about a bicycle, a fish tank, or household tray tables is immediately apparent evidence of an allegedly stolen plasma cutter," and that Snellgrove's claim to items bearing the Snap-on name did not supply probable cause item by item. Doc. 191 at 7. That is a challenge to the *seizure* of particular household property. By Plaintiffs' own account, however, their Rule 50(a) motion identified a different act: Dahl's opening of closed

tool-cabinet drawers that could not contain either warrant item. Doc. 165 at 3. Plaintiffs' earlier renewed motion likewise invoked plain view only to argue that it could not justify opening those drawers. *Id.* at 10–11. The Court's summary-judgment order does not change that analysis. The Court found *Creamer* more analogous than *Alexander* and questioned whether the incriminating character of particular items was immediately apparent, but it left to the jury which items were seized in plain view, where they were found, and how consent bore on each seizure. Doc. 110 at 16–23. That ruling identified factual disputes for trial; it did not relieve Plaintiffs of the need to raise a seizure-based plain-view ground in their Rule 50(a) motion. Nor does Doc. 191 identify evidence that Dahl personally seized the bicycle, fish tank, or tray tables, as the individualized verdict question would require. General evidence that officers helped load or unload seized property, *see* Doc. 191 at 18; Doc. 110 at 28, 37, does not tie Dahl to the seizure of any of those particular items. *See* Doc. 163 at 1–2. Because the seizure-based plain-view theory was not presented in the preverdict motion, it cannot support judgment as a matter of law now. *Isbell*, 774 F.3d at 867–68.

26. Martin County's liability, moreover, depended on the submitted constitutional predicate and a deliberate policymaking choice attributable to Sheriff Ingram, and the jury answered "No" as to every individual Martin County Defendant on the threshold Fourth Amendment question. Doc. 163 at 1–2. Any request for judgment as a matter of law against the County, Ingram, Brown, or Gammons should therefore be denied as unpreserved and unsupported by the verdict and charge.

**C. The verdict is not against the great weight of the evidence.**

27. Rule 59(a) permits the Court to weigh the evidence, but not to set aside the verdict merely because another result was possible; the jury retains the power "to believe or disbelieve portions of the testimony of various witnesses." *Scott*, 868 F.2d at 791 (quoting *Conway*, 610 F.2d

at 367).

28. Plaintiffs' motion emphasizes evidence favorable to their theory—the two-item language in the warrant, body-camera footage, ownership documents, text messages, the property inventory, and testimony concerning delivery or later disposition. *See* Doc. 191 at 5–8, 12–13, 18–19. But the existence of evidence supporting Plaintiffs does not establish that the verdict was contrary to the great weight of the whole record.

29. The charge required individualized findings concerning each officer's conduct, and it required Plaintiffs to prove an unreasonable search or seizure not authorized by the warrant or valid consent. Doc. 163 at 1–2. Plaintiffs' post-judgment presentation aggregates distinct acts, actors, and time periods, including alleged events occurring months after the search, such as the asserted fall 2023 release of property. Doc. 191 at 13, 15–16. That presentation does not demonstrate that the jury's answers, considered Defendant by Defendant, were against the great weight of the evidence.

30. Plaintiffs' plain-view argument illustrates the point. Doc. 191 contends that nothing about a bicycle, a fish tank, or household tray tables was immediately apparent evidence of theft, Doc. 191 at 7, but it does not identify which Martin County Defendant seized any of those items. *See id.* at 1 (attributing the loading of property to "[d]eputies"), 18 (asserting, without record citation, that Dahl helped load property); Doc. 163 at 1–2. Evidence that officers helped load or unload property generally, *see* Doc. 110 at 28 (noting disputed testimony about who loaded the property), 37 (noting evidence that Ingram and Dahl helped offload it at Snellgrove's barn), does not establish which Defendant seized which challenged item. The argument also rests on Reynolds's post-trial affidavit, Doc. 191 at 7 (citing Ex. B ¶ 9(a)–(b)), which was not before the jury, *see Scott*, 868 F.2d at 791, and which does not fully support the facts for which Plaintiffs cite

it. Paragraph 9(a) states that Austin Hamblin was "reportedly one of Snellgrove's top salesmen," not that he was a nationally recognized "top 100 salesman," and paragraph 9(b) addresses proof of ownership "at the time of the report," not at the time of seizure. Doc. 191-2 ¶ 9(a)–(b); *cf.* Doc. 191 at 7.

31. Doc. 191's description of Dahl's testimony is similarly unsupported. It asserts, without citation, that Dahl acknowledged "that the officers should not have taken the property at issue." Doc. 191 at 8. Plaintiffs' own earlier description of that testimony was narrower: Dahl agreed that, *absent consent*, seizure beyond the two warrant items would exceed the warrant. Doc. 165 at 1–2, 4. A conditional answer of that kind does not establish that the verdict was against the great weight of the evidence on a question that the charge expressly tied to "the warrant or valid consent." Doc. 163 at 1–2.

32. The Court has already applied the Rule 59 standard to the Dahl claim, Reynolds's exclusion, and Plaintiffs' abuse-of-process motion, and it found none of the recognized grounds for a new trial. Doc. 189 at 3; Doc. 188 at 2; Doc. 187 at 2. Although Doc. 191 purports to add certain new-trial grounds, *see* Doc. 191 at 2, it repackages rejected positions. Plaintiffs' disagreement with the jury's assessment does not warrant a second trial.

**D. The exclusion of Billy Reynolds does not justify a new trial.**

33. Even assuming error, the question is not whether Reynolds's proposed testimony had some conceivable relevance, but whether its exclusion substantially affected the jury's answers on the claims against these Defendants. Fed. R. Civ. P. 61; *Moench*, 838 F.3d at 594.

34. Reynolds did not participate in the May 17, 2023 search. Plaintiffs themselves describe his involvement as beginning after Sheriff Cozart took office in October 2024—approximately seventeen months later—and as concerning later searches for records, recordings, inventories, custody materials, and property. Doc. 166 ¶¶ 1–2, 8–11; Doc. 166-1 at 1–2. The

affidavit Plaintiffs now attach confirms that he "was not involved in the original investigation or execution of the search warrant" and that his knowledge "is based solely on [his] review of the case file, video, and related documents." Doc. 191-2 ¶ 12. Testimony of that kind could not supply firsthand proof of what any particular Defendant searched or seized, what consent was given or withdrawn, or what information each officer possessed during the challenged events.

35. The jury did not find a constitutional violation and then reject damages because property records or later recovery efforts were inadequate. It found that Plaintiffs failed at the threshold Fourth Amendment question. Doc. 163 at 1–2. Reynolds's later review therefore did not supply proof of the contemporaneous, individualized conduct on which those answers turned.

36. Doc. 191 also attributes to Reynolds's materials more than they say. The file held documents "appearing to show" ownership, not documents "showing" it; Reynolds reported that the Sheriff's Office "no longer had possession of the property," not that it "was gone"; Snellgrove claimed items bearing the Snap-on name, not "whatever he wanted"; and Exhibit C—offered as part of "the only neutral account"—introduces its narrative as the Hamblins' own "written statement of the facts." *Compare* Doc. 191 at 1, 10, 13–14, *with* Doc. 191-2 ¶¶ 8, 9(e), 10, *and* Doc. 191-3 at 1. Reynolds's affidavit even describes the warrant as listing a plasma cutter and a "welder," Doc. 191-2 ¶ 9(c), whereas Plaintiffs have quoted it as identifying a plasma cutter and an air compressor, Doc. 165 at 3. After-the-fact review of that kind was no substitute for firsthand proof on the questions the jury decided.

37. The Court has already held that, even assuming error, Reynolds's exclusion did not affect Plaintiffs' substantial rights. Doc. 188 at 2. Doc. 191 does not show that this holding was a manifest error, and Rule 59(e) does not permit Plaintiffs to expand an earlier proffer with material available before judgment. Three of the four exhibits are dated in 2025, well before the August

2026 trial, and the fourth is an affidavit from a witness whom Plaintiffs designated before trial and whose account they could have presented earlier. Docs. 191-1 to 191-4; Doc. 166 ¶ 9. Doc. 191 also adds a subject—Reynolds's October 2025 report concerning a hard drive missing from Snellgrove's laptop, Doc. 191 at 11—that appears nowhere in Plaintiffs' earlier proffer, *see* Doc. 166 ¶ 11; Doc. 166-1 at 1–3, and that report would not have run in only one direction: it records the statement of Snellgrove's employee that the laptop contained information that "completely proves [Hamblin] took items from Snellgrove," Doc. 191-1 at 5. *See Templet*, 367 F.3d at 479; *Pounds*, 730 F. Supp. 2d at 641.

**E. Plaintiffs have not established that counsel's arguments irreparably prejudiced the verdict.**

38. The Court may order a new trial if improper closing argument irreparably prejudices the verdict. *Heckman v. Gonzalez-Caballero*, 65 F.4th 222, 226–27 (5th Cir. 2023); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988). In making that determination, the Court considers the record as a whole rather than isolated remarks, *Heckman*, 65 F.4th at 226–27, and reviews the argument "within the context of the court's rulings on objections, the jury charge, and any corrective measures applied by the trial court," *Nissho-Iwai*, 848 F.2d at 619 (quoting *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir. 1985) (per curiam)).

39. A failure to object timely is consequential. A party that does not object to an opponent's closing argument, and instead elects to answer it in rebuttal, may be barred from urging that argument as a ground for a new trial after an adverse verdict. *Nissho-Iwai*, 848 F.2d at 619. And even when a party objects to argument that is conceded to be improper, a new trial is not necessarily required where the party does not move for a mistrial and the court gives a corrective instruction, because the trial judge is well positioned to assess the remark's effect on the jury. *See*

*Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 781–82 (5th Cir. 1983). Failure to move for a mistrial does not categorically foreclose Rule 59 relief, but it weighs against granting a new trial. *Banner v. Wright*, No. 25-30381, 2026 U.S. App. LEXIS 31514, at *12–14 (5th Cir. Oct. 16, 2026) (per curiam); *Caldarera*, 705 F.2d at 782.

40. Doc. 191 points to references to redaction boxes, an invitation to jurors to "use their imagination," and counsel's alleged discussion with an individual juror about a shared automobile repair. Doc. 191 at 8–9. It cites no transcript or other record support for these characterizations, or for its assertions that defense counsel raised excluded subjects in opening statement and was later admonished. *See id.* And identifying objectionable rhetoric is not the same as demonstrating irreparable prejudice affecting the verdict against these Defendants.

41. Doc. 191 does not show that each challenged remark drew a timely, specific objection followed by an unsuccessful request for an effective remedy. To the contrary, Doc. 191 acknowledges that the Court indicated in chambers that counsel could make the "use your imagination" argument, and it contends, in the alternative to its claim of preservation, that permitting the argument was plain error. Doc. 191 at 8, 10. Where no objection was made to closing argument, review is for plain error, and relief requires an error that is plain, that affects substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Isbell*, 774 F.3d at 872.

42. The Court instructed the jury that counsel's statements were not evidence, Doc. 188 at 2 (quoting Doc. 158), and juries are presumed to follow the court's instructions, *Heckman*, 65 F.4th at 228. The Court relied on that instruction when it previously rejected Plaintiffs' argument that closing remarks about whether Plaintiffs behaved like victims rendered Reynolds's exclusion harmful. Doc. 188 at 2.

43. *Banner* does not support a different result. Doc. 191 invokes *Banner* for the proposition that cumulative prejudice can defeat any fair assurance that the verdict was unaffected. Doc. 191 at 10. But the Fifth Circuit ordered a new trial in *Banner* on a record in which the district court itself had catalogued thirty-eight instances of defense misconduct, the plaintiff had timely objected to that conduct, numerous objections had been sustained, the court had repeatedly intervened sua sponte, and counsel had persisted in violating express rulings throughout trial. *Banner*, 2026 U.S. App. LEXIS 31514, at *4–10, *13, *15–17. The court required misconduct "so pronounced and persistent that it permeates the entire proceeding." *Id.* at *15 . Doc. 191 identifies, without record citation, a handful of remarks and references, and it does not show the timely objections, sustained rulings, or repeated disregard of the Court's directives that drove the result in *Banner*. *See* Doc. 191 at 8–10.

44. Plaintiffs also combine remarks attributed to different counsel representing different parties. The "real victims" argument was attributed to Snellgrove's separate counsel, not counsel for the Martin County Defendants. Doc. 166 ¶ 14; Doc. 170 ¶ 27. Collecting remarks from across the trial, and assuming that the jury disregarded the Court's instructions, does not establish irreparable prejudice against five distinct Martin County Defendants.

**F. Plaintiffs' instructional challenges are either unpreserved or harmless.**

45. A party assigning instructional error must state distinctly the matter objected to and the grounds for the objection; general objections do not preserve error. *Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003). An unpreserved instructional challenge is reviewed for plain error, which requires an error that is clear or obvious, that affects substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 668; *Therapy Corp. of Am. v. City of Texarkana*, No. 02-40565, 2003 U.S. App. LEXIS 29641, at *3 (5th Cir. Feb. 24, 2003) (per curiam) (unpublished).

46. Doc. 191 broadly renews requested instructions, verdict submissions, and objections concerning dismissed claims, conspiracy, joint action, warrant authority, consent, and municipal theories. Doc. 191 at 4, 18. That wholesale incorporation does not itself demonstrate that Plaintiffs made a timely, distinct objection to each asserted defect or that the Court definitively rejected the precise requested language.

47. More fundamentally, Plaintiffs do not show that the instructions actually given misstated the law governing the claims submitted against these Defendants. The charge required individualized proof, addressed warrant scope and consent, and separately defined the municipal-liability question. *See* Doc. 163 at 1–2; Doc. 158 at 5–6. Nor do Plaintiffs establish that any alleged defect affected the result. *See Taita*, 351 F.3d at 667 (explaining that even an erroneous instruction does not warrant reversal if the error "could not have affected the outcome of the case").

**G. Rule 59(e) does not permit Plaintiffs to restore previously dismissed claims and theories.**

48. Rule 59(e) relief is extraordinary, and it may not be used to raise arguments that could and should have been made before judgment. *Templet*, 367 F.3d at 479; *Pounds*, 730 F. Supp. 2d at 641. Doc. 191 seeks to revive procedural due process, conspiracy and joint-action theories, additional municipal-liability theories, abuse of process, unjust enrichment, and other claims addressed in pretrial or trial rulings. Doc. 191 at 13–20. Other than *Banner*, which concerns trial misconduct and is addressed above, Doc. 191 identifies no intervening change in controlling law, and it identifies no newly discovered evidence material to those rulings.

49. The Court considered and denied Plaintiffs' prior efforts to restore their Fourth Amendment and conspiracy theories against Snellgrove, their abuse-of-process claim, and their unjust-enrichment claim. Docs. 185, 186, 187. Plaintiffs' present joint-action narrative relies principally on trial testimony, admitted text messages, and facts known before judgment. Doc. 191 at 18–19. Rule 59(e) does not provide another round of merits briefing on that existing material.

50. The factual premises Doc. 191 offers for these theories also outrun the record it cites. It asserts that Dahl and Ingram "later authorized Snellgrove to return the property to his sellable inventory," and that, "[b]y Snellgrove's account, Ingram personally authorized the release." Doc. 191 at 18–19. Neither assertion carries a record citation. And Plaintiffs' own pre-judgment description of the same testimony attributed the release to "the Sheriff's Office" and to a "later Sheriff's Office communication permitting release," without identifying Ingram or Dahl as its source. Doc. 169 at 1–2; *see id.* at 6. An uncited characterization that departs from Plaintiffs' own earlier account does not establish a manifest error of law or fact in the Court's disposition of the procedural-due-process claim, the related County predicate, or the conspiracy and joint-action theories that Doc. 191 seeks to restore. *See* Doc. 191 at 19.

51. The Court's summary-judgment rulings on conspiracy do not supply the missing ground. The Court found evidence that Snellgrove could be treated as a state actor and allowed the Fourth Amendment conspiracy claim against Ingram and Dahl to proceed past summary judgment, while granting summary judgment on the conspiracy claim against Brown, Gammons, and Phelps. Doc. 110 at 23–26, 33–39. Surviving summary judgment, however, is not a determination that a claim must be submitted to the jury on the trial record. And as the Court explained, a § 1983 conspiracy claim requires an actual deprivation of constitutional rights in furtherance of the conspiracy; it cannot exist without an underlying violation. *Id.* at 33 (citing *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019)). The jury found that Plaintiffs had not proved that Ingram or Dahl personally participated in or caused an unreasonable search or seizure. Doc. 163 at 1–2. Doc. 191 does not identify the unconstitutional search or seizure, distinct from the conduct the jury considered under those questions, that a restored conspiracy theory would place before a new jury as against these Defendants. *See* Doc. 191 at 18–19.

52. The procedural-due-process ruling rests on a separate ground that Doc. 191 does not show to be manifestly erroneous. At summary judgment, Plaintiffs argued that pre-deprivation process was required because the deprivation was planned rather than random, and that a post-deprivation hearing would not have been meaningful because the property was already in Snellgrove's warehouse. Doc. 110 at 29, 31. The Court acknowledged possible noncompliance with Texas statutes governing the warrant return and the disposition of allegedly stolen property, but it held that Plaintiffs had notice of the seizure and a meaningful opportunity to be heard through the Texas procedure available after the indictment was dismissed, which they did not invoke. *Id.* at 30–33. Doc. 191 renews the same premises, Doc. 191 at 13–15, and Plaintiffs had previously sought reconsideration of the same ruling, *see id.* at 2 (renewing Doc. 123). Disagreement with the Court's due-process analysis, repeated after final judgment, does not establish manifest error. *See Templet*, 367 F.3d at 479.

53. The County theories require similar precision. The Court allowed municipal liability to proceed only under the theory that Sheriff Ingram, as final policymaker, committed or participated in the violation, Doc. 110 at 40–41, 44–45, and the jury's answers left no predicate Fourth Amendment violation on that theory, Doc. 163 at 1–2; *see* Doc. 110 at 39 (no municipal liability without an underlying constitutional violation). The Court rejected the remaining theories on independent grounds: the absence of the extreme circumstances that ratification requires, the absence of a pattern of similar violations or of evidence that the officers received no training, and the absence of evidence that any omission in written policy was an intentional choice. Doc. 110 at 41–44. Doc. 191 asserts only that restoring the constitutional predicates "changes the analysis of each," Doc. 191 at 18, without addressing those grounds. The Court should decline to amend the judgment to restore previously dismissed claims or theories against these Defendants.

**H. Cumulative-error rhetoric does not cure the absence of prejudicial error.**

54. Plaintiffs combine Reynolds's exclusion, alleged closing misconduct, references to redactions, an alleged juror-directed anecdote, disputed instructions, and rulings on claims not submitted to the jury. But aggregation cannot substitute for proof that any identified ruling was erroneous, preserved, and affected substantial rights. *See* Fed. R. Civ. P. 61.

55. The alleged errors also concern materially different issues: a successor administration's later investigation, counsel's characterization of the evidence, and separate legal rulings on claims not submitted. Plaintiffs do not explain how those matters collectively overcame the admitted evidence, the charge's individualized requirements, or the jury's separate "No" answers as to every officer. They therefore have not shown that cumulative prejudice deprived them of a fair trial.

**I. Plaintiffs have not justified the retrial they request, in whole or in part.**

56. Rule 59 permits a new trial "on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A partial retrial is proper only when the issue to be retried is "so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). In either event, the inquiry proceeds against the deference owed to the jury as the principal trier of fact. *See Scott*, 868 F.2d at 789.

57. Plaintiffs seek a retrial encompassing the Fourth Amendment claims against four officers, the County claims, and conversion, together with restored federal and state-law claims. Doc. 191 at 20. Yet the issues of warrant scope, consent, personal participation, contemporaneous information, causation, qualified immunity, policymaker conduct, and damages were integrated in the trial and charge. The Martin County Defendants identified that interdependence when opposing a Dahl-only retrial. Doc. 167 ¶ 41.

58. Plaintiffs themselves acknowledge that the claims they seek to retry "share the same

search, the same property and the same release." Doc. 191 at 20. That acknowledgment confirms the interdependence of the issues; it does not supply the prejudicial error that any retrial would require. And insofar as Plaintiffs alternatively request a narrower retrial of the Fourth Amendment and County claims, Doc. 191 at 7–8, they do not establish that those issues can be tried apart from conversion—which was submitted against separately represented Snellgrove—or that the individualized findings concerning four officers and a distinct municipal predicate can be retried in selected combinations without disturbing favorable findings or producing inconsistent determinations. Plaintiffs therefore have not justified the sweeping new trial they request against the Martin County Defendants.

## V. CONCLUSION AND PRAYER

59. The jury returned a defense verdict after a full trial. The Court then considered and denied Plaintiffs' separate motions challenging the verdict as to Dahl, Reynolds's exclusion, and the disposition of additional claims. Doc. 191 identifies no preserved prejudicial error, no verdict against the great weight of the evidence, no proper new ground under Rule 50(b), and no extraordinary circumstance warranting amendment of the final judgment under Rule 59(e).

60. The Martin County Defendants respectfully request that the Court deny Plaintiffs' Motion for a New Trial, to Alter or Amend the Final Judgment, and Renewed Motions for Judgment as a Matter of Law (Doc. 191) insofar as it seeks relief against Martin County, Brad Ingram, Anders Dahl, Kelsey Brown, or Rory Gammons; preserve the verdict and final judgment in their favor; and deny all other relief against them requested in Doc. 191.

Respectfully submitted,

*<u>/s/ Denis Dennis</u>*
DENIS DENNIS
State Bar No. 05655566
BENJAMIN PETTY

State Bar No. 24105934
OF
KELLY, MORGAN, DENNIS,
CORZINE & HANSEN, P.C.
P.O. Box 1311
Odessa, Texas 79760-1311
(432) 367-7271 / FAX: (432) 363-9121
ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Benjamin Petty*
BENJAMIN PETTY