**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND / ODESSA DIVISION**

| | | |
|---|---|---|
| AUSTIN HAMBLIN and<br>KISKA HAMBLIN,<br>Plaintiffs, | §<br>§<br>§<br>§ | |
| v. | § | Civil Action No. 7:25-cv-00245-RCG |
| MARTIN COUNTY, TEXAS, et al.,<br>Defendants. | §<br>§<br>§ | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A NEW TRIAL, TO ALTER OR AMEND THE FINAL JUDGMENT, AND RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW**

Plaintiffs reply to Docs. 192 and 193 in support of Doc. 191. The responses leave three central errors unresolved: they treat the verdict as deciding issues never separately submitted, treat notice of the original seizure as sufficient process for a later private disposition, and treat the existence of a jury instruction as dispositive of trial prejudice. Plaintiffs request the relief specified in Doc. 191 under the distinct standards governing Rules 50(b), 59(a), and 59(e).

**I. The responses conflate the standards governing the requested relief**

The renewed Rule 50(b) request concerns Dahl alone and the drawer searches preserved in Doc. 165. Plaintiffs do not seek new Rule 50 relief against other defendants or enlarge that request through the later-release theory. The alternative Rule 59(a) motion requires a separate inquiry. The Court may weigh the evidence without favoring the verdict winner and may grant relief for an unfair trial even when legally sufficient evidence supports the verdict. *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 269-70 & n.2 (5th Cir. 1998).

Rule 59(e) also permits correction of manifest legal or factual error; new evidence is not indispensable to that ground. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). The errors identified in the motion and this reply concern the operative deprivation, the meaning

of the actual verdict, and the governing prejudice analysis. They warrant consideration on their merits.

**II. The verdict did not affirmatively establish Snellgrove's ownership**

Snellgrove argues that Plaintiffs had to prove "clear" ownership and that the jury found the property belonged to him. Doc. 193 at 2-4. Texas conversion law recognizes alternatives: ownership, legal possession, or entitlement to possession. *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386-87 (Tex. App.-Houston [14th Dist.] 2015, no pet.). The actual verdict likewise used "owned, possessed, or had the right to possess." Doc. 190 at 2.

Question 11 asked whether Snellgrove "lawfully obtained possession" on May 17, 2023, of property in which Plaintiffs had one of those interests. Its negative answer does not identify whether the jury rejected lawful acquisition, Plaintiffs' interests, or another component of the compound proposition. Questions 12 and 13 asked whether Snellgrove converted property; neither separately resolved title. A negative answer reflects a failure of proof on the proposition submitted, not an affirmative finding of its converse. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966).

These answers do not supply findings that every item belonged to Snellgrove, that a later release was time-barred, or that Plaintiffs received constitutionally sufficient process. The County itself recognizes that a general verdict does not disclose its rationale. Doc. 192 ¶ 18. The conversion weight challenge requires consideration of the particular evidence identified in Doc. 191 at 12-13: Plaintiffs' Trial Exhibits 13, 14, and 31, Snellgrove's acknowledgment that some property belonged to Austin, records postdating the seizure, and entries lacking an item-specific connection. The volume of Snellgrove's records does not resolve those deficiencies.

**III. The later official release required a separate due process analysis**

Count 2 alleged transfer and control of disputed property without notice or an ownership proceeding. Doc. 74 ¶¶ 115-122. Doc. 191 at 13-15 identifies the further deprivation: the fall 2023 release from evidentiary custody for Snellgrove's private disposition, before the criminal case ended in November 2024. Notice that officers seized property in May 2023 did not notify Plaintiffs that officials would later relinquish custody and permit its sale. A lawful initial seizure would not itself resolve the process due before that later decision.

The relevant distinction under *Zinermon v. Burch*, 494 U.S. 113, 136-39 (1990), is whether the deprivation was foreseeable, predeprivation safeguards were practicable, and officials had delegated authority over the deprivation and the safeguards. Here, Plaintiffs identify an official custody and release decision by those entrusted with the property, rather than an unpredictable loss. In *Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 821-23 (5th Cir. 2007), the Fifth Circuit rejected reliance on postdeprivation remedies for a predictable disposal of property by responsible officials without adequate notice. The asserted release here warrants that analysis.

Texas law reinforces the practicality of judicial safeguards. When ownership is contested, as alleged here, article 47.01(a) requires an officer possessing allegedly stolen property to hold it subject to the proper court's order. Article 47.01a(a) only supplies a restoration procedure when no criminal action is pending. Tex. Code Crim. Proc. arts. 47.01(a), 47.01a(a). The latter remedy did not provide an opportunity to prevent the alleged fall 2023 release while the prosecution remained pending. The constitutional question is whether adequate process preceded that planned disposition, not simply whether Plaintiffs later invoked a state remedy. See *Greene v. Greenwood Public School District*, 890 F.3d 240, 243 & n.6 (5th Cir. 2018).

*City of West Covina v. Perkins*, 525 U.S. 234, 240-41 (1999), holds that officials need not explain published return remedies after a known seizure. *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 237-39 (Tex. 2011), applied that principle and placed the burden on the claimant to initiate Chapter 47 proceedings. But VSC had a statutory avenue available immediately after seizure. Id. at 237. Here, reliance on article 47.01a must account for the pending prosecution and the intervening private disposition. Plaintiffs seek process before that planned disposition, not instructions about published law. Neither decision establishes that article 47.01a supplied timely process for the alleged fall 2023 release. Their protected interest also need not be undisputed full title. *Fuentes v. Shevin*, 407 U.S. 67, 86-87 (1972).

Plaintiffs identified substantial testimony concerning Ingram's and Dahl's authorization of the later release in Doc. 191 at 18-19. The earlier shorthand reference to the "Sheriff's Office" does not itself establish that no responsible official made that decision. The Court should evaluate the release testimony under the distinct constitutional theory presented. Reynolds's later account is not offered as firsthand proof of who authorized the release.

Plaintiffs' direct-decision theory requires evidence that Ingram made the challenged decision as the County's final policymaker in the relevant area. A qualifying decision can itself constitute municipal policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986). Doc. 191 at 19 identifies that basis independently of training or ratification. The jury's rejection of the submitted Fourth Amendment claim does not resolve this distinct constitutional predicate, which was not fully presented for submission to the jury.

**IV. Reynolds's firsthand corroboration was not supplied by argument instructions**

The County argues that Reynolds did not witness the original search. Doc. 192 at 11-13. However, his firsthand testimony concerned different events: his dealings with Plaintiffs, their

requests for return, his review of the office's file, and his communication that the office no longer possessed the property. Doc. 191-2 ¶¶ 7-10. Rule 602 permits testimony about those personal activities. The relevance of that factual testimony does not depend on admitting his legal conclusions, treating every reviewed document as true, or accepting an opinion about the original officers' knowledge.

The affidavit was signed and notarized June 8, 2026, before trial. Doc. 191-2 at 3. It describes documents "appearing to show ownership," not an adjudication of title. Id. ¶ 8. Plaintiffs rely on the substance made known when exclusion was sought, as renewed in Doc. 166, rather than treating later-filed attachments as evidence the jury heard or as an automatic enlargement of the proffer. Fed. R. Evid. 103(a)(2).

In *Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980), excluded evidence duplicated testimony already supplied by a neutral investigator and the defendant's chief engineer. Here, Plaintiffs' own account did not necessarily supply the equivalent of an officer's independent confirmation of their requests and his response. That distinction matters because the defense challenged whether Plaintiffs behaved as victims seeking police assistance, the very prejudice addressed in Doc. 188 at 2. An instruction that argument is not evidence cannot supply the missing corroboration. Nor can the threshold verdict establish harmlessness by assuming the jury would make the same credibility assessments after hearing the excluded testimony.

**V. Prejudice must be assessed in the context of the entire trial**

The County distinguishes *Banner* by counting thirty-eight instances of misconduct there. Doc. 192 at 15. But *Banner* rejects a fixed numerical threshold and recognizes that even one sufficiently prejudicial incident may require a new trial. *Banner v. Wright*, No. 25-30381, slip op. at 12-13 & n.10 (5th Cir. Oct. 16, 2026). It also rejects a categorical requirement that counsel

first request a mistrial. Id. at 9-10. The pertinent inquiry remains the nature, context, preservation, and effect of the challenged conduct.

Doc. 191 at 8-10 identifies the conduct: references to excluded subjects, the invitation to "use their imagination" about redacted material, and counsel's personal appeal to an individual juror through a shared car-repair anecdote. Plaintiffs ask the Court to evaluate those events against its rulings and the trial record. Their alleged effect is concrete: inviting an adverse assessment of Plaintiffs' credibility based on excluded or extrarecord material while the jury decided consent, ownership, and the parties' competing accounts. Separate defense counsel and individualized liability questions do not eliminate the effect of those attacks on the common jury.

A general instruction is relevant, but not conclusive. *Clapper v. American Realty Investors, Inc.*, 95 F.4th 309, 314-16 & 316 n.2 (5th Cir. 2024), assessed improper arguments collectively and found instructions and corrective measures insufficient in context. Here, the instruction must be considered alongside the challenged permission described in Doc. 191 at 8 and the exclusion of independent corroboration. The asserted errors share a specific mechanism of prejudice; Plaintiffs do not contend that aggregating harmless complaints automatically creates reversible error.

Preservation must likewise be assessed event by event. A definitive evidentiary ruling on the record requires no renewed objection. Fed. R. Evid. 103(b). For argument the Court finds unpreserved, Plaintiffs invoke the narrower plain-error standard. *Isbell v. DM Records, Inc.*, 774 F.3d 859, 872-73 (5th Cir. 2014). The invitation to speculate was expressly presented on that basis in Doc. 191 at 8. The Court's permission to make the argument does not resolve whether the ruling was erroneous. Plaintiffs contend that inviting speculation about court-excluded material was clear or obvious error under Rule 103, affected credibility determinations central to

liability, and seriously affected the fairness of the proceeding both in isolation and when considered as part of the whole. That alternative warrants assessment alongside the preserved grounds.

**VI. Dahl's preserved drawer searches require review under both Rules 50 and 59**

Doc. 189 at 2 recognizes the body-camera evidence of Dahl opening drawers that he acknowledged could not hold the warrant's objects. Doc. 165 at 3 identifies the particular footage: Plaintiffs' Trial Exhibit 1 at 08:10:32 and 08:10:42, and Exhibit 2 at 10:51:03, 10:52:16, 10:59:13, and 10:59:25, using native timestamps. The warrant itself identified a plasma cutter and an air compressor. County Trial Ex. 1; Doc. 165 at 3.

The County's distinction between earlier and later searches does not answer the spatial limit. Doc. 192 at 6-7. A warrant reaches only places capable of containing its described objects. *United States v. Ross*, 456 U.S. 798, 820-21, 824 (1982). *Creamer v. Porter*, 754 F.2d 1311, 1318-19 (5th Cir. 1985), applied that principle to drawers incapable of containing the televisions sought. Whether officers had already located the two objects does not make an otherwise undersized drawer a permissible search location.

Consent therefore requires independent evidentiary support. Submission to asserted warrant authority alone does not establish voluntary consent. *Bumper v. North Carolina*, 391 U.S. 543, 548-50 (1968). Any actual consent must objectively extend to the challenged search. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Plaintiffs' preserved motion identifies the recorded conduct and absence of affirmative authorization on which they rely. Doc. 165 at 11-12. The Court should assess whether the evidence permits a reasonable finding of voluntary consent encompassing those drawers, rather than infer consent merely because officers were executing a warrant.

The alternative admission argument concerns counsel's express characterization of consent as a "red herring," not merely his emphasis on the warrant. Doc. 165 at 5-6. This amounts to waiver and forfeiture of consent as a valid ground for the jury's consideration. *Montano v. Orange County*, 842 F.3d 865, 882-83 (5th Cir. 2016), requires attention to the actual admission and its context. Even if that argument fails, the warrant and consent evidence remain subject to review. The general verdict does not foreclose Rule 50 review, and denying JMOL does not dispose of the separate great-weight and unfair-trial grounds under Rule 59.

**VII. The remaining grounds turn on the particular later act and claim**

Snellgrove treats May 17, 2023, as the only possible accrual date. Doc. 193 at 3-4. Plaintiffs identify a distinct fall 2023 decision changing asserted evidentiary custody into private authority to dispose of the property. An unauthorized sale following initially lawful bailment can itself constitute conversion. *Presley v. Cooper*, 284 S.W.2d 138, 140-41 (Tex. 1955). As noted previously, this same additional accrual date also implicates the fourth and fourteenth amendment causes of action (as well as the derivative conspiracy claim). Federal accrual requires awareness of the injury and its causal connection. *Piotrowski v. City of Houston*, 237 F.3d 567, 576-77 (5th Cir. 2001). The asserted fall 2023 act occurred within two years of Snellgrove's June 2025 joinder and requires its own analysis.

Plaintiffs preserve their contention that the affirmative release for private sale constituted a further Fourth Amendment interference with their possessory rights. *United States v. McRae*, 702 F.3d 806, 832-33 (5th Cir. 2012), left the reach of that Amendment beyond initial dispossession unresolved; it did not foreclose the theory. The separate due process claim does not depend on resolving that question. Snellgrove's alleged participation in the official release

also requires assessment as joint action, not merely as a private sale. See *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

The amendment alternatives are also distinct. Rule 15(c)(1)(B) addresses a theory arising from a transaction already pleaded; Rule 15(c)(1)(C) adds requirements for changing defendants. Rule 15(b)(2) requires actual recognition that an issue was being tried and an opportunity to meet it; overlapping evidence alone does not establish consent. *United States v. Shanbaum*, 10 F.3d 305, 312-13 (5th Cir. 1994). Plaintiffs request consideration of the preserved presentations identified in Docs. 148 and 191 under each applicable route, including the later-release allegations, rather than treating the rejection of one route as disposing of all three.

Snellgrove's abuse-of-process response adds a nonexistent "clear owners" element. Doc. 193 at 2-3. His authority identifies improper use of process, ulterior purpose, and resulting damage. *Cooper v. Trent*, 551 S.W.3d 325, 333-34 (Tex. App.-Houston [14th Dist.] 2018, pet. denied). Plaintiffs' theory must satisfy the further requirement of postissuance misuse to compel a collateral result. *In re Dallas Roadster, Ltd.*, 846 F.3d 112, 124-25 (5th Cir. 2017). They identify use of warrant-derived custody to compel permanent private appropriation. The lawful issuance of the warrant does not itself decide that subsequent-use theory. Unjust enrichment also remains a cognizable alternative theory, subject to its factual requirements and the prohibition on duplicate recovery. *King v. Baylor University*, 46 F.4th 344, 367 (5th Cir. 2022).

## CONCLUSION

Plaintiffs respectfully request the relief specified in Doc. 191: JMOL against Dahl on the preserved Fourth Amendment ground; alternatively, a new trial on the affected Fourth Amendment, County, and conversion claims; and amendment of the judgment to restore the identified dismissed claims. The common credibility and property issues support trying the

affected claims together, while retaining individualized liability findings. See *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). If JMOL is granted, Plaintiffs request the conditional new-trial determination required by Rule 50(c)(1). They also request express rulings on cumulative prejudice, Reynolds's preserved proffer, the later official disposition, separate accrual, and the Rule 15 alternatives.

**CERTIFICATE OF SERVICE**

I certify that on the date reflected by the Court's CM/ECF filing stamp, I electronically filed the foregoing reply with the Clerk of Court through CM/ECF, which will provide notice and service to all counsel of record registered to receive electronic service in this action.

Respectfully submitted,

/s/ Kurt Mueller
Kurt Mueller
Texas Bar No. 24133133
The Kurt Mueller Law Firm PLLC
565 S. Mason Rd., PMB 223
Katy, Texas 77450
Telephone: (713) 360-2110
kurt@kurtmuellerpllc.com
ATTORNEY FOR PLAINTIFFS